**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Ave., 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
       lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| YILI QIU, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TARENA INTERNATIONAL, INC., SHAOYUN HAN, and YUDUO YANG,<br><br>Defendants. | Case No:<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Plaintiff Yili Qiu ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through her attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, public filings, wire and press releases published by and regarding Tarena International, Inc. ("Tarena" or the "Company"), and information readily obtainable on the

1

Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Tarena securities between August 16, 2016 and November 1, 2019, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Tarena securities during the Class Period and was economically damaged thereby.

7. Defendant Tarena purports to provide professional education services including professional information technology (IT) training courses and non-IT training courses. Tarena offers K-12 education services in China. Tarena is incorporated in the Cayman Islands and its headquarters are located at 6/F, No. 1 Andingmenwai Street Litchi Tower, Chaoyang District, Beijing F4 100011, China. Tarena's American Depository Shares ("ADSs") trade on the NASDAQ under the ticker symbol "TEDU."

8. Defendant Shaoyun Han ("Han") served as the Company's Chief Executive Officer ("CEO") and Chairman of the Board throughout the Class Period.

9. Defendant Yuduo Yang ("Yang") has served as the Company's Chief Financial Officer ("CFO") throughout the Class Period.

10. Defendants Han and Yang are collectively referred to herein as the "Individual Defendants."

11. Each of the Individual Defendants:

    (a) directly participated in the management of the Company;

    (b) was directly involved in the day-to-day operations of the Company at the highest levels;

    (c) was privy to confidential proprietary information concerning the Company and its business and operations;

      (d)      was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

      (e)      was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

      (f)      was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

      (g)      approved or ratified these statements in violation of the federal securities laws.

12. Tarena is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Tarena under *respondeat superior* and agency principles.

14. Defendants Tarena and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements Issued During the Class Period

15. On August 16, 2016, the Company filed a Form 6-K with the U.S. Securities and Exchange Commission ("SEC") announcing the financial results of the second quarter of 2016 ("2Q 2016 Financial Result") signed by Defendant Yang. The 2Q 2016 Financial Result, attached to the Form 6-K, stated, "Net revenues increased by 35.2% to US$55.9 million in the second quarter of 2016, from US$41.3 million in the same period in 2015. The increase was

4

primarily due to increased course enrollments and to a lesser extent, an increase in the standard tuition fees."

16. On November 22, 2016, the Company filed a Form 6-K with the SEC announcing the financial results of the third quarter of 2016 ("3Q 2016 Financial Result") signed by Defendant Yang. The 3Q 2016 Financial Result, attached to the Form 6-K, stated, "Net revenues increased by 29.4% to RMB481.0 million (US$72.0 million) in the third quarter of 2016, from RMB371.6 million in the same period in 2015. The increase was primarily due to increased course enrollments and to a lesser extent, an increase in the standard tuition fees."

17. On April 25, 2017, Tarena filed its annual report on Form 20-F with the SEC for the year ending December 31, 2016 (the "2016 20-F"). The 2016 20-F was signed by Defendants Han and Yang. Attached to the 2016 20-F were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Han and Yang attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

18. The 2016 20-F stated the following, in relevant part, regarding revenue:

We derive substantially all of our net revenues from tuition fees that we charge students. In 2014, 2015 and 2016, we generated net revenues of RMB836.9 million, RMB1,178.0 million and RMB1,579.6 million, respectively. We record tuition fees that we collect in advance as deferred revenues. Our net revenues are presented net of business tax and surcharges.

19. The 2016 20-F stated the following regarding related party transactions:

The audit committee is responsible for, among other things: [. . .] reviewing and approving all proposed related party transactions, as defined in Item 404 of Regulation S-K under the Securities Act[.]

\* \* \*

**Transactions with Shareholders and Affiliates**

**Transactions with Chuanbang.** *Starting from the second half of 2011, Chuanbang, a company owned by our chief executive officer, Mr. Shaoyun Han, began to offer person-to-person lending to enable qualified students to borrow unsecured loans from unrelated individuals to pay for our tuition fees.* Under the person-to-person lending service offered by Chuanbang to students enrolled prior to January 1, 2014, a student enters into a loan agreement with Mr. Han, as the designated representative of Chuanbang, to borrow an amount equal to our tuition fees. Mr. Han then assigns the existing loan agreement to an unrelated individual lender identified by Chuanbang, or the person-to-person lender, with us serving as the guarantor of the loan to the student. Upon the receipt of cash from the person-to-person lenders, Mr. Han remits the cash to us directly on behalf of the student for the payment of such student's tuition fees. Chuanbang services the student loans by collecting repayments on behalf of the person-to-person lenders from students, made to an account opened in the name of Mr. Han. The "interest spread" between (i) the interest rate under the loan agreement between the student and Mr. Han and (ii) the "anticipated annual yield" under the assignment agreement between Mr. Han and the person-to-person lender represents compensation for Chuanbang's estimated costs incurred in originating and servicing the student loans, plus the amount payable to us for guaranteeing the student loans. Chuanbang ceased offering loan services to our students enrolled since January 1, 2014.

As of December 31, 2016, our maximum exposure to guarantees of student loans was nil. All the third-party lenders were repaid.

Pursuant to our agreement with Chuanbang, Chuanbang provided cash collection service on our accounts receivable to better manage our cash collection since August 2013. The fee is calculated based on 2%~12% of the amount collected. The staff of Chuanbang includes our former employees who joined Chuanbang in July 2013. Chuanbang also provides similar cash collection service to other financial institutions. The cash collection service fees were RMB0.7 million, RMB2.1 million and RMB6.4 million for 2014, 2015 and 2016, respectively.

In September 2015, Precise, which is owned by an executive of Kohlberg Kravis Roberts & Co. L.P, or KKR, a shareholder of the Company, provided cash advances in the amount of RMB1.4 million to us in order to fund its share repurchase plan. We have fully repaid the advances in October 2015.

(Emphasis added.)

20.     On April 30, 2018, Tarena filed its annual report on Form 20-F with the SEC for the year ending December 31, 2017 (the "2017 20-F"). The 2017 20-F was signed by Defendants Han and Yang. Attached to the 2017 20-F were SOX certifications signed by

6

Defendants Han and Yang attesting to accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

21. The 2017 20-F stated the following, in pertinent part, regarding revenue:

We derive substantially all of our net revenues from tuition fees that we charge students. In 2015, 2016 and 2017, we generated net revenues of RMB1,178.0 million, RMB1,579.6 million and RMB1,973.8 million, respectively. We record tuition fees that we collect in advance as deferred revenues. Our net revenues are presented net of business tax and surcharges.

22. The 2017 20-F stated the following regarding related party transactions:

The audit committee is responsible for, among other things: [. . .] reviewing and approving all proposed related party transactions, as defined in Item 404 of Regulation S-K under the Securities Act[.]

\*   \*   \*

**Transactions with Shareholders and Affiliates**

**Transactions with Chuanbang.** *Starting from the second half of 2011, Chuanbang, a company owned by our chief executive officer, Mr. Shaoyun Han, began to offer person-to-person lending to enable qualified students to borrow unsecured loans from unrelated individuals to pay for our tuition fees.* Under the person-to-person lending service offered by Chuanbang to students enrolled prior to January 1, 2014, a student enters into a loan agreement with Mr. Han, as the designated representative of Chuanbang, to borrow an amount equal to our tuition fees. Mr. Han then assigns the existing loan agreement to an unrelated individual lender identified by Chuanbang, or the person-to-person lender, with us serving as the guarantor of the loan to the student. Upon the receipt of cash from the person-to-person lenders, Mr. Han remits the cash to us directly on behalf of the student for the payment of such student's tuition fees. Chuanbang services the student loans by collecting repayments on behalf of the person-to-person lenders from students, made to an account opened in the name of Mr. Han. The "interest spread" between (i) the interest rate under the loan agreement between the student and Mr. Han and (ii) the "anticipated annual yield" under the assignment agreement between Mr. Han and the person-to-person lender represents compensation for Chuanbang's estimated costs incurred in originating and servicing the student loans, plus the amount payable to us for guaranteeing the student loans. Chuanbang ceased offering loan services to our students enrolled since January 1, 2014.

As of December 31, 2017, our maximum exposure to guarantees of student loans

was nil. All the third-party lenders were repaid.

Pursuant to our agreement with Chuanbang, Chuanbang provided cash collection service on our accounts receivable to better manage our cash collection since August 2013. The fee is calculated based on 2%~12% of the amount collected. The staff of Chuanbang includes our former employees who joined Chuanbang in July 2013. Chuanbang also provides similar cash collection service to other financial institutions. The cash collection service fees were RMB2.1 million, RMB6.4 million and RMB3.2 million for 2015, 2016 and 2017, respectively.

***In September 2015, Precise, which is owned by an executive of Kohlberg Kravis Roberts & Co. L.P, or KKR, a shareholder of the Company, provided cash advances in the amount of RMB1.4 million to us in order to fund its share repurchase plan.*** We have fully repaid the advances in October 2015.

(Emphasis added.)

23. The statements contained in ¶¶15-22 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) certain employees were interfering with external audits of the Company's financial statements for certain periods; (2) the Company suffered from revenue and expense inaccuracies; (3) the Company engaged in business transactions with organizations owned, invested in or controlled by Company employees or their family members, which in some instances were not properly disclosed by the Company; (4) as a result of the foregoing, the Company's financial statements from 2014 through the end of Class Period were not accurate; and (5) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## THE TRUTH BEGINS TO EMERGE

24. On April 30, 2019, the Company filed a Form NT 20-F Notification of inability to timely file a Form 20-F for the fiscal year ended December 31, 2018 with the SEC. The

8

Company stated the delay in filing the Form 20-F was due, in part, to, "the independent audit committee of the registrant's board of directors [. . .] conducting a review of certain issues identified during the course of the audit of the registrant's financial statements for the year ended December 31, 2018, *including issues related to the registrant's revenue recognition.*" (Emphasis added).

25. On this news, the price of Tarena ADSs fell 1.2% to close at $5.02 per ADS on May 1, 2019, damaging investors.

26. On May 17, 2019, the Company filed a Form 6-K with the SEC announcing that it "received a notification letter from Nasdaq Listing Qualifications [. . .] stating that the Company was not in compliance with Nasdaq Listing Rule 5250(c)(1) due to its failure to timely file its Annual Report on Form 20-F for the year ended December 31, 2018 (the "2018 Form 20-F")."

27. On this news, the price of Tarena ADSs fell 4.8% to close at $3.73 on May 20, 2019, further damaging investors.

28. On July 24, 2019, Tarena filed a Form 6-K with the SEC providing an update on the audit committee's independent review of the Company's financial statements, stating in relevant part:

> [A]s identified by the ongoing independent review conducted by its independent audit committee (the "Independent Audit Committee Review"), including review of issues related to the Registrant's revenue recognition, in addition to the financial results for 2018, the Registrant also expects that its historical disclosure of its financial results and audited financial statements for its fiscal year ended December 31, 2017, as well as the financial results and audited financial statements for periods prior to 2017, may need to be restated and should not be relied upon, pending the completion of the Independent Audit Committee Review.

29. On this news, the price of Tarena ADSs fell 4.7% to close at $1.63 per ADS on July 25, 2019.

9

30. On November 1, 2019, Tarena filed a Form 6-K announcing the results of its independent investigation, revealing:

> The following is a summary of the principal findings of the Investigation as of the date hereof. Unless otherwise indicated, the Investigation findings generally cover the fiscal years 2014 through 2018.
>
> > *Revenue Inaccuracies*: The Audit Committee's independent review found that ***the Company's reported revenues for fiscal years 2014, 2015, 2016 and 2017 and previously announced unaudited revenues for each quarter of and full year 2018 were not accurate.*** Factors contributing to the misstatement of revenue included ***intentional revenue inflation, inaccurate student account, status and loan data recorded in the Company's customer relationship management (CRM) system, premature recognition of revenue from certain students, and inaccurate accounting treatment of tuition refunds***.
> >
> > *Expense Inaccuracies and Irregularities*: The Audit Committee discovered instances of ***improper charges against accounts receivable and/or bad debts through payment to third parties, as well as guarantee payments to certain financial institutions or peer-to-peer financial tools for certain overdue student loans.*** The Audit Committee also identified certain expenses that were not supported by appropriate documentation and indications that funds or other benefits were provided to third parties contrary to Company policy.
> >
> > *Conflicts of Interest and Related Party Transactions*: The Audit Committee found evidence that ***the Company engaged in business transactions with organizations owned, invested in or controlled by Company employees or their family members which in some instances were not properly disclosed by the Company***.
> >
> > *Interference with External Audit Process*: It was found that ***certain employees interfered with the external audit of the Company's financial statements for certain periods***.
>
> The Company is assessing the overall financial impact of these findings on its financial statements. ***The management team of the Company anticipates that the total amount of revenue misstatement between fiscal years 2014 through 2018 to be less than RMB900 million, representing approximately 11.5% of the total revenue previously reported by the Company for such period.*** This figure represents the estimate of the management team based on currently available information. The actual amount of revenue misstatement may be higher.

(Emphasis added).

31. On this news, the price of Tarena ADSs dropped 9.4% to open on November 4, 2019, the next trading day, at $0.76, further damaging investors.

32. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's ADSs, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

33. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons and entities, other than Defendants, who purchased or otherwise acquired the publicly traded securities of Tarena during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Tarena, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

34. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Tarena securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

35. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

36. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

37. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business of Tarena;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused Tarena to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of Tarena securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

38. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and

burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

39. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Tarena ADSs met the requirements for listing, and were listed and actively traded on the NASDAQ, an efficient market;

- As a public issuer, Tarena filed periodic public reports;

- Tarena regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- Tarena's securities were liquid and traded with moderate to heavy volume during the Class Period; and

- Tarena was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

40. Based on the foregoing, the market for Tarena securities promptly digested current information regarding Tarena from all publicly available sources and reflected such information in the prices of the ADSs, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

41. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I
### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

42. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

43. This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

44. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

45. Defendants violated §10(b) of the Exchange Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Tarena securities during the Class Period.

46. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Tarena were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Tarena, their control over, and/or receipt and/or modification of Tarena's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Tarena, participated in the fraudulent scheme alleged herein.

47. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Tarena personnel to members of the investing public, including Plaintiff and the Class.

48. As a result of the foregoing, the market price of Tarena securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Tarena securities during the Class Period in purchasing Tarena securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

49. Had Plaintiff and the other members of the Class been aware that the market price of Tarena securities had been artificially and falsely inflated by Defendants' misleading

statements and by the material adverse information which Defendants did not disclose, they would not have purchased Tarena securities at the artificially inflated prices that they did, or at all.

50. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

51. By reason of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Tarena securities during the Class Period.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

52. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53. During the Class Period, the Individual Defendants participated in the operation and management of Tarena, and conducted and participated, directly and indirectly, in the conduct of Tarena's business affairs. Because of their senior positions, they knew the adverse non-public information about Tarena's misstatement of revenue and profit and false financial statements.

54. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Tarena's financial condition and results of operations, and to correct promptly any public statements issued by Tarena which had become materially false or misleading.

55. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press

16

releases and public filings which Tarena disseminated in the marketplace during the Class Period concerning Tarena's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Tarena to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Tarena within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Tarena securities.

56.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Tarena.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of herself and the Class, prays for judgment and relief as follows:

(a)     declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b)     awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c)     awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

| | |
|---|---|
| Dated: June 22, 2021 | Respectfully submitted,<br><br>**THE ROSEN LAW FIRM, P.A.**<br><br>By: /s/ Phillip Kim<br>Phillip Kim, Esq. (PK 9384)<br>Laurence M. Rosen, Esq. (LR 5733)<br>275 Madison Avenue, 40th Floor<br>New York, NY 10016<br>Telephone: (212) 686-1060<br>Fax: (212) 202-3827<br>Email: pkim@rosenlegal.com<br>          lrosen@rosenlegal.com<br><br>*Counsel for Plaintiff* |