**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| YILI QIU, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br><br> v. <br><br><br> TARENA INTERNATIONAL, INC., SHAOYUN HAN, and YUDUO YANG, <br><br> Defendants. | CASE No.: 1:21-cv-03502-PKC-RML <br><br> **AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> <u>CLASS ACTION</u> <br><br> JURY TRIAL DEMANDED |

Lead Plaintiff Walter De Schutter and named plaintiffs Steven Clauter and Cynthia Lewis ("Plaintiffs"), individually and on behalf of all other persons similarly situated, by Plaintiffs' undersigned attorneys, for Plaintiffs' amended complaint against Defendants Tarena International, Inc. ("Tarena"), Shaoyun Han ("Han") and Yuduo Yang ("Yang", together with Tarena and Han as "Defendants"), allege the following based upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters based on the investigation it conducted by and through their attorneys, which included, among other things, a review and analysis of: (i) Defendants' public filings with the U.S. Securities and Exchange Commission ("SEC"); (ii) Defendants' public filings with Chinese regulatory agencies and its local provincial offices; (iii) public reports and news articles; (iv) transcripts of Defendants' conference calls; (v) interviews with witnesses with relevant information; and (vi) other publicly-available material and data identified herein. Plaintiffs' investigation is continuing, and many of the facts supporting the allegations contained herein are known only to Defendants or are

exclusively within their control or custody. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action on behalf of a class consisting of all persons other than Defendants who purchased Tarena American Depositary Shares ("ADSs")[1] between August 16, 2016 and November 1, 2019, inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Tarena is a professional education provider in China that focuses on information technology ("IT") vocational training programs for adults and after-school IT programs for children and adolescents.

3.      During the Class Period and unbeknownst to the market, Defendants engaged in a multi-year accounting fraud, that rendered every financial statement the Company issued for the fiscal years ended December 31, 2014, 2015, 2016 and 2017 false when made.

4.      As a result of the accounting fraud, the Company restated the majority of line items in their financial statements for the years ended December 31, 2014, 2015, 2016 and 2017 ("Restatement").   The Restatement was material. For example, the Restatement reduced the net revenue for 2014 through 2018 by RMB 700 million (US$110 million), a 10% inflation of the actual net revenue, and gross profit for 2014 through 2018 by approximately RMB 667 million

---

[1] American Depositary Shares, also known as ADSs, are U.S. dollar-denominated shares of stock of a foreign-based company available for purchase on an American stock exchange. ADSs are issued by depository banks in the U.S. under agreement with the issuing foreign company. Each Tarena ADS represents one Class A ordinary share.

(US$104 million), a 14% inflation of the actual gross profit. These overstatements of net revenue made the Company look profitable; in reality the Restatement revealed that the Company suffered a net loss in 2017 and 2018. The Restatement also reduced the Company's accounts receivable (net of allowance for doubtful accounts) for 2014 through 2018 by approximately RMB 638 million (US$99.6million), a 441% inflation of the actual accounts receivable. The Restatement also revealed a number of previously undisclosed material related party transactions between management and the Company in 2016 through 2018.

5.     As Defendants later admitted, the errors that caused the Restatement were the result of, *inter alia* "***intentional*** revenue inflation, inaccurate student account status and loan data", "improper charges against accounts receivable and/or bad debts", undisclosed guarantee payments by Tarena, inappropriate benefits provided by Tarena to third parties in violation of Tarena's policies, and undisclosed material related party transactions between the Company and Individual Defendant Han or his family members. Certain Tarena employees were also found to have "interfered with the external audit of the Company's financial statements".

6.     SEC and NASDAQ rules and regulations require that financial statements included in a publicly traded company's registration statement, annual and quarterly reports must comply with Generally Accepted Accounting Principles ("GAAP"). Under GAAP "restatements" are required for material accounting errors that existed at the time financial statements were prepared. Tarena's Restatement of its financial statements is an admission that the financial statements did not comply with GAAP and were therefore materially false and misleading when made.

7.     The truth of Defendants' material misrepresentations and omissions during the Class Period gradually emerged through several partial corrective disclosures that caused the price of Tarena's shares to fall, damaging Plaintiffs and the Class.

8.      On April 30, 2019, Tarena disclosed that it would delay filing 2018 annual report due, in part, to its audit committee of Tarena's board of directors was "conducting a review of certain issues identified during the course of the audit…, including issues related to the [Company's] revenue recognition". On this news, the price of Tarena ADSs fell 1.2% to close at $5.02 per ADS on May 1, 2019, damaging investors.

9.      On May 17, 2019, the Company disclosed that the review by its audit committee was still ongoing and that financial results for each quarter and full year of 2018 might "need to be restated and should not be relied upon". On this news, the price of Tarena ADSs fell 4.8% to close at $3.73 on May 20, 2019, further damaging investors.

10.     On July 24, 2019, Tarena disclosed that the financial statements for its fiscal year ended December 31, 2017 and for periods prior to 2017 also might "need to be restated and should not be relied upon", pending the audit committee's investigation. On this news, the price of Tarena ADSs fell 4.7% to close at $1.63 per ADS on July 25, 2019.

11.     On November 1, 2019, Tarena disclosed the summary of the principal findings of the independent investigation, revealing previously undisclosed "revenue inaccuracies", "expense inaccuracies and irregularities", undisclosed material "conflict of interest and related party transactions" and "interference with external audit process … [by] certain employees". On this news, the price of Tarena ADSs dropped 9.4% to open on November 4, 2019, the next trading day, at $0.76, further damaging investors.

12.     The disclosure of Defendants' material misrepresentations and omissions caused the precipitous decline in the market value of the Company's ADSs. Plaintiffs and other Class members have suffered significant losses and damages as a result.

## JURISDICTION AND VENUE

13.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

14.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

15.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

16.     In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

17.     Lead Plaintiff, as set forth in the certification previously filed with this Court and incorporated by reference herein, acquired Tarena ADSs at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

18.     Named plaintiff Steven Clauter purchased Tarena ADSs at artificially inflated prices during the Class Period and was damaged thereby. His PSLRA certification is attached as Exhibit 1.

19.     Named plaintiff Cynthia Lewis purchased Tarena ADSs at artificially inflated prices during the Class Period and was damaged thereby. Her PSLRA certification is attached as Exhibit 2.

20.     Defendant Tarena purports to provide professional education services including professional IT training courses and non-IT training courses in China. Tarena also offers K-12 after-school education services in China. Tarena is incorporated in the Cayman Islands and its headquarters are located at 6/F, No. 1 Andingmenwai Street Litchi Tower, Chaoyang District, Beijing F4 100011, China. On April 3, 2014, Tarena completed its initial public offering ("IPO") on Nasdaq, selling 15.2 million ADSs at $9.00 per ADS and its shares traded under the ticker symbol "TEDU".

21.     Defendant Shaoyun Han ("Han") was the founder of Tarena and served as the Company's Chief Executive Officer ("CEO") and Chairman of the Board since the formation of Tarena and throughout the Class Period. During the Class Period, Han had over 30% of total ordinary shares of Tarena, representing over 67% aggregate voting power.

22.     Defendant Yuduo Yang ("Yang") has served as the Company's Chief Financial Officer ("CFO") throughout the Class Period. Prior to joining Tarena, Yang had had nearly twenty years' experience in the finance area, including serving as a vice president at Beijing Fengshun Lubao Car Auction Company Limited from March 2015 to November 2015, a finance director at Bybon Group Company Limited from December 2013 to October 2014, a finance director at South Beauty Group from June 2010 to December 2013, a finance manager at Google and Lucent Technologies from December 2007 to May 2010, and from April 2005 to November 2007, respectively. Particularly, Yang had been an auditing manager at KPMG Beijing Office from July 1997 to April 2005.

23.     Defendants Han and Yang are collectively referred to herein as the "Individual Defendants."

24.     Each of the Individual Defendants:

(a)    directly participated in the management of the Company;

(b)    was directly involved in the day-to-day operations of the Company at the highest levels;

(c)    was privy to confidential proprietary information concerning the Company and its business and operations;

(d)    was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)    was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)    was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)    approved or ratified these statements in violation of the federal securities laws.

25.    Tarena is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

26.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Tarena under *respondeat superior* and agency principles.

27.    Defendants Tarena and the Individual Defendants are collectively referred to herein as "Defendants."

## **SUBSTANTIVE ALLEGATIONS**

## **Company Background**

28.    Tarena began its operations in Beijing, China in September 2002 through Beijing Tarena Technology Co., Ltd. Its core business is professional education services that provide non-

degree granting, post-secondary vocational and continuing training programs for adults in China. In December 2015, Tarena started to offer after-school courses for children and adolescents aged between six and eighteen.

29.    Tarena derives substantially all of its revenues from tuition fees that it charges students. The number of student enrollments is the most important factor that determines Tarena's ability to generate and increase revenues.

**Defendants Certified the Effectiveness of Tarena's**
**Internal Control and Accuracy of Its Financial Reports**

30.    The Sarbanes-Oxley Act of 2002 ("SOX") is a law created to improve the accuracy and reliability of corporate disclosures in public companies' financial statements and to protect investors from fraudulent accounting practices.

31.    SOX Section 404 requires that companies annually assess and report on the effectiveness of their internal control structure. Under SOX Section 404 and Rules 13a-15(f) and 15d-15(f) under the Exchange Act, every public company, including Tarena, is required to include a management report on the company's internal control over financial reporting in its annual reports, which contains management's assessment of the effectiveness of the company's internal control over financial reporting. Internal control over financial reporting is a process designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of consolidated financial statements in accordance with U.S. GAAP and includes those policies and procedures that (i) pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions and dispositions of a company's assets, (ii) provide reasonable assurance that transactions are recorded as necessary to permit preparation of consolidated financial statements in accordance with the GAAP, and that a company's receipts and expenditures are being made only in accordance with authorizations of a company's management and directors,

8

and (iii) provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use, or disposition of a company's assets that could have a material effect on the consolidated financial statements.

32.    Specifically, a public company is required to include with their annual filing:

(a)    a statement of management's responsibility for establishing and maintaining adequate internal control over financial reporting;

(b)    statement identifying the framework used by management to evaluate the effectiveness of internal control; and

(c)    management's assessment of the effectiveness of internal control as of the end of the company's most recent fiscal year end.[2]

33.    SOX Section 302 requires that the principal executive and financial officers of a company, typically the CEO and CFO, personally attest that financial information is accurate and reliable. SOX Section 302 also requires these officers to certify on the effectiveness of the company's internal control based on their evaluation.

34.    During the Class Period, Defendants represented in Tarena's annual reports pursuant to SOX Section 404 that Tarena's management was responsible for establishing and maintaining adequate internal control over financial reporting. Defendants further represented that Tarena's management, with the participation of Defendants Han and Yang, conducted an evaluation of the effectiveness of Tarena's internal control based on criteria established in Internal Control—Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO Framework"). Defendants further repeatedly represented that the

---

[2] During the Class Period, Tarena's auditor was exempted from reporting on the effectiveness of Tarena's internal control over financial reporting due to Tarena's "emerging growth company" status under section 3(a) of the Securities Exchange Ac.

Tarena management concluded that Tarena's internal control over financial reporting was effective.

35.    Additionally, during the Class Period, Defendants Han and Yang personally certified pursuant to SOX Section 302 in each of the annual reports that they were responsible for establishing and maintaining disclosure controls and procedures and internal control over financial reporting for the Company and had designed Tarena's disclosure controls and procedures and internal control to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements in accordance with the GAAP.

**Tarena's Multi-Year Accounting Fraud**

***Tarena Tells Investors in Piecemeal Fashion That Its Financial Statements Issued During the Class Period Should Not Be Relied Upon***

36.    On April 30, 2019, Tarena disclosed in its Form NT 20-F Notification of inability to timely file the 2018 annual report ("NT 20-F") that the "audit committee of the registrant's board of directors is conducting a review of certain issues identified during the course of the audit of the registrant's financial statements for the year ended December 31, 2018, including issues related to the registrant's revenue recognition."

37.    On May 17, 2019, the Company filed a Form 6-K ("May 17, 2019 6-K") with the SEC announcing that it "received a notification letter from Nasdaq Listing Qualifications [. . .] stating that the Company was not in compliance with Nasdaq Listing Rule 5250(c)(1) due to its failure to timely the 2018 Form 20-F". The May 17, 2019 6-K further disclosed that:

> [T]he independent audit committee of the Company's board of directors is conducting a review of certain issues identified during the course of the audit of the Company's financial statements for the year ended December 31, 2018, including issues related to the Company's revenue recognition. The Company expects that **its historical disclosure of unaudited financial results for each quarter and full year of the fiscal year ended December 31, 2018 may need to be restated and should not be relied upon**, pending the completion of its audited financial statements and the review conducted by its independent audit committee.

(Emphasis added)

38.     On July 24, 2019, Tarena filed a Form 6-K ("July 24, 2019 6-K") with the SEC providing

an update on the audit committee's investigation of the Company's financial statements, stating in

relevant part:

> Tarena … reports that, as identified by the ongoing independent review conducted by its independent audit committee (the "Independent Audit Committee Review"), including review of issues related to the Registrant's revenue recognition, in addition to the financial results for 2018, the Registrant also expects **that its historical disclosure of its financial results and audited financial statements for its fiscal year ended December 31, 2017, as well as the financial results and audited financial statements for periods prior to 2017, may need to be restated and should not be relied upon**, pending the completion of the Independent Audit Committee Review.

(Emphasis added)

### *Tarena Admits that Its Financial Statements For the Years of 2014 through 2018, and the Interim Periods Therein Have to be Restated and Thus Were False When Made*

39.     On November 1, 2019, Tarena disclosed in a Form 6-K ("November 1, 2019 6-K")

the summary of the principal findings by Tarena's audit committee after its investigation,

including reviews of approximately 260,000 emails and other electronic files and communications,

58 interviews of Tarena employees and relevant third parties, and analysis and testing of Tarena's

financial data, books and records.

40.     The independent audit committee found that from 2014 through 2018,

•       *Revenue Inaccuracies*: The Audit Committee's independent review found that **the Company's reported revenues for fiscal years 2014, 2015, 2016 and 2017 and previously announced unaudited revenues for each quarter of and full year 2018 were not accurate. Factors contributing to the misstatement of revenue included intentional revenue inflation, inaccurate student account, status and loan data recorded in the Company's customer relationship management (CRM) system, premature recognition of revenue from certain students, and inaccurate accounting treatment of tuition refunds.**

•       *Expense Inaccuracies and Irregularities*: The Audit Committee discovered instances of **improper charges against accounts receivable and/or bad debts through payment to third parties, as well as guarantee payments to certain**

**financial institutions or peer-to-peer financial tools for certain overdue student loans**. The Audit Committee also identified **certain expenses that were not supported by appropriate documentation and indications that funds or other benefits were provided to third parties contrary to Company policy**.

- *Conflicts of Interest and Related Party Transactions*: The Audit Committee found evidence that **the Company engaged in business transactions with organizations owned, invested in or controlled by Company employees or their family members which in some instances were not properly disclosed by the Company**.

- *Interference with External Audit Process*: It was found that **certain employees interfered with the external audit of the Company's financial statements for certain periods**.

The Company is assessing the overall financial impact of these findings on its financial statements. The management team of the Company anticipates that **the total amount of revenue misstatement between fiscal years 2014 through 2018 to be less than RMB900 million, representing approximately 11.5% of the total revenue previously reported by the Company for such period**. This figure represents the estimate of the management team based on currently available information. The actual amount of revenue misstatement may be higher.

(Emphasis added in bold; italics in original)

41.    On April 24, 2020, Tarena issued its belated 2018 annual report on Form 20-F ("2018 20-F"). The 2018 20-F restated Tarena's previously issued financial statements for the years ended December 31, 2014, 2015, 2016 and 2017 and previously issued financial results for the year ended December 31, 2018. The 2018 20-F also stated that Tarena's previously issued financial statements (and the related audit opinion) for the years ended December 31, 2016 and 2017 should not be relied upon and the financial information included in reports previously filed or furnished by Tarena in the years from 2014 to 2018 was superseded by the 2018 20-F.

### *The Restatement is an Admission that Tarena's Financial Statements Were Materially False When Made*

42.    GAAP constitutes those standards recognized by the accounting profession as the conventions, rules, and procedures necessary to define accepted accounting practices at a particular

time. GAAP are the common set of accounting principles, standards, and procedures that companies in the United States use to compile their financial statements. The SEC has the statutory authority to promulgate GAAP for public companies and has delegated that authority to the U.S. Financial Accounting Standards Board ("FASB"). *See* Release Nos. 33-8221; 34-47743; IC-26028; FR-70. The SEC Rules and interpretive releases and the FASB Accounting Standards Codification ("ASC") represent sources of authoritative GAAP for SEC registrants. ASC 105-10-05-1. SEC and NASDAQ rules and regulations require that publicly traded companies such as Tarena include financial statements that comply with GAAP in their annual and quarterly reports, and registration statements filed with the SEC. *See* §13 of the Exchange Act; Regulation S-X. SEC Rule 4-01(a) of Regulation S-X states that "[f]inancial statements filed with the Commission which are not prepared in accordance with generally accepted accounting principles will be presumed to be misleading or inaccurate." 17 C.F.R. § 210.4-01(a)(1). Management is responsible for preparing financial statements that conform to GAAP, as provided in the Public Company Accounting Oversight Board standards that govern financial statement auditors ("PCAOB Standards").

43.     Under GAAP "restatements" are required for material accounting errors that existed at the time financial statements were prepared. *See* Statement of Financial Accounting Standards ("SFAS") 154; ASC 250. An accounting "error" is a term of art and results from, among other things, an error in recognition, measurement, or mistakes in the application of GAAP. SFAS 154; ASC 250. Errors result from (i) mathematical mistakes, (ii) mistakes in application of GAAP, or (iii) oversight or misuse of facts that existed at the time the financial statements were prepared. SFAS 154; ASC 250.

44.     By issuing the Restatement, Tarena acknowledged that its financial statements for

2014-2018 were materially inaccurate, and did not comply with GAAP and were therefore materially false and misleading *when issued*. 17 C.F.R. § 210.4-01(a)(1). GAAP also makes a distinction between a change in estimate and the corrections of historic facts. If an estimate is changed, then no restatement is necessary. However, if facts in existence at the time were not properly recorded or considered, then the original statement must be corrected. Corrections are to be adjusted by recording adjustments to current and previously issued financial statements. ASC 250-05-04, 250-10-20. Tarena acknowledged that all financial statements and financial results were prepared according to GAAP. Thus, by restating, Tarena admitted that these were not judgmental mistakes in estimation, but that it had ignored or misused known facts that existed at the time the financial statements were prepared, evidencing knowing or reckless misconduct.

45.    The 2018 20-F reduced, *inter alia*, the Company's previously reported net revenues for 2014 through 2018 by approximately RMB 700 million (US$110 million), an inflation of 10% of the actual net revenues. The 2018 20-F also reduced the Company's previously reported gross profit for 2014 through 2018 by approximately RMB 667 million (US$104 million), an inflation of 14% of the actual gross profit. Tarena contributed the error in the net revenues for 2016 to 2017 to "***intentional revenue inflation***, inaccurate student account status and loan data …, premature recognition of revenue from certain students, and inaccurate accounting treatment of tuition refunds."[3]

46.    The 2018 20-F also reduced the Company's previously reported accounts receivable (net of allowance for doubtful accounts) for 2014 through 2018 by approximately RMB

---

[3] The 2018 20-F only provided some selected restated financial data for 2014 and 2015, which were not included in the consolidated financial statements.

638 million (US$99.6million), a 441% inflation of the actual accounts receivable. . The Company contributed such error primarily to "*intentional revenue inflation*, inaccurate student account status and loan data …, premature recognition of revenue from certain students, and inaccurate accounting treatment of tuition refunds" and *"improper charges* against accounts receivable and/or bad debts, and certain students' tuition fee refund due to early termination of study through payment for *irregular* expense or loan from an individual."

47.    A detailed comparison between the previously reported and selected restated financial data for 2014, 2015, 2016, 2017 and 2018 is attached hereto as Exhibit 3.

48.    A detailed comparison between the previously issued and restated financial statements for 2016, 2017 and 2018 is attached hereto as Exhibit 4.

49.    Furthermore, as detailed below, the 2018 20-F restated Tarena's related party transactions for 2016 through 2018 and disclosed for the first time significant related party transactions between Tarena and Defendant Han, his two sisters and brother-in-law from 2016 to 2018, in the aggregate amount of RMB 41.127 million (US$6.42 million). The 2018 20-F also disclosed for the first time that the service fees that Chuanbang Business Consulting (Beijing) Co., Ltd. ("Chuanbang"), a company wholly owned by Defendant Han, received from Tarena for Chuanbang's collection service on the Company's accounts receivable was 2%~20% of the amount collected, as compared to previously reported 2-12%.

## IDENFITICATION OF DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS

**Second quarter of 2016**

50.    On August 16, 2016, the Company filed a Form 6-K with the SEC announcing the financial results of the second quarter of 2016 ("2Q 2016 Financial Results") signed by Defendant Yang. Defendant Han commented on the second quarter's financial performance in the 2Q 2016

Financial Results. The 2Q 2016 Financial Results stated, *inter alia*, that

> Net revenues increased by 35.2% to US$55.9 million in the second quarter of 2016, from US$41.3 million in the same period in 2015. The increase was primarily due to increased course enrollments and to a lesser extent, an increase in the standard tuition fees.

> Cost of revenues increased by 30.7% to US$16.7 million in the second quarter of 2016, from US$12.8 million in the same period in 2015. The increase was mainly due to higher personnel cost and welfare expenses resulting from increased number of teaching and advisory staff at our learning centers and higher average salary, higher rental cost resulting from increased seat capacity, as well as higher depreciation expenses for our learning centers.
>
> ….
>
> Selling and marketing expenses increased by 15.1% to US$19.4 million in the second quarter of 2016, from US$16.8 million in the same period in 2015. The increase was due to higher personnel cost and welfare expenses related to the growth in our selling and marketing headcount and higher average salary, as we expanded our course offerings and network of learning centers.
>
> ….
>
> General and administrative expenses increased by 41.2% to US$12.0 million in the second quarter of 2016, from US$8.5 million in the same period in 2015. The increase was mainly due to higher compensation cost for our increased number of general and administrative personnel to support our growing operations, and higher share-based compensation expenses. Non-GAAP general and administrative expenses, which excluded share-based compensation expenses, increased by 38.4% to US$10.1 million, from US$7.3 million in the same period in 2015.
>
> ….
>
> Interest income was US$0.8 million in the second quarter of 2016, compared to US$1.3 million in the same period in 2015. Interest income in both periods consisted of interest earned on our cash, cash equivalents and time deposits in commercial banks and interest income recognized in relation to our installment payment plan for students. The decrease in interest income was primarily due to lower bank deposits and interest rate, as well as lower tuition interest income in relation to our installment payment plan for students.

51.    <u>First</u>, these statements were materially false and misleading because Defendants failed to disclose that the financial data in 2Q 2016 Financial Results were materially false and inaccurate because—as stated in Note 3(a) "Restatement adjustments to inaccurate revenue and relevant accounts" to the Consolidated Financial Statements in 2018 20-F—Tarena recorded inaccurate revenue, general and administrative expenses for bad debt provision, interest income and cost of revenue due to "the misstatement of revenue resulted from ***intentional*** revenue

inflation, *inaccurate* student account status and loan data recorded in the Company's customer relationship management (CRM) system, *premature* recognition of revenue from certain students, and *inaccurate* accounting treatment of tuition refund". (Emphasis added.) Such fictitious or premature revenue recognition violated ASC 605 Revenue Recognition.

52.    Second, Defendants failed to disclose that the financial data in 2Q 2016 Financial Results were materially false and inaccurate due to—as stated in Note 3(b) "Restatement adjustments to expense inaccuracies" to the Consolidated Financial Statements in 2018 20-F—Tarena's "*improper* charges against accounts receivable and/or bad debts, and certain students' tuition fee refund due to early termination of study through payment for *irregular* expense or loan from an individual". (Emphasis added.) Such improper write-off of receivables and improper recognition of credit losses violated ASC 310 Receivables and ASC 450-20 Loss Contingencies.

53.    Third, Defendants failed to disclose that the financial data in 2Q 2016 Financial Results were materially false and inaccurate due to—as stated in Note 3(d) "Incomplete disclosed related party transactions" to the Consolidated Financial Statements in 2018 20-F—undisclosed material related party transactions.

54.    Item 404 of SEC Regulation S-K (27 CFR § 229.404) requires Tarena to disclose related party transactions with the amount involved exceeding $120,000. Item 7 of the SEC Form 20-F, a form applicable to Tarena, requires disclosure of material related party transactions, such as transactions between the registrant and key management personnel or close members of such individuals' families.

55.    GAAP, too, requires disclosure of all material related party transactions. ASC 850-10-50-1.

56.    Under ASC 850, related parties include, *inter alia*:

d. Principal owners of the entity and members of their immediate families;

e. Management of the entity and members of their immediate families;

g. Other parties that can significantly influence the management or operating policies of the transacting parties or that have an ownership interest in one of the transacting parties and can significantly influence the other to an extent that one or more of the transacting parties might be prevented from fully pursuing its own separate interests.

*See* ASC 850-10-20.

57.     Under FAS No. 57, transactions between related parties should be disclosed even if services are rendered to the corporation by the related party without charge or no amounts or nominal amounts are ascribed. FAS No. 57 pg. 4-5. Disclosure of all related party transactions is important for investors to determine whether the corporation has subordinated its independent interests to the related party. FAS No. 57, p.7.

58.     Note 14 to the Consolidated Financial Statements in 2018 20-F disclosed for the first time that in 2016, Tarena had below significant related party transactions:

(a)     RMB 902,000 (US$141,350) franchise and training service income from Bolton School, a company controlled by Defendant Han's brother-in-law;

(b)     RMB 102,000 (US$15,980) training service expense to Bolton School;

(c)     RMB 6.5 million (US$1.02 million) loan to Han Lijuan, Defendant Han's sister;

(d)     RMB 81,000 (US$12,693) interest income from loan to Han Lijuan.

59.     Note 14 also disclosed for the first time that Tarena misstated the service fees that Chuanbang, a company wholly owned by Defendant Han, received from Tarena for Chuanbang's collection service on the Company's accounts as the incorrect 2-12%, as opposed to the actual 2%~20% of the amount collected. Such 8% misstatement resulted in approximately RMB 515,600

(US$80,796) discrepancy for 2016.

60.     By way of 2018 20-F, Defendants admitted that they failed to disclose or misstated the above material related party transactions in the second quarter of 2016, violating the SEC rules and GAAP.

61.     Fourth, Defendants failed to disclose that the financial data in 2Q 2016 Financial Results were materially false and inaccurate because—as stated in Note 3(g) "Retain earnings" to the Consolidated Financial Statements in 2018 20-F— the Company's net income for 2014 and 2015 (combined) was overstated and the beginning retained earnings balance of the earliest period presented (i.e., 2016) should be adjusted pursuant to GAAP.

**Fiscal Year 2016**

62.     On April 25, 2017, Tarena filed its annual report on Form 20-F with the SEC for the year ending December 31, 2016 (the "2016 20-F"). The 2016 20-F was signed by Defendants Han and Yang. Attached to the 2016 20-F were certifications pursuant to pursuant to Rule 13a-14(a) under the Securities Exchange act as adopted pursuant to SOX Section 302 and pursuant to SOX Section 906 signed by Defendants Han and Yang attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

63.     As stated above, Defendants admitted in the 2018 20-F that the financial statements for the years ended December 31, 2016 in the 2016 20-F were materially false, misleading and inaccurate and should not be relied on. Tarena restated the financial statements for the year ended December 31, 2016.

64.     The chart below shows the magnitude of the misstatements of certain key financial data in Tarena's financial statements in 2016 20-F. Net income was overstated by 7%. Account

receivable, net of allowance for doubtful accounts was overstated by over four times. Defendants

failed to disclose 99.3% of related party transactions conducted in 2016. As stated above, a detailed

comparison between the previously issued false 2016 financial statements and restated actual 2016

financial statements is attached hereto as Exhibit 4.

| | 2016<br>Reported<br>(False) | 2016<br>Restated<br>(Actual) | 2016<br>Errors:<br>Amount of<br>Overstated | 2016<br>Errors:<br>% of Actual |
|---|---|---|---|---|
| Net revenues | 1,579,604 | 1,520,035 | 59,569 | 4% |
| Gross profit | 1,130,500 | 1,076,568 | 53,932 | 5% |
| Operating income/(loss) | 229,834 | 222,452 | 7,382 | 3% |
| Income/(loss) before income taxes | 260,630 | 254,339 | 6,291 | 2% |
| Net income/(loss) | 241,854 | 226,120 | 15,734 | 7% |
| Accounts receivable, net of allowance for doubtful accounts | 98,550 | 18,315 | 80,235 | 438% |
| Amounts due from a related party | - | 11,478 | (11,478) | 100% |
| Amounts due to related parties | 79 | 526 | (447) | 84% |
| Total assets | 2,085,012 | 1,974,010 | 111,002 | 6% |
| Total equity attributable to the shareholders of Tarena International, Inc. | 1,598,220 | 1,413,248 | 184,972 | 13% |

*RMB (in thousands)

65.    The statements made by Defendants referenced above in ¶¶62-64 were materially

false and misleading for the same reasons set forth in ¶¶51-61, *supra*.

**Fiscal Year 2017**

66.    On April 30, 2018, Tarena filed its annual report on Form 20-F with the SEC for

the year ending December 31, 2017 (the "2017 20-F"). The 2017 20-F was signed by Defendants Han and Yang. Attached to the 2017 20-F were SOX certifications pursuant to pursuant to Rule 13a-14(a) under the Securities Exchange act as adopted pursuant to SOX Section 302 and pursuant to SOX Section 906 signed by Defendants Han and Yang attesting to accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

67.    As stated above, Defendants admitted in the 2018 20-F that the financial statements for the years ended December 31, 2017 in the 2017 20-F were materially false, misleading and inaccurate and should not be relied on. Tarena restated the financial statements for the year ended December 31, 2017.

68.    The chart below shows the magnitude of the misstatements of certain key financial data in Tarena's financial statements in 2017 20-F. The overstatements for operating income and net income were so huge that the restated numbers for these two line items were actually negative after correction, meaning in 2017 Tarena in fact operated at a loss, not at a profit. Account receivable, net of allowance for doubtful accounts was overstated by over three times. Defendants failed to disclose 98.3% of the related party transactions conducted in 2017. As stated above, a detailed comparison between the previously issued false 2017 financial statements and restated actual 2017 financial statements is attached hereto as Exhibit 4.

|  | 2017 | 2017 | 2017 | 2017 |
|---|---|---|---|---|
|  | Reported (False) | Restated (Actual) | Errors: Amount of Overstated/Understated | Errors: % of Actual |
| Net revenues | 1,973,806 | 1,753,695 | 220,111 | 13% |
| Gross profit | 1,374,607 | 1,160,749 | 213,858 | 18% |
| Operating income/(loss) | 169,159 | (1,272) | 170,431 | N/A due to change from profit to loss |
| Income/(loss) before income taxes | 210,577 | 25,243 | 185,334 | 734% |
| Net income/(loss) | 184,807 | (147) | 184,954 | N/A due to change from profit to loss |
| Accounts receivable, net of allowance for doubtful accounts | 231,282 | 51,643 | 179,639 | 348% |
| Amounts due from a related party | 231 | 13,442 | (13,211) | 98% |
| Amounts due to related parties | - | 216 | (216) | 100% |
| Total assets | 2,282,645 | 2,018,427 | 264,218 | 13% |
| Total equity attributable to the shareholders of Tarena International, Inc. | 1,654,185 | 1,269,509 | 384,676 | 30% |

*RMB (in thousands)

69.    The statements made by Defendants referenced above in ¶¶66-68 were false and misleading for the same reasons set forth in ¶¶51-61, *supra*, and additional reasons set forth, *infra*.

70.    Former Employee 1 ("FE 1") served as a project manager at Changchun Tarena Technology Company Limited ("Tarena Changchun"), a wholly owned subsidiary of Tarena, from October 2017 to March 2021. His job responsibilities included training and marketing of user interface design courses and commercial illustrations in Changchun. He confirmed that the revenue inflation "definitely existed". He said employees inflated revenues by submitting their students'

tuitions to the Company, obtaining the full refunds of such tuitions in one month and returning the tuitions to students with the authorization from the Tarena Changchun's executives.

71.    When asked about related party transactions between Tarena and its employees or employees' relatives, FE 1 stated that at Tarena Changchun it was very common that the actual spending on items such as office rentals and daily expenses differed from reported spending. "Hundreds of thousands of RMB disappeared without any reasons. They were all done by the top-level management." FE 1 further noted that such situations were very common at all Tarena subsidiaries located in the second and third tier cites. Tarena subsidiaries located in the first tier cites might be a little better.  Tarena had a very bad reputation in those cities. People suggested to the government to revoke or blacklist Tarena.

72.    The business records that Tarena Changchun submitted to the State Administration for Market Regulation of China (SAMR)[4] show that there have been only two executives at Tarena Changchun throughout the Class Period and up to the present: Defendant Han and Yinan Qi, Vice President of Tarena. Defendant Han has been the legal representative[5], executive director and general manager of Tarena Changchun throughout the Class Period and up to the present. Yinan Qi has been the supervisor[6] of Tarena Changchun throughout the Class Period and up to the

---

[4] SAMR is primarily responsible for overseeing business organizations, including business registrations, issuing and renewing business licenses, periodic filings and acts as the government supervisor and regulator of business entities in China.

[5] Under Chinese law, every company must have a legal representative. A company's legal representative is the individual who serves as the legal embodiment of the company's interests. A legal representative is the only person with the power to bind the company in all matters, including entering into contracts, and who represents the company in submitting reports to Chinese regulatory bodies. He or she also signs the company's share certificates as well as any corporate bonds issued by the company.

[6] Under Chinese corporate law, a supervisor is a top-level executive, that closely oversees and directs a company's business. Supervisors have rights and powers similar to directors according to Article 51 of the Company Law of China.

present.

73.     Furthermore, the financial statements in 2017 20-F were materially false and inaccurate because—as stated in Note 3(c) "Restatement adjustment to accrue guarantee liabilities for the guarantee provided for students' loan" to the Consolidated Financial Statements in 2018 20-F— "[t]he Company did not recognize guarantee liabilities in accordance with ASC Topic 460 to reflect that it provided guarantee to certain students who borrowed the tuition fee from financial service providers." These undisclosed guarantees also impacted the company's ability to recognize revenues under ASC 605 Revenue Recognition and possibly under ASC 606 Revenue from Contracts with Customers.

74.     Regarding undisclosed material related party transactions, Notes 3(d) and 14 to the Consolidated Financial Statements in 2018 20-F disclosed for the first time that in 2017, Tarena had below significant related party transactions:

(a)     RMB 1,114,000 (US$174,567) franchise and training service income from Bolton School;

(b)     RMB 520,000 (US$81,485) franchise, training and consulting service income from Ningxia Company, a company wholly owned by Han Liping, another sister of Defendant Han.

(c)     RMB 11,064,000 (US$1,733,761) training service expense to Bolton School;

(d)     RMB 325,000 (US$50,928) interest income from loan to Han Lijuan.

75.     Note 14 also disclosed for the first time that Tarena misstated the service fees that Chuanbang, a company wholly owned by Defendant Han, received from Tarena for Chuanbang's collection service on the Company's accounts as the incorrect 2-12%, as opposed to the actual 2%~20% of the amount collected. Such 8% misstatement resulted in approximately RMB 258,400

(US $40,492) discrepancy for 2017.

76.     By way of 2018 20-F, Defendants admitted that they failed to disclose or misstated the above material related party transactions, violating the SEC rules and GAAP set forth in ¶¶ 54-57, *supra*.

77.     Defendants also overstated the student enrollment for adult programs for 2017. The previously issued false 2017 20-F stated that Tarena's adult student enrollments reached 128,776 in 2017. But the 2018 20-F reported that Tarena's total adult student enrollments actually were approximately 118,600 in 2017, representing an 8% overstatement in the previously issued false 2017 20-F.

**Fiscal Year 2018**

78.     On March 12, 2019, Tarena filed a Form 6-K with the SEC announcing the financial results of the fourth quarter and full year ended December 31, 2018 ("2018 Financial Results") signed by Defendant Yang. Defendant Han commented on the financial performance in the 2018 Financial Results. The 2018 Financial Results stated, in relevant parts, that

> Net revenues increased by 13.5% to RMB2,239.3 million in 2018, from RMB1,973.8 million in 2017. RMB175.6 million of net revenue was contributed by our kid education business in 2018. The increase in our adult education programs was primarily due to increased course enrollments and an increase in the standard tuition fees.
> ….
> Cost of revenues increased by 53.5% to RMB919.5 million in 2018, from RMB599.2 million in 2017. The increase in our adult education programs cost of revenues was mainly due to an increase in personnel cost and welfare expenses resulting from growing number of teaching and advisory staff at our learning centers, depreciation expenses and other supplier cost for the growing number of learning centers.
> ….
> Gross profit decreased by 4% to RMB1,319.8 million in 2018, from RMB1,374.6million in 2017. Gross margin was 58.9% in 2018, compared with 69.6% in 2017. The decrease in gross margin was mainly due to an increase in personnel cost and welfare expenses for teaching and advisory staff, as well as the

rapid expansion of our learning centers in kid education programs and joint major programs.

….

Operating loss was RMB599.1 million in 2018, compared to operating income of RMB169.2 million in 2017. Non-GAAP operating loss, which excluded share-based compensation expenses, was RMB474.9 million, compared to non-GAAP operating income of RMB246.6 million in 2017.

….

As a result of the foregoing, net loss was RMB597.8 million in 2018, compared to net income of RMB184.8 million in 2017. Non-GAAP net loss, which excluded share-based compensation expenses, was RMB473.5 million, compared to a non-GAAP net income of RMB262.2 million in 2017.

79.    As stated above, Defendants admitted in the May 17, 2019 6-K and 2018 20-F that the 2018 Financial Results were materially false, misleading and inaccurate and should not be relied on. Tarena restated the financial results for the year ended December 31, 2018 in the 2018 20-F.

80.    The chart below shows the magnitude of the misstatements of certain key financial data in the 2018 Financial Results. Net loss was understated by 72%. Account receivable, net of allowance for doubtful accounts was overstated by 261%. Defendants failed to disclose 98% of the related party transactions conducted in 2018. As stated above, a detailed comparison between the false 2018 Financial Results and restated 2018 financial statements is attached hereto as Exhibit 4.

| | 2018 | 2018 | 2018 | 2018 |
|---|---|---|---|---|
| | Reported (False) | Restated (Actual) | Errors: Amount of Overstated/understated | Errors: % of Actual |
| Net revenues | 2,239,300 | 2,085,371 | 153,929 | 7% |
| Gross profit | 1,319,800 | 1,166,822 | 152,978 | 12% |
| Operating loss | (195,725) | (594,632) | 398,907 | 67% |
| Net income/(loss) | (164,686) | (592,199) | 427,513 | 72% |
| Accounts receivable, net of allowance for doubtful accounts | 143,932 | 39,901 | 104,031 | 261% |
| Total assets | 2,031,293 | 1,878,047 | 153,246 | 8% |
| Amounts due from a related party | - | 16,438 | (16,438) | 100% |
| Amounts due to related parties | 413 | 872 | (459) | 53% |
| Retained earnings | 121,161 | (243,162) | 364,323 | N/A due to change from profit to loss |

*RMB (in thousands)

81.    The statements made by Defendants referenced above in the 2018 Financial Result were false and misleading for the same reasons set forth in ¶¶51-61, *supra*, and additional reasons set forth, *infra*.

82.    Regarding undisclosed material related party transactions, Notes 3(d) and 14 to the Consolidated Financial Statements in 2018 20-F disclosed for the first time that in 2018, Tarena had below significant related party transactions:

(a)    RMB 529,000 (US$82,761) franchise and training service income from Bolton School;

(b)    RMB 493,000 (US$77,129) franchise, training and consulting service income from Ningxia Company.

(c)    RMB 798,000 (US$124,846) training service expense to Bolton School;

(d)    RMB 325,000 (US$50,928) interest income from loan to Han Lijuan.

83.    By way of 2018 20-F, Defendants admitted that they failed to disclose or misstated the above material related party transactions, violating the SEC rules and GAAP set forth in ¶¶ 54-57, *supra*.

## Defendants Lied About their Internal Controls

84.    In addition to disseminating false financial results in SEC filings, Defendants falsely assured investors in 2016 20-F and 2017 20-F that "[Tarena's] management, with the participation of [Defendants Han and Yang], has performed an evaluation of the effectiveness of [the Company's] disclosure controls and procedures within the meaning of Rules 13a-15(e) and 15d-15(e) of the Exchange Act. Based upon this evaluation, [Tarena's] management has concluded that, as of [the end of the period covered by this annual report], its existing disclosure controls and procedures were effective."

85.    Defendants also falsely assured investors in 2016 20-F and 2017 20-F that "[its] management is responsible for establishing and maintaining adequate internal control over financial reporting as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act…. Based on this evaluation, its management concluded that [Tarena's] internal control over financial reporting was effective as of [the end of the period covered by this annual report]."

86.    Separately, Defendants Han and Yang signed sworn SOX Certifications attached to each of 2016 20-F and 2017 20-F representing that:

1.    I have **reviewed** this Annual Report on Form 20-F of Tarena International, Inc.;
2.    **Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made**, in light of the circumstances under which such statements

were made, not misleading with respect to the period covered by this report;

3.      **Based on my knowledge**, the financial statements, and other financial information included in this report, **fairly present** in all material respects the financial condition, results of operations and cash flows of the Company as of, and for, the period presented in this report;

4.      **The Company's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures** (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) **and internal control over financial reportin**g (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the Company and have:

>       a.      **Designed such disclosure controls and procedures**, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the Company, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;
>
>       b.      **Designed such internal control over financial reporting**, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;
>
>       c.      **Evaluated the effectiveness** of the Company's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and
>
>       d.      **Disclosed** in this report any change in the Company's internal control over financial reporting that occurred during the period covered by the annual report that has materially affected, or is reasonably likely to materially affect, the Company's internal control over financial reporting; and

5.      The Company's other certifying officer and I have **disclosed**, based on our most recent evaluation of internal control over financial reporting, to the Company's auditors and the audit committee of the Company's board of directors (or persons performing the equivalent functions)

>       a.      **All significant deficiencies and material weaknesses in the design or operation of internal control** over financial reporting which are reasonably likely to adversely affect the Company's ability to record, process, summarize and report financial information; and
>
>       b.      **Any fraud, whether or not material, that involves management or other employees** who have a significant role in the Company's internal control over financial reporting.

(Emphasis added)

64.     In making its assessment of internal control over financial reporting, Tarena's management used the criteria established by the COSO Framework. The COSO Framework, borrowing from GAAP, defines fair presentation in financial statements as containing the following:

- the accounting principles selected and applied have general acceptance;
- the accounting principles are appropriate in the circumstances;
- the financial statements are informative of matters that may affect their use, understanding and interpretation; and
- the financial statements reflect the underlying transactions and events in a manner that presents the financial position, results of operations and cash flows stated within a range of acceptable limits, that is, limits that are reasonable and practical to attain in financial statements.

65.     After the Class Period, the Tarena management admitted in the 2018 20-F that it failed to live up to the COSO framework and its prior statements (as reflected in the SOX certifications) by identifying the following material weaknesses in Tarena's internal control over financial reporting:

a.     Insufficient demonstration on commitment to integrity and ethical values;
b.     Failure to provide oversight for the system of internal control and lack of direct report from internal auditors to the audit committee;
c.     Lack of sufficient competent internal audit function and requisite skills for the financial reporting under U.S. GAAP;
d.     Failure to align incentives and rewards with the fulfillment of internal control responsibilities in the achievement of objectives
e.     Failure to consider the potential for fraud and non-compliance with laws and regulations in assessing risks to the achievement of objectives;
f.     Lack of sufficient controls designed and implemented for the credit approval, initiation, recording, allocation and cash collection with respect to revenue transactions;
g.     Lack of sufficient controls designed and implemented for authorization, validation and payment with respect to cost or expense transactions;
h.     Failure to evaluate and implement a mix of control activities, considering both manual and automated controls for other routine transactions;
i.     Lack of sufficient segregation of duties and appropriate skill or competence of control owners at certain control activity level;
j.     Failure to develop control activities to restrict technology access right to authorized users commensurate their job responsibilities;

66.     The Tarena management also admitted that as a result of the above material weaknesses and in light of the Restatement and new facts, Tarena's internal control over financial reporting was ineffective as of December 31, 2016 and 2017, which resulted in materially false and misleading financial statements for 2016 and 2017.

67.     Furthermore, during the Class Period, Defendants represented in the 2016 20-F and 2017 20-F that:

> **In the future, however, if we fail to maintain effective internal control** over financial reporting, our management may not be able to conclude that we have effective internal control over financial reporting at a reasonable assurance level. A failure to achieve and maintain effective internal controls over financial reporting **could result in inaccuracies in our financial statements and could also impair our ability to comply with applicable financial reporting requirements and related regulatory filings on a timely basis.** As a result, our business, financial condition, results of operations and prospects, as well as the trading price of our ADSs, may be materially and adversely affected. Moreover, ineffective internal control over financial reporting **could expose us to increased risk of fraud or misuse of corporate assets** and subject us to potential delisting from the stock exchange on which we list, regulatory investigations and civil or criminal sanctions. We may also be required to restate our financial statements from prior periods.

(Emphasis added)

68.     The above statements were materially false and misleading because at the time of the issuance of 2016 20-F and 2017 20-F, the risk of ineffective internal control had been materialized. The ineffective internal control over financial reporting as of December 31, 2016 and 2017 had already resulted in material falsity and inaccuracies in Tarena's financial statements in 2016 20-F and 2017 20-F, respectively. The ineffective internal control also had caused the materialization of the risk of fraud or misuse of corporate assets as reflected in Notes 3 and 14 of 2018 20-F.

## THE TRUTH BEGANS TO EMERGE
## THROUGH PARTIAL CORRECTIVE DISCLOSURES

69.    On April 30, 2019, the Company filed the NT 20-F disclosing the delay in filing the Form 20-F was due, in part, to, a review by its audit committee of certain issues identified in auditing the 2018 financial statements, including issues related to the registrant's revenue recognition.

70.    On this news, the price of Tarena ADSs fell 1.2% to close at $5.02 per ADS on May 1, 2019, damaging investors.

71.    On May 17, 2019, the Company filed the May 17, 2019 6-K announcing the receipt from Nasdaq a non-compliance notification "due to its failure to timely file its … 2018 Form 20-F". The May 17, 2019 6-K further disclosed that the financial results for each quarter and full year of 2018 might need to be restated and should not be relied upon, pending its audit committee's investigation.

72.    On this news, the price of Tarena ADSs fell 4.8% to close at $3.73 on May 20, 2019, further damaging investors.

73.    On July 24, 2019, Tarena filed the July 24, 2019 Form 6-K revealing for the first time that the historical disclosure of its financial results and audited financial statements for 2017 and those for periods prior to 2017, might need to be restated and should not be relied upon, pending the audit committee's investigation.

74.    On this news, the price of Tarena ADSs fell 4.7% to close at $1.63 per ADS on July 25, 2019.

75.    On November 1, 2019, Tarena filed the November 1, 2019 Form 6-K announcing the results of its independent investigation as stated above. Tarena also disclosed that the total amount of revenue misstatement between fiscal years 2014 through 2018 would be "less than

RMB900 million, representing approximately 11.5% of the total revenue previously reported by the Company for such period".

76.    On this news, the price of Tarena ADSs dropped 9.4% to open on November 4, 2019, the next trading day, at $0.76, further damaging investors.

77.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's ADSs, Plaintiff and other Class members have suffered significant losses and damages.

**Applicability of Presumption of Reliance:**
*Affiliated Ute*

78.    The statements made by Tarena and the Individual Defendants during the Class Period were misleading for omitting to disclose the material falsity and inaccuracy of certain financial data for the years ended December 31, 2014 through 2018 and existence of ineffective internal control over financial reporting during the same period which rendered the financial results and financial statements for the years ended December 31, 2014 through 2018misleading.

79.    Neither plaintiffs nor the Class need prove reliance – either individually or as a class – because under the circumstances of this case, which primarily are based on omissions of material fact as described above, positive proof of reliance is not a prerequisite to recovery, pursuant to the ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 1456, 31 L. Ed. 2d 741 (1972). All that is necessary is that the facts that Tarena withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

## Applicability of Presumption of Reliance:
### *Fraud-on-the-Market Doctrine*

80.    Plaintiffs are entitled to rely, and will rely, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

(a)    Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)    the omissions and misrepresentations were material;

(c)    Tarena ADSs are traded in an efficient market;

(d)    the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of Tarena ADSs; and

(e)    Plaintiffs and members of the Class purchased and/or sold Tarena ADSs between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

81.    At all relevant times, the market for Tarena ADSs was an efficient market for the following reasons, among others:

(a)    the securities were traded on Nasdaq;

(b)    on average shares representing more than 2.0% of the securities' float were traded weekly during the Class Period;

(c)    During the Class Period, Tarena was followed by numerous securities analysts employed by major brokerage firms, including Jefferies, Credit Suisse and Nomura, who wrote reports that were widely distributed and publicly available;

(d)    Tarena met the criteria for eligibility to file an S-3 Registration Statement during the Class Period;

(e)    Tarena timely filed all required annual, quarterly and material event reports with the SEC during the Class Period;

(f)    Tarena regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(g)    the price of Tarena ADSs responded quickly to incorporate and reflect new public information concerning Tarena during the Class Period;

(h)    more than ten market makers made a market in Tarena ADSs during the Class Period.

82.    As a result of the foregoing, the market for Tarena promptly digested current information regarding Tarena from all publicly available sources and reflected such information in Tarena's ADS price. Under these circumstances, all purchasers of Tarena ADSs during the Class Period suffered similar injury through their purchase of Tarena ADSs at artificially inflated prices, and a presumption of reliance applies.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

83.    Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased Tarena ADSs during the Class Period and who were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

84.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Tarena ADSs were actively traded on the Nasdaq. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are at least thousands of members in the proposed Class. Members of the Class may be identified from records maintained by Tarena or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

85.    Plaintiffs' claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

86.    Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

87.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Tarena;

(c)    whether the Individual Defendants caused Tarena to issue false and misleading statements during the Class Period;

(d)      to what extent the members of the Class have sustained damages and the proper measure of damages.

88.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

**COUNT I**

**For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder Against All Defendants**

89.      Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

90.      This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

91.       During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

92.      The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)      employed devices, schemes and artifices to defraud;

(b)    made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)    engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiffs and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

93.    The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

94.    Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiffs and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiffs and the Class.

95.     As a result of the foregoing, the market price of the Company's ADSs was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiffs and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

96.     Had Plaintiffs and the other members of the Class been aware that the market price of Tarena ADSs had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company and the Individual Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

97.      As a result of the wrongful conduct alleged herein, Plaintiffs and other members of the Class have suffered damages in an amount to be established at trial.

98.     By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiffs and the other members of the Class for substantial damages which they suffered in connection with their purchases of the Company's securities during the Class Period.

## COUNT II

### Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

99.     Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

100.    During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

101.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

102.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

103.    Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiffs and the other members of the Class complain.

104.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class, prays for judgment and relief as follows:

(a)    declaring this action to be a proper class action, designating certifying Plaintiffs as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating Plaintiffs' counsel as Lead Counsel;

(b)    awarding damages in favor of Plaintiffs and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c)    awarding Plaintiffs and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    awarding Plaintiffs and other members of the Class such other and further relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiffs hereby demand a trial by jury.

Dated: November 1, 2021                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

<u>/s/ Phillip Kim</u>
Phillip Kim, Esq.
(Pronouns: he/him/his)
Jing Chen, Esq.
(Pronouns: she/her/hers)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
        jchen@rosenlegal.com

*Lead Counsel for Lead Plaintiff and the Class*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on November 1, 2021, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/Phillip Kim