UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

YILI QIU, Individually and on Behalf of All   :
Others Similarly Situated,                     :
                                               :
                    Plaintiff,                 :
                                               :
        v.                                     :   21-cv-3502 (PKC) (RML)
                                               :
TARENA INTERNATIONAL, INC.,                    :   **Oral Argument Requested**
SHAOYUN HAN and YUDUO YANG,                    :
                                               :
                    Defendants.                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ........................................................................................................6

      A.     The Parties ...........................................................................................................6

      B.     In 2017, the Company Warns of Weaknesses in Its Internal Controls ...................7

      C.     In Early 2019, the Company Discovers Potential Issues with Its Revenue Recognition, Which the Independent Audit Committee Begins Investigating........7

      D.     In November 2019, the Independent Audit Committee Substantially Completes Its Investigation and Announces the Results ........................................8

      E.     In April 2020, the Company Reports Its 2018 Financial Results and Certain Restated Financial Results for 2014-2017...........................................10

      F.     This Action...........................................................................................................10

ARGUMENT ............................................................................................................................11

I.     PLAINTIFFS FAIL TO ALLEGE A STRONG INFERENCE OF SCIENTER ..............11

      A.     Plaintiffs Fail To Allege Motive and Opportunity To Commit Fraud...................12

      B.     Plaintiffs Fail To Allege Conscious Misbehavior or Recklessness .......................13

            1.     The Restatement alone is insufficient to show scienter .............................14

            2.     Plaintiffs allege no specific facts showing Defendants knew that any information in the restated financial reports was false or misleading at the time the reports were issued .....................16

      C.     The Alleged Facts Support A Far More Compelling Inference of Non-Fraudulent Intent ...................................................19

II.    PLAINTIFFS HAVE NOT ALLEGED THAT CERTAIN ACCOUNTING JUDGMENTS WERE ACTIONABLE ................................................21

III.   PLAINTIFFS CANNOT ASSERT CLAIMS FOR ALLEGED MISSTATEMENTS MADE AFTER THEY PURCHASED THEIR SHARES ..............23

IV.   PLAINTIFFS FAIL TO STATE A CLAIM FOR CONTROL PERSON LIABILITY ....24

## TABLE OF AUTHORITIES

### CASES

*In re Advanced Battery Technlogies, Inc. Securities Litigation*,
No. 11 Civ. 2279(CM), 2012 WL 3758085 (S.D.N.Y. Aug. 29, 2012) ...........................13

*In re AmTrust Financial Services, Inc. Securities Litigation*,
No. 17-CV-1545 (LAK), 2019 WL 4257110 (S.D.N.Y. Sept. 9, 2019)............................22

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)...............................................................................1, 6, 11, 24

*In re Bayou Hedge Fund Litigation*,
534 F. Supp. 2d 405 (S.D.N.Y. 2007)...............................................................................21

*City of Omaha, Nebraska Civilian Employees' Retirement System v. CBS Corp.*,
679 F.3d 64 (2d Cir. 2012)................................................................................................15

*Delfonce v. Eltman Law, P.C.*,
No. 16 Civ. 6627 (AMD) (LB), 2017 WL 639249 (E.D.N.Y. Feb. 15, 2017) ....................6

*Denny v. Barber*,
576 F.2d 465 (2d Cir. 1978)..............................................................................................23

*ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JPMorgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009)..................................................................................2, 12, 13

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011).........................................................................................................23

*In re General Electric Securities Litigation*,
844 F. App'x 385 (2d Cir. 2021) .......................................................................................13

*In re General Electric Securities Litigation*,
No. 19cv1013 (DLC), 2020 WL 2306434 (S.D.N.Y. May 7, 2020) .................................14

*In re Gilat Satellite Networks, Ltd.*,
No. CV-02-1510 (CPS), 2005 WL 2277476 (E.D.N.Y. Sept. 19, 2005)..........................17

*Gillis v. QRX Pharma Ltd.*,
197 F. Supp. 3d 557 (S.D.N.Y. 2016)................................................................................22

*Glaser v. The9, Ltd.*,
772 F. Supp. 2d 573 (S.D.N.Y. 2011)................................................................................19

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014)......................................................................................................5, 23

*In re Hertz Global Holdings, Inc. Securities Litigation*,
    No. 13-7050, 2017 WL 1536223 (D.N.J. Apr. 27, 2017)....................................................22

*Hunt v. Bloom Energy Corp.*,
    No. 19-cv-02935-HSG, 2021 WL 4461171 (N.D. Cal. Sept. 29, 2021)...........................22

*In re Iconix Brand Group, Inc.*,
    No. 15 Civ. 4860 (PGG), 2017 WL 4898228 (S.D.N.Y. Oct. 25, 2017).....3, 14, 15, 16, 21

*International Ass'n of Heat & Frost Insulators & Asbestos Workers Local #6 Pension
    Fund v. International Business Machines Corp.*,
    205 F. Supp. 3d 527 (S.D.N.Y. 2016).................................................................................17

*Jackson v. Abernathy*,
    960 F.3d 94 (2d Cir. 2020).........................................................................................11, 15

*In re Jumei International Holding Ltd. Securities Litigation*,
    No. 14cv9826, 2017 WL 95176 (S.D.N.Y. Jan. 10, 2017)....................................................1

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001)................................................................................................12

*In re Keyspan Corp. Securities Litigation*,
    383 F. Supp. 2d 358 (E.D.N.Y. 2003) ................................................................................17

*Long Miao v. Fanhua, Inc.*,
    442 F. Supp. 3d 774 (S.D.N.Y. 2020)...................................................................................3

*Luxemburg AG v. United Technologies Corp.*,
    336 F. Supp. 3d 196 (S.D.N.Y. 2018)..................................................................................19

*In re Molycorp, Inc. Securities Litigation*,
    No. 13 Civ. 5697(PAC), 2015 WL 1097355 (S.D.N.Y. Mar. 12, 2015) ............................17

*No. 38 International Brotherhood of Electrical Workers Pension Fund v. American
    Express Co.*,
    724 F. Supp. 2d 447 (S.D.N.Y. 2010)..................................................................................16

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000).................................................................................................16

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
    575 U.S. 175 (2015)....................................................................................4, 5, 21, 22

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of,
    Commerce*,
    694 F. Supp. 2d 287 (S.D.N.Y. 2010)............................................................................3, 17

*Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*,
    11 F.4th 90 (2d Cir. 2021) ......................................................................................5, 23, 24

*Retirement Board of Policemen's Annuity & Benefit Fund of Chicago*,
    767 F. App'x 139 (2d Cir. 2019) ........................................................................................13

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004).............................................................................................5, 24

*In re Saxton, Inc. Securities Litigation*,
    156 F. App'x 917 (9th Cir. 2005) ........................................................................................24

*In re Seadrill Ltd. Securities Litigation*,
    No. 14 Civ. 9642 (LGS), 2016 WL 3461311 (S.D.N.Y. June 20, 2016)..........................22

*SEC v. Escala Group, Inc.*,
    No. 09 Civ. 2646(DLC), 2009 WL 2365548 (S.D.N.Y. July 31, 2009)............................13

*Sinay v. CNOOC Ltd.*,
    554 F. App'x 40 (2d Cir. 2014) .......................................................................................3, 16

*Singh v. Cigna Corp.*,
    918 F.3d 57 (2d Cir. 2019)...................................................................................................11

*South Cherry Street, LLC v. Hennessee Group LLC*,
    573 F.3d 98 (2d Cir. 2009)............................................................................................12, 21

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
    33 F. Supp. 3d 401 (S.D.N.Y. 2014)...................................................................................15

*Stratte-McClure v. Morgan Stanley*,
    776 F.3d 94 (2d Cir. 2015)...................................................................................................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)...............................................................................................4, 11, 20

*Thomas v. Shiloh Industries, Inc.*,
    No. 1:15-CV-7449 (KMW), 2018 WL 4500867 (S.D.N.Y. Sept. 19, 2018)...........2, 14, 16

*In re Turquoise Hill Resources Ltd. Securities Litigation*,
    No. 13 Civ. 8846(LGS), 2014 WL 7176187 (S.D.N.Y. Dec. 16, 2014) .....2, 13, 15, 17, 19

*Ulbricht v. Ternium S.A.*,
    No. 18-CV-6801 (PKC) (RLM), 2020 WL 5517313 (E.D.N.Y. Sept. 14, 2020)..............11

*In re Veeco Instruments, Inc. Securities Litigation*,
    235 F.R.D. 220 (S.D.N.Y. 2006) ........................................................................................17

iv

*Waterford Township Police & Fire Retirement System v. Regional Management Corp.*,
No. 14 CV 3876-LTS, 2016 WL 1261135 (S.D.N.Y. Mar. 30, 2016) ...............................18

*In re Weight Watchers International, Inc. Securities Litigation*,
No. 14-cv-1997 (LAK), 2016 WL 2757760 (S.D.N.Y. May 11, 2016) ........................4, 21

*Woolgar v. Kingstone Cos.,*
477 F. Supp. 3d 193 (S.D.N.Y. 2020)..............................................................................18

## STATUTES AND REGULATIONS

15 U.S.C. § 78u-4(b)(2) .........................................................................................................1

15 U.S.C. § 78u-4(b)(2)(A).................................................................................................1, 11

15 U.S.C. §§ 78j...................................................................................................................1

15 U.S.C. §§ 78t...................................................................................................................1

17 C.F.R. § 240.10b-5..........................................................................................................1

Defendant Tarena International, Inc. ("Tarena" or the "Company") respectfully submits this Memorandum of Law in support of its Motion to Dismiss the Amended Class Action Complaint (ECF No. 17) (the "Complaint" or "AC") pursuant to Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and Section 101(b)(2) of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b)(2) (the "PSLRA").[1]

## PRELIMINARY STATEMENT

Tarena is a professional education company in China that complied with its regulatory obligations by restating certain years' financial statements when an extensive internal investigation uncovered inaccuracies in previously issued financial statements.  Alleging nothing more than fraud-by-hindsight, Plaintiffs imply that the Individual Defendants *must have known* that the information in the financial statements was incorrect at the time the statements were issued and thereby violated Securities Exchange Act of 1934, 15 U.S.C. §§ 78j, 78t, and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.  Plaintiffs' allegations fail as a matter of law for several separate and independent reasons.

*First*, Plaintiffs fail to plead a strong inference of scienter.  Under the PSLRA, Plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2)(A).  Plaintiffs must present particularized factual allegations showing either (1) "motive and opportunity to commit . . . fraud," or (2) "strong circumstantial evidence of conscious misbehavior or recklessness."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).  Plaintiffs fail to allege either.

---

[1] Defendants Shaoyun Han and Yuduo Yang (collectively, the "Individual Defendants") have not been served. Nevertheless, the Court still can dismiss the Complaint in its entirety for failure to state a claim. *See, e.g.*, *In re Jumei Int'l Holding Ltd. Sec. Litig.*, No. 14cv9826, 2017 WL 95176, at *1 n.1, *6 (S.D.N.Y. Jan. 10, 2017).

1

Plaintiffs do not even attempt to argue that the Individual Defendants had any cognizable motive—i.e., that they received any personal concrete benefit—for the alleged misstatements regarding the Company's revenue, expenses and internal controls.  Although Plaintiffs assert that Defendant Han benefited from certain related party transactions that were not fully disclosed, they do not allege that he benefited in any way from the challenged statements or the alleged concealment of those transactions.  Plaintiffs also ignore the fact that the restatement of the related party transactions resulted in a *net increase to amounts owed to Tarena* from related parties—i.e., the restatement regarding related party transactions was in Tarena's favor.  This undermines any inference of scienter.

Since Plaintiffs fail to allege motive and opportunity, their allegations of conscious misbehavior or recklessness "must be correspondingly greater."  *ECA & Loc. 134 IBEW Joint Pension Tr. of Chi. v. JPMorgan Chase Co*., 553 F.3d 187, 199 (2d Cir. 2009) (citation omitted). However, Plaintiffs fail to allege facts demonstrating conscious misbehavior or recklessness by any Defendant.  It is well settled that a restatement by itself is insufficient to show scienter.  *See In re Turquoise Hill Res. Ltd. Sec. Litig.*, No. 13 Civ. 8846 (LGS), 2014 WL 7176187, at *7 (S.D.N.Y. Dec. 16, 2014) ("A restatement is simply a correction . . . . [E]ven a large error, does not suggest knowledge or intent to misstate . . . .").  This is true even when wrongdoing underlies the restatement.  *See, e.g.*, *Thomas v. Shiloh Indus., Inc.*, No. 15-CV-7449 (KMW), 2018 WL 4500867, at *6 (S.D.N.Y. Sept. 19, 2018) (dismissing securities claims based on restatement caused by employee's wrongdoing because his superiors were "at worst" negligent in not detecting the fraud).  Plaintiffs here allege no particularized facts—such as contemporaneous statements, documents, or witnesses—showing that Defendants knew that any information in the challenged financial statements was false or misleading at the time the statements were issued.

Plaintiffs' scienter allegations are thus nothing more than conclusory accusations that Defendants "must have known," which are insufficient as a matter of law.  *See, e.g.*, *Sinay v. CNOOC Ltd.*, 554 F. App'x 40, 42 (2d Cir. 2014) ("The District Court correctly concluded that [plaintiffs] *had not* sufficiently pleaded scienter based on what [defendant] 'must have known.'").  Moreover, "[c]ourts in this Circuit have long held that accusations founded on nothing more than a defendant's corporate position are entitled to no weight." *Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial Bank of Com.*, 694 F. Supp. 2d 287, 300 (S.D.N.Y. 2010).

Plaintiffs' vague allegations regarding a single confidential witness ("CW") add nothing. The CW, allegedly a project manager at a Tarena subsidiary, does not claim to have met the Individual Defendants, does not reference specific acts or perpetrators and is not alleged to be in a position that would make him or her privy to the activities of "top-level management."  (*See* AC pp. 22–23 ¶¶ 70–71); *see also Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 798 (S.D.N.Y. 2020) (plaintiffs must adequately allege either (1) independent facts to corroborate witness's statements or (2) facts showing the witness's position in the company "indicate a high likelihood" that he or she actually knew the information attributed to them).

Far from supporting a strong inference of scienter, the far more compelling inference is that the Individual Defendants were not aware of the alleged financial misstatements,, and upon learning of the potential issues, immediately took steps to investigate, correct any errors and terminate the employment of those responsible.  Indeed, Plaintiffs admit that when the Company discovered the financial misstatements, the Company formed an independent audit committee, conducted an extensive investigation and complied with SEC requirements by filing the required disclosures.  (AC pp. 10–11 ¶¶ 36, 38, 39); *see In re Iconix Brand Grp., Inc.*, No. 15 Civ. 4860 (PGG), 2017 WL 4898228, at *19 (S.D.N.Y. Oct. 25, 2017) (no scienter where "the Company

3

took steps to correct the errors"); *see also* Transcript at 38-40, *Kinzler v. First NBC Bank Holding Co.*, No. 16-cv-4243 (E.D. La. Apr. 27, 2017), ECF 114 (no scienter where plaintiffs only alleged existence of restatement with conclusory claims of knowledge of inaccuracies).  In fact, the Company affirmatively warned investors in its 2017 SEC Form 20-F the year before that it had identified a "material weakness" in its internal controls that could "result in a material misstatement" of the Company's financials, which it was taking steps to remedy.  (Ex. A, 2017 SEC Form 20-F at 125–26 (Apr. 30, 2018).)  It would make no sense for Defendants to engage in a fraudulent scheme to secretly misstate the Company's financials and at the same time proactively warn the market of potential financial misstatements.  Far from supporting an inference of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent," *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 314 (2007), these undisputed facts suggest that the Defendants believed the financial statements were accurate when issued, and corrected them as soon as they learned otherwise, all the while keeping the market apprised of their efforts.

*Second*, Plaintiffs fail to allege misrepresentation. Where, as here, allegedly false and misleading statements are statements of opinion or belief, a plaintiff must also show that "the speaker did not hold the belief she professed" or "the supporting fact she supplied [was] untrue." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 185–86 (2015).  Many of the alleged accounting misstatements were matters of opinion, which require more than allegations that the opinions were incorrect.  *In re Weight Watchers Int'l, Inc. Sec. Litig.*, No. 14-cv-1997 (LAK), 2016 WL 2757760, at *5 n.43 (S.D.N.Y. May 11, 2016).  The Company's restated financials involved complex and subjective accounting judgments, and Plaintiffs do not plead any particularized facts to show Defendants did not "hold the belief" that

4

the underlying financial data was correct when it was first issued. *Omnicare*, 575 U.S. at 185–86.

*Third*, Plaintiffs cannot assert claims on alleged misstatements made *after* they purchased their shares. *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 104-05 (2d Cir. 2021). Under the fraud-on-the-market doctrine, which Plaintiffs invoke, the required element of reliance can be shown only if the plaintiff traded in the Company's stock between the time of the alleged false statement and the time when the truth allegedly was revealed. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 268 (2014). Having purchased their shares in 2017, (ECF No. 6-2, De Schutter Certification; AC, Ex. 1, Clauter Certification), Plaintiffs De Schutter and Clauter both lack standing as to alleged misstatements in the 2017 Form 20-F, which was filed on April 30, 2018 (AC pp. 20–21 ¶ 66). And because Named Plaintiff Cynthia Lewis purchased her shares in 2018, (AC, Ex. 2, Lewis Certification), all three plaintiffs lack standing as to alleged misstatements in the 2018 Form 6-K, which was filed on March 12, 2019. (AC pp. 25–26 ¶ 78.)

*Finally*, because Plaintiffs fail to plead a primary violation of Section 10(b), or that the Individual Defendants culpably participated in the alleged conduct at issue, their Section 20(a) claim for control person liability must be dismissed as well. *See Rombach v. Chang*, 355 F.3d 164, 177-78 (2d Cir. 2004).

5

## STATEMENT OF FACTS[2]

### A.    The Parties

Plaintiff Walter De Schutter, an individual, was appointed Lead Plaintiff by the Court and purports to bring this suit on behalf of a class consisting of all persons who purchased Tarena American Depositary Shares ("ADSs") between August 16, 2016 and November 1, 2019 (the "Class Period"). (AC p. 2 ¶ 1.) Plaintiff De Schutter is joined by two other individuals purporting to purchase Tarena ADS during the Class Period, Named Plaintiffs Steven Clauter and Cynthia Lewis (together with De Schutter, "Plaintiffs"). (AC p. 5 ¶¶ 18–19.)

Defendant Tarena was founded in 2002 and provides professional educational services in China with an emphasis on information technology training. (AC pp. 7–8 ¶ 28.) The Company primarily offers adult post-secondary vocational and continuing education, but in 2015 it expanded its business to offer after-school classes to children ages six to eighteen. (*Id.*) Tarena has been listed on Nasdaq since 2014 under the symbol "TEDU." (AC pp. 6 ¶ 20.)

Defendant Shaoyun Han founded Tarena and served as Chief Executive Officer and Chairman of the Board from its inception through the Class Period. (AC p. 6 ¶ 21.) Defendant Yuduo Yang served as Chief Financial Officer through the Class Period. (AC p. 6 ¶ 22.)

---

[2]    The facts set forth here are drawn from the well pled allegations in the AC and "documents attached as exhibits or incorporated into the complaint by reference, matters of which judicial notice may be taken, [and] documents integral to the complaint." *Delfonce v. Eltman Law, P.C.*, No. 16 Civ. 6627, 2017 WL 639249, at *2 (E.D.N.Y. Feb. 15, 2017), *aff'd*, 712 F. App'x 17 (2d Cir. 2017). The Court may also consider "legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI*, 493 F.3d at 98. Exhibits cited herein are attached to the accompanying Declaration of Robert A. Fumerton, dated January 18, 2022. The AC is appended as Exhibit B to the Declaration.

**B.**      **In 2017, the Company Warns of Weaknesses in Its Internal Controls**

On April 30, 2018, Tarena filed its annual financial statement on Form 20-F for the year ending December 31, 2017 (the "2017 SEC Form 20-F").  (AC p. 20–21 ¶ 66.)  In the filing, Tarena disclosed that its "existing disclosure controls and procedures were ineffective because of [a] material weakness" and that it had undertaken "remedial steps to address the material weakness." (Ex. A, 2017 SEC Form 20-F at 125.)  The "material weakness" identified by Tarena management included "insufficient review in areas subject to significant estimates and judgments." (*Id.*)  The Company warned investors that this material weakness could "result in a material misstatement to the Company's quarterly or annual consolidated financial statements that would not be prevented or detected." (*Id.*)  Further, the Company warned:

> If we fail to implement an effective system of internal controls, we may be unable to accurately report our results of operations or prevent fraud or fail to meet our reporting obligations, and investor confidence and the market price of our ADSs may be materially and adversely affected.

(*Id.*)

**C.**      **In Early 2019, the Company Discovers Potential Issues with Its Revenue Recognition, Which the Independent Audit Committee Begins Investigating**

On April 30, 2019, the Company disclosed that its annual report on Form 20-F for the year ending December 31, 2018 would be delayed.  (AC p. 10 ¶ 36; Ex. C, Form NT 20-F (Apr. 30, 2019.)  The Company announced that an "the independent audit committee of [its] board of directors is conducting a review of certain issues identified during the course of the audit of financial statements for the year ended December 31, 2018, including issues related to revenue recognition." (*Id.* at 2.)

On May 17, 2019, the Company provided an update, disclosing that it "expects that its historical disclosure of unaudited financial results for each quarter and full year of the fiscal year ended December 31, 2018 may need to be restated and should not be relied upon, pending the

7

completion of its audited financial statements and the review conducted by its independent audit committee."  (AC p. 10 ¶ 37.)

On July 24, 2019, the Company provided an update on the audit committee's investigation, indicating that based on the investigation, its "financial results and audited financial statements for its fiscal year ended December 31, 2017, as well as the financial results and audited financial statements for periods prior to 2017, may need to be restated and should not be relied upon, pending the completion of the Independent Audit Committee Review."  (AC p. 11 ¶ 38; Ex. D, Form 6-K at 3 (July 24, 2019).)  The Company reiterated that the investigation was still "ongoing."  (*Id.*)

On September 9, 2019, the Company provided a further update.  (Ex. E, Form 6-K (Sept. 9, 2019).)  The Company reported that its independent auditor had notified it that "none of [the] previously issued auditor's reports . . . should be relied upon."  (*Id.* at 3.)

**D.      In November 2019, the Independent Audit Committee Substantially Completes Its Investigation and Announces the Results**

On November 1, 2019, the Company announced that the independent audit committee had substantially concluded its investigation, and disclosed its results.  (AC p. 11 ¶ 39; Ex. F, Form 6-K (Nov. 1, 2019).)  The disclosure noted that the committee had engaged independent legal counsel and an independent forensic accounting expert, and "entailed review of documents and data from multiple Company employees, including review of approximately 260,000 emails and other electronic files and communications, 58 interviews of Company employees and relevant third parties, and analysis and testing of the Company's financial data, books and records."  (*Id.* at 1)  The release also noted that "the Company provided substantial cooperation with the Investigation."  (*Id.*)

8

The committee found revenue inaccuracies, expense inaccuracies and irregularities, previously undisclosed related party transactions, and interference with the external audit process.  (AC pp. 11–12 ¶ 40; Ex. F.)  Specifically, the committee reported:

*Revenue Inaccuracies*: The Audit Committee's independent review found that the Company's reported revenues for fiscal years 2014, 2015, 2016 and 2017 and previously announced unaudited revenues for each quarter of and full year 2018 were not accurate. Factors contributing to the misstatement of revenue included intentional revenue inflation, inaccurate student account, status and loan data recorded in the Company's customer relationship management (CRM) system, premature recognition of revenue from certain students, and inaccurate accounting treatment of tuition refunds.

*Expense Inaccuracies and Irregularities*: The Audit Committee discovered instances of improper charges against accounts receivable and/or bad debts through payment to third parties, as well as guarantee payments to certain financial institutions or peer-to-peer financial tools for certain overdue student loans. The Audit Committee also identified certain expenses that were not supported by appropriate documentation and indications that funds or other benefits were provided to third parties contrary to Company policy.

*Conflicts of Interest and Related Party Transactions*: The Audit Committee found evidence that the Company engaged in business transactions with organizations owned, invested in or controlled by Company employees or their family members which in some instances were not properly disclosed by the Company.

*Interference With External Audit Process*: It was found that certain employees interfered with the external audit of the Company's financial statements for certain periods.

(AC pp. 11–12 ¶ 40.)

The Company also disclosed significant remedial measures it had already taken.  (Ex. F at 2.)  These measures include "(i) adjusting Company internal audit reporting structures to provide enhanced oversight over the Company's financial reporting function, (ii) suspending payments to third party vendors implicated in the Investigation findings, (iii) providing training to Company employees on issues implicated in the Investigation findings, and (iv) placing certain employees found to have engaged in misconduct on administrative leave pending further

9

deliberation by the board of directors regarding appropriate employee discipline and remedial measures." (*Id.*)

**E.     In April 2020, the Company Reports Its 2018 Financial Results and Certain Restated Financial Results for 2014-2017**

On April 24, 2020, the Company issued its financial results for 2018 and restated previously issued financial statements for 2014–2017 and (the "Restatement"). (AC p. 12 ¶ 41; Ex. G, Restatement (Apr. 24, 2020).) The errors had resulted in approximately a 10% inflation of net revenue, a 14% inflation of gross profit and discrepancies in several other metrics for the years 2014 through 2018. (AC p. 14 ¶ 45.) Additionally, the Restatement disclosed that related party transactions had been underreported by approximately RMB 16.24 million. *See* Ex. G, Restatement at F-50 (restatement of 2016–2018 related party transactions); Ex. H, Form 20-F at F-34 (Apr. 25, 2017) (previously stated 2016 related party transactions); Ex. A, Form 20-F at F-34 (previously stated 2017 related party transactions); Ex. I, 2018 Form 6-K Financial Results at 10 (Mar. 12, 2019) (previously stated 2018 related party transactions).

**F.     This Action**

On June 22, 2021, a shareholder commenced the present class action against the Company and the Individual Defendants asserting claims under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder. (ECF No. 1.) Plaintiffs filed the Amended Complaint on November 1, 2021. (ECF No. 17.)

10

## ARGUMENT

To state a claim under Section 10(b) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder, Plaintiffs must allege: "(1) a material misrepresentation (or omission); (2) scienter, *i.e.*, a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation." *Ulbricht v. Ternium S.A.*, No. 18-CV-6801 (PKC) (RLM), 2020 WL 5517313, at *4 (E.D.N.Y. Sept. 14, 2020) (Chen, J.) (quoting *Singh v. Cigna Corp.*, 918 F.3d 57, 62 (2d Cir. 2019)).  Under the heightened pleading standards of the PSLRA and Rule 9(b), Plaintiffs must state with particularity the circumstances constituting the alleged fraud.  *Id.*  As demonstrated below, the AC should be dismissed because Plaintiffs fail to meet these pleading requirements.

## I.   PLAINTIFFS FAIL TO ALLEGE A STRONG INFERENCE OF SCIENTER

The PSLRA requires Plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2)(A).  This strong inference of scienter must be more than "merely plausible or reasonable," it must be "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314.  Where, as here, scienter is to be imputed to a defendant corporation, plaintiffs must plead facts that "give rise to 'a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter.'" *Jackson v. Abernathy*, 960 F.3d 94, 98 (2d Cir. 2020) (citation omitted).  Scienter may be pled through particularized factual allegations showing (1) "both motive and opportunity" to commit fraud, or (2) "strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI*, 493 F.3d at 99.  Here, Plaintiffs allege neither.

11

### A.      Plaintiffs Fail To Allege Motive and Opportunity To Commit Fraud

"In order to raise a strong inference of scienter through 'motive and opportunity' to defraud, Plaintiffs must allege that [defendant] or its officers 'benefitted in some concrete and personal way from the purported fraud.'" *ECA*, 553 F.3d at 198 (citation omitted).  Plaintiffs do not even attempt to allege that either Individual Defendant benefited in any "concrete and personal way" from the misstated financial metrics at issue. *See id.*  Nor do they claim that Defendants benefited in any concrete personal way from the incomplete disclosure of related party transactions.

Plaintiffs' vague contention that "Defendant Han[] and his family members directly benefitted from the undisclosed related party transactions," (Plaintiffs' Pre-Motion Letter (ECF No. 19) at 2), misses the point.  *See Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) (the benefit giving rise to motive must be "specific," not "generalized to all corporate directors or beneficial to all shareholders").  Plaintiffs do not allege Defendant Han benefitted in any way from the alleged violation that Plaintiffs assert, *i.e.*, the *failure to disclose* the related party transactions.  *See S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 108 (2d Cir. 2009) ("Motive . . . [can] be shown by pointing to the concrete benefits that could be realized from one or more of the allegedly misleading statements or nondisclosures . . . .").  Nor do they allege any facts suggesting that such an omission was intended to defraud investors as opposed to being an erroneous but good faith application of the relevant accounting and disclosure rules.  In fact, the restatement of related party transactions resulted in a net benefit to the Company.  The net impact of the restatement was an increase in the amounts owed *to Tarena from related parties*.

(*See* Ex. G, Restatement at F-35.[3])  This belies any inference of scienter based on the related party transactions.[4]

## B.      Plaintiffs Fail To Allege Conscious Misbehavior or Recklessness

Having failed to allege motive and opportunity, Plaintiffs' allegations of conscious misbehavior or recklessness must be "correspondingly greater."  *ECA*, 553 F.3d at 199.  To allege conscious misbehavior or recklessness, Plaintiffs "must show 'a state of mind approximating actual intent, and not merely a heightened form of negligence.'"  *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 106 (2d Cir. 2015) (citation omitted).  Specifically, particularized facts supporting a strong inference of recklessness "must approximate 'actual intent'" and must show a "sufficiently extreme departure from the standards of ordinary care."  *In re Gen. Elec. Sec. Litig.*, 844 F. App'x 385, 388–89 (2d Cir. 2021) (summary order) (citations omitted).

The Second Circuit has "said repeatedly" that plaintiffs "must do more than allege 'fraud by hindsight,'" as Plaintiffs attempt to do here.  *Ret. Bd. of Policemen's Annuity & Benefit Fund of Chi.*, 767 F. App'x 139, 141 (2d Cir. 2019) (summary order) (citation omitted).  Corporate officers do not need to be "clairvoyant" and are "only responsible for revealing those material

---

[3]   As the Company disclosed, "[t]he restatement resulted in an increase of RMB11,478 in current and non-current amount due from related parties, and RMB447 in amount due to related parties as of December 31, 2016, and an increase of RMB13,211 in current and non-current amount due from related parties, and RMB216 in amount due to related parties as of December 31, 2017."  (Ex. G, Restatement at F-35.)  In other words, the restatement resulted in a net increase of RMB11,031 in amounts due from related parties as of December 31, 2016 (RMB11,478 *minus* RMB447), and a net increase of RMB12,995 in amounts due from related parties as of December 31, 2017 (RMB13,211 *minus* RMB216).

[4]   In their response to Defendant's pre-motion letter, Plaintiffs cite to two S.D.N.Y. cases regarding related party transactions, but both cases involve allegations that defendants benefited from *concealing* their related party transactions, which is not alleged here.  *In re Advanced Battery Techs., Inc. Sec. Litig.*, No. 11 Civ 2279 (CM), 2012 WL 3758085, at *3–5 (S.D.N.Y. Aug. 29, 2012) (defendants allegedly benefited from concealing related party transactions that allowed the acquisition of related companies at grossly inflated prices); *SEC v. Escala Grp., Inc.*, No. 09 Civ 2646 (DLC), 2009 WL 2365548, at *2–3 (S.D.N.Y. July 31, 2009) (SEC enforcement action where defendants allegedly benefited from concealing related party transaction that allowed collectibles dealers to secretly control a book of postage stamp values in order to defraud purchasers).

facts reasonably available to them." *In re Gen. Elec. Sec. Litig.*, No. 19cv1013 (DLC), 2020 WL 2306434, at *9 (S.D.N.Y. May 7, 2020) (citation omitted), *aff'd* 844 F. App'x 385 (2d Cir. 2021). Here, Plaintiffs fail to allege any conscious misbehavior or recklessness by any Defendant. The fact of a restatement alone is insufficient to allege scienter, and Plaintiffs do not allege any facts that show Defendants knew of or recklessly disregarded inaccuracies in the subject financial statements when they were issued.

### 1. The Restatement alone is insufficient to show scienter

It is well settled that a restatement by itself is insufficient to show scienter. *See, e.g.*, *In re Iconix Brand Grp., Inc.*, No. 15 Civ. 4860 (PGG), 2017 WL 4898228, at *18 (S.D.N.Y. Oct. 25, 2017) (scienter not alleged, despite restatement, because "[t]he Amended Complaint does not plead particularized facts showing that Defendants actually knew that they were engaged in improper accounting practices"); *Turquoise Hill*, 2014 WL 7176187, at *7 ("A restatement is simply a correction, after the fact, of an accounting or other error in financial results. The fact of an error, even a large error, does not suggest knowledge or intent to misstate when the financial results were originally published . . . ."); *see also* Transcript of Decision at *39:18–24, 40:20–25, *Kinzler v. First NBC Bank Holding Co.*, No. 16-cv-4243, (E.D. La. Apr. 27, 2017) (ECF 114) (no scienter where plaintiffs only alleged existence of restatement with conclusory claims of knowledge).

Even a restatement caused by underlying wrongdoing is insufficient to allege scienter absent particularized allegations that *defendants* specifically acted with the requisite state of mind. *See, e.g.*, *Thomas v. Shiloh Indus., Inc.*, No. 1:15-CV-7449 (KMW), 2018 WL 4500867, at *6 (S.D.N.Y. Sept. 19, 2018) (dismissing securities claims based on restatement caused by employee's wrongdoing because his superiors were "at worst" negligent in not detecting the fraud); *Turquoise Hill*, 2014 WL 7176187, at *4 (dismissing securities claims in spite of

14

allegations of intentionally overstated and prematurely reported revenue and "deficient internal accounting controls"). Similarly, without more, the magnitude of a restatement is not enough to allege scienter. *See Iconix*, 2017 WL 4898228, at *17 ("'[I]t is clear that the size of the [alleged] fraud alone does not create an inference of scienter,' and the magnitude of the restatement resulting from the accounting errors 'must be presented in tandem with other circumstantial evidence to suggest scienter.'" (alteration in original) (citations omitted)); *Turquoise Hill*, 2014 WL 7176187, at *7 (same). Similarly, and contrary to Plaintiffs' insinuation (*see, e.g.*, AC pp. 13–14 ¶ 44), failure to follow GAAP "standing alone, cannot pass muster"; Plaintiffs must allege particularized "red flags" that Defendants ignored. *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 428 (S.D.N.Y. 2014) (collecting cases); *see City of Omaha, Neb. Civilian Emps. Ret. Sys. v. CBS Corp.*, 679 F.3d 64, 69 (2d Cir. 2012) ("[W]e conclude that plaintiffs here have at most pleaded defendants' failure to comply with [GAAP], rather than their commission of securities fraud . . . .").

Although the audit committee concluded, among other things, there had been "intentional revenue inflation," and "that certain employees interfered with the external audit of the Company's financial statements for certain periods," no facts are alleged showing that the Individual Defendants were responsible for or aware of that misconduct. (*See* Ex. F.) To the contrary, the audit committee emphasized that "the Company provided substantial cooperation with the Investigation." (*Id.*) Plaintiffs do not allege any basis—much less the requisite particularized facts—to infer otherwise. It is not enough for Plaintiffs to allege that *someone* at the Company acted with scienter. They must allege that the Individual Defendants or someone whose intent can be imputed to the Company did so. *See Jackson*, 960 F.3d at 98 (plaintiffs must plead facts that "give rise to 'a strong inference that someone whose intent could be

15

imputed to the corporation acted with the requisite scienter'" (citation omitted)); *Shiloh Indus.*, 2018 WL 4500867, at \*5 (employee must be "sufficiently senior for his or her scienter to be imputed to the corporation").

### 2. Plaintiffs allege no specific facts showing Defendants knew that any information in the restated financial reports was false or misleading at the time the reports were issued

"To establish reckless disregard, Plaintiff[s] must 'specifically identify the reports or statements' that contradict the Individual Defendants' alleged misrepresentations." *Loc. No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Express Co.*, 724 F. Supp. 2d 447, 460 (S.D.N.Y. 2010) (citation omitted), *aff'd*, 430 F. App'x 63 (2d Cir. 2011). Plaintiffs here fail to do so. They cite no internal reports, documents, confidential witnesses, or any other particularized evidence showing that the Individual Defendants (or any other senior executive) knew Tarena's financial statements were false when they were issued. *See Shiloh Indus.*, 2018 WL 4500867, at \*7 (dismissing case where plaintiffs did not identify reports or statements to which manager would have had access that would alert him to employee's fraud); *Iconix*, 2017 WL 4898228, at \*18 (dismissing case where plaintiffs cited no specific documents that "shed light on" defendant's knowledge or conduct regarding company's accounting practices). The majority of Plaintiffs' scienter allegations amount to conclusory statements or arguments that Defendants "must have known". (*See, e.g.*, AC p. 38 ¶ 93.) This is plainly insufficient to allege scienter. *See, e.g.*, *Sinay v. CNOOC Ltd.*, 554 F. App'x 40, 42 (2d Cir. 2014) (summary order) ("The District Court correctly concluded that [plaintiff] *had not* sufficiently pleaded scienter based on what [defendant] 'must have known.'").[5]

---

[5] The cases in Plaintiffs' pre-motion letter are inapposite because all three had significant allegations of scienter far beyond what Plaintiffs allege here. (*See* Plaintiffs' Pre-Motion Letter at 2–3 (ECF No. 19).) *Novak v. Kasaks*, 216 F.3d 311–312 (2d Cir. 2000) (evidence of scienter from several confidential witnesses with specific
*(cont'd)*

16

Plaintiffs cannot simply rely on the Individual Defendants' positions in the Company to infer that they had access to information contrary to the subject financial statements. (*See, e.g.*, AC p. 40 ¶ 100 ("Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.")). "Courts in this Circuit have long held that accusations founded on nothing more than a defendant's corporate position are entitled to no weight." *Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial Bank of Com.*, 694 F. Supp. 2d 287, 300 (S.D.N.Y. 2010); *In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 388 (E.D.N.Y. 2003) (allegations that defendants "because of their high positions" as CEO and CFO "'undoubtedly' knew of the problems" at the company are "precisely the sort of vague conclusions that courts have rejected").

The Individual Defendants' SOX certifications (*see* AC p. 28 ¶ 86) also provide no support for an inference of scienter. *See Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers Loc. #6 Pension Fund v. Int'l Bus. Machs. Corp.*, 205 F. Supp. 3d 527, 536 (S.D.N.Y. 2016) ("[A]llowing [SOX] certifications to create an inference of scienter in every case where there was an accounting error or auditing mistake made by a publicly traded company would eviscerate the pleading requirements for scienter set forth in the PSLRA." (citation omitted)); *In re Molycorp, Inc. Sec. Litig.*, No. 13, Civ. 5697 (PAC), 2015 WL 1097355, at *12 (S.D.N.Y. Mar. 12, 2015) (SOX certifications did not support scienter without "allegations[] directly tying defendants to knowledge of the falsity of financial statements"); *Turquoise Hill*, 2014 WL

---

knowledge of company policy and related discussions not to mark down out-of-date inventory, which inflated financial results); *In re Veeco Instruments, Inc. Sec. Litig*., 235 F.R.D. 220, 231–32 (S.D.N.Y. 2006) (evidence of scienter from three confidential witnesses, including one who participated in meetings and private conversations with individual defendant); *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS), 2005 WL 2277476, *21 (E.D.N.Y. Sept. 19, 2005) (evidence of scienter from three confidential witnesses, one of whom informed company's CFO regarding GAAP violations, and identification of specific transactions "without economic substance").

7176187, at *7 (finding plaintiff's reliance on allegedly false SOX certifications "unavailing" because plaintiff had not offered "any particularized allegation of an inference that . . . the related CEO and CFO certifications pursuant to the Sarbanes–Oxley Act were not honestly and reasonably believed to be true when made" (alteration in original) (citation omitted)).

Similarly, to the extent Plaintiffs challenge statements about the adequacy of the Company's internal controls (*see, e.g.*, AC p. 31 ¶ 68), such claims fail because Plaintiffs allege no particularized facts showing Defendants were aware of any undisclosed material weaknesses at the time. *See Woolgar v. Kingstone Cos.*, 477 F. Supp. 3d 193, 230 (S.D.N.Y. 2020) (granting motion to dismiss where plaintiffs did not show defendants knew about the material weakness in internal controls prior to disclosure or anytime during the class period); *Waterford Twp. Police & Fire Ret. Sys. v. Reg'l Mgmt. Corp.*, No. 14 CV 3876-LTS, 2016 WL 1261135, at *11 (S.D.N.Y. Mar. 30, 2016) (same). And in any event, it is undisputed that the Company frankly disclosed internal control weaknesses just the year before, thereby putting the market on notice of these types of risks and undermining any inference that Defendants were attempting to deceive investors.

Plaintiffs' lone confidential witness ("CW") adds nothing to their scienter allegations. The CW is identified as a "project manager" whose responsibilities included training and marketing at a subsidiary of Tarena from October 2017 to March 2021. (AC p. 22 ¶ 70.) According to the CW, revenue inflation by employees with authorization from the subsidiary's executives "definitely existed," "top-level management" caused "[h]undreds of thousands of RMB [to] disappear[]" from the subsidiary, and Tarena had a "bad reputation" in certain cities. (*Id.* at p. 22–23 ¶¶ 70-71.) Even taking these vague and conclusory assertions at face value, they fail to allege particularized facts showing that the Individual Defendants specifically were

18

involved in, aware of or recklessly disregarded the alleged fraud.  The CW does not even claim to have ever met the Individual Defendants, nor to have any knowledge of what information the Individual Defendants did or did not received have access to.  *See Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 594 (S.D.N.Y. 2011) (confidential witnesses' allegations did not give rise to a strong inference of scienter as "plaintiffs [made] no allegation that those sources ever had any contact with anyone at [the defendant company], much less with the Individual Defendants"); *Frankfurt-Trust Invest. Luxemburg AG v. United Techs. Corp.*, 336 F. Supp. 3d 196, 224 (S.D.N.Y. 2018) (confidential witnesses' "limited vantage point and lack of interaction with the Executive Defendants preclude those allegations from clearing the scienter hurdle"), *aff'd sub nom. Kapitalforeningen Lægernes Invest v. United Techs. Corp.*, 779 F. App'x 69 (2d Cir. 2019); *Turquoise Hill*, 2014 WL 7176187, at *7 (disregarding confidential witness who was not alleged to have any contact with individual defendants and whose allegations were not "tied to, or [had] any bearing on, any individual Defendant or his or her state of mind").

## C.    The Alleged Facts Support A Far More Compelling Inference of Non-Fraudulent Intent

Considering the allegations in the Complaint as a whole, Plaintiff's theory of fraud makes no sense.  Plaintiffs claim that Defendants were trying to defraud investors with false financial reports while at the same time expressly warning investors that the Company had material weaknesses in its internal controls that could lead to financial misstatements, and then promptly disclosed the Company's discovery of possible inaccuracies and launched an extensive independent audit committee investigation.  Plaintiffs provide no explanation for why Defendants would go to such lengths to warn of, uncover, disclose and correct inaccurate financial results if they were engaged in an elaborate scheme to defraud investors.  Plaintiffs'

19

theory is neither "cogent" nor "compelling," as required to state a claim. *Tellabs*, 551 U.S. at 314.

The far more compelling inference is that Defendants believed that the Company's annual reports were accurate when issued and promptly took reasonable steps to investigate and correct the misstatements as soon as they became aware of them. Plaintiffs concede that when the Company discovered possible issues with its revenue recognition, it promptly took steps to identify and correct any errors—ultimately leading to the Restatement at issue. (AC p. 10 ¶ 36.) The independent audit committee and its independent advisors reviewed approximately 260,000 emails and other electronic documents, conducted 58 interviews of Tarena employees and third parties, and analyzed and tested the Company's financial data and records. (*Id.* at p. 11 ¶ 39.) Management cooperated with the investigation and the Company provided the market with timely updates on the ongoing investigation, including the likelihood of restatements. (*See, e.g.*, AC p. 11 ¶ 38.)

Indeed, the Company even warned in its 2017 SEC Form 20-F, well before the investigation, that it had identified a "material weakness" in its internal controls that could "result in a material misstatement" of the Company's financials, which it was taking concrete steps to remedy:

> [As a result of management's assessment,] ***our management identified a material weakness as of December 31, 2017***, which was the insufficient review in areas subject to significant estimates and judgments. This ***material weakness may result in a material misstatement*** to our quarterly or annual consolidated financial statements that would not be prevented or detected. As a result of the material weakness, management has concluded that ***our internal control over financial reporting was ineffective as of December 31, 2017***. . . .
>
> Our management has been engaged in, and continues to be engaged in ***making necessary changes and improvements*** to the overall design of its control environment to address the material weakness in internal control over financial

20

reporting and the ineffectiveness of our disclosure controls and procedures described above.

(Ex. A, 2017 SEC Form 20-F at 125–26 (emphasis added).)

This pattern of concerted efforts to identify and rectify misstatements undermines any inference of scienter. *See Iconix*, 2017 WL 4898228, at *19 (no scienter where "the Company took steps to correct the errors, including by forming a special committee of the independent directors, by cooperating with the SEC, and by issuing restatements of historical financial filings"); *In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405, 418 (S.D.N.Y. 2007) ("One substantial competing inference this court may draw from these alleged facts is that due diligence would not have uncovered the fraud."), *aff'd sub nom. S. Cherry St. LLC v. Hennessee Grp. LLC*, 573 F.3d 98 (2d Cir. 2009).

## II.   PLAINTIFFS HAVE NOT ALLEGED THAT CERTAIN ACCOUNTING JUDGMENTS WERE ACTIONABLE

Many of the accounting determinations that Plaintiffs challenge involve complex judgments and matters of opinion, which require more than allegations that the underlying facts proved incorrect. Where allegedly false and misleading statements are statements of opinion or belief, a plaintiff must also show that "the speaker did not hold the belief she professed" or "the supporting fact she supplied [was] untrue." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 185–86 (2015); *see also In re Weight Watchers Int'l, Inc. Sec. Litig.*, No. 14-cv-1997 (LAK), 2016 WL 2757760, at *5 n.43 (S.D.N.Y. May 11, 2016) ("Unlike with statements of pure fact, it is of no importance that a 'sincere statement' of opinion or belief 'turn[s] out to be wrong,'" and therefore "[w]here the speaker's opinion or belief is genuine, a bare allegation that her opinion or belief ultimately proved incorrect is not enough to survive a motion to dismiss after *Omnicare*"). Meeting the strict *Omnicare* standard "is no small

21

task for an investor," *In re Seadrill Ltd. Sec. Litig.*, No. 14 Civ. 9642 (LGS), 2016 WL 3461311, at *8 (S.D.N.Y. June 20, 2016), and Plaintiffs have not met their burden here.

The Company's restated financials involved complex and subjective accounting judgments.  For example, revenue recognition calculations require subjective judgment, including those Plaintiffs challenge here, such as application of the Financial Accounting Standards Board Accounting Standards Codification ("ASC") Topic 605.  (*See, e.g.*, AC p. 2 ¶ 4, p. 17–18 ¶ 51, p. 24 ¶ 73).  *In re AmTrust Fin. Servs., Inc. Sec. Litig.*, No. 17-CV-1545 (LAK), 2019 WL 4257110, at *15 (S.D.N.Y. Sept. 9, 2019) (plaintiffs must adequately allege that "data could have resulted properly only from objective determinations" to show that revenue recognition data constituted a misstatement of fact, not opinion); *Hunt v. Bloom Energy Corp.*, No. 19-cv-02935-HSG, 2021 WL 4461171, at *5 (N.D. Cal. Sept. 29, 2021) (application of ASC Topic 605 requires subjective judgment).  Similarly, application of ASC Topic 450 regarding liabilities (such as those related to misstated loss contingencies alleged here (*see, e.g.*, AC p. 17 ¶ 52)) "require[s] the exercise of judgment" and statements about contingent liabilities are opinion statements to which "the *Omnicare* framework applies."  *Hunt*, 2021 WL 4461171, at *5; *In re Hertz Glob. Holdings, Inc. Sec. Litig.*, No. 13-7050, 2017 WL 1536223, at *11 (D.N.J. Apr. 27, 2017), *aff'd* 905 F.3d 106 (3d Cir. 2018) (holding that ASC 450-20 is "not the kind of fixed rule[] that would qualify as [an] objective standard[]" under *Omnicare*).

As demonstrated above, Plaintiffs do not plead any particularized facts to show Defendants did not "hold the belief" that these subjective accounting judgments were  correct when they were made.  *See Omnicare*, 575 U.S. at 185–86.  (*See supra* § I.)  Thus, Plaintiffs fail to allege that any statements of opinion were materially false and misleading and their claims as to those statements should be dismissed.  *See Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557,

595 (S.D.N.Y. 2016) (dismissing claims as to statements of opinion where "[t]he [complaint] does not come close to pleading facts on which to conclude that defendants disbelieved their own statements").

### III.   PLAINTIFFS CANNOT ASSERT CLAIMS FOR ALLEGED MISSTATEMENTS MADE AFTER THEY PURCHASED THEIR SHARES

As the Second Circuit has long held, "the complaint must be dismissed if it did not adequately allege the issuance of fraudulent misleading statements prior to [the plaintiff's] purchase." *Denny v. Barber*, 576 F.2d 465, 468 (2d Cir. 1978); *accord Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 104–05 (2d Cir. 2021). "Plaintiffs alleging that they were damaged by purchasing securities at an inflated price cannot maintain a securities fraud claim premised exclusively on statements made *after* the plaintiff's final purchase of securities." *Danske Bank A/S*, 11 F.4th at 104; *see also Halliburton Co. v. Erica P. John Fund, Inc.* (*Halliburton II*), 573 U.S. 258, 268 (2014) (complaint must allege "the plaintiff traded the stock between the time the misrepresentations were made and when the truth was revealed"). A "fundamental premise" of the fraud-on-the-market doctrine is that the investor "presumptively relies on a misrepresentation *so long as it was reflected in the market price at the time of his transaction.*" *Erica P. John Fund, Inc. v. Halliburton Co.* (*Halliburton I*), 563 U.S. 804, 813 (2011) (emphasis added). In other words, for Plaintiffs to claim harm from an allegedly artificially inflated stock price, they must have purchased the stock at the allegedly artificially inflated price. Where, as here, Plaintiffs purchased their stock *before* an alleged misstatement, they cannot possibly have relied on the misstatement or suffered any loss as a result of it.

Lead Plaintiff Walter De Schutter allegedly purchased 10,000 Tarena shares on June 26, 2017, and an additional 10,000 shares on August 22, 2017. (ECF No. 6-2, De Schutter Certification.) Named Plaintiff Steven Clauter allegedly purchased 275 shares on October 16,

23

2017.  (AC Ex. 1, Clauter Certification.)  Named Plaintiff Cynthia Lewis allegedly purchased 1000 shares on November 20, 2018.  (AC Ex. 2, Lewis Certification.)  None of the Plaintiffs purchased any shares after the Company issued its 2018 financial results on Form 6-K filed March 12, 2019.  (AC pp. 25–26 ¶ 78.)  Accordingly, none of the Plaintiffs can assert a claim based on alleged misstatements and omissions contained in the Company's 2018 financial results.  *See Danske Bank A/S*, 11 F.4th at 104; *In re Saxton, Inc. Sec. Litig.*, 156 Fed. App'x 917, 919–20 (9th Cir. 2005) (dismissing Section 10(b) claims based on alleged misstatement made after all plaintiffs purchased defendant company's stock).  Additionally, both Plaintiff De Schutter and Plaintiff Clauter purchased their shares prior to the Company's 2017 annual report on Form 20-F filed April 30, 2018 (AC pp. 20–21 ¶ 66), and thus cannot asset a claim based on any alleged misstatements in that filing as well.  *See Danske Bank A/S*, 11 F.4th at 104; *Saxton*, 156 Fed. App'x at 919–20.

## IV.      PLAINTIFFS FAIL TO STATE A CLAIM FOR CONTROL PERSON LIABILITY

Because Plaintiffs fail to plead a primary violation of Section 10(b), their Section 20(a) claim for control person liability must be dismissed as well.  *See Rombach v. Chang*, 355 F.3d 164, 177 (2d Cir. 2004).  Plaintiffs' control person claims also fail because the Complaint does not allege facts showing that the Individual Defendants were each "in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007).

## CONCLUSION

For these reasons, the Amended Class Action Complaint should be dismissed in its entirety with prejudice.

Dated: New York, New York
January 18, 2022

Respectfully submitted,

/s/ Robert A. Fumerton
Scott D. Musoff, *he/him/his*
(scott.musoff@skadden.com)
Robert A. Fumerton, *he/him/his*
(robert.fumerton@skadden.com)
Michael C. Griffin, *he/him/his*
(michael.griffin@skadden.com)
**SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP**
One Manhattan West
New York, New York 10001
Phone:   (212) 735-3000
Fax:      (212) 735-2000

*Attorneys for Defendant Tarena
International, Inc.*

25