**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| YILI QIU, Individually and<br>On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br><br>v.<br><br><br>TARENA INTERNATIONAL, INC.,<br>SHAOYUN HAN, and YUDUO YANG,<br><br>Defendants. | CASE No.: 1:21-cv-03502-PKC-RML<br><br><br>CLASS ACTION<br><br><br>JURY TRIAL DEMANDED |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT**

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ................................................................................ 1

II.   STATEMENT OF FACTS ....................................................................................... 3

      A.   Tarena Committed Multi-Year Accounting Fraud .......................................... 3

           1.   2Q 2016 Financial Results ................................................................. 3

           2.   2016 Annual Report ........................................................................... 4

           3.   2017 Annual Report ........................................................................... 4

           4.   2018 Financial Results ....................................................................... 5

           5.   Defendants Lied About Tarena's Internal Controls Over Financial Reporting. ...... 5

           6.   Misrepresentations Regarding Risk Warning ...................................... 6

III.  ARGUMENT ........................................................................................................ 6

      A.   Legal Standard ............................................................................................. 6

      B.   The Complaint Adequately Alleges Materially False and Misleading Misstatements and Omissions. ................................................................................... 7

           1.   Defendants Admit Material Misstatements and Omissions in Tarena's Financial Statements ........................................................................ 7

           2.   Defendants Mispresented the Effectiveness of Tarena's Internal Controls .......... 10

           3.   The Risk Warning Was Materially Misleading Because The Risk Had Materialized. ............................................................................... 14

      C.   The Complaint Sufficiently Alleges Scienter ............................................... 15

           1.   Standard .......................................................................................... 15

           2.   Motive and Opportunity ................................................................... 15

           3.   Conscious Misbehavior or Recklessness .......................................... 17

           4.   Defendants' Alternative Nonfraudulent Inference is Untenable .......... 22

      D.   Plaintiffs Can Properly Represent the Class Regarding All Misstatements Made During the Class Period. ................................................................... 23

E.    The Complaint Alleges Section 20(a) Liability ...........................................................25

IV.  CONCLUSION ...........................................................................................................25

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acito v. IMCERA Grp., Inc.*,
  47 F.3d 47 (2d Cir. 1995) .............................................................................................. 25

*Acticon AG v. China N. E. Petroleum Holdings Ltd.*,
  615 F. App'x 44 (2d Cir. 2015) .......................................................................... 17, 22, 25

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................................... 6

*Atlas v. Accredited Home Lenders Holding Co.*,
  556 F. Supp. 2d 1142 (S.D. Cal. 2008) ......................................................................... 20

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) ...................................................................................... 15, 25

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................................... 6

*Denny v. Barber*,
  576 F.2d 465 (2d Cir. 1978) .......................................................................................... 24

*Dobina v. Weatherford Int'l Ltd.*,
  909 F. Supp. 2d 228 (S.D.N.Y. 2012) ........................................................................... 21

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011) ....................................................................................................... 24

*Fait v. Regions Fin. Corp.*,
  655 F.3d 105 (2d Cir. 2011) .......................................................................................... 10

Green v. Wolf Corporation,
  406 F.2d 291 (2d Cir.1968) ........................................................................................... 24

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014) ....................................................................................................... 24

*Hunt v. All. N. Am. Gov't Income Tr., Inc.*,
  159 F.3d 723 (2d Cir. 1998) .......................................................................................... 13

*Hunt v. Bloom Energy Corp.*,
  No. 19-CV-02935-HSG, 2021 WL 4461171 (N.D. Cal. Sept. 29, 2021) ...................... 9

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
No. 11 CIV. 2279 CM, 2012 WL 3758085, at (S.D.N.Y. Aug. 29, 2012) ............................... 16

*In re AIG, Inc. 2008 Sec. Litig.*,
741 F. Supp. 2d 511 (S.D.N.Y. 2010) ..................................................................................... 13

*In re AmTrust Fin. Servs., Inc. Sec. Litig.*,
No. 17-CV-1545 (LAK), 2019 WL 4257110 (S.D.N.Y. Sept. 9, 2019) ................................. 8, 9

*In re AstraZeneca Sec. Litig.*,
559 F. Supp. 2d 453 (S.D.N.Y. 2008) ..................................................................................... 16

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
324 F. Supp. 2d 474 (S.D.N.Y. 2004) ................................................................................. 7, 21

*In re Avon Sec. Litig.*,
No. 19 CIV. 01420 (CM), 2019 WL 6115349 (S.D.N.Y. Nov. 18, 2019) ................................. 8

*In re Barrick Gold Sec. Litig.*,
No. 13 CIV. 3851 SAS, 2015 WL 1514597 (S.D.N.Y. Apr. 1, 2015) ................................ 10, 13

*In re Bausch & Lomb, Inc. Sec. Litig.*,
941 F. Supp. 1352 (W.D.N.Y. 1996) ...................................................................................... 22

*In re Bayou Hedge Fund Litig.*,
534 F. Supp. 2d 405 (S.D.N.Y. 2007) ..................................................................................... 23

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
No. 17-CV-4846 (WFK), 2020 WL 1950783 (E.D.N.Y. Apr. 22, 2020) ................................. 14

*In re Computer Assocs. Class Action Sec. Litig.*,
75 F. Supp. 2d 68 (E.D.N.Y. 1999)......................................................................................... 17

*In re Craftmatic Securities Litigation,*
890 F.2d 628 (3d Cir.1989).................................................................................................... 22

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
986 F. Supp. 2d 487 (S.D.N.Y. 2013)..................................................................................... 14

*In re Gen. Elec. Co. Sec. Litig.*,
856 F. Supp. 2d 645 (S.D.N.Y. 2012)................................................................................... 8, 9

*In re Gilat Satellite Networks, Ltd.*,
No. CV-02-1510 (CPS), 2005 WL 2277476, at (E.D.N.Y. Sept. 19, 2005) ............................ 18

*In re Glob. Crossing, Ltd. Sec. Litig.*,
322 F. Supp. 2d 319 (S.D.N.Y. 2004) ....................................................................................... 8

iv

*In re Goldman Sachs Grp., Inc. Sec. Litig.*,
No. 10 CIV. 3461 PAC, 2014 WL 2815571 (S.D.N.Y. June 23, 2014) .................................. 11

*In re Hertz Glob. Holdings, Inc. Sec. Litig.*,
No. CV 13-7050, 2017 WL 1536223 (D.N.J. Apr. 27, 2017)...................................................... 9

*In re Iconix Brand Grp., Inc.*,
15 CIV. 4860 (PGG), 2017 WL 4898228 (S.D.N.Y. Oct. 25, 2017)........................................ 20

*In re Initial Pub. Offering Sec. Litig.*,
383 F. Supp. 2d 566 (S.D.N.Y. 2005)....................................................................................... 6

*In re Intelligroup Sec. Litig.*,
527 F. Supp. 2d 262 (D.N.J. 2007) .......................................................................................... 22

*In re Inv. Tech. Grp., Inc. Sec. Litig.*,
15 CIV. 6369 (JFK), 2018 WL 1449206 (S.D.N.Y. Mar. 23, 2018) ...................................... 23

*In re Livent, Inc. Sec. Litig.*,
78 F. Supp. 2d 194 (S.D.N.Y. 1999)........................................................................................ 19

In re MF Glob. Holdings Ltd. Sec. Litig.*,*
*982 F. Supp. 2d 277 (S.D.N.Y. 2013)* ............................................................................... 13, 15

*In re MicroStrategy, Inc. Sec. Litig.*,
115 F. Supp. 2d 620 (E.D. Va. 2000)....................................................................................... 20

*In re OCA, Inc. Sec. & Derivative Litig.*,
No. 05-2165, 2006 WL 3747560 (E.D. La. Dec. 14, 2006)..................................................... 21

*In re Oxford Health Plans, Inc. Sec. Litig.*,
51 F. Supp. 2d 290 (S.D.N.Y. 1999)........................................................................................ 20

*In re Petrobras Sec. Litig.*,
116 F. Supp. 3d 368 (S.D.N.Y. 2015)................................................................................ 10, 11

*In re Rent-Way Sec. Litig.*,
209 F. Supp. 2d 493 (W.D. Pa. 2002) ...................................................................................... 20

*In re Salix Pharms., Ltd.*,
No. 14-CV-8925 (KMW), 2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016)............................... 10

*In re Sanofi Sec. Litig.*,
155 F. Supp. 3d 386 (S.D.N.Y. 2016)....................................................................................... 23

*In re Scholastic Corp. Sec. Litig.*,
252 F.3d 63 (2d Cir. 2001)....................................................................................................... 22

*In re Scottish Re Grp. Sec. Litig.,*
   524 F.Supp.2d 370 (S.D.N.Y.2007) ................................................................................ 12, 19

*In re Seitel, Inc. Sec. Litig.,*
   447 F. Supp. 2d 693 (S.D. Tex. 2006) ..................................................................................... 20

*In re Take-Two Interactive Sec. Litig.,*
   551 F. Supp. 2d 247 (S.D.N.Y. 2008) ..................................................................................... 16

*In re Turquoise Hill Res. Ltd. Sec. Litig.,*
   No. 13 CIV. 8846 LGS, 2014 WL 7176187 (S.D.N.Y. Dec. 16, 2014) ................................... 20

*In re Van der Moolen Holding N.V. Sec. Litig.,*
   405 F. Supp. 2d 388 (S.D.N.Y. 2005) ..................................................................................... 14

*In re Veeco Instruments, Inc. Sec. Litig.,*
   235 F.R.D. 220 (S.D.N.Y. 2006) ...................................................................................... 18, 20

*In re Vivendi Universal, S.A.,*
   242 F.R.D. 76 (S.D.N.Y. 2007)................................................................................................ 24

*In re Vivendi, S.A. Sec. Litig.,*
   838 F.3d 223 (2d Cir. 2016)..................................................................................................... 11

*In re: EZCorp, Inc. Sec. Litigations,*
   181 F. Supp. 3d 197 (S.D.N.Y. 2016)...................................................................................... 17

*Kalnit v. Eichler,*
   264 F.3d 131 (2d Cir. 2001)....................................................................................................... 7

*Kleinman v. Elan Corp., plc,*
   706 F.3d 145 (2d Cir. 2013)....................................................................................................... 7

*Meyer v. Jinkosolar Holdings Co.,*
   761 F.3d 245 (2d Cir. 2014).............................................................................................. 11, 14

*Nicholas v. Poughkeepsie Sav. Bank/FSB,*
   No. 90 CIV. 1607 (RWS), 1990 WL 145154 (S.D.N.Y. Sept. 27, 1990).......................... 24, 25

*Novak v. Kasaks,*
   216 F.3d 300 (2d Cir.2000)................................................................................... 7, 15, 17, 18

*Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.,*
   367 F. Supp. 3d 16 (S.D.N.Y. 2019)......................................................................................... 8

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund,*
   575 U.S. 175 (2015) ............................................................................................................. 2, 8

*Ortiz v. Canopy Growth Corp.*,
   537 F. Supp. 3d 621 (D.N.J. 2021) .................................................................................. 8

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
   446 F. Supp. 2d 163 (S.D.N.Y. 2006) ............................................................................ 16

*Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*,
   11 F.4th 90 (2d Cir. 2021) ....................................................................................... 23, 24

*Plymouth Cty. Ret. Ass'n v. Schroeder*,
   576 F. Supp. 2d 360 (E.D.N.Y. 2008) ............................................................................ 18

*Rex & Roberta Ling Living Tr. u/a Dec. 6, 1990 v. B Commc'ns Ltd.*,
   346 F. Supp. 3d 389 (S.D.N.Y. 2018) ............................................................................ 22

*Robbins v. Moore Med. Corp.*,
   788 F. Supp. 179 (S.D.N.Y. 1992) ................................................................................. 24

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004) .......................................................................................... 13

*Roth v. AON Corp.*,
   No. 04-C-6835, 2008 WL 656069 (N.D. Ill. Mar. 7, 2008) ........................................... 20

*Rothman v. Gregor*,
   220 F.3d 81 (2d Cir. 2000) ............................................................................................ 19

*S.E.C. v. Escala Grp., Inc.*,
   No. 09CIV2646DLC, 2009 WL 2365548 (S.D.N.Y. July 31, 2009) ............................ 17, 19

*S.E.C. v. Espuelas*,
   908 F. Supp. 2d 402 (S.D.N.Y. 2012) .............................................................................. 7

*S.E.C. v. First Jersey Sec., Inc.*,
   101 F.3d 1450 (2d Cir. 1996) ........................................................................................ 21

*Shamberg v. Ahlstrom*,
   111 F.R.D. 689 (D.N.J. 1986) ....................................................................................... 25

*Shields v. Citytrust Bancorp, Inc.*,
   25 F.3d 1124 (2d Cir. 1994) .......................................................................................... 16

*Siracusano v. Matrixx Initiatives, Inc.*,
   585 F.3d 1167 (9th Cir. 2009) ....................................................................................... 15

*Stocke v. Shuffle Master, Inc.*,
   615 F. Supp. 2d 1180 (D. Nev. 2009) ............................................................................. 21

vii

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007) ................................................................................................ 6

*Tongue v. Sanofi*,
   816 F.3d 199 (2d Cir. 2016) .................................................................................. 10

*Underland v. Alter*,
   No. CIV.A. 10-3621, 2011 WL 4017908 (E.D. Pa. Sept. 9, 2011) ............................ 9

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
   672 F. Supp. 2d 596 (S.D.N.Y. 2009) ......................................................... 8, 10, 12

*Virginia Bankshares, Inc. v. Sandberg*,
   501 U.S. 1083 (1991) ............................................................................................ 10

*Waterford Twp. Police & Fire Ret. Sys. v. Reg'l Mgmt. Corp.*,
   No. 14 CV 3876-LTS, 2016 WL 1261135 (S.D.N.Y. Mar. 30, 2016) ...................... 11

*Woolgar v. Kingstone Companies, Inc.*,
   477 F. Supp. 3d 193 (S.D.N.Y. 2020) .................................................................... 11

**Statutes**

Pub. L. No. 104–67, 109 Stat. 737 ................................................................................ 7

**Rules**

Fed. R. Civ. P. 9(b) ...................................................................................................... 7

Lead Plaintiff Walter De Schutter and named plaintiffs Steven Clauter and Cynthia Lewis ("Plaintiffs") respectfully submit this Memorandum of Law in Opposition to Defendant Tarena International, Inc.'s ("Tarena" or the "Company")[1] Motion to Dismiss the Amended Complaint under Section 10(b) of the Securities Exchange Act of 1934 (the "Complaint" or "AC", Dkt. 17).

## I.    PRELIMINARY STATEMENT[2]

This case is not about complex accounting judgments over which reasonable minds can disagree. This case is a straight-forward accounting fraud. Defendants admit that Tarena's financial statements were intentionally manipulated and insiders interfered with the Company's audits. Tarena restated nearly all line items in its financial results and audited financial statements for the years ended December 31, 2014, 2015, 2016, 2017 and 2018 ("Restatement"). (¶3,41; AC Exs. 3,4 (Dkt. 17-3,17-4)) For example, the Restatement reduced the net revenue for 2014 through 2018 by RMB 700 million (US$110 million), a 10% inflation of the actual net revenue, and gross profit for 2014 through 2018 by approximately RMB 667 million (US$104 million), a 14% inflation of the actual gross profit. (¶4.) These overstatements of net revenue made Tarena look profitable; in reality the Restatement revealed that the Company suffered a net loss in 2017 and 2018. (*Id*.) The Restatement also reduced the Company's accounts receivable (net of allowance for doubtful accounts) for 2014 through 2018 by approximately RMB 638 million (US$99.6million), a 441% inflation of the actual accounts receivable. (*Id*.) The Restatement also revealed numerous undisclosed material related party transactions and self-dealing between

---

[1] Plaintiffs sent out the service requests on Defendants Shaoyun Han ("Han") and Yuduo Yang ("Yang") in China in September 2021 per the Hague Service Convention. Plaintiffs have not received any response from the Chinese government.

[2] "¶_" are paragraphs of the AC. "Def. Br. __" are pages of Defendant's Memorandum of Law in support of its motion to dismiss ("Motion"). "Fumerton Decl. Ex _" are exhibits to the Declaration of Robert A. Fumerton in support of the Motion. "Kim Decl. Ex. __" are exhibits to the Declaration of Phillip Kim in Support of Plaintiffs' Opposition. Unless otherwise noted, all emphases are added and all internal citations and quotation marks are omitted.

Tarena and Han ("Han") and his family members  from 2016 through 2018. (*Id*.) Defendants also misled investors by signing certifications attesting to the effectiveness of Tarena's internal controls over financial reporting, when in reality Tarena had numerous undisclosed material weaknesses. (AC pp.19,20-21,28-29 ¶¶62,66,84-86; AC pp.30-31¶¶65-68.) When the truth of Defendants' material misrepresentations and omissions during the Class Period gradually emerged through several partial corrective disclosures, the price of Tarena's shares fell, damaging Plaintiffs and the Class. (AC pp.32-33 ¶¶69-77.)

Without citing to any specific financial data, Tarena vaguely argues that many of its misstated financial statements required subjective judgment and are protected under *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175 (2015). Def. Br. at 21-23 This argument contradicts Defendants' own admission that the misstatements were caused by "***intentional*** revenue inflation", "***premature*** recognition of revenue" and failure to disclose material related party transactions. (¶40.) As detailed in the Complaint and discussed below, none of the financial numbers underlying the misstated data required judgment. In any event, Defendants did not honestly believe their data because they admitted they intentionally manipulated the numbers.

Tarena's argument of Defendants' lack of awareness of the pervasive misstatements in accounting and internal controls when issued belies the truth. Def. Br. at 15. Defendants' disclosure of a portion of a related party transaction between Tarena and Defendant Han demonstrates their knowledge of the SEC requirements and existence of such transactions. (¶59.) Concealing 99% of the related party transactions between Tarena and Defendant Han and his family members shows a strong inference of scienter. Additionally, Defendants' announcement of a single weakness in the internal controls and their intent to cure, while failing to make any efforts

2

to improve and continuing to conceal the vast majority of material weaknesses. evinces scienter. (AC p.30 ¶65.)

The Complaint states the claims. The Court should deny Tarena's Motion in its entirety.

## II.    STATEMENT OF FACTS

### A.  Tarena Committed Multi-Year Accounting Fraud

Tarena is an IT vocational training and after-school program provider in China. (¶2.) Its ADSs have been publicly traded on Nasdaq since 2014. (¶20.)

In 2019, Tarena revealed that its financial statements for years from 2014 to 2018 were false when made and could not be relied upon. (¶¶36-38.) Upon an internal investigation, Tarena admitted that the Company committed significant accounting fraud spanning from 2014 to 2018 by means of a host of intentional misconduct, including "intentional revenue inflation", "premature recognition of revenue", "improper charges against accounts receivable and/or bad debts", "expenses that were not supported by appropriate documentation", "funds or other benefits [that] were provided to third parties contrary to Company policy", engagement in "conflicts of interest and related party transactions" that were "not properly disclosed by the Company", and "interfere[nce] with the external audit." (¶¶39,40.)

On April 24, 2020, Tarena issued its 2018 annual report restating the previously misreported financial results for 2014 to 2018. Tarena's auditor confirmed that Tarena "identified and corrected material misstatements in previously issued financial statements." *See* 2018 Annual Report, at F-2 (Kim Decl. Ex. 1). As detailed in the Complaint, Defendants made the following materially false and misleading misstatements and omissions. (AC pp.15-28 ¶¶50-83.)

#### 1.  2Q 2016 Financial Results

According to the Restatement, the 2Q 2016 Financial Results: (i) contained fictitious or premature revenue recognition in violation of ASC 605 which included recorded inaccurate

3

revenue, general and administrative expenses for bad debt provision, interest income and cost of revenue. ; (ii) recorded "improper charges against accounts receivable and/or bad debts, and certain students' tuition fee refund … for irregular expense or loan from an individual" in violation of ASC 310 and ASC 450-20; (iii) failed to disclose any of the material related party transactions in violation of Reg. S-K Item 404 and ASC 850; and (iv) stated an incorrect beginning retained earnings balance due to overstated net income for 2014 and 2015. (¶¶50-61.)

### 2. 2016 Annual Report

As shown in the detailed comparison between the misreported and restated 2016 financial statements, Defendants grossly misstated almost all line items in its 2016 financial statement. (AC pp.19-20 ¶¶62-65; AC Exs. 3,4); Kim Decl. Ex. 1 F28-37. For example, net income was overstated by 7%. Accounts receivable (net of allowance for doubtful accounts) was overstated by over four times. Defendants failed to disclose 99.3% of the material related party transactions amounting to RMB 8.4 million or US$1.2 million. (AC pp.19-20 ¶64.)

### 3. 2017 Annual Report

As shown in the detailed comparison between the misreported and restated 2017 financial statements, Defendants grossly misstated almost all line items in its 2017 financial statement. (AC pp.20-25 ¶¶66-77; AC Exs. 3,4;); Kim Decl. Ex. 1 F28-37.  For example, the overstatements for operating income and net income were so huge that the restated numbers for these two line items after correction were actually negative. Accordingly, in 2017, Tarena in fact operated at a loss, not at a profit. (AC p.21 ¶68.) Accounts receivable (net of allowance for doubtful accounts) was overstated by over three times. Defendants failed to disclose 98.3% of the related party transactions amounting to RMB 13.3 million or US$ 2.1 million. (*Id*.) Defendants also overstated the student enrollment for adult programs for 2017 by 8%. (AC pp.24-25 ¶75.)

### 4. 2018 Financial Results

As shown in the detailed comparison between the misreported and restated 2018 financial results, Defendants grossly misstated almost all line items in its 2018 financial results. (AC pp.25-28 ¶¶7-83; AC Exs. 3,4); Kim Decl. Ex. 1 F28-37. Net loss was understated by 72%. (AC p.26 ¶80.) Accounts receivable (net of allowance for doubtful accounts) was overstated by 261%. (*Id.*) Defendants failed to disclose 98% of the related party transactions amounting to RMB 2.1 million or US$ 0.34 million. (*Id.*)

### 5. Defendants Lied About Tarena's Internal Controls Over Financial Reporting.

During the Class Period, Han and Yang personally participated in designing and evaluating of the effectiveness of Tarena's internal controls and concluded their effectiveness. (AC pp.8-10,19,20-21¶¶30-35,62,66.) Han and Yang signed SOX certifications attesting to the effectiveness of Tarena's internal controls, accuracy of its financial reporting in the 2016 and 2017 Annual Reports, and disclosure of all fraud. (AC pp.19,20-21 ¶¶62,66.) Han and Yang also certified that they were responsible for establishing and maintaining adequate internal controls. (*Id.*)

In Tarena's 2016 Annual Report, Defendants falsely assured the effectiveness of Tarena's internal controls while Han and Yang provided no oversight over the internal controls, resulting in numerous material weaknesses and allowing Defendants the opportunities to commit fraud. (AC pp.30-31¶¶65-66.) In the 2017 Annual Report, Defendants identified a weakness in areas subject to significant estimates and judgments, but concealed the vast existing material weaknesses permeating Tarena's internal controls, including Defendants' failure to provide oversight over the internal controls. Def. Br. at 7; (AC pp.30-31¶¶65-66.) The 2017 Annual Report also failed to disclose that Defendants in fact made no efforts to remedy any weaknesses and still fabricated almost all items in the 2017 financial statement despite their assurance of taking remedial measures. (AC pp.30-31¶¶65-66.)

5

### 6. Misrepresentations Regarding Risk Warning

Tarena's 2016 and 2017 Annual Reports contain the same risk warning that ineffective internal controls could result in inaccuracies in Tarena's financial statements, impair its compliance, and increased risk of fraud or misuse of corporate assets. (AC p.31 ¶67.) Such warning was materially false and misleading because at the time Defendants filed the 2016 20-F and 2017 20-F, the risk of ineffective internal controls had materialized. (AC p.31 ¶68.)

## III.   ARGUMENT

### A. Legal Standard

To survive a motion to dismiss, a complaint only need to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The task of the court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *In re Initial Pub. Offering Sec. Litig.*, 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005). Courts must accept the factual allegations in a plaintiff's complaint as true and draw all reasonable inferences in plaintiffs' favor on a Rule 12(b)(6) motion to dismiss. See *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

To state a cause of action for securities fraud under § 10(b) of the Exchange Act and Rule 10b–5, a plaintiff must allege: (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss

6

causation. *See Kleinman v. Elan Corp., plc*, 706 F.3d 145, 152 (2d Cir. 2013). [3] Plaintiffs have satisfied the pleading requirement.

### B. The Complaint Adequately Alleges Materially False and Misleading Misstatements and Omissions.

#### 1. Defendants Admit Material Misstatements and Omissions in Tarena's Financial Statements

The Complaint specifies the significant misstatements and omissions for almost all line items in Tarene's financial statements by comparing the misreported and restated financial results for 2014 to 2018. (AC pp.15-28 ¶¶50-83, AC Exs. 3,4.) The Complaint also specifies the SEC and GAAP rules that each of the misstatements and omissions violated. (*Id.*) Tarena admits that these misstatements and omissions are "material." *See* Kim Decl. Ex. 1, at F-2 ("the Company has identified and corrected material misstatements in previously issued financial statements.") In light of Tarena's restatement and admission, it is indisputable that the Complaint sufficiently pleads material falsity. Under GAAP, "previously issued financial statements should be restated only to correct material accounting errors that existed at the time the statements were originally issued." *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 486 (S.D.N.Y. 2004); (¶¶43,44.) "Although a restatement is not an admission of wrongdoing, the mere fact that financial results were restated is sufficient basis for pleading that those statements were false when made." *S.E.C. v. Espuelas*, 908 F. Supp. 2d 402, 410 n.5 (S.D.N.Y. 2012).

Tarena argues that its restated financials as a result of its intentional revenue inflation and improper expense charges involved subjective judgment and therefore should be shielded from

---

[3] Securities fraud actions are also subject to the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. No. 104–67, 109 Stat. 737, as well as those of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"). *See Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001); *see also Novak v. Kasaks,* 216 F.3d 300, 306 (2d Cir.2000).

7

liability under *Omnicare, Inc.*, 575 U.S. at 185–86. Def. Br. 21-23. But Tarena fails to explain which specific line item(s) at issue here required subjective judgment—because it cannot. This case is not about complex accounting judgments over which reasonable minds can differ. This case is about Defendants' knowing misrepresentations that employed "objectively improper accounting practices" and cannot be justified by "an appropriate method given appropriate historical data and judgments." *In re AmTrust Fin. Servs., Inc. Sec. Litig.*, No. 17-CV-1545 (LAK), 2019 WL 4257110, at *15, *30 (S.D.N.Y. Sept. 9, 2019). GAAP was irrelevant to the accounting calculus except to the extent that Defendants used the accounting standards as a cover to manipulate revenue and expense numbers. *See In re Glob. Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 341 (S.D.N.Y. 2004) ("The gravamen of plaintiffs' Complaint is that these exchanges were essentially unnecessary mirror-image transactions created with the specific intention of inflating the Companies' revenues and deceiving investors into thinking the company was financially sound when it was, in fact, in increasingly perilous straits.")[4]; *AmTrust*, 2019 WL 4257110 at *15; *See In re Gen. Elec. Co. Sec. Litig.*, 856 F. Supp. 2d 645, 657–58 & n.2 (S.D.N.Y. 2012) (allegations

---

[4] Courts in the Second Circuit, and elsewhere, overwhelmingly agree that historical, reported revenue figures and realized revenue growth rates such as these are statements of historical fact, not opinion, sufficient to state a claim for falsity with respect to improper revenue recognition. *See*, *e.g.*, *In re Avon Sec. Litig.*, No. 19 CIV. 01420 (CM), 2019 WL 6115349, at *17 (S.D.N.Y. Nov. 18, 2019)  (where "'[p]laintiffs detail how defendants used specific accounting practices in violation of [GAAP] to **prematurely** recognize revenue,' they have adequately alleged the issuer's reported financials contain false and misleading statements"); *Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 32 (S.D.N.Y. 2019) (statement that "revenue increased 5% YTY primarily due to strong end user demand..." statement of "historical facts," not opinion); *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 672 F. Supp. 2d 596, 606 (S.D.N.Y. 2009) ("Misreported financial information clearly amounts to a false statement of fact."); *Ortiz v. Canopy Growth Corp.*, 537 F. Supp. 3d 621, 669 (D.N.J. 2021) (Defendants' lie about how much cannabis was in inventory is a statement of fact, whereas defendants' valuations of inventory and recognized revenue is a statement of opinion.)

8

of misstated asset valuations attributable to "improper accounting practices" raise issues of objective fact that are not protected as opinion statements.)

Tarena incorrectly cite to *AmTrust*, *Hunt v. Bloom Energy Corp.*, No. 19-CV-02935-HSG, 2021 WL 4461171, at *5 (N.D. Cal. Sept. 29, 2021), and *In re Hertz Glob. Holdings, Inc. Sec. Litig.*, No. CV 13-7050, 2017 WL 1536223, at *11 (D.N.J. Apr. 27, 2017) to argue that ASC 450 and ASC 605 categorically require the exercise of judgment. The rulings in *AmTrust* and *Hertz* are limited to their respective facts and inapposite to this case. Def. Br. at 22.  Here, allegations of misstated asset valuations attributable to "improper accounting practices" raise issues of objective fact that are not protected as opinion statements. [5] *In re General Elec. Co. Securities Litigation*, 856 F. Supp. 2d at 657–58 & n.2; *see also Underland v. Alter*, No. CIV.A. 10-3621, 2011 WL 4017908, at *9 (E.D. Pa. Sept. 9, 2011) ("Unlike a subjective evaluation that a loan reserve is adequate or not, nonconformance to a stated methodology to arrive at a loan loss reserve amount is a measurable objective fact.")

Moreover, treating any of the alleged misstatements as subjective opinions pursuant to *Omnicare* would not aid Tarena (or Han and Yang). Assuming *Omnicare* applies, "[f]or a statement of belief or opinion to be actionable under Section 10(b), a plaintiff must allege that (1) 'the speaker did not hold the belief she professed,' (2) 'the supporting fact[s] she supplied were

---

[5] Specifically, as the restatement in the 2018 Annual Report revealed, the three largest components of restatement in connection with the application of ASC450, which almost completely offset each other, resulted in (i) the increase of RMB61,088 in accounts receivable; (ii) the increase of RMB48,539 in other payable; and (iii) the decrease of RMB17,195 collectively in cost of revenue, general and administrative expense and selling expenses. The three largest components of misreported expense inaccuracies in the 2017 financial statement resulted in: (i) the increase of RMB93,372 in accounts receivable; (ii) the increase of RMB58,697 in other payable; and (iii) the decrease of RMB23,199 collectively in cost of revenue, general and administrative expense and selling expenses. Kim Decl. Ex. 1, at F-35. (Numbers in thousands). These misreported financial data resulted from improper recording (i.e., classification) of charges (which does not require judgment) rather than from improper measurement of amounts to be recorded (which may have required judgment).

untrue,' or (3) the stated opinion, 'though sincerely held and otherwise true as a matter of fact,' 'omit[ted] information whose omission ma[de] the [stated opinion] misleading to a reasonable investor.'" *N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan & Plymouth Cty. Ret. Ass'n v. MDC Partners, Inc.*, No. 15 CIV. 6034 (RJS), 2016 WL 5794774, at *10 (S.D.N.Y. Sept. 30, 2016) (quoting *Tongue v. Sanofi*, 816 F.3d 199, 209 (2d Cir. 2016)).

The allegations meet the first prong in the *Omnicare* tests for falsity. Plaintiffs allege that Defendants intentionally inflated revenue and improperly recorded charges, intended to deceive investors, and did not honestly hold any opinions professed. (¶40); *see In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 380 (S.D.N.Y. 2015); *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 113 (2d Cir. 2011) (noting that statements of opinion "not honestly believed when they were made" are actionable). Moreover, there are sufficient allegations that any opinions were predicated on untrue statements of fact—intentional revenue inflation—and "omit[ed] material facts about [each] speaker's inquiry into or knowledge of facts that would support the stated opinion." *In re Salix Pharms., Ltd.*, No. 14-CV-8925 (KMW), 2016 WL 1629341, at *12 (S.D.N.Y. Apr. 22, 2016). *See Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1092 (1991) (An opinion can be actionable if the speaker deliberately misrepresented its opinion.).

### 2. Defendants Mispresented the Effectiveness of Tarena's Internal Controls

The Complaint alleges that Defendants mispresented the effectiveness of Tarena's internal controls for the fiscal years of 2016 and 2017 while they knowingly "fail[ed] to provide oversight for the system of internal control[s]" and acquiesced or participated in the massive accounting fraud. (AC p.30 ¶65.) These allegations are sufficient to infer that the Company disbelieved the alleged statements at the time they were made. *See Varghese*, 672 F. Supp. 2d at 607 (holding that plaintiffs plausibly alleged that defendant's "internal control problems were much more serious than the picture conveyed by its filings and press releases"); *In re Barrick Gold Sec. Litig.*, No.

10

13 CIV. 3851 SAS, 2015 WL 1514597, at *13–14 (S.D.N.Y. Apr. 1, 2015) (misrepresentations were actionable where Barrick was required to establish internal controls that provided assurances regarding its objectives); *In re Goldman Sachs Grp., Inc. Sec. Litig.*, No. 10 CIV. 3461 PAC, 2014 WL 2815571, at *4–5 (S.D.N.Y. June 23, 2014) ("Goldman's representations about its purported controls for avoiding conflicts were directly at odds with its alleged conduct" and the "statements about business practices were directly related to the subject of the fraud".)

The weakness identified in the 2017 Annual Report, Def. Br. at 18, was only limited to areas that required significant judgment and does not minimize Defendants' liability for failure to completely and accurately disclose the vast material weaknesses in the internal controls in 2017.[6] Kim Decl. Ex. 1 at 122-24. Rather, such disclosure is misleading in and of itself. "Once a company speaks on an issue or topic, there is a duty to tell the whole truth, even when there is no existing independent duty to disclose information on the issue or topic." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 258 (2d Cir. 2016) (quoting *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 250 (2d Cir. 2014)). The 2018 Annual Report reveals that during the Class Period, Tarena's internal controls had extensive material weaknesses, including, *inter alia*, lack of "oversight for the system of internal control" and "commitment to integrity and ethical values." (AC p.30 ¶65.) Defendants disclosed none of these weaknesses in its 2017 Annual Report, rendering it materially misleading.

---

[6] *Woolgar v. Kingstone Companies, Inc.*, 477 F. Supp. 3d 193 (S.D.N.Y. 2020) and *Waterford Twp. Police & Fire Ret. Sys. v. Reg'l Mgmt. Corp.*, No. 14 CV 3876-LTS, 2016 WL 1261135 (S.D.N.Y. Mar. 30, 2016) are factually distinguishable from this case. Def. Br. at 18. The plaintiffs in *Woolgar* and *Waterford* alleged no fact to show defendants' knowledge of the deficient internal controls. But here, Plaintiffs allege that at the time Defendants represented the effectiveness of Tarena' internal controls, the same Defendants intentionally inflated revenue, improperly reported expenses, and secretly participated in self-dealing. These allegations are sufficient to infer that "the Company disbelieved the alleged statements at the time they were made." *Petrobras Sec. Litig.*, 116 F. Supp. 3d at 380–81 (finding defendants' representations about its internal controls misleading because the officers making these representations had to be aware of rampant corporate culture of bribe-paying.)

11

Moreover, by disclosing this single weakness while simultaneously assuring investors that Tarena's internal controls had been improved, Defendants misled reasonable investors to believe that Tarena's internal controls, other than this single identified weakness, were still effective. In reality, however, the problems were so severe and pervasive that Tarena's internal controls virtually did not exist. *In re Scottish Re Grp. Sec. Litig.,* 524 F.Supp.2d 370, 398 (S.D.N.Y.2007) (holding that "plaintiffs' factual allegations, accepted as true, suggest that the Company recklessly or intentionally misled investors as to the state of its internal controls"). Defendants also misled the market when they advised that they had taken remedial measures to address the identified weakness when in fact, the 2018 Annual Report revealed that they had taken no efforts at all to improve the debilitated internal controls. (AC p.30 ¶65.) *See Varghese*, 672 F. Supp. 2d at 606–07 (defendants' disclosure that they were taking "remedial steps" to address the significant deficiencies in its internal controls is materially misleading when "Defendants knew or recklessly disregarded that Defendants lacked the capacity and commitment to remedy [them].")

Moreover, Han and Yang violated section 10(b) and Rule 10b–5 by providing false SOX certifications in connection with Tarena's 2016 and 2017 Annual Reports. (AC pp.19,20-21 ¶¶62,66.) Certifying internal controls and financial statements can give rise to a securities fraud claim where the underlying financial forms contained material misstatements of which defendants had knowledge. *Scottish*, 524 F. Supp. 2d at 391. Plaintiffs have met that burden here. As discussed above, Plaintiffs allege that Tarena's SEC filings contained misstatements and failed to disclose material weaknesses in internal controls despite their knowledge. (AC pp.15-28 ¶¶50-83.) Defendant Han participated in undisclosed material related party transactions for the benefit of himself and his family. (AC pp. 17-19,20,24-25,27-28 ¶¶53-60,65,74-77,82.) Yang had extensive knowledge of U.S. GAAP compliance and auditing standards given his twenty years' experience

12

in the finance area, including serving as an auditing manager at KPMG for 8 years. (¶22.) The sheer magnitude of the Restatement was so egregious that "it is reasonable to conclude that all defendants knew the information that these reports contained—or at the very least were reckless if they failed to read these reports before certifying a lack of material weakness in internal controls." *Barrick Gold Sec. Litig.*, 2015 WL 1514597 at *14 (finding material misrepresentations of the effectiveness of the company's internal controls.)

Resorting to the generic, cautionary language that deficient internal controls "may" cause inaccurate reporting or fraud cannot aid Defendants in light of their knowledge at the time that most line items in Tarena's financials were fictitious. Def. Br. at 7. To be eligible for safe harbor protections, "the relevant cautionary language must be ***prominent*** and ***specific***, and must ***directly address exactly*** the risk that plaintiffs claim was not disclosed." In re MF Glob. Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 304 (S.D.N.Y. 2013).* "Cautionary words about future risk cannot insulate from liability the failure to disclose that the risk has ***transpired***." *Rombach v. Chang*, 355 F.3d 164, 173 (2d Cir. 2004). Defendants' risk disclosure did not come anywhere close to conveying the undisclosed material weaknesses and the transpired fraud .[7] *See In re AIG, Inc. 2008 Sec. Litig.*, 741 F. Supp. 2d 511, 531 (S.D.N.Y. 2010) ("warnings of specific risks…do not shelter defendants from liability if they fail to disclose hard facts critical to appreciating the magnitude of the risks described."); *see also Hunt v. All. N. Am. Gov't Income Tr., Inc.*, 159 F.3d 723, 729 (2d Cir. 1998) (defendants' warning "that the Fund's hedging maneuvers might fail" did not adequately disclose the fact that "the Fund would have no opportunity to use hedging maneuvers").

---

[7] In fact, Defendants used the identical risk disclosure language in the 2016 Annual Report which assured the effectiveness of Tarena's internal controls as well as all previous annual reports, showing this risk disclosure is merely  vague, nonspecific boilerplate language.

**3. The Risk Warning Was Materially Misleading Because The Risk Had Materialized.**

The risk disclosures were also insufficient as they warned of potential events that in actuality were already occurring. "[E]ven apparently specific risk disclosures [] are misleading if the risks [are] significantly greater or more certain than those portrayed in the prospectus." *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487, 516 (S.D.N.Y. 2013). For example, a company misleads investors by warning that its business decisions might have an impact on revenues when these decisions already were having an impact. *Facebook*, 986 F. Supp. 2d at 516. Similarity, a company misleads investors by warning that shipping delays are possible when they are already happening. *In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK), 2020 WL 1950783, at *10 (E.D.N.Y. Apr. 22, 2020).

At the time the 2016 and 2017 Annual Reports were issued, the risks that Defendants warned "may" occur resulting from deficient internal controls—"inaccuracies in [Tarena's] financial statements", "impair[ment] to [Tarena's] ability to comply with applicable financial reporting requirements and related regulatory filings on a timely basis", "fraud," and "misuse of corporate assets"—had transpired. (AC p.31 ¶¶67,68.) Failure to disclose these materialized risks deprived investors of their right to make an informed decision as to their investment in Tarena. The inaccuracies in Tarena's financial statements are massive and "would substantially affect a reasonable investor's calculations of probability." *Jinkosolar, Ltd.*, 761 F.3d at 251. The risk warning therefore is materially misleading. *See Id.* at 250–251 ("Although this statement warned of a financial risk to the company from environmental violations, the failure to disclose then-ongoing and serious pollution violations would cause a reasonable investor to make an overly optimistic assessment of the risk."); *In re Van der Moolen Holding N.V. Sec. Litig.*, 405 F. Supp. 2d 388, 400, 415 (S.D.N.Y. 2005) (statements purporting to warn that a company's business

14

"could" be negatively impacted "if" it failed to comply with industry regulations were materially misleading when the company was violating industry regulations at the time it issued those purported warnings); *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1181 (9th Cir. 2009) *aff'd*, 563 U.S. 27 (2011) (finding a statement that "speaks about the risks of product liability claims in the abstract, with no indication that the risk 'may already have come to fruition'" actionable).

### C. The Complaint Sufficiently Alleges Scienter

#### 1. Standard

In evaluating scienter, "courts must, as with any motion to dismiss, accept all factual allegations in the complaint as true." *Tellabs*, at 322. The issue is "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation [] meets that standard." *Id.* at 322–23. For an inference of scienter to be strong, "a reasonable person would deem [it]… cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* In other words, a tie goes to Plaintiffs. The inference of scienter "need not be [] of the 'smoking gun' genre, or "irrefutable" or even the 'most plausible of competing inferences.'" *Id.* at 324. A plaintiff may plead scienter by alleging facts "(1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

#### 2. Motive and Opportunity

Motive and opportunity can be established by demonstrating that defendants benefitted "in a concrete and personal way" from the alleged fraud. *Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000). In order to plead opportunity, a plaintiff must "show that the individual defendants possessed 'the means and likely prospect of achieving concrete benefits by the means

15

alleged.'" *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 297 (S.D.N.Y. 2008) (*quoting Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994)).The opportunity to commit fraud is generally assumed where the defendant is a corporation or corporate officer. *See,e.g., In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453, 468 (S.D.N.Y. 2008); *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 16 3, 181 (S.D.N.Y. 2006) ("Regarding the 'opportunity' prong, courts often assume that corporations, corporate officers, and corporate directors would have the opportunity to commit fraud if they so desired.").

The Complaint sufficiently pleads Defendants Tarena and Han's scienter, especially with particularized facts of Han's motive and opportunity to commit fraud. In light of the detailed comparison of misreported and restated financial data, the Complaint alleges that Tarena significantly understated the service fees that the Company paid to Chuanbang, a company wholly owned by Defendant Han, in 2016 and 2017. Tarena falsely reported service fees of 2-12% (as opposed to the actual 2%~20%) of the amount collected, resulting in an understatement of 67% or RMB 774,000 (US$121,288) in undisclosed payment to Defendant Han personally. (AC pp.18-19,24-25 ¶¶59,75-77.) Defendant Han and his family members also pocketed RMB 41.127 million (US$6.42 million) from numerous undisclosed transactions between Tarena and companies they personally owned from 2016 to 2018. (AC pp. 15,18,24,27-28 ¶¶49,58,74,82.) As Tarena's CEO, Han signed all of the relevant SEC filings attesting to the Company's internal controls, while simultaneously looting Tarena's assets and engaging in undisclosed transfers of Company funds. (AC pp.19,20-21,25-26 ¶¶62,66,78.) "[I]he inference that [Defendants] did so with fraudulent intent is not merely strong, it is inescapable." *In re Advanced Battery Techs., Inc. Sec. Litig.*, No. 11 CIV. 2279 CM, 2012 WL 3

758085, at *11 (S.D.N.Y. Aug. 29, 2012) (Finding scienter for alleging undisclosed related party transactions between the company and its Chairman and CEO and earning overstatement.); *see also Acticon AG v. China N. E. Petroleum Holdings Ltd.*, 615 F. App'x 44, 45 (2d Cir. 2015) the dismissal decision as to the Sec. 10(b) claims against the company and CEO, finding motive and opportunity as to the two defendants because the CEO engaged in undisclosed self-dealing.) [8,9]

### 3. Conscious Misbehavior or Recklessness

Sufficient evidence of conscious misbehavior or recklessness exists if the factual allegations demonstrate that defendants (1) benefitted in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that their public statements were not accurate; or (4) failed to check information they had a duty to." *In re: EZCorp, Inc. Sec. Litigations*, 181 F. Supp. 3d 197, 209 (S.D.N.Y. 2016).

Contrary to Defendants' argument that the Complaint relies solely on GAAP violations or a restatement alone to support scienter, Def. Br. at 14-15, the Complaint alleges multiple facts which considered holistically have adequately established a strong reference of conscious misbehavior and recklessness on the part of each Individual Defendant. *See In re Computer Assocs.*

---

[8] Defendants' attempt to distinguish this case from *Advanced Battery* and *S.E.C. v. Escala Grp., Inc.*, No. 09CIV2646DLC, 2009 WL 2365548, at *13 (S.D.N.Y. July 31, 2009) is nonsensical. Like *Advanced Battery* and *Escala*, Plaintiffs here clearly allege Han and his family members personally benefitted from concealed transactions with Tarena. Han's scienter is in turn imputed to Tarena. *See Acticon AG*, 615 F. App'x at 45.

[9] The cases Defendants cite on this point, Def. Br. at 12-13, are inapplicable because the Complaint details the specific related party transactions that each of the SEC filings at issue failed to disclose as well as the parties, their relationships to Tarena, the unreported amount, and the timing of each of the undisclosed related party transactions. Def. Br. 12-13. (AC pp.19-20,21,26 ¶¶64,68,80.) *See*, *Novak*, 216 F.3d 300 (a complaint sufficiently pleads scienter with particularity if it "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.")

*Class Action Sec. Litig.*, 75 F. Supp. 2d 68, 74 (E.D.N.Y. 1999) (finding falsity and scienter based on plaintiffs' allegation of intentionally violative accounting practices, inflated revenues in conjunction with accounting improprieties.)

First, misstated financials was admittedly caused by "*intentional* revenue inflation, *inaccurate* student account status and loan data …, *premature* recognition of revenue…, [] *inaccurate* accounting treatment of tuition refund", undisclosed "guarantee" for borrowed tuition, "*improper* charges against accounts receivable and/or bad debts", "irregular expenses", "*interfere[nce]*] with the external audit", and failure to disclose material related party transactions between Tarena and its CEO and Chairman Defendant Han during the Class Period. (¶¶39-40,51,52,58,65,69,72,74,81.) The Restatement is the result of blatant accounting fraud, demonstrating Defendants' conscious misbehavior. *See Novak*, 216 F.3d at 311 (finding scienter when defendants acted "intentionally and deliberately to artificially inflate [the company's] reported financial results"); *also see In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 231–32 (S.D.N.Y. 2006) ("accounting manipulations involving premature revenue recognition … are especially indicative of conscious misbehavior since such violations do not commonly occur inadvertently, but instead suggest a conscious decision to improperly recognize revenue."); *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS), 2005 WL 2277476, at *20 (E.D.N.Y. Sept. 19, 2005) ("premature revenue recognition … is less likely to be an inadvertent mistake.")

Second, Defendant Han, and his family members directly benefitted from the undisclosed related party transactions and thus Han is "inescapable" from an inference of scienter. *Advanced Battery*, at *11; *see also Plymouth Cty. Ret. Ass'n v. Schroeder*, 576 F. Supp. 2d 360, 382–83 (E.D.N.Y. 2008) (supporting finding of *scienter* with allegations that directors were personally

18

involved in transactions at issue); (AC pp.15,18-19,24-25,27-28 ¶¶49, 8,59,74-77,82.) Moreover, disclosure of a portion of the transaction between Tarena and Chuanbang indicates Han and Tarena's knowledge of the material related party transactions and the relevant SEC requirements. (¶59.) Concealing the actual transaction amount and all material related party transactions between Tarena and Han and his family members strongly supports Defendants Han and Tarena's conscious misbehavior. *S.E.C. v. Escala Grp., Inc.*, No. 09CIV2646DLC, 2009 WL 2365548, at *13 (S.D.N.Y. July 31, 2009) (finding scienter when the defendant "knew of the obligation to disclose related parties but deliberately failed to do so.")

Third**,** that the Restatement nearly corrected every line item of the Tarena's financial statements between 2014 and 2018 supports an inference that Defendants' conduct was, at a minimum, reckless. (AC pp.15-28 ¶¶50-83; AC Exs. 3,4.) For example, Tarena overstated its net revenue to make it look profitable; in reality, however, Tarena suffered a net loss in 2017 and 2018. The net revenue for 2014 through 2018 was overstated by $110 million and gross profit by $104 million. Accounts receivable (net of allowance for doubtful accounts) for 2014 through 2018 were inflated by 441%. (¶46.) Defendants failed to disclose 99% of material related party transactions in 2016 through 2018 despite their knowledge of the relevant SEC requirements. Han and Yang signed the financial statements containing these material misstatements. (AC 19,20-21 ¶¶62,66.) "[W]hen the number, size, timing, nature, frequency, and context of the misapplication or restatement are taken into account, the balance of the inferences to be drawn from such allegations may shift significantly in favor of scienter." *Scottish*, 524 F. Supp. 2d at 394 n.174; *see also Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (stating that the magnitude of write-downs involved "renders less credible" defendants' argument that they acted without scienter); *In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194, 215 (S.D.N.Y. 1999) (the magnitude of the $30

19

million fraud and the fact that CEO and COO signed the financial statements at question strongly support scienter.) [10],[11]

Fourth, "a failure to maintain sufficient internal controls to avoid fraud is sufficiently indicative of scienter." *Veeco Instruments, Inc.,* 235 F.R.D. at 232; *In re Oxford Health Plans, Inc. Sec. Litig.*, 51 F. Supp. 2d 290, 294 (S.D.N.Y. 1999). Han and Yang personally participated in designing and evaluating Tarena's internal controls during the Class Period. They certified that they were responsible for establishing and maintaining an adequate internal control. (¶35.) They also certified the accuracy of financial reporting and the disclosure of all fraud. (AC 19,20-21 ¶¶62,66.) But the 2018 Annual Report revealed that they "fail[ed] to provide oversight for the system of internal control", among the numerous material weaknesses in Tarena's internal controls, showing that they lied about their efforts to maintain an effective internal controls. (AC p.30 ¶65.) "[I]ntent to deceive, manipulate, or defraud, or at least knowing misconduct" supports

---

[10] Other examples include *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 636 (E.D. Va. 2000) (finding a strong inference of scienter where income was overstated by 290%); *In re Rent-Way Sec. Litig.*, 209 F. Supp. 2d 493, 506–07 (W.D. Pa. 2002) (income restated downward by 152% supported a strong inference of scienter); *Roth v. AON Corp.*, No. 04-C-6835, 2008 WL 656069, at *7 (N.D. Ill. Mar. 7, 2008) (finding scienter established, in part, because of a 20% overstatement of income); *In re Seitel, Inc. Sec. Litig.*, 447 F. Supp. 2d 693, 705 (S.D. Tex. 2006)  ("The court finds that the magnitude of the restatement, in this case, significantly contributes to a finding of scienter."); and *Atlas v. Accredited Home Lenders Holding Co.*, 556 F. Supp. 2d 1142, 1156 (S.D. Cal. 2008) ("the sizable impact on [the company]'s reported earnings of these alleged violations of GAAP also support an inference of scienter").

[11] Tarena misreads *In re Turquoise Hill Res. Ltd. Sec. Litig.*, No. 13 CIV. 8846 LGS, 2014 WL 7176187, at *6 (S.D.N.Y. Dec. 16, 2014). Def. Br. at 14-15. Nowhere in *Turquoise Hill* do plaintiffs allege "intentional" accounting overstatement. *Turquoise Hill* is also factually distinguishable. There, the misreported financial statements were issued by the corporate defendant's subsidiary. It is reasonable for a parent company to rely on a subsidiary's audited financial statements. *Id.*, at *6.  Moreover, plaintiff in *Turquoise Hill* failed to allege additional circumstantial evidence in tandem with the magnitude of a restatement or the misapplication of GAAP to show scienter. *Id.*, at *7. But here, the Complaint additionally alleges numerous facts as discussed in the scienter section.  For the same reason*, In re Iconix Brand Grp., Inc.*, No. 15 CIV. 4860 (PGG), 2017 WL 4898228, at *18 (S.D.N.Y. Oct. 25, 2017) is factually distinguishable because the plaintiff failed to allege any circumstantial evidence besides accounting errors.

scienter. *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1467 (2d Cir. 1996); *see also Dobina v. Weatherford Int'l Ltd.*, 909 F. Supp. 2d 228, 246 (S.D.N.Y. 2012) (finding scienter regarding defendants' statements about internal controls based on almost the same facts as this case.) Defendants' revelation of a single weakness and remedial measures to be taken cannot exculpate them from liability. Def. Br. at 18,20. As discussed above, the 2018 Annual Report revealed that not only did Defendants fail to cure this weakness, but the deficiency of the internal controls was much more severe than previously disclosed. (AC p.30 ¶65.) "[W]here defendants acknowledge that control deficiencies exist and state that they are being addressed, the failure to cure those deficiencies "evinces scienter." *Stocke v. Shuffle Master, Inc.*, 615 F. Supp. 2d 1180, 1191 (D. Nev. 2009).[12]

Fifth, Han and Yang's SOX certifications attesting to the effectiveness of Tarena's internal controls and that the accuracy of its financial reporting in the 2016 and 2017 Annual Reports also supports a strong inference of scienter because their certifications belied the truth of the existing numerous material weaknesses in the internal controls and the magnitude of misstated financial data. (AC 19,20-21 ¶¶62,66.) *See In re OCA, Inc. Sec. & Derivative Litig.*, No. 05-2165, 2006 WL 3747560, at *22 (E.D. La. Dec. 14, 2006)(finding support for scienter where defendants certified controls were effective while at the same time failing to disclose serious and unremedied internal control problems); *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 289–90 (D.N.J. 2007) (same).

---

[12] Plaintiffs' confidential witness's ("CW") statements should be credited. The Complaint sufficiently describe CW's position and job responsibilities to indicate his personal knowledge of the fraud. The top executives at his workplace are Defendant Han and one of Tarena's vice presidents. (¶72.) CW's statements regarding the irregular expenses incurred by the top management of his workplace therefore (¶¶70-71) corroborate the "independent factual allegations" regarding the accounting fraud alleged in the Complaint and should be credited. (¶¶50-68.) *See Atlas Air*, 324 F. Supp. 2d at 493 n.10.

These allegations are also sufficient to support Tarena's corporate scienter because given Han's CEO position and Yang's CFO position, their scienter can be imputed to the Company. *See Rex & Roberta Ling Living Tr. u/a Dec. 6, 1990 v. B Commc'ns Ltd.*, 346 F. Supp. 3d 389, 409 (S.D.N.Y. 2018) ("where a company's highest-level directors allow the company's outward-facing communications to omit their own known, material misconduct, they can fairly be said to act on behalf of the company regardless of whether the underlying misconduct itself benefits the company."); *see also Acticon AG*, 615 F. App'x at 45 (imputing to a company the scienter of a CEO who "attest[ed] to the company's internal controls, while allegedly simultaneously looting [the company's] treasury and engaging in unauthorized transfers of company funds").[13]

### 4. Defendants' Alternative Nonfraudulent Inference is Untenable

As its version of nonculpable state of mind, Tarena argues that Defendants believed the accuracy of Tarena's annual reports when issued and promptly investigated and corrected misstatements. Def. Br. at 19-20. This argument contradicts Defendants' admission and is anything but compelling. As discussed above, Defendants' intentional accounting fabrication refutes their honest belief of the financial data's accuracy. (¶40.) In fact, in the very 2017 Annual Report disclosing the weakness and pledging to remedy, Defendants still fabricated almost all line items of the 2017 financial statement. (*See* AC pp.20-25 ¶¶66-77; AC Exs. 3,4.) Defendants misled the market by disclosing one weakness in its internal controls—accompanied by a meaningless generic

---

[13] Tarena's repeated, baseless argument that the Complaint fails to allege Individual Defendants' knowledge, Def. Br. at 14-17, contradicts the pervasive evidence in support of, at the minimum, recklessness. The Complaint sufficiently meets the pleading standards. *See In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001) ("[courts] do not require pleading of detailed evidentiary matters."); *see also In re Bausch & Lomb, Inc. Sec. Litig.*, 941 F. Supp. 1352, 1361 (W.D.N.Y. 1996) ("Since many of these facts lie particularly within defendants' knowledge, plaintiffs cannot reasonably be expected to be able to state at this stage exactly when and how defendants learned that B & L's sales figures were being overstated."); *In re Craftmatic Securities Litigation,* 890 F.2d 628, 645 (3d Cir.1989) ("Particularly in cases of corporate fraud, plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs").

warning—while hiding numerous other material weaknesses. (AC p.30 ¶65.) Defendants further misled the market when they assured investors that they were taking remedial steps but in fact made no such efforts. (*Id*.)

Investigation uncovering extensive accounting fraud at the end of the Class Period, Def. Br. at 20, cannot negate Defendants' scienter because all alleged financial misstatements occurred before the investigation.[14] *In re Inv. Tech. Grp., Inc. Sec. Litig.*, No. 15 CIV. 6369 (JFK), 2018 WL 1449206, at *6 (S.D.N.Y. Mar. 23, 2018) (citing *In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 407 (S.D.N.Y. 2016)) (If the internal investigation did not "uncover any unlawful activity of a material proportion," or if it revealed that the misconduct had been resolved, then the more compelling inference to be drawn is an alternative non-fraudulent one.)

**D. <u>Plaintiffs Can Properly Represent the Class Regarding All Misstatements Made During the Class Period.</u>**

In reliance on its misinterpretation of case law, Tarena erroneously argues that Plaintiffs cannot represent the Class to assert claims arising from misstatements and omissions made after their respective purchases of Tarena ADSs. Def. Br. at 23-24. But in *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90 (2d Cir. 2021), the plaintiff failed to allege *any* actionable misstatements *before* its share purchase. The court therefore ruled that the plaintiff could not maintain a claim premised *exclusively* on statements made after the plaintiff's final purchase of securities. *Id*., at 104; *see also Denny v. Barber*, 576 F.2d 465 (2d Cir. 1978) (same).

---

[14] *In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405 (S.D.N.Y. 2007) is inapposite because defendant Hennessee (unlike Tarena) is not the company (Bayou) that manufactured the fraud, but rather an investment advisor that innocently recommended plaintiffs to buy the defrauding company's stock. The *Bayou* court found Hennessee's scienter less compelling because Bayou deceived the entire investing community, including "the SEC, the IRS, and every other interested party that reviewed Bayou's finances". Hennessee should not have been expected to meet a higher due diligence standard than everyone else did. *Id.,* at 418.

Def. Br. at 23.[15] But here, the Complaint alleges actionable misstatements and omissions issued *before* Plaintiffs purchased their ADSs. (¶¶17-19; Rosen Lead Plaintiff Motion Ex. 3 (Dkt. 6-3); AC Exs.1,2.) This is really a typicality argument. Plaintiffs here have the same incentive to prove the same underlying fraud arising from the same course of misconduct. *See In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 87 (S.D.N.Y. 2007), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) (a class representative is entitled to assert Section 10(b) claims arising from statements made both before and after the purchase date if the statements allegedly were made in furtherance of a common scheme to defraud.)

*Nicholas v. Poughkeepsie Sav. Bank/FSB*, No. 90 CIV. 1607 (RWS), 1990 WL 145154 (S.D.N.Y. Sept. 27, 1990) is instructive. The defendants in *Nicholas* raised the same argument as Tarena does here that the lead plaintiff could not rely on statements made by defendants following her purchase of company stock as the basis for her claims. The court rejected this proposition, holding that

> [The lead plaintiff] has alleged a common course of conduct by defendants to harm the Class. Whether plaintiff and other class members bought early in the Class Period or late, they are all alleged to have been injured by the inter-related misstatements and omissions.... [D]efendants' argument implies that only someone who bought on the last day of a Class Period would be able to bring an action.... Such arguments have been made and rejected in other courts. *Id.,* at *5

*See also Robbins v. Moore Med. Corp.*, 788 F. Supp. 179, 187 (S.D.N.Y. 1992) (same); Green v. Wolf Corporation, 406 F.2d 291, 299–300 (2d Cir.1968), cert. denied, 395 U.S. 977 (1969); *Shamberg v. Ahlstrom*, 111 F.R.D. 689, 697 (D.N.J. 1986); *Vivendi*, (citing *Nicholas*, 1990 WL 145154, at *6) (ruling that the class representative may adequately represent later

---

[15] *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813 (2011) and *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 268 (2014) are inapposite here because they do not address the reliance or standing issue relating to misstatements issued after a lead plaintiff's share purchase. Def. Br. at 23.

purchasers during the class period). Hence, Plaintiffs are entitled to assert a §10(b) claim arising from statements made both before and after the purchase dates during the Class Period on behalf of the Class.

### E.   The Complaint Alleges Section 20(a) Liability[16]

The Complaint establishes a prima facie case under § 20(a), because it shows "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that [Han and Yang were], in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Communications, Inc.*, 493 F.3d at 108; see also *Acticon AG*, 615 F. App'x at 45 (finding control person liability as to CEO defendant and the director defendant who played a culpable role in its fraud).

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny Tarena's motion in its entirety. [17]

---

[16] Tarena's counsel, who does not represent Han and Yang and has refused to accept service on their behalf, argues against control person liability on behalf of Han and Yang. Should the Court entertain this argument, the Court should order Tarena's counsel to accept service on behalf of Han and Yang.

[17] If the Court grants any part of the motion, it should grant leave to amend. *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 55 (2d Cir. 1995) (courts should be especially liberal in allowing amendment in cases of dismissed securities fraud claims).

Dated: April 4, 2022                    Respectfully submitted,

                                        **THE ROSEN LAW FIRM, P.A.**

                                        /s/ Phillip Kim
                                        Phillip Kim, Esq.
                                        (Pronouns: he/him/his)
                                        Jing Chen, Esq.
                                        (Pronouns: she/her/hers)
                                        275 Madison Avenue, 40th Floor
                                        New York, New York 10016
                                        Telephone: (212) 686-1060
                                        Fax: (212) 202-3827
                                        Email: pkim@rosenlegal.com
                                                jchen@rosenlegal.com

                                        *Lead Counsel for Lead Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2022, the foregoing was served via email upon the following:

Scott D. Musoff
(scott.musoff@skadden.com)
Robert A. Fumerton
(robert.fumerton@skadden.com)
Michael C. Griffin
(michael.griffin@skadden.com)

**SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP**
One Manhattan West
New York, New York 10001
Phone: (212) 735-3000
Fax: (212) 735-2000

*Attorneys for Defendant Tarena
International, Inc.*

/s/Phillip Kim

27