**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| YILI QIU, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>        v.<br><br>TARENA INTERNATIONAL, INC., SHAOYUN HAN, and YUDUO YANG,<br><br>    Defendants. | CASE No.: 1:21-cv-03502-PKC-RML |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR ENTRY OF ORDER PRELIMINARILY APPROVING SETTLEMENT AND
<u>ESTABLISHING NOTICE PROCEDURES</u>**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................................. 1

II.   SUMMARY OF THE LITIGATION AND THE SETTLEMENT ....................................... 2

    A.   Procedural History ..................................................................................................... 2

    B.   Settlement Negotiations .............................................................................................. 2

III.  THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES ............................................................................................... 3

    A.   Numerosity ................................................................................................................. 3

    B.   Commonality ............................................................................................................... 4

    C.   Typicality .................................................................................................................... 5

    D.   Adequacy .................................................................................................................... 6

        1.   Adequacy of the Proposed Class Representatives ........................................... 7

        2.   Rule 23(g) Adequacy of the Proposed Class Counsel .................................... 7

    E.   Common Questions Predominate and the Class is Superior to Other Methods of Adjudication ................................................................................................................ 8

IV.   THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ........ 10

    A.   Standards for Preliminary Approval ......................................................................... 10

    B.   A Settlement Should be Preliminarily Approved if it is Procedurally and Substantively Fair ..................................................................................................... 12

    C.   The Settlement is Fair, Reasonable, and Adequate in Light of the Rule 23(e)(2)  Factors and Remaining *Grinnell* Factors ................................................................ 12

        1.   Plaintiffs and Their Counsel Have Adequately Represented the Class ...................... 13

        2.   The Proposed Settlement is the Result of Good Faith Arm's-Length Negotiations by Informed, Experienced Counsel ................................................................................. 14

        3.   The Proposed Settlement is a Highly Favorable Result for the Class in Light of the Settlement's Benefits and the Risks of Continued Litigation ..................................... 15

a) The Complexity, Expense, and Likely Duration of the Litigation ...................... 16

b) The Risk of Establishing Liability and Damages ................................................. 17

4. The Proposed Method for Distributing Relief Is Effective......................................... 18

5. Attorneys' Fees, Reimbursement of Expenses and Award to Plaintiffs..................... 18

6. The Parties Have Agreed to a Side Agreement Regarding Opt-Outs......................... 19

7. There Was No Preferential Treatment; The Plan Is Designed to Treat Settlement Class Members Equitably ........................................................................................... 19

8. The Remaining *Grinnell* Factors Support Preliminary Approval............................... 20

V. THE PROPOSED NOTICE SATISFIES FED. R. CIV. P. 23, THE PSLRA, AND DUE PROCESS ........................................................................................................................... 23

VI. PROPOSED SCHEDULE OF EVENTS............................................................................ 25

VII. CONCLUSION.................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackerman v. Coca-Cola Co.*,
No. 09 CV 395 DLI RML, 2013 WL 7044866 (E.D.N.Y. July 18, 2013) ................................. 9

*Amchem Products, Inc., v. Windsor*,
521 U.S. 591 (1997) ....................................................................................................... 3, 9, 10

*Baker v. SeaWorld Entm't, Inc.*,
No. 14CV2129-MMA (AGS), 2020 WL 818893 (S.D. Cal. Feb. 19, 2020) ........................... 24

*Cagan v. Anchor Sav. Bank FSB*,
No. CV-88-3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) ................................................. 16

*Carson v. Am. Brands, Inc.*,
450 U.S. 79 (1981) ................................................................................................................. 11

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
504 F.3d 229 (2d Cir. 2007) ..................................................................................................... 4

*Cheng Jiangchen v. Rentech, Inc.*,
No. CV 17-1490-GW(FFMX), 2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ........................ 14

*Christine Asia Co., Ltd. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y., 2019) ................................................................................. 12, 19

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ........................................................................................... *passim*

*Consol. Edison, Inc. v. Ne. Utilities*,
332 F. Supp. 2d 639 (S.D.N.Y. 2004) ..................................................................................... 23

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995) ....................................................................................................... 4

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ..................................................................................................... 14

*Espinoza v. 953 Assocs. LLC*,
280 F.R.D. 113 (S.D.N.Y. 2011) ............................................................................................... 8

*Fogarazzao v. Lehman Bros.*,
232 F.R.D. 176 (S.D.N.Y. 2005) ............................................................................................... 7

iii

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
903 F.2d 176 (2d Cir. 1990) ................................................................................. 6

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) ........................................................................................... 21

*Hefler v. Wells Fargo & Co.*,
No. 16-CV-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) .................................... 19

*In re "Agent Orange" Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984) .......................................................................... 21

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) ............................................................................ 23

*In re Akazoo S.A. Sec. Litig.*,
No. 1:20-CV-01900-BMC, 2021 WL 4316717 (E.D.N.Y. Sept. 10, 2021) ............................. 18

*In re Am. Bank Note Holographics, Inc.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001) ................................................................. 16, 20

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
No. 17-CV-04846-NGG-PK, 2021 WL 345790 (E.D.N.Y. Feb. 1, 2021) ............................... 23

*In re Citigroup Inc. Bond Litig.*,
296 F.R.D. 147 (S.D.N.Y. 2013) ............................................................................ 19

*In re Comverse Tech., Inc. Sec. Litig.*,
2010 WL 2653354 (E.D.N.Y. June 24, 2010) ............................................................. 16

*In re Drexel Burnham Lambert Grp., Inc.*,
960 F.2d 285 (2d Cir. 1992) ................................................................................ 6, 7

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
2007 WL 2230177 (S.D.N.Y. July 27, 2007) ....................................................... *passim*

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
312 F.R.D. 332 (S.D.N.Y. 2015) ............................................................................. 5

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ............................... 22

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................................... 5, 21

iv

*In re GTT Commc'ns, Inc. Sec. Litig.*,
  No. 2:21-CV-00270-DOC-AS, 2021 WL 6618727 (C.D. Cal. Dec. 6, 2021) .......................... 24

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) ................................................................. 11, 20, 22

*In re Indep. Energy Holdings PLC*,
  2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ........................................................ 14

*In re Initial Pub. Offering Sec. Litig.*,
  243 F.R.D. 79 (S.D.N.Y. 2007)................................................................................. 12

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
  233 F.R.D. 306 (E.D.N.Y. 2006) ............................................................................. 15

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
  No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ....................... 6, 10, 21

*In re MetLife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010)...................................................................... 22

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ............................................................................... 11

*In re Pfizer Inc. Sec. Litig.*,
  282 F.R.D. 38 (S.D.N.Y. 2012)................................................................................. 4

*In re Platinum & Palladium Commodities Litig.*,
  2014 WL 3500655 (S.D.N.Y. July 15, 2014) ............................................................ 12

*In re Polaroid ERISA Litig.*,
  240 F.R.D. 65 (S.D.N.Y. 2006)................................................................................ 7

*In re PPDAI Grp. Inc. Sec. Litig.*,
  No. 18-CV-6716 (TAM), 2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) ......................... 14, 16

*In re Sadia, S.A. Sec. Litig.*,
  269 F.R.D. 298 (S.D.N.Y. 2010) .............................................................................. 4

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2020 WL 4196468 (S.D.N.Y. July 21, 2020) ............................................................ 16

*In re Tremont Sec. L., State L. & Ins. Litig.*,
  No. 08-CV-11117, 2015 WL 5333494 (S.D.N.Y. Sept. 14, 2015)................................ 20

*In re Twinlab Corp. Sec. Litig.*,
    187 F. Supp. 2d 80 (E.D.N.Y. 2002) ................................................................................. 6

*In re Vivendi Universal, S.A.*,
    242 F.R.D. 76 (S.D.N.Y. 2007) ..................................................................................... 4, 5

*Johnson v. Nextel Commc'ns Inc.*,
    780 F.3d 128 (2d Cir. 2015) ............................................................................................ 5

*Karvaly v. eBay, Inc.*,
    245 F.R.D. 71 (E.D.N.Y. 2007) ...................................................................................... 3

*Kristal v. Mesoblast Ltd.*,
    No. 7:20-CV-08430-PMH, 2022 WL 3442535 (S.D.N.Y. Aug. 15, 2022) .............................. 18

*Lea v. Tal Educ. Grp.*,
    No. 18-CV-5480 (KHP), 2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ........................... 12, 19

*Leung v. Home Boy Rest. Inc.*,
    2009 WL 398861 (S.D.N.Y. Feb. 18, 2009) .................................................................... 14

*Marisol A. by Forbes v. Giuliani*,
    929 F. Supp. 662 (S.D.N.Y. 1996) ................................................................................... 5

*Morris v. Affinity Health Plan, Inc.*,
    859 F. Supp. 2d 611 (S.D.N.Y. 2012) ............................................................................. 16

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972) .......................................................................................... 22

*Palacio v. E*TRADE Fin. Corp.*,
    No. 10 Civ. 4030 (LAP) (DCF), 2012 U.S. WL 2384419, at *7 (S.D.N.Y. June 22, 2012) .... 10

*Pasini v. Fishs Eddy, LLC*,
    No. 1:16-CV-00354-PGG, 2018 WL 6843905 (S.D.N.Y. Nov. 15, 2018) ............................. 20

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ...................................................................................................... 9

*Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*,
    No. 11-CV-05801 DLI VVP, 2012 WL 3746220 (E.D.N.Y. Aug. 27, 2012) ......................... 17

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993) ........................................................................................... 3

vi

*Seijas v. Republic of Argentina*,
   606 F.3d 53 (2d Cir. 2010) .................................................................................... 9

*Shapiro v. JPMorgan Chase & Co.*,
   No. 11 CIV. 7961 CM, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ................................... 23

*Spann v. AOL Time Warner Inc.*,
   No. 02 CIV. 8238DLC, 2005 WL 1330937 (S.D.N.Y. June 7, 2005) ...................................... 10

*Vargas v. Cap. One Fin. Advisors*,
   559 F. App'x 22 (2d Cir. 2014) ..................................................................................... 23

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) ......................................................... 5

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) .................................................................................... 10, 14

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982) ........................................................................................ 3

**Statutes**

15 U.S.C. § 78aa ............................................................................................................ 9

15 U.S.C. § 78u-4 ............................................................................................. 19, 23, 24

**Rules**

Fed. R. Civ. P. 23 ............................................................................................... *passim*

**Other Authorities**

7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at 528 (1986).... 9

*Manual for Complex Litigation* (Fourth) § 21.632 ......................................................... 3

Pursuant to Fed. R. Civ. P. 23, Lead Plaintiff Walter De Schutter and Named Plaintiffs Steven Clauter and Cynthia Lewis ("Plaintiffs") respectfully submit this memorandum in support of their Unopposed Motion for Preliminary Approval of the Class Action Settlement.

## I.    INTRODUCTION

Plaintiffs and Tarena International, Inc. ("Tarena" or the "Company" and with Plaintiffs, the "Settling Parties"), have agreed to settle this putative class action for $3,500,000 by the terms stated in the Stipulation of Settlement, dated August 31, 2022 ("Stipulation"), filed herewith. By this motion, Plaintiffs respectfully request the Court enter an order: (1) preliminarily certifying the Settlement Class[1]; (2) preliminarily approving the terms of the Settlement as set forth in the Stipulation; (3) approving the form and method for providing notice of the Settlement; and (4) scheduling the Settlement Fairness Hearing at which the Court will consider the request for final approval of the Settlement, the Plan of Allocation (the "Plan") of Settlement proceeds, the request for attorneys' fees, expenses and compensatory awards, and entry of the final judgment.

The Settlement was achieved only after substantial arm's-length negotiations with the aid of an experienced and respected mediator, Robert A. Meyer, Esq. of JAMS. This cash settlement provides an immediate and guaranteed recovery for the Settlement Class, a highly favorable result in light of obstacles that Plaintiffs face in pleading and proving their claims. Plaintiffs believe that the proposed Settlement is fair, reasonable, and adequate, and is in the Settlement Class's best interest. Similarly, the proposed content and manner of providing notice satisfies requirements imposed by Fed. R. Civ. P. 23, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and due process.

---

[1] Unless otherwise defined herein, all capitalized terms have the same meaning as specified in the Stipulation.

## II.    SUMMARY OF THE LITIGATION AND THE SETTLEMENT

### A.    Procedural History

On June 22, 2021, Yili Qiu filed a putative securities fraud class action complaint against Defendants alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). Dkt. No. 1. On September 1, 2021, Magistrate Judge Robert M. Levy appointed De Schutter as Lead Plaintiff and The Rosen Law Firm, P.A. as Lead Counsel.

On November 1, 2021, Plaintiffs filed the Amended Class Action Complaint For Violations of the Federal Securities Laws ("Complaint"). Dkt. No. 17. On December 16, 2021, Tarena filed a letter motion requesting a pre-motion conference for its anticipated motion to dismiss. Dkt. No. 18. Plaintiffs filed a responsive letter on December 23, 2021. Dkt. No. 19. On January 3, 2022, the Court entered an order finding that a pre-motion conference was unnecessary and directed the parties to submit a proposed schedule. The parties submitted a briefing schedule on January 10, 2022 (Dkt. No. 20), which the Court so-ordered the following day. Pursuant to the Court's individual rules, Tarena served upon Plaintiffs a motion to dismiss on January 18, 2022. On April 4, 2022, Plaintiffs served upon Tarena their opposition to the motion to dismiss. On May 19, 2022, Plaintiffs and Tarena filed copies of the fully briefed motion to dismiss. Dkt. Nos. 24-29.

On July 13, 2022, with Tarena's permission, Plaintiffs notified the Court that an agreement in principle to resolve the Action had been reached. Dkt. No. 30.

### B.    Settlement Negotiations

On June 2, 2022, the Settling Parties participated in a full-day mediation with Mr. Meyer. While they did not reach an agreement at the mediation, the Settling Parties continued settlement

2

negotiations in the days following the mediation with Mr. Meyer's assistance. On July 13, 2022, the Settling Parties agreed to Mr. Meyer's "mediator's proposal" and arrived at the Settlement.

## III.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

In preliminarily approving the proposed Settlement, this Court must consider whether to certify the Settlement Class for settlement purposes under Rules 23(a) and (b)(3). *Amchem Products, Inc., v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23). The Second Circuit has long acknowledged the propriety of certifying a class solely for settlement purposes. *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). Before granting preliminary approval of a class action settlement, however, the Court should determine if the proposed settlement class is proper for settlement purposes. *Amchem,* 521 U.S. at 620; *Manual for Complex Litigation* (Fourth) § 21.632. To certify a class, the Court must determine whether the threshold requirements of Rule 23(a) are met: numerosity; commonality; typicality; and adequacy of representation. *Amchem*, 521 U.S. at 613. Additionally, the action must be maintainable under Rule 23(b). *Id.* at 614. In certifying the Settlement Class, the Court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial." *Id.* at 620; *see also* Fed. R. Civ. P. 23(b)(3)(D). Now, the Court need not conduct a rigorous analysis to determine whether to certify a settlement class, but should reserve this analysis for final approval. *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007). Here, the proposed Settlement Class meets the requirements of and satisfies Rule 23(a) and 23(b)(3).

### A.    Numerosity

Rule 23(a)(1) requires a class be so large that joinder of all members is "impracticable." For purposes of Rule 23(a)(1), "[i]mpracticable does not mean impossible," *Robidoux v. Celani*,

3

987 F.2d 931, 935 (2d Cir. 1993), and Plaintiffs must only show "that the difficulty or inconvenience of joining all members of the class make the use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). Indeed, "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *see also In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 83 (S.D.N.Y. 2007), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) ("Precise quantification of the class members is not necessary because a court may make common sense assumptions regarding numerosity"). Although the exact size of the Settlement Class is not yet known, numerosity is generally satisfied in a securities class action as "a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 WL 2230177, *12 (S.D.N.Y. July 27, 2007) (numerosity requirement is generally met in cases involving nationally traded securities.). Here, there are likely at least hundreds if not thousands of potential Settlement Class Members as Tarena's ADSs were publicly traded on NASDAQ with approximately 43.4 million damaged shares during the Settlement Class Period. Thus, the numerosity requirement is met.

### B. Commonality

Commonality requires that "questions of law or fact [are] common to the class." *EVCI*, 2007 WL 2230177, at *13. Securities fraud cases easily meet the commonality requirement, which is satisfied where it is alleged that "putative class members have been injured by similar material misrepresentations and omissions." *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012). Moreover, securities class actions are particularly well-suited to class treatment as the commonality requirement "is applied permissively." *EVCI*, 2007 WL 2230177, at *13; *see also Vivendi*, 242 F.R.D. 84. Commonality does not mean that all class members must make identical

4

claims and arguments, but only that "named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 451 (S.D.N.Y. 2004). The common issue must be of such a nature that it is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (*quoting Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011)). Commonality is satisfied if the plaintiffs charge defendants with a common course of misconduct – particularly where, as here, the alleged misrepresentations appeared in the company's public filings and statements. *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 341 (S.D.N.Y. 2015). Here, commonality is met due to common questions of law and fact pertaining to whether false statements of material fact were made in Tarena's SEC filings and public statements, whether the statements were made with scienter, and what is the measure of damages.

### C.    Typicality

Rule 23(a)(3) requires that the representative's claim be typical of those of the class members. Typicality requires that "the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *Marisol A. by Forbes v. Giuliani*, 929 F. Supp. 662, 691 (S.D.N.Y. 1996), *aff'd sub nom. Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997). "Typical," however, does not mean identical. *EVCI*, 2007 WL 2230177, at *13.; *Vivendi*, 242 F.R.D. at 85 ("In prosecuting their case, plaintiffs will necessarily seek to develop facts relating to the … dissemination of allegedly false or misleading statements underlying their claims. Such allegations are generally considered sufficient to satisfy the typicality requirement"). Particular factual differences, differences in the amount of damages claimed, or even the availability of certain defenses against a class representative may not render

5

his or her claims atypical. *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990); *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *10 (S.D.N.Y. Dec. 23, 2009) ("[f]actual differences involving the date of acquisition, type of securities purchased and manner by which the investor acquired the securities will not destroy typicality if each class member was the victim of the same material misstatements and the same fraudulent course of conduct.").

Plaintiffs alleged a common course of unlawful conduct affecting all Settlement Class Members. Just like the other members of the proposed Settlement Class, Plaintiffs purchased Tarena ADSs at prices that were allegedly artificially inflated by Defendants' alleged misrepresentations, and were harmed in the same way when the truth emerged. *See In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002) (typicality is met where all class members were allegedly harmed by the same course of conduct, namely "the distribution of false and misleading information which artificially inflated the stock"). Plaintiffs' claims stand or fall with those of the Settlement Class, and thus, they are typical.

### D.  Adequacy

Rule 23(a)(4) requires that the representative parties fairly and adequately protect the class's interests. This requirement traditionally entails a two-pronged inquiry: first, the showing that the interests of the representative parties will not conflict with the interests of Settlement Class Members, and second, the representative parties' counsel is qualified, experienced, and able to conduct the litigation vigorously. *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *EVCI*, 2007 WL 2230177, at *13. Plaintiffs are adequate if their interests do not conflict with those of the class. Pursuant to Rule 23(g), adequacy of proposed class counsel is now considered separately from the determination of the adequacy of the proposed class representatives. In any event, both prongs of the adequacy requirement are satisfied here.

6

### 1. Adequacy of the Proposed Class Representatives

Plaintiffs do not have interests antagonistic to those of the proposed Settlement Class Members. Plaintiffs purchased Tarena ADSs during the Settlement Class Period and were damaged thereby. Plaintiffs are seeking, on their own behalf and on behalf of all members, to recover from Tarena damages caused by Defendants' alleged misconduct. Plaintiffs' interests are aligned with other Settlement Class Members' interests as they share the common objective of maximizing their recovery from Tarena. *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.") (citing *Drexel*, 960 F.2d. at 291). Thus, Plaintiffs should be deemed class representatives.

### 2. Rule 23(g) Adequacy of the Proposed Class Counsel

Rule 23(g) requires a court to assess the adequacy of proposed class counsel. To that end, the Court must consider the following: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *Fogarazzao v. Lehman Bros.*, 232 F.R.D. 176, 182 (S.D.N.Y. 2005). Lead Counsel has extensive experience successfully prosecuting class actions in courts throughout the country as well as in this District such as *Mikhlin v. Oasmia Pharmaceuticals AB, et al.,* Case No. 1:19-cv-04349-NGG-RER; *Machniewicz v. Uxin Limited, et al.*, No. 19-cv-822 (MKB) (VMS); and *In re Blue Apron Holdings, Inc. Sec. Litig.*, Case No. 1:17-cv-04846-NGG-PK. Moreover, Lead Counsel is knowledgeable litigating against Chinese issuers. For example, Lead Counsel achieved a $250 million settlement against the China-based Alibaba, which remains the largest securities class action settlement against a Chinese company (*Christine Asia Co. Ltd. et al. v. Jack Yun Ma*, et al., 1:15-md-02631-CM-SDA

7

(S.D.N.Y.)). The firm and its attorneys have achieved significant results for their clients and for certified investor classes. Thus, courts have consistently found Lead Counsel to be well-suited as class counsel in securities class actions. Lead Counsel's firm resume was previously submitted to the Court as Dkt. No. 6-4.

The Settlement was reached after Lead Counsel's extensive cross-border investigation, including interviewing witnesses in China and obtaining Chinese regulatory filings. Lead Counsel spent considerable time on this action for the benefit of the Settlement Class including: conducting a thorough investigation including retaining a private investigator in China and experts in accounting and damages; obtaining and analyzing Chinese documents and SEC filings; opposing Tarena's motion to dismiss; and prepared for and participated in the mediation and settlement discussions including drafting a mediation statement. Lead Counsel's significant securities class action experience make them knowledgeable and capable of evaluating cases to determine when a settlement is beneficial to investors, or when the prudent course would be to continue litigation.

### E.   Common Questions Predominate and the Class is Superior to Other Methods of Adjudication

After meeting the threshold requirements of Rule 23(a), a plaintiff must establish that the proposed class meets the requirements of Rule 23(b)(3). To certify a class under Rule 23(b)(3), the Court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs satisfy the predominance and superiority criteria.

"The focus of the predominance inquiry is on defendants' liability, not on damages." *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 125 (S.D.N.Y. 2011). Indeed, "it is well-established that the fact that damages may have to be ascertained on an individual basis is not sufficient to

8

defeat class certification." *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010). When common questions are a significant aspect of a case and they can be resolved in a single action, class certification is appropriate. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at 528 (1986). "Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." *Ackerman v. Coca-Cola Co.*, No. 09 CV 395 DLI RML, 2013 WL 7044866, at *18 (E.D.N.Y. July 18, 2013). Here, the existence of common questions predominates over individual issues, exemplified by the fact that if each class member were to bring an individual action, each would be required to demonstrate the same misrepresentations and/or omissions to prove liability. Thus, this case illustrates the principle that the predominance requirement is "readily met" in many securities fraud class actions. *Amchem*, 521 U.S. at 625.

> Pursuant to Fed. R. Civ. P. 23(b)(3), the factors relevant to a finding of superiority include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

> Many, if not most, of the Settlement Class Members are individuals for whom prosecution of a complex and costly action on their own behalf does not provide a realistic or efficient alternative. This Court is an appropriate forum because pursuant to 15 U.S.C. § 78aa, Tarena may be properly sued in any district court in the U.S. Additionally, as to Rule 23(b)(3)(D), Plaintiffs believe no difficulties will be encountered in the management of this class action and Settlement.

This Court should balance the merits of certifying a class against other possible methods of adjudication. Without class actions, investors who have been defrauded by securities law violations, but whose losses do not run into several millions of dollars, would likely have no practical recourse. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("most of the

plaintiffs would have no realistic day in court if a class action were not available"). The "class action is uniquely suited to resolving securities claims," because "the prohibitive cost of instituting individual actions" in such cases gives class members "limited interest in individually controlling the prosecution or defense of separate actions." *Marsh & McLennan*, 2009 WL 5178546, at *12. *See also Amchem*, 521 U.S. at 617 ("While the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'"). And if individuals do have the means to litigate their own case, absent a class action, this Court would have to try many lawsuits.

As set forth above, a class action is the superior method of adjudication and satisfies the requirements of Rule 23(b)(3). Solely for the purposes of settlement, Tarena does not dispute that the Settlement Class should be certified in accordance with Rule 23(b)(3). As such, the Court should conditionally certify the Settlement Class for settlement purposes.

## IV.    THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

### A.    Standards for Preliminary Approval

The law favors settlement, particularly in class actions and other complex cases because they tie up substantial judicial resources, use up the parties' time and money, and, in such cases, litigation resolution is usually significantly delayed. *Palacio v. E\*TRADE Fin. Corp.*, No. 10 Civ. 4030 (LAP) (DCF), 2012 U.S. WL 2384419, at *7 (S.D.N.Y. June 22, 2012) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)); *Newberg on Class Actions* (4th ed. 2002) § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").[2] Due to the presumption in favor of settlement, and "[a]bsent fraud or

---

[2] *See also, Spann v. AOL Time Warner Inc.*, No. 02 CIV. 8238DLC, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class

collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *EVCI*, 2007 WL 2230177, at \*12. When reviewing a proposed class settlement, courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

Where, as here, parties propose to resolve class action litigation through a class-wide settlement, they must request and obtain the Court's approval. Fed. R. Civ. P. 23(e). Pursuant to Rule 23(e)(1), as recently amended, the issue at preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23(e)(2) provides:

> ***Approval of the Proposal.*** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

These new factors "add to, rather than displace, the *Grinnell* factors"[3] traditionally considered by courts within the Second Circuit. *Payment Card,* 330 F.R.D. at 29 (in determining

---

actions"); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012) ("we emphasize that [] there is a 'strong judicial policy in favor of settlements, particularly in the class action context'").

[3] The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019).

whether a settlement will likely be approvable under Rule 23(e)(2), courts "consider[] the Rules 23(e)(2) factors, and then consider[] additional *Grinnell* factors not otherwise addressed by the Rule 23(e)(2) factors."); *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *10 (S.D.N.Y., 2019) ("Rule 23(e)(2)(C)(i) incorporates the factors set out in *Grinnell*…and courts in this Circuit have long utilized the *Grinnell* nine-factor test in determining whether a settlement is substantively fair, reasonable, and adequate."). The Settlement merits preliminary approval.

B.    **A Settlement Should be Preliminarily Approved if it is Procedurally and Substantively Fair**

In conducting a preliminary approval inquiry, a court considers both the "'negotiating process leading up to the settlement, i.e., procedural fairness, as well as the settlement's substantive terms, i.e., substantive fairness.'" *In re Platinum & Palladium Commodities Litig.*, 2014 WL 3500655, at *11 (S.D.N.Y. July 15, 2014). A settlement is procedurally fair when well-informed counsel participate in arm's-length negotiations. *Lea v. Tal Educ. Grp.*, No. 18-CV-5480 (KHP), 2021 WL 5578665, at *8 (S.D.N.Y. Nov. 30, 2021). Likewise, a settlements is substantively fair when the relief to the class is adequate after evaluating the Rule 23(e) and *Grinnell* factors. *Id.*, at *9. Thus, "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007); *see also Platinum & Palladium*, 2014 WL 3500655, at *11. Here, the Settlement is both procedurally and substantively fair.

C.    **The Settlement is Fair, Reasonable, and Adequate in Light of the Rule 23(e)(2) Factors and Remaining *Grinnell* Factors**

At this stage, courts undertake a preliminary review of the Rule 23(e) factors to determine whether the Settlement merits preliminary approval and directing notice of the Settlement to be

disseminated to the Class. *See* Rule 23(e)(1)(A)-(B)(i). Under Rule 23(e)(2), the Court may finally approve the Settlement "only on finding that it is fair, reasonable, and adequate after considering whether": (a) the Class was adequately represented; (b) the Settlement was negotiated at arm's length; (c) the Class relief is adequate; and (d) the Settlement treats Class Members equitably relative to each other. Fed. R. Civ. P. 23(3)(2)(A)-(D). Further, as the amendments to Rule 23 did not displace the existing *Grinnell* test, it is appropriate to consider the *Grinnell* factors that are not duplicative of Rule 23(e)(2): the stage of the proceedings and the amount of discovery completed; the ability of the defendants to withstand a greater judgment; and the range of reasonableness of the settlement fund in light of the best possible recovery and the risks of litigation.

### 1. Plaintiffs and Their Counsel Have Adequately Represented the Class

Plaintiffs and Lead Counsel have diligently prosecuted this Action on the Settlement Class's behalf. Plaintiffs and Lead Counsel thoroughly investigated the allegations which included, among other things, an extensive review and analysis of: (1) all relevant Tarena's SEC filings and corporate filings with the Chinese government; (2) Tarena's other public statements, including press releases and transcripts of Tarena's investor calls; (3) reports of securities and financial analysts; and (4) news articles and other commentary and analysis regarding Tarena. Lead Counsel also consulted with an accounting expert as well as a damages expert. In addition to Lead Counsel's factual investigation, Lead Counsel prepared the Complaint, conducted extensive legal research in connection with drafting a response to Tarena's pre-motion to dismiss letter, opposed Tarena's motion to dismiss, and negotiated a favorable settlement, including drafting a detailed mediation statement, that provides immediate recovery to Settlement Class Members.

### 2. The Proposed Settlement is the Result of Good Faith Arm's-Length Negotiations by Informed, Experienced Counsel

Courts initially presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations. *Wal-Mart Stores, Inc.*, 396 F.3d at 116; *Leung v. Home Boy Rest. Inc.*, 2009 WL 398861, at *1 (S.D.N.Y. Feb. 18, 2009) (preliminary approval is appropriate if "the proposed settlement appears to be the product of extensive, arms-length negotiations conducted by experienced counsel with input from the parties …"). Further, a mediator's involvement in negotiations supports a presumption of fairness. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Indep. Energy Holdings PLC*, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable.").

On June 2, 2022, the Settling Parties attended a virtual mediation with Mr. Meyer. In advance, the Settling Parties exchanged mediation statements that addressed liability and damages. The mediation ended without an agreement, but Mr. Meyer facilitated further discussions over the following weeks. On July 13, 2022, the Settling Parties accepted a "mediator's proposal." The negotiations were at all times hard-fought and at arm's length, producing a result that the Settling Parties believe to be in their respective best interests. The arm's-length nature of the negotiations and Mr. Meyer's involvement support the conclusion that the Settlement is fair and was achieved free of collusion. *See In re PPDAI Grp. Inc. Sec. Litig.*, No. 18-CV-6716 (TAM), 2022 WL 198491, at *9 (E.D.N.Y. Jan. 21, 2022) (settlement with Mr. Meyer as mediator weighs in favor of approval); *Cheng Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW(FFMX), 2019 WL 5173771, at *6 (C.D. Cal. Oct. 10, 2019) (same).

14

### 3. The Proposed Settlement is a Highly Favorable Result for the Class in Light of the Settlement's Benefits and the Risks of Continued Litigation

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). Courts recognize that settlements benefit class members by providing them with an immediate and certain recovery. *See In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 316 (E.D.N.Y. 2006) ("The immediacy and certainty of a recovery is a factor for the court to balance in determining whether the proposed settlement is fair, reasonable, and adequate").

The proposed Settlement provides a cash payment of $3,500,000 for the Settlement Class. This is a highly favorable result particularly given the significant risks of continued litigation. Plaintiffs' expert estimates damages to be approximately $18.4 million. If Plaintiffs overcame all the obstacles to establishing liability, and prevailed on all of their loss causation and damages theories, the Settlement would equate to approximately 19% of the total maximum damages. This recovery is considerably larger than other securities class action settlements. For instance, in 2021, the median ratio of settlement to investor losses for securities class actions was approximately 1.8% of estimated damages. *See* Exhibit 1 to the Declaration of Phillip Kim ("Kim Decl."). Moreover, according to Cornerstone Research, for settlements where damages were under $25 million, the average settlement recovery was 12.5% in 2021, and between 2012 and 2020, the average settlement recovery was 18.2%. *See* Exhibit 2 to Kim Decl. The recovery the Settlement provides also exceeds recoveries courts in the Second Circuit have declared reasonable. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974), *abrogated by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ("[T]here is no reason . . . why a satisfactory

15

settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) ("It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair"); *PPDAI*, 2022 WL 198491, at \*12 (approving settlement which provided for 6.4% of maximum aggregate damages); *Cagan v. Anchor Sav. Bank FSB*, No. CV-88-3024, 1990 WL 73423, at \*12–13 (E.D.N.Y. May 22, 1990) (approving \$2.3 million class settlement over objections that the "best possible recovery would be approximately \$121 million."). Accordingly, the Settlement falls well within the range of possible approval.

a)      **The Complexity, Expense, and Likely Duration of the Litigation**

Courts generally recognize that securities class actions are complex and expensive. *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at \*5 (E.D.N.Y. June 24, 2010) ("securities actions have become more difficult from a plaintiff's perspective in the wake of the [Private Securities Litigation Reform Act]".); *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at \*4 (S.D.N.Y. July 21, 2020) ("Courts recognize that '[s]ecurities class actions are generally complex and expensive to prosecute.'"); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 424 (S.D.N.Y. 2001) ("most securities fraud cases, are complex and challenging as regards both liability and damage.").

The Settlement provides a guaranteed, immediate recovery to Tarena investors. If the Settlement was not reached, the parties would have to incur substantial costs and engage in prolonged litigation through a decision on the motion to dismiss, class certification, summary judgment, trial and if applicable, subsequent appeals. Discovery costs, including document production and hosting fees as well as experts, including for class certification, expert reports, and expert testimony would be significant and could be in the several hundred thousand dollar range

16

for Plaintiffs. Reaching this Settlement now not only guarantees recovery for the Settlement Class, but also reduces overall litigation expenses.

In addition to being complex due to its nature of being a securities class action, the fact that most, if not all, of the defendants and witnesses are in China adds another layer of complexity and creates substantial obstacles for discovery. Tarena is based and operates in China and the other defendants reside in China. If the Complaint survives the motion to dismiss, Plaintiffs face significant obstacles conducting discovery against Chinese defendants and witnesses. "Courts in the Second Circuit have widely recognized that obtaining evidence through the Hague Convention and letters rogatory are cumbersome and inefficient, and hardly make litigation in the United States convenient." *Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*, No. 11-CV-05801 DLI VVP, 2012 WL 3746220, at *7 (E.D.N.Y. Aug. 27, 2012). There is no guarantee that Plaintiffs would have been able to obtain the necessary evidence to prove their case through discovery; and even if they could do so, it would be costly, take years, and delay any potential recovery to Settlement Class Members. Moreover, documents produced will likely be in Chinese which would require translation or the retention of bilingual attorneys to facilitate document review. Thus, the complexity, expense, and likely duration of these proceedings favor approval of the Settlement.

### b)      The Risk of Establishing Liability and Damages

There were substantial risks in this Action and further prosecution may have yielded limited or no recovery. In its pending motion to dismiss, Tarena asserted several arguments that Plaintiffs failed to establish its scienter, failed to allege a misrepresentation, and that Plaintiffs did not have standing for alleged misstatements made after they purchased their shares. Although Plaintiffs believe they would be successful defeating Tarena's motion to dismiss, there is no guarantee that the Court would find that Plaintiffs pled a claim.

17

Even if Plaintiffs survive the motion to dismiss, Plaintiffs face significant obstacles obtaining enough proof from Defendants and witnesses in China to survive summary judgment. Even more, Plaintiffs would encounter loss causation defenses and damages arguments that could substantially reduce or even eliminate Plaintiffs' alleged damages. If they survived summary judgment, Plaintiffs would then have to establish each element of their claims and damages to a jury's satisfaction. If they won at trial, Plaintiffs would have to survive Tarena's inevitable appeals. Through this, every hour Tarena's attorneys worked would diminish the funds available to fund a settlement or pay a judgment. The Settlement avoids these genuine risks and provides an immediate and guaranteed benefit to the Settlement Class.

### 4. The Proposed Method for Distributing Relief Is Effective

As demonstrated below in Section V, the method of the proposed notice and claims administration process are effective. The claims process includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan. The Plan governs how Settlement Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants.

### 5. Attorneys' Fees, Reimbursement of Expenses and Award to Plaintiffs

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." As the proposed Notice states, Lead Counsel intends to seek an award of attorneys' fees of no more than one-third of the Settlement Amount, and recover litigation expenses in an amount not to exceed $40,000. This fee request is in line with other settlements approved in recent cases in this Circuit. *See e.g., In re Akazoo S.A. Sec. Litig.*, No. 1:20-CV-01900-BMC, 2021 WL 4316717, at *1 (E.D.N.Y. Sept. 10, 2021) (awarding attorneys' fees of one-third of $4.9 million partial settlement); *Kristal v. Mesoblast Ltd.*, No. 7:20-CV-08430-PMH, 2022 WL 3442535, at *1 (S.D.N.Y. Aug. 15, 2022) (awarding attorneys' fees of

18

one-third of $2 million settlement); *Tal Educ. Grp.*, 2021 WL 5578665, at \*12 (awarding attorneys' fees of one-third of settlement holding that "percentage of the fund requests – one-third – is a percent that has been approved as reasonable in this Circuit."). Further, as explained in the Notice, Plaintiffs intend to request a compensatory award of up to $15,000 in total, pursuant to 15 U.S.C. § 78u-4(a)(4), in connection with their representation of the Settlement Class.

### 6.   The Parties Have Agreed to a Side Agreement Regarding Opt-Outs

Rule 23(e)(2)(C)(iv) requires the disclosure of any side agreement. The Settling Parties have agreed to a standard supplemental agreement which provides that if Settlement Class Members opt out of the Settlement such that the number of Tarena ADSs represented by such opt outs equals or exceeds a certain number, Tarena shall have the option to terminate the Settlement. *See* Stipulation ¶2.12. As is standard practice in securities class actions, while the supplemental agreement is identified in the Stipulation, the terms are confidential to avoid creating incentives for a small group of class members to opt out solely to leverage the threshold to exact an individual settlement. *See Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 4207245, at \*11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."). "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia,* 2019 WL 5257534, at \*15.

### 7.   There Was No Preferential Treatment; The Plan Is Designed to Treat Settlement Class Members Equitably

Rule 23(e)(2)(D) requires courts to evaluate if the settlement treats class members equitably relative to one another. A plan of allocation will be preliminarily approved if the proposed plan has a "reasonable, rational basis." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 158 (S.D.N.Y. 2013).  The Plan is fair, reasonable and adequate because it does not treat Plaintiffs

19

or any other Settlement Class Member preferentially. *In re Tremont Sec. L., State L. & Ins. Litig.*, No. 08-CV-11117, 2015 WL 5333494, at *6 (S.D.N.Y. Sept. 14, 2015), *aff'd in part, vacated in part,* 699 F. App'x 8 (2d Cir. 2017); *Pasini v. Fishs Eddy, LLC*, No. 1:16-CV-00354-PGG, 2018 WL 6843905, at *2 (S.D.N.Y. Nov. 15, 2018) (approving a class action settlement where "the terms of the Settlement have no obvious deficiencies and do not improperly grant preferential treatment to any individual member of the Settlement Class").

The Plan, set out in the Long Notice, explains how the Settlement proceeds will be distributed among Authorized Claimants. The Plan was designed, with the help of a damages expert, to distribute the Settlement Fund consistent with the claims alleged in this case and loss causation principles. The Plan provides that Settlement Class Members, including Plaintiffs, will receive their payment pursuant to the same formula.

### 8. The Remaining *Grinnell* Factors Support Preliminary Approval

*Grinnell* contains several factors that are not coextensive with those in Rule 23(e)(2). These factors, too, support preliminary approval. The second *Grinnell* factor is premature at this time, as notice of the Settlement has not yet been disseminated. Plaintiffs, however, support the Settlement.

*Grinnell* **Factor 3:** The fact that there has been no formal discovery in this case does not weigh against preliminary approval. *See American Bank Note Holographics,* 127 F. Supp. 2d at 425–426 ("To approve a proposed settlement . . . the Court need not find that the parties have engaged in extensive discovery. Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the Settlement.") (quotation marks and citations omitted); *see also IMAX*, 283 F.R.D. at 190 ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties."). Prior to settlement, Plaintiffs conducted a thorough and informed

20

investigation. Plaintiffs engaged an investigator in China to conduct interviews with relevant witnesses in China. Plaintiffs also reviewed relevant Chinese regulatory filings. In addition, since this case concerned a financial restatement, Plaintiffs engaged an accounting expert. Plaintiffs also retained an expert to analyze damages. Accordingly, Plaintiffs and Lead Counsel entered into the Settlement fully informed about the Action's strengths and weaknesses.

*Grinnell* **Factor 6:** For class certification, Plaintiffs must show that common issues predominate over individual issues. To do so, Plaintiffs must show that Tarena's ADSs traded on an efficient market, entitling purchasers to the presumption of reliance on Tarena's allegedly materially false statements. Tarena would be permitted to rebut the presumption by showing that the false statements did not impact Tarena's ADS price. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 281 (2014). Even if Plaintiffs were able to certify a class, there is no guarantee that a class would remain certified through trial as the Court may re-evaluate the appropriateness of class certification at any time. Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *Glob. Crossing*, 225 F.R.D. at 460 ("[E]ven if plaintiffs could obtain class certification, there could be a risk of decertification at a later stage."). Here, "the uncertainty surrounding class certification supports approval of the Settlement." *Marsh & McLennan*, 2009 WL 5178546, at *6. The Settlement avoids the uncertainty with respect to the maintaining certification and, thus, supports the Settlement's approval.

*Grinnell* **Factors 8 and 9:** The reasonableness of a settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), aff'd, 818 F.2d 145 (2d Cir. 1987). The Court need only determine whether the Settlement falls within a "range of reasonableness" – a range that

21

"recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). Moreover, although the Second Circuit directs the Court to consider whether defendants could withstand a greater judgment, a defendant's ability to withstand a judgment greater than that secured by settlement, however, is generally not one of the determining factors. *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010) ("Courts have recognized that the defendant's ability to pay is much less important than other factors, especially where 'the other *Grinnell* factors weigh heavily in favor of settlement approval.'"). A "defendant is not required to 'empty its coffers' before a settlement can be found adequate." *IMAX*, 283 F.R.D. at 191. Courts recognize that this factor does not weigh against approval of a settlement where, as here, the other factors weigh in favor of approving a settlement. *Id.*; *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *19 (S.D.N.Y. Nov. 8, 2010) ("the mere ability to withstand a greater judgment does not suggest the settlement is unfair").

If the Action were to proceed, it is very possible that Plaintiffs would not be able to recover more for Tarena investors, even if they secured a judgment. Tarena is a China-based company with its assets primarily in China and the Individual Defendants reside in China. China does not recognize U.S. judgments. Therefore, even if Plaintiffs were to obtain a judgment against Defendants, there is no guarantee that Plaintiffs will be able to collect any of the judgment. While Tarena's D&O insurance is financing the defense of the lawsuit and the Settlement, the amount of Tarena's available insurance gets further depleted if this action were to proceed, eliminating the single most certain source for Plaintiffs to obtain a monetary recovery. Despite these limitations, the proposed Settlement recovers approximately 19% of damages for Settlement Class Members. Thus, the Settlement falls within the range of reasonableness and is fair, reasonable, and adequate.

22

## V.     THE PROPOSED NOTICE SATISFIES FED. R. CIV. P. 23, THE PSLRA, AND DUE PROCESS

Class notice of a settlement must meet the requirements of Rules 23(c)(2) and 23(e), the PSLRA, and due process. Under Rule 23(c)(2), the Court "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Cap. One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014). Additionally, the notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," including the opportunity to opt out of or object to the settlement. *Id.* at 27.[4] The requirements of the PSLRA and the due process are similar. 15 U.S.C. § 78u-4(a)(7); *Consol. Edison, Inc. v. Ne. Utilities*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004).

The proposed Notice program includes: (a) emailing Summary Notice or links to the Long Notice and Claim Form, or if no email address can be obtained, mailing the Postcard Notice, to Settlement Class Members who can be identified with reasonable effort; (b) posting the Long Notice, Claim Form, Preliminary Approval Order, and Stipulation on a website maintained by the Claims Administrator[5]; (c) upon request, mailing copies of the Long Notice and/or Claim Form; and (d) disseminating the Summary Notice over *GlobeNewswire* and in *Investor's Business Daily*. Courts routinely find these methods of notice sufficient. *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 (S.D.N.Y. 2014) ("The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts.")(citations omitted); *In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-04846-NGG-PK, 2021 WL

---

[4] *Shapiro v. JPMorgan Chase & Co.*, No. 11 CIV. 7961 CM, 2014 WL 1224666, at \*17 (S.D.N.Y. Mar. 24, 2014) ("Rule 23(e) requires notice that is 'reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections.'").

[5] Plaintiffs requests Strategic Claims Services ("SCS") be appointed the Claims Administrator as SCS has substantial experience administering securities settlements.

345790, at *3 (E.D.N.Y. Feb. 1, 2021) (notice included emailed summary notice, mailed postcard notice, disseminating summary notice, and website).[6]

The Long Notice provides detailed information concerning: (a) the rights of Settlement Class Members, including the manner in which objections can be lodged and how to request exclusion from the Settlement (and clearly states that all those who do not exclude themselves will be bound by the Settlement); (b) the nature, history, and progress of the litigation; (c) the proposed Settlement; (d) how to file a Claim Form; (e) a description of the Plan; (f) the fees and expenses to be sought by Lead Counsel and Plaintiffs; and (g) the necessary information to examine Court records. The Long Notice also sets forth instructions to securities brokers and other nominee holders for forwarding notices to those persons for whom the nominees held shares in a "street name." This closely tracks a model notice published by the Federal Judicial Center.[7] Furthermore, the PSLRA-mandated disclosures are satisfied as the Long Notice: (a) states the amount of the Settlement on both an aggregate and average per share basis; (b) provides a brief statement explaining the reasons why the Parties are proposing the Settlement; (c) states the amount of attorneys' fees and maximum amount of litigation expenses (both on an aggregate and average per share basis) that counsel will seek; and (d) provides the contact information for Claims Administrator and Lead Counsel. 15 U.S.C. § 78u-4(a)(7).

Fed. R. Civ. P. 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable

---

[6] *See also, Baker v. SeaWorld Entm't, Inc.*, No. 14CV2129-MMA (AGS), 2020 WL 818893, at *2-*3 (S.D. Cal. Feb. 19, 2020) (postcard notice and similar proposed notice program including website); *In re GTT Commc'ns, Inc. Sec. Litig.*, No. 2:21-CV-00270-DOC-AS, 2021 WL 6618727, at *3 (C.D. Cal. Dec. 6, 2021) (notice included emailed links to long notice and claim form, mailed postcard notice, dissemination of summary notice, and website).

[7] *Compare* Ex. A-1, *with* Federal Judicial Center, *Securities Class Action Certificate and Settlement: Full Notice*. Available at https://www.fjc.gov/sites/default/files/2016/ClaAct13.pdf.

24

manner." The Notice informs Settlement Class Members that Lead Counsel will apply for attorneys' fees of up to one-third of the Settlement Amount, litigation expenses of up to $40,000 and an award to Plaintiffs of up to $15,000, in total, all to be paid from the Settlement Fund.

The form and manner of providing notice to Settlement Class Members are the best practicable under the circumstance and satisfy due process, Rule 23, and the PSLRA.

## VI. PROPOSED SCHEDULE OF EVENTS

Plaintiffs propose the following schedule as set forth in the Preliminary Approval Order:

| Event | Deadline for Compliance |
|---|---|
| Emailing Summary Notice or Links to the Long Notice and Claim Form, and/or Mailing Postcard Notice; Creating Settlement Website | No later than 28 calendar days after the entry of the Preliminary Approval Order (¶¶15, 17) |
| Publication of the Summary Notice | No later than 28 calendar days after entry of the Preliminary Approval Order (¶16) |
| Date for Plaintiffs to file papers in support of the Settlement, the Plan, and for Application of attorneys' fees and expenses. | No later than 28 calendar days prior to the Settlement Hearing. (¶30) |
| Submission Deadline for Requests for Exclusion | No later than 21 calendar days prior to the Settlement Hearing (¶23) |
| Submission Deadline for Objections | No later than 21 calendar days prior to the Settlement Hearing (¶27) |
| Submission Deadline for Claim Forms. | No later than 21 calendar days prior to the Settlement Hearing (¶21(a)) |
| Date for Plaintiffs to file Reply Papers in Support of the Settlement, the Plan, and for Application of Attorneys' Fees and Expenses. | 7 calendar days prior to the Settlement Hearing (¶31) |
| Dated for the Settlement Hearing | Approximately 100 days after entry of the Preliminary Approval Order |

## VII. CONCLUSION

For the above-stated reasons, Plaintiffs request that the Court: (1) preliminarily certify the Class for the purposes of Settlement; (2) preliminarily approve the Settlement as set forth in the Stipulation; (3) approve the form and manner of notice; and (4) set a Settlement Fairness Hearing.

Dated: August 31, 2022

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/ Phillip Kim
Phillip Kim (Pronouns: he/him/his)
Jing Chen (Pronouns: she/her/hers)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
        jchen@rosenlegal.com

*Lead Counsel for Plaintiffs and the Class*

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 31, 2022, a true and correct copy of the foregoing document

was served by CM/ECF to the parties registered to the Court's CM/ECF system


*/s/ Phillip Kim*
Phillip Kim