**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| YILI QIU, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>        v.<br><br>TARENA INTERNATIONAL, INC.,<br>SHAOYUN HAN, and YUDUO YANG,<br><br>        Defendants. | CASE No.: 1:21-cv-03502-PKC-RML |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL**
**APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**

**TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................................................... 1

II.    STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS ......... 4

III.   ARGUMENT ..................................................................................................................... 5

   A.   Applying the Considerations Set Forth in Rule 23(e)(2) and *Grinnell*, the Settlement is
        Fair, Reasonable, and Adequate ........................................................................................ 5

      1.   The Procedural Factors Support Approval .................................................................. 6

         a.   Plaintiffs and Counsel Adequately Represented the Settlement Class ......................... 6

         b.   The Settlement Was Negotiated at Arm's Length .......................................................... 7

      2.   Analysis of Rule 23(e)(2)(C)(i) Supports Substantive Approval of the Settlement ....... 8

         a.   Complexity, Expense and Duration of Litigation ......................................................... 9

         b.   Risk of Establishing Liability and Damages ............................................................... 13

         c.   Establishing and Maintaining Certification Through Trial ......................................... 15

         d.   Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks
              of Litigation ............................................................................................................... 15

      3.   The Proposed Method of Distribution to the Class is Effective (Rule 23(e)(2)(C)(ii)) . 17

      4.   The Requested Attorneys' Fees are Fair and Reasonable (Rule 23(e)(2)(C)(iii)) .......... 18

      5.   Related Agreements (Rule 23(e)(2)(C)(iv) and Rule 23(e)(3)) .................................... 18

      6.   The Plan of Allocation Treats Class Members Equitably (Rule 23(e)(2)(D)) ............... 19

      7.   The Class's Reaction to the Settlement Supports Approval (*Grinnell* Factor 2) .......... 19

      8.   The Stage of the Litigation and Discovery Completed Support Approval (*Grinnell*
           Factor 3) ...................................................................................................................... 20

      9.   Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor 7) ................ 22

   B.   The Plan of Allocation Fairly and Reasonably Distributes the Recovery ......................... 22

   C.   The Court Should Finally Certify the Settlement Class .................................................... 23

D.    Notice to the Settlement Class Satisfied Due Process ........................................................ 23

IV.    CONCLUSION .................................................................................................................. 25

## **TABLE OF AUTHORITIES**

**Page(s)**

<u>**Cases**</u>

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................................. 6

*Beach v. JPMorgan Chase Bank, N.A.*,
  2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) ............................................................. 6

*Cheng Jiangchen v. Rentech, Inc.*,
  No. CV 17-1490, 2019 WL 5173771 (C.D. Cal. Oct. 10, 2019)............................... 8

*Christine Asia Co., Ltd. v. Yun Ma*,
  No. 1:15-md-02631, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ............... 7, 18, 19

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ........................................................................... 4, 8, 16

*Fleming v. Impax Labs. Inc.*,
  No. 16-cv-06557, 2022 WL 2789496 (N.D. Cal. July 15, 2022)............................. 23

*Horowitz v. Sunlands Technology Group, et al.*,
  Case No. 1:19-CV-03744 (E.D.N.Y.) ....................................................................... 7

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ............................................................................ 12

*In re Agent Orange Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984) ......................................................................... 15

*In re Am. Bank Note Holographics, Inc.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001)................................................................. *passim*

*In re AOL Time Warner, Inc. Secs. & ERISA Litig.*,
  No. MDL 1500, 02 Civ. 5575, 2006 WL 903236, (S.D.N.Y. Apr. 6, 2006)............... 9

*In re BankAtlantic Bancorp, Inc. Secs. Litig.*,
  No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011)........................... 17

*In re Blue Apron Holdings, Inc. Secs. Litig.*,
  No. 17-cv-04846, 2021 WL 1902475 (E.D.N.Y. May 10, 2021) ........................ 5, 22

*In re Canadian Superior Secs. Litig.*,
  2011 WL 5830110 (S.D.N.Y., 2011) ...................................................................... 17

*In re China Sunergy Sec. Litig.*,
No. 07 CIV. 7895, 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ............................................ 16

*In re ChinaCast Education Corporation Securities Litigation*,
2:12-cv-04621-JFW-PLA (C.D. Cal.) .....................................................................11

*In re Facebook, Inc., IPO Secs. & Deriv. Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018).......................................................................... 9

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................................... 14, 15

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019)........................................................................ 13

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ...................................................................... 14, 21

*In re Jiangbo Pharms., Inc., Secs. Litig.*,
884 F. Supp. 2d 1243 (S.D. Fla. 2012) ...................................................................... 13

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
233 F.R.D. 306 (E.D.N.Y. 2006) ............................................................................ 19

*In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*,
246 F.R.D. 156 (S.D.N.Y. 2007) ............................................................................ 23

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ............................................................................ 7

*In re Patriot Nat'l, Inc. Sec. Litig.*,
828 F. App'x 760 (2d Cir. 2020) ............................................................................ 6

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) ................................................................... *passim*

*In re PPDAI Group Inc. Secs. Litig.*,
2022 WL 198491 (E.D.N.Y., 2022)........................................................................ 7

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008)...................................................................... 15

*In re Williams Sec. litigation-WCG Subclass*,
558 F.3d 1130 (10th Cir. 2009) ............................................................................ 17

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)........................................................................ 22

*Jayhawk Private Equity Fund II LP v. Liberty Insurance Underwriters*,
    2:17-cv-05523-GW-RAO (C.D.Cal.) ........................................................................ 12

*Khoja v. Orexigen Therapeutics, Inc.*,
    No. 15-cv-00540, 2021 WL 5632673 (S.D. Cal. Nov. 30, 2021)............................... 23

*Mikhlin v. Oasmia Pharm. AB*,
    19-CV-4349, 2021 WL 1259559 (E.D.N.Y. Jan. 26, 2021) ............................... *passim*

*Morris v. Affinity Health Plan, Inc.*,
    859 F. Supp. 2d 611 (S.D.N.Y. 2012)....................................................................... 16

*Newkirk v. Pierre*,
    No. 19-cv-4283, 2022 WL 20358182 (E.D.N.Y. Oct. 25, 2022) ................................ 5

*Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*,
    No. 11-CV-05801, 2012 WL 3746220 (E.D.N.Y. Aug. 27, 2012) ............................ 10

*Robbins v. Koger Properties, Inc.*,
    116 F.3d 1441 (11th Cir. 1997)................................................................................ 17

*Rupp, et al., v. Momo, Inc., et al.*,
    Case No. 1:19-cv-04433 (S.D.N.Y.)............................................................................ 7

*Se. Pennsylvania Transportation Auth. v. Orrstown Fin. Servs., Inc.*,
    2023 WL 1454371 (M.D. Pa. Feb. 1, 2023)................................................................ 8

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003)....................................................................... 10

*Thomas v. MagnaChip Semiconductor Corp.*,
    No. 14-CV-01160-JST, 2017 WL 4750628 (N.D. Cal. Oct. 20, 2017) ..................... 18

*Vanderhoef v. China Auto Logistics, Inc., et al.*,
    No. 2:18-cv-10174-CCC-ESK (D.N.J.) ......................................................................11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) .................................................................................. 7, 23

*West Palm Beach Police Pension Fund v. DFC Global Corp.*,
    No. 13-6731, 2017 WL 4167440 (E.D. Pa. Sept. 20, 2017).................................... 17

v

**Statutes**

15 U.S.C. § 78u-4(a)(7) ................................................................................................... 5, 25

**Rules**

Fed. R. Civ. P. 23 .................................................................................................... *passim*

Pursuant to Fed. R. Civ. P. 23(e), Lead Plaintiff Walter De Schutter and Named Plaintiffs Steven Clauter and Cynthia Lewis ("Plaintiffs"), on behalf of themselves and the Settlement Class, respectfully submit this memorandum of law in support of their motion for: (1) final certification of the Settlement Class; (2) final approval of the proposed Settlement; (3) entry of the final judgment; and (4) final approval of the Plan of Allocation (the "Plan").[1]

## I.    INTRODUCTION

Plaintiffs seek final approval of a $3,500,000 Settlement of the Action that will resolve all claims against Tarena International, Inc. ("Tarena" or the "Company"), Shaoyun Han and Yuduo Yang (collectively, "Defendants"). As set forth below and in the Kim Declaration, in light of the risks and uncertainties inherent in all litigation and the specific hurdles to recovery posed in this case, Plaintiffs believe that the Settlement is a favorable resolution of the Action, recovering over 19% of the Settlement Class's maximum estimated damages.

The Settlement is the product of arms' length negotiations after a mediation with Robert A. Meyer, Esq. of JAMS, including the exchange of mediation statements in which both parties expounded on the strengths and weaknesses of their claims and defenses. Mr. Meyer, a highly respected and experienced mediator of securities class actions, issued a "double-blind" mediator's proposal, which both sides accepted. These arms' length negotiations lend a presumption of fairness to the Settlement.

Before entering into the Settlement, Plaintiffs were fully informed of the strengths and

---

[1] All capitalized terms not otherwise defined herein have the meanings ascribed to them in the Second Amended Stipulation of Settlement, filed August 18, 2023 (ECF No. 40) ("Stip."), the Declaration of Phillip Kim in Support of Plaintiffs' Motions for: (I) Final Approval of Class Action Settlement and Plan of Allocation; and (II) An Award of Attorneys' Fees, Reimbursement of Expenses, and Awards to Plaintiffs ("Kim Declaration" or "Kim Decl."), filed herewith, or the Amended Class Action Complaint for Violation of the Federal Securities Laws ("Amended Complaint") (ECF No. 17). Unless otherwise noted, citations herein to "Ex.__" refer to exhibits to the Kim Declaration.

weaknesses of their claims, including the potential defenses that would likely be raised. Through their counsel, Plaintiffs: (1) conducted a thorough investigation of Tarena, which included: (a) hiring an investigator in China to interview witnesses and obtain Chinese regulatory filings, (b) hiring an accounting expert to assist in the review of Tarena's publicly-filed financial reporting, and (c) reviewing Tarena's Class Period SEC filings, press releases, earnings calls, and numerous analyst reports issued about Tarena; (2) drafted both an initial complaint and the Amended Complaint; (3) opposed Tarena's Pre-Motion Letter and its Motion to Dismiss; (4) retained an expert to assess damages; (5) drafted a mediation statement and participated in a full-day JAMS mediation session with Tarena and subsequent negotiations before reaching an agreement in principle to settle the Action; and (6) engaged in extensive negotiations regarding the terms of the proposed Settlement. Kim Decl. at ¶17. Based upon their thorough investigation of the facts and applicable law, Plaintiffs and Lead Counsel believe that the proposed Settlement meets all applicable standards for approval and is in the best interest of the Settlement Class. For these reasons, Plaintiffs respectfully move the Court for final approval of the Settlement.

Plaintiffs also respectfully submit that the Court should approve the Plan and the Notice provided to potential Settlement Class Members. Regarding the former, Plaintiffs developed the Plan with their damages expert to ensure that the proceeds of the Net Settlement Fund would be distributed equitably and fairly among Settlement Class Members based upon the relative damages each suffered, in line with Plaintiffs' theory of the case. Kim Decl. at ¶25. With respect to the latter, the notice program satisfies Rule 23 and due process by providing the "best notice … practicable under the circumstances" of this case. After the Court approved the contents of the Long Notice, Postcard Notice, and Summary Notice (Preliminary Approval Order, ECF No. 41 at ¶9), the Claims Administrator, Strategic Claims Services ("SCS"), provided notice to potential

Settlement Class Members in accordance with the program set forth in the preliminary approval order. (ECF 41 at 6-7).[2] As explained in the Declaration of Josephine Bravata Concerning: (A) CAFA Notice; (B) Mailing and Emailing of the Notice; (C) Publication of the Summary Notice; and (D) Report on Requests For Exclusion and Objections ("Bravata Declaration" or "Bravata Decl.") (Ex. 1), in total, 12,960 potential Settlement Class Members were notified of the Settlement by either mailed Postcard Notice or an email of the direct link to the Long Notice and Proof of Claim and Release Form ("Claim Form") on the Claims Administrator's dedicated webpage for the Action, www.strategicclaims.net/Tarena.[3] SCS published the Summary Notice in print, in *Investor's Business Daily*, and electronically, over *GlobeNewswire*, on October 2, 2023. *Id*. at ¶10 and Ex. E to Bravata Decl. On September 14, 2023, prior to the mailing, emailing and publication of notice, SCS added the Long Notice, Claim Form, and other important documents to a dedicated webpage on the Claims Administrator's website. *Id*. at ¶12. SCS also established a toll-free telephone number to assist potential claimants. *Id*. at ¶11. On December 15, 2023, SCS updated its website to inform Settlement Class Members that the Settlement Hearing was continued from January 18, 2024 to February 9, 2024. *Id*. at ¶12. Although the January 19, 2024[4] deadlines have not yet passed, no objections to the Settlement have been received and only two invalid requests for exclusion from the Settlement Class were submitted. *Id.* at ¶13 and Ex. F to

---

[2] Page citations to filed documents are to the ECF-filed page number, not to internal pagination.

[3] Specifically, SCS and nominees holding shares in "street name" on behalf of beneficial purchasers emailed links to the Long Notice and Claim Form and the Summary Notice to 4,893 individuals. Bravata Decl., at ¶¶7-8. Although 8,531 Postcard Notices were initially mailed, of the 822 that were returned as "undeliverable," SCS was only able to obtain updated addresses and re-send the Postcard Notice to 358 potential Settlement Class Members. *Id.* at ¶9. Thus, a total of 12,960 potential claimants were notified by mail or email. *Id*.

[4] As the Settlement Hearing was continued from January 18, 2024 to February 9, 2024, the initial December 28, 2023 deadlines to object to or request exclusion from the Settlement was continued to January 19, 2024 – 21 days before the Settlement Hearing. Kim Decl., ¶16.

Bravata Decl.; Kim Decl. at ¶27.

Finally, the Settlement Class meets the requirements of Rule 23(a) and (b)(3) and merits certification. The Settlement is both procedurally and substantively fair, reasonable, and adequate. Plaintiffs respectfully request that the Court issue an order granting final approval of the Settlement, Plan of Allocation and Notice, certifying the Settlement Class, and entering the final judgment dismissing the Action with prejudice as against Defendants

## II.    STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS

In this Circuit, the Court's decision to approve a class action settlement as "fair, reasonable, and adequate" as required by Fed. R. Civ. P. 23(e)(2), is informed by two sets of considerations. First, since 2018, Rule 23(e)(2)(A)-(D) requires the Court to consider four core questions:

> (A) have the class representatives and class counsel adequately represented the class;
> (B) was the proposed settlement negotiated at arm's length;
> (C) is the relief provided for the class adequate, taking into account:
>   (i) the costs, risks, and delay of trial and appeal;
>   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>   (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
>   (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) does the proposal treats class members equitably relative to each other.

Second, because these considerations were not intended to displace other factors courts deem relevant to settlement approval, the following factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974),[5] some of which overlap with the inquiry to be undertaken pursuant to Rule 23(e)(2)(A)-(D), are still relevant to the Court's determination:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of

---

[5] For clarity, unless noted, internal citations and quotation marks are omitted from case citations.

discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Courts in this district apply both sets of factors. *Newkirk v. Pierre*, No. 19-cv-4283, 2022 WL 20358182, at *5-7 (E.D.N.Y. Oct. 25, 2022). As set forth below, the Settlement satisfies both Rule 23(e)(2)(A)-(D) and the applicable, non-duplicative *Grinnell* factors.

Akin to the Settlement itself, a plan of allocation must provide for a "fair and reasonable" allocation of the recovery to Settlement Class members. *In re Blue Apron Holdings, Inc. Secs. Litig.*, No. 17-cv-04846, 2021 WL 1902475, at *1 (E.D.N.Y. May 10, 2021). The Court must also determine whether the Settlement Class comports with each of the prerequisites for certification, to wit "numerosity," "commonality," "typicality," and "adequacy" (Rule 23(a)(1)-(4)), as well as "predominance" and "superiority" (Rule 23(b)(3)), and whether the notice given to Settlement Class Members satisfies due process by complying with the requirements of Rule 23(c)(2)(B) and 15 U.S.C. § 78u-4(a)(7).

## III.   ARGUMENT

### A.   Applying the Considerations Set Forth in Rule 23(e)(2) and *Grinnell*, the Settlement is Fair, Reasonable, and Adequate

Rule 23(e)(2) requires a Court to review both the procedural and substantive fairness of the any class action settlement it is asked to approve: "[P]aragraphs (A) and (B) are procedural factors that address the conduct of the litigation and of the negotiations leading up to the proposed settlement, whereas the factors listed in paragraphs (C) and (D) are substantive factors that address the relief that the settlement is expected to provide to class members." *Mikhlin v. Oasmia Pharm. AB*, 19-CV-4349, 2021 WL 1259559, at *3 (E.D.N.Y. Jan. 26, 2021). The

*Grinnell* factors, applied by courts in the Second Circuit for decades before the 2018 amendment to Rule 23(e)(2), are "clarif[ied] and supplement[ed]" by Rule 23(e)(2). *Mikhlin*, 2021 WL 1259559, at *3; *see also Beach v. JPMorgan Chase Bank, N.A.*, 2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) (evaluating settlement based on factors set forth in Fed. R. Civ. P. 23(e)(2) and *Grinnell*). As set forth below, the Settlement satisfies both sets of Rule 23(e)(2) factors and the remaining *Grinnell* factors.

### 1. The Procedural Factors Support Approval

#### a. Plaintiffs and Counsel Adequately Represented the Settlement Class

A Rule 23(e)(2)(A) assessment "looks to" Rule 23(a)(4) case law pertaining to adequacy of the class plaintiffs and their counsel. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 30 n.25 (E.D.N.Y. 2019). Thus, to "uncover conflicts of interest between the named parties and the class they seek to represent," *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997), under "Rule 23(a)(4)'s adequacy requirement, primary factors are whether the class representatives have any interests antagonistic to the interests of other class members and whether the representatives have an interest in vigorously pursuing the claims of the class." *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 764 (2d Cir. 2020).

Here, Plaintiffs' claims are coextensive with – not antagonistic to – those of the Settlement Class. Plaintiffs each purchased Tarena's American Depositary Shares ("ADSs") during the Settlement Class Period and suffered losses as a result of Defendants' alleged misconduct, and thus, the "plaintiffs were sufficiently motivated to recover as much as possible for each class member" *Patriot National*, 828 Fed. App'x. at 764 and "all shared the common

6

goal of maximizing recovery." *Payment Card*, 330 F.R.D. at 32. Plaintiffs oversaw the prosecution of the Action and the settlement process, regularly communicating with counsel.[6]

Lead Counsel has a successful history of prosecuting securities claims on behalf of injured investors, including against Chinese issuers. Ex. 6 (firm resume); *see e.g., Christine Asia Co. Ltd. et al. v. Jack Yun Ma*, et al., 1:15-md-02631 (S.D.N.Y.) (achieving $250 million settlement against Alibaba); *Horowitz v. Sunlands Technology Group, et al.*, Case No. 1:19-CV-03744 (E.D.N.Y.); *In re PPDAI Group Inc. Secs. Litig.*, 2022 WL 198491 (E.D.N.Y., 2022); *Rupp, et al., v. Momo, Inc., et al.,* Case No. 1:19-cv-04433 (S.D.N.Y.). Counsel vigorously prosecuted this case, conducting a thorough investigation of Tarena's business operations, working with accounting and damages experts, opposing a motion to dismiss, and negotiating the Settlement with the assistance of a mediator. Kim Decl. at ¶¶6, 7, 9, 10, 17. Consequently, Lead Counsel came to fully understand both the strengths and weaknesses of the claims before entering into the Settlement. *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (courts consistently give "great weight . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").

### b.    The Settlement Was Negotiated at Arm's Length

A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). With the outcome of Tarena's motion to dismiss uncertain, the Parties decided to explore the possibility of settlement and retained Mr. Meyer's services for this purpose. The Parties engaged in a full-day, virtual mediation session with Mr. Meyer on June 2, 2022. The mediation ended without a resolution, however, Mr. Meyer

---

[6] *See* Declaration of Walter De Schutter ("De Schutter Decl.") at ¶¶4-5, Declaration of Steven Clauter ("Clauter Decl.) at ¶¶4-5, and Declaration of Cynthia Lewis ("Lewis Decl.") at ¶¶4-5, (Exs. 3-5, respectively).

7

facilitated ongoing settlement negotiations. Kim Decl. at ¶¶9-10. After a frank exchange of positions, Mr. Meyer issued a "double-blind" mediator's proposal of $3,500,000 to resolve the Action. Mr. Meyer notified the parties on July 13, 2022 that each side accepted his proposal. Kim Decl. at ¶10; Declaration of Robert A. Meyer (Ex. 2 at ¶¶10-11). Understanding that the Court will make its own determination, Mr. Meyer recommends the Settlement "as reasonably reflective of the risks and potential rewards of the claims being settled" and believes that "the proposed Settlement of this case represents a fair and pragmatic resolution of this action." Ex. 2 at ¶8. Settlements reached after vigorous negotiations before an informed mediator satisfy Rule 23(e)(2)(B). *See Mikhlin*, 2021 WL 1259559, at \*5; *Se. Pennsylvania Transportation Auth. v. Orrstown Fin. Servs., Inc.*, 2023 WL 1454371, at \*10 (M.D. Pa. Feb. 1, 2023) (Mr. Meyer's involvement as a mediator and a settlement as a result of his proposal "demonstrates that the settlement reached between the parties resulted from an extensive good faith, arm's length negotiation."); *Cheng Jiangchen v. Rentech, Inc.*, No. CV 17-1490, 2019 WL 5173771, at \*6 (C.D. Cal. Oct. 10, 2019) (same).

### 2.    Analysis of Rule 23(e)(2)(C)(i) Supports Substantive Approval of the Settlement

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal…"[7] (Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv) are discussed *infra* 17-19). In balancing the various factors, "[s]ettlement is favored if settlement results in 'substantial and tangible present recovery,

---

[7] Rule 23(e)(2)(C)(i) essentially incorporates six of the traditional *Grinnell* factors: the complexity, expense, and likely duration of the litigation (first factor); the risks of establishing liability and damages (fourth and fifth factors); the risks of maintaining class action status through the trial (sixth factor); and the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation (eighth and ninth factors). *See Grinnell*, 495 F.2d at 463; *see also Payment Card*, 330 F.R.D. at 36 ("The first factor – costs, risks, and delay of trial and appeal – subsumes several *Grinnell* factors …").

without the attendant risk and delay of trial.'" *Payment Card*, 330 F.R.D. at 36.

### a.   Complexity, Expense and Duration of Litigation

"In general, securities class actions are recognized by courts as notably difficult and notoriously uncertain to litigate." *In re Facebook, Inc., IPO Secs. & Deriv. Litig.*, 343 F. Supp. 3d 394, 409 (S.D.N.Y. 2018) (citing cases). For this reason, the Court "need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Mikhlin*, 2021 WL 1259559, at *5. In a securities fraud case, there are "significant legal and factual obstacles" to prevailing at every stage of the litigation. *Id.* This is especially true here for a number of reasons.

*First*, the pending motion to dismiss argued that the Amended Complaint alleged unactionable accounting judgments that were opinions rather than statements and that scienter was not satisfied. *Second*, had the case survived the motion to dismiss, the next hurdle would have been class certification – where Defendants would have challenged market efficiency, a requisite for proof of class-wide reliance. *Third*, discovery would be particular complex as Tarena is based in China which creates significant hurdles for Plaintiffs to obtain discovery to prove their case. *Fourth*, determinations on the accounting claims – at summary judgment and/or trial – could entail *Daubert* motions and would pit Plaintiffs' expert against Defendants' expert. *Fifth*, proving the amount of price decline due solely to revelation of the alleged misconduct would be complicated and require Plaintiffs to prevail in a battle of experts on the issue of damages. And *sixth*, there is an inherent risk when pursuing an action against a foreign issuer that they may not continue to engage in the litigation, leaving the Settlement Class with nothing.

Adding these unique challenges to the expense, effort, and time occasioned by discovery, trial, and appeals in all litigation, and it becomes clear why "securities class action litigation is often resolved by settlement, which circumvents the difficulty and uncertainty inherent in long, costly trials." *In re AOL Time Warner, Inc. Secs. & ERISA Litig.*, No. MDL 1500, 02 Civ. 5575,

9

2006 WL 903236, at *8, (S.D.N.Y. Apr. 6, 2006); *see also Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks … through further litigation and trial, the passage of time would introduce yet more risks in terms of appeals and possible changes in the law and would, in light of the time value of money, make future recoveries less valuable than this current recovery.").

There is no guarantee that Plaintiffs would have been able to obtain the necessary evidence to prove their case through discovery; and even if they could do so, it would be costly, take years, and delay any potential recovery to Settlement Class Members. If the Amended Complaint survived the motion to dismiss, Plaintiffs would have to seek discovery from parties and witnesses located in China which adds a layer of complexity to litigation and discovery. "Courts in the Second Circuit have widely recognized that obtaining evidence through the Hague Convention and letters rogatory are cumbersome and inefficient, and hardly make litigation in the United States convenient." *Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*, No. 11-CV-05801, 2012 WL 3746220, at *7 (E.D.N.Y. Aug. 27, 2012). Specific challenges to obtaining documents from Chinese-based defendants in U.S. litigation exist which would delay any recovery for Tarena investors. According to Chinese law, productions outside of China must first be reviewed and approved by the necessary Chinese government officials. Kim Decl., ¶18. Not only does this requirement slow down litigation, but it introduces potential risk to protracted litigation. Additionally, China does not permit depositions on the mainland or virtual depositions which would require the cooperation of Tarena and witness to travel out of China for depositions. *Id*. Moreover, documents produced will likely be in Chinese which would require translation or the retention of bilingual attorneys to facilitate document review. *Id*. Thus, the complexity,

10

expense, and likely duration discovery favor approval of the Settlement.

Further, litigating against foreign defendants creates additional risk as the defendants may not continue to engage in litigation and thus there would be no source of recovery for investors. In *Vanderhoef v. China Auto Logistics, Inc., et al.*, No. 2:18-cv-10174-CCC-ESK (D.N.J.), Lead Counsel had this unfortunate experience when representing investors of China Auto Logistics, Inc. ("CALI"), a Nevada corporation with headquarters in China. Originally, CALI was represented by K&L Gates LLP and the China-based individual defendants had their own counsel. Prior to a decision on CALI's motion to dismiss, plaintiffs and CALI engaged in court-ordered mediation over two days. As settlement efforts were unsuccessful, CALI's motion was reinstated. The court then denied CALI's and the China-based individual defendants' motions to dismiss. Before CALI's deadline to file an answer, its counsel requested to withdraw from the action as CALI had not paid its attorneys for almost a year. The China-based individual defendants filed an answer, but soon after their attorneys also withdrew as these defendants stopped engaging meaningfully with their counsel and failed to pay their attorneys. In the end, the plaintiffs were forced to voluntarily dismiss their claims against CALI and the China-based individual defendants without prejudice as they did not retain new counsel and ultimately vanished. Kim Decl., ¶21, Ex. 7.

Similarly, in *In re ChinaCast Education Corporation Securities Litigation*, 2:12-cv-04621-JFW-PLA (C.D.Cal.), after years of litigation, including plaintiffs' successful reversal to the Ninth Circuit on a motion to dismiss decision, ChinaCast's counsel withdrew from the action after the company's insurers refused to cover litigation costs. The plaintiffs secured a default judgment of $65.8 million for the class, but ChinaCast filed for bankruptcy. In an attempt to recover the default judgment, plaintiffs pursued another lawsuit against ChinaCast's multiple

11

insurers. *See Jayhawk Private Equity Fund II LP v. Liberty Insurance Underwriters*, 2:17-cv-05523-GW-RAO (C.D.Cal.). Ultimately, plaintiffs' claims were dismissed due to the expansive exclusion provisions in the insurance policies. Therefore, despite more than seven years of litigation, investors received nothing from the China-based defendants. Kim Decl., ¶22. Moreover, even if Plaintiffs were able to obtain a judgment, enforcing this judgment in China would be close to impossible as Tarena's assets and the Individual Defendants are all located in China. *See In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 179 (S.D.N.Y. 2014) ("settlement amount is sufficient when limited insurance coverage, minimal domestic assets, and significant risk of being unable to collect any judgment against the [] Defendants are taken into account"). As Tarena is a variable interest entity, investors only have a contractual interest in the Company, and no ownership or equity interest. Accordingly, as the SEC warned, the enforceability of these contractual arrangements is risky. Kim Decl., ¶23, Ex. 11. Further, "[t]here is no bilateral treaty or multilateral convention in force between the United States and any other country on reciprocal recognition and enforcement of judgments." (Ex. 8). Although the international community is attempting "to promote effective access to justice" by attempting to agree to recognition of each other's judgments through the 2019 Hague Convention on the Recognition and Enforcement of Foreign Judgments in Civil or Commercial Matters ("Hague Judgment Convention"), nothing is yet in effect. (Ex. 9). Even if the Hague Judgment Convention were operative, it would not help Tarena investors as the United States has signed onto the Hague Judgment Convention, but China has not. Kim Decl., ¶19, Ex. 9. Given there is no agreement between the United States and China to recognize each other's judgments, the only potential way to enforce a judgment would be through reciprocity. China's reciprocity system, however, is one of the most restrictive in the world, regularly denying enforcement of foreign

judgments. Kim Decl., ¶20; Ex. 10. As of June 2022, Chinese courts have only recognized and enforced two judgments from the United States. *Id*. Neither of which were judgments from securities lawsuits. *Id*. Thus, Plaintiffs and their counsel undertook this litigation without a guarantee that the foreign defendants would participate in the litigation and even if they did, that any consideration could be recovered for Tarena investors.

### b.     Risk of Establishing Liability and Damages

In considering these factors, "a court 'should balance the benefits afforded the Class, including immediacy and certainty of recovery, against the continuing risks of litigation.'" *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 694 (S.D.N.Y. 2019). While Plaintiffs believe their claims are meritorious, they also recognize that they faced substantial obstacles to proving liability and damages. When compared to the certainty of the significant benefit conferred by the Settlement, these risks militate against further litigation and support a determination that the Settlement is fair, reasonable and adequate.

**Establishing Liability:** Plaintiffs allege that Tarena engaged in an accounting fraud in which Defendants manipulated the Company's financial statements that necessitated a restatement. Despite believing their claims were meritorious, a significant risk existed that the Court would accept Tarena's argument that its statements were unactionable, audit opinions.

Even were Plaintiffs to survive the motion to dismiss, there is a "substantial risk involved in proving *scienter*, because it goes directly to a defendant's state of mind, and proof of state of mind is inherently difficult." *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001) (italics in original); *Mikhlin*, 2021 WL 1259559, at *5 (scienter is "notably difficult to establish"). This is particularly true here, where a Court or a jury must find "severe recklessness," if evidence of knowledge or intent to defraud is not proffered. *See, e.g. In re Jiangbo Pharms., Inc., Secs. Litig.*, 884 F. Supp. 2d 1243, 1261-62 (S.D. Fla. 2012) (at the

13

pleading stage,  the stronger inference arising from these facts is gross negligence).

**Establishing Damages:** It is axiomatic that proving damages in cases brought under the federal securities laws is complex and fraught with risk. *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004) (the "[c]alculation of damages is a 'complicated and uncertain process, typically involving conflicting expert opinion' about the difference between the purchase price and the stock's 'true' value absent the alleged fraud."). The situation is no different here.  As a result of Plaintiffs' investigation which included interviewing witnesses in China, reviewing Chinese regulatory filings, and consulting with an accounting expert, as well as significant discussions with the mediator and discussions directly with Tarena's counsel, Lead Counsel obtained a clear preview of what arguments would be made to contest Plaintiffs' establishment of class-wide damages.

Had the litigation proceeded, Tarena would present loss causation and damages defenses, which may have found favor with the Court at summary judgment or the jury at trial. Defendants have argued and would continue to argue that, there are no damages as Tarena's statements were unactionable audit opinions.

As in other complex securities cases, the parties here would rely on expert testimony to assist the jury in determining damages. *Global Crossing*, 225 F.R.D. at 459 ("[P]roof of damages in securities cases is always difficult and invariably requires expert testimony which may, or may not be, accepted by a jury."). While Plaintiffs would argue that they are entitled to maximum damages resulting from every stock drop as alleged in the Amended Complaint, Tarena would proffer its own expert to offer contrary testimony with respect to all of the price declines. *See In re IMAX Sec. Litig.*, 283 F.R.D. 178, 193 (S.D.N.Y. 2012) ("[I]t is well established that damages calculations in securities class actions often descend into a battle of experts."). In such a "battle

of experts, it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found" by the jury. *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579-80 (S.D.N.Y. 2008).

### c.      Establishing and Maintaining Certification Through Trial

While Plaintiffs are confident that the Settlement Class meets the requirements for certification, a class as not been certified. Plaintiffs are cognizant that there is a risk that the Court could accept certain of Tarena's arguments limiting a potential class. Because "[c]ourts generally acknowledge that a contested motion to certify a class would pose at least some increased risk that class certification might be denied … this factor ... weighs in favor of settlement" where "it is likely that defendants would oppose class certification if the case were to be litigated." *Mikhlin*, 2021 WL 1259559, at *6. Here, although Tarena agreed to the certification of a class, it is "for the purposes of this Settlement only." Stip. at ¶1.31.

Thus, the risks and uncertainty surrounding class certification also support approval of the Settlement, as Tarena undoubtedly would have challenged class certification. Finally, even were Plaintiffs to prevail on a class certification motion, Rule 23(c)(1)(C) provides that a class certification order could be "altered or amended before final judgment." *See also, Global Crossing*, 225 F.R.D. at 460 ("[E]ven if plaintiffs could obtain class certification, there could be a risk of decertification at a later stage.").

### d.      Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks of Litigation

As then-Chief Judge Weinstein explained nearly 40 years ago: "Dollar amounts are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984). Here, the $3,500,000 cash settlement represents

approximately 19% of the total maximum recoverable damages of approximately $18.4 million estimated by Plaintiffs' expert. The latter figure comprises the potential full residual decline – the difference between Tarena's price drops and those predicted by market and industry price movements – with respect to all price declines alleged. For this figure to be realized, Plaintiffs would have to prevail on the motion to dismiss, achieve class certification in the face of a market efficiency challenge (and a possible *Daubert* challenge to Plaintiffs' expert), survive summary judgment, and prove to a jury that 100% of Tarena's price declines were caused by the revelation of the accounting misstatements.

The Settlement is a highly favorable result, particularly given the risks on ongoing litigation. The Settlement provides a recovery larger than in other, similarly sized securities class actions. Cornerstone Research found the median settlement of damages for 10b-5 cases with damages under $25 million was 11.1% in 2022 and 17.4% between 2013 to 2021. (Ex. 12 at 6). According to NERA Economic Consulting, between 2020 and 2022, the median settlement in securities class actions has been only 1.8% of investor losses. (Ex. 13 at 18). Indeed the Settlement's recovery is greater than recoveries courts in the Second Circuit have found reasonable and adequate. *See Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason . . . why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *In re China Sunergy Sec. Litig.*, No. 07 CIV. 7895, 2011 WL 1899715, at *15 (S.D.N.Y. May 13, 2011) (noting that the average settlement in securities class actions ranges from 3% to 7% of total estimated losses); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) ("It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or

unfair."); *In re Canadian Superior Secs. Litig.*, 2011 WL 5830110, at *2 (S.D.N.Y., 2011) (8.5% recovery "exceed[s] the average recovery in shareholder litigation.").

A possible best-case result at trial could be derailed either before or after the fact: If Plaintiffs' damages expert does not survive a *Daubert* motion, summary judgment could be entered in Tarena's favor. *See In re Williams Sec. litigation-WCG Subclass*, 558 F.3d 1130, 1143 (10th Cir. 2009) (affirming summary judgment, after expert report was excluded there was no evidence that "declines in price were the result of the revelation of the truth as opposed to some other factor"). Alternatively, a total victory at trial could be reversed by the Court on a post-trial motion. *See In re BankAtlantic Bancorp, Inc. Secs. Litig.*, No. 07-61542-CIV, 2011 WL 1585605, at *18, 38 (S.D. Fla. Apr. 25, 2011) (granting motion for judgment as a matter of law), *aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012), or on appeal. *See Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (overturning $81 million verdict). In sum, because "a misstep at any point in the litigation could have greatly reduced the damages," a "complete and total victory" on liability and loss causation for all of the alleged false statements "occurs with the regularity of unicorn sightings." *West Palm Beach Police Pension Fund v. DFC Global Corp.*, No. 13-6731, 2017 WL 4167440 at *6 (E.D. Pa. Sept. 20, 2017).

### 3. The Proposed Method of Distribution to the Class is Effective (Rule 23(e)(2)(C)(ii))

The Settlement proceeds will be allocated to Settlement Class Members who timely submit valid Claim Forms in accordance with the Plan. As provided in the Preliminary Approval Order, at ¶21(a)-(c), SCS has processed and will continue to process claims under Lead Counsel's guidance, and has allowed and will continue to allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims. (ECF No.

41 at 8-9). After the Court enters a distribution order, SCS will provide Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan), with a second *pro rata* distribution, if warranted. Stip. at ¶6.6. This is a non-reversionary Settlement, no funds will be returned to Tarena. *Id.* at ¶6.7. This method for claims processing and distributing settlement proceeds is standard in securities and other class actions and has proved to be effective. *Christine Asia Co., Ltd. v. Yun Ma*, No. 1:15-md-02631, 2019 WL 5257534, at *14 (S.D.N.Y. Oct. 16, 2019); *Payment Card*, 330 F.R.D. at 40-41.

### 4. The Requested Attorneys' Fees are Fair and Reasonable (Rule 23(e)(2)(C)(iii))

The Settlement is fair and reasonable taking into account the requested attorneys' fees of one-third of the Settlement Fund. As discussed in detail in the Fee Memorandum filed herewith, the fee request the Court is being asked to approve is reasonable in light of counsel's skill, efforts, and time investment, the risks counsel faced, and the overall benefit to the Settlement Class. Courts in this Circuit routinely find that requests for attorneys' fees totaling one-third of the settlement fund are "well within the range of reasonableness," *Mikhlin*, 2021 WL 1259559 at *7 (citing cases), with such awards "very common" where the recovery is less than $10 million. *Id.* In any event, approval of the Settlement is determined separate and apart from the Court's decision on the fee award. Stip. at ¶7.3.

### 5. Related Agreements (Rule 23(e)(2)(C)(iv) and Rule 23(e)(3))

As previously disclosed, the Parties entered into a Supplemental Agreement giving Tarena the right to terminate the Settlement if Settlement Class Members holding more than a certain number of ADSs opt out. Stip. at ¶2.12. "[T]o prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts," *Thomas v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST, 2017 WL 4750628, at *5 (N.D. Cal.

18

Oct. 20, 2017), the number of shares that trigger the right to terminate has not been disclosed. Such agreements are common in securities class action settlements and pose no obstacle to final approval of the Settlement. *Christine Asia,* 2019 WL 5257534, at \*15.

### 6. The Plan of Allocation Treats Class Members Equitably (Rule 23(e)(2)(D))

Rule 23(e)(2)(D) requires courts to evaluate whether the Settlement treats class members equitably relative to one another. The Plan provides no preferential treatment to Plaintiffs and distributes funds on a *pro rata* basis to each Settlement Class member who timely submits a valid claim based on recognized losses resulting from the stock price declines during the Settlement Class Period (alleged in the Amended Complaint). Lead Counsel developed the Plan in consultation with Plaintiffs' damages expert, and the Plan closely tracks the theory of the case. Kim Decl. at ¶25. A plan that allocates funds on a *pro rata* basis to claimants based upon the timing of their purchases and sales, and corresponding share prices, "appropriately and fairly accounts for material differences among class members' claims." *Mikhlin*, 2021 WL 1259559, at \*8; *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 317 (E.D.N.Y. 2006) (plan that "tracks the theory of damages asserted by plaintiffs …. is reasonable and fair to the class").

### 7. The Class's Reaction to the Settlement Supports Approval (*Grinnell* Factor 2)

The second *Grinnell* factor, the Settlement Class's reaction to the proposed Settlement, overlaps with Rules 23(e)(4) and 23(e)(5), which provide Settlement Class Members the right to either object to the Settlement or to request exclusion therefrom. This factor is "perhaps the most significant factor to be weighed in considering its adequacy." *Am. Bank Note,* 127 F. Supp. 2d at 425. Here, the reaction of the class has been overwhelmingly positive.

To date, 12,960 potential Settlement Class Members were notified of the Settlement either by mailed (unreturned) Postcard Notice or by emailed link to the Long Notice and Claim

19

Form. Bravata Decl. at ¶¶7-9; Exs. B and D to Bravata Decl. Specifically, SCS and nominees mailed a total of 8,531 copies of the Postcard Notice to potential Settlement Class Members. Bravata Decl. at ¶¶7, 9.[8] Nominees emailed 4,889 of their customers links to the Long Notice and Claim Form on the settlement website and SCS emailed the links to four potential Settlement Class Members. *Id.* at ¶7. SCS also published Summary Notice on *GlobeNewswire* and in *Investor's Business Daily. Id.* at ¶10; Ex. E to Bravata Decl. The notice informed Settlement Class Members that they may choose their own counsel should they object to or opt to be excluded from the Settlement. *Id.* at Exs. B, D and E to Bravata Decl.

The deadline to file objections is January 19, 2024. To date, no Settlement Class Members have objected to the Settlement. *Id*. at ¶14; Kim Decl., at ¶27. Plaintiffs will respond to subsequent duly lodged objections, if any, in their reply. Only two invalid exclusion requests were received. For one exclusion request, the entity was not a Settlement Class Member as it did not have any compensable damages. The other request did not provide information to ascertain if this individual is a Settlement Class Member and has yet to respond to SCS's request to provide documentation. Bravata Decl.,. at ¶13; Ex. F to Bravata Decl.; Kim Decl., at ¶27.

### 8.    The Stage of the Litigation and Discovery Completed Support Approval (*Grinnell* Factor 3)

The fact that there has been no formal discovery in this case does not weigh against preliminary approval. *See Am. Bank Note,* 127 F. Supp. 2d at 425–426 ("To approve a proposed settlement . . . the Court need not find that the parties have engaged in extensive discovery. Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the Settlement.") (quotation marks and

---

[8] Although 8,531 Postcard Notices were initially mailed, 822 were returned to SCS as "undeliverable." SCS could only obtain new addresses for 358 and provided Postcard Notice to those potential Settlement Class Members. Bravata Decl. at ¶9.

20

citations omitted); *see also IMAX*, 283 F.R.D. at 190 ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties."). Prior to settlement, Plaintiffs conducted a thorough and informed investigation. Plaintiffs engaged an investigator to conduct interviews with relevant witnesses in China as well as reviewed relevant Chinese regulatory filings. Kim Decl., ¶¶6, 17. In addition, since this case concerned a financial restatement, Plaintiffs engaged an accounting expert. *Id*. Plaintiffs also retained an expert to analyze damages. *Id*. Accordingly, Plaintiffs and Lead Counsel entered into the Settlement fully informed about the Action's strengths and weaknesses.

Moreover, discovery is stayed pursuant to the PSLRA, several hurdles to recovery would exist even if evidence were later uncovered proving that Defendants were severely reckless and that their misstatements were objectively and/or subjectively false. For example, Defendants could convince the Court or a jury that their misstatements were immaterial, or were not false misstatements, or that Tarena's ADS's price dropped, in whole or in part, for reasons unrelated to disclosure of the fraud, preventing Plaintiffs from proving loss causation and/or damages. For these reasons, *inter alia*, and after consulting with counsel, Plaintiffs – all of whom are experienced investors – decided that they had sufficient understanding of the strengths and weaknesses of the action to resolve it at this juncture.[9] *See Am. Bank Note*, 127 F. Supp. 2d at 425-26 ("[T]he Court need not find that the parties have engaged in extensive discovery. [I]t is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make … an appraisal of the Settlement.").

---

[9] *See* De Schutter Decl. at ¶¶2-5; Clauter Decl. at ¶¶2-5; Lewis Decl. at ¶¶2-5.

### 9. Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor 7)

Defendants' potential inability to withstand a greater judgment (*Grinnell* factor seven) weighs heavily in favor of final approval. Thus, the Settlement is a highly favorable result, and was obtained without exposing the Settlement Class to the risk, expense, and delay of continued litigation. Conversely, if the litigation continued, Tarena's assets would have continued to drain and the Company would likely spend millions of dollars if the litigation continued. Additionally, as discussed *supra* Section III(A)(2)(a), any judgment would likely be unenforceable as Tarena, its assets, and the Individual Defendants are all located in China.

### B. The Plan of Allocation Fairly and Reasonably Distributes the Recovery

A plan of allocation must provide for a "fair and reasonable" allocation of the recovery to Settlement Class members. *Blue Apron*, 2021 WL 1902475, at *1. "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Payment Card*, 330 F.R.D. at 40 (citing *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005)).

The calculation of each Settlement Class Member's Recognized Loss under the Plan, which was prepared with the assistance of Plaintiffs' expert in accordance with Plaintiffs' theory of the case is explained in detail in the Long Notice. The formula is based on several factors, including the number of Tarena ADSs the Settlement Class Member purchased and sold, and when those ADSs were purchased and sold if at all (including how the PSLRA's lookback provision applies to sales in the 90 days following the end of the class period). Bravata Decl., Ex. B at 5-7 ("The Basis for Calculating Your Recognized Loss").

Lead Counsel believes that the proposed Plan provides a fair, reasonable and rational method to allocate the Net Settlement Fund among Settlement Class Members who suffered

losses as a result of the alleged wrongful conduct. Kim Decl. at ¶¶25-26. To date, no objections to the Plan have been received, suggesting that Settlement Class Members find the Plan to be fair and reasonable. *Id*. at ¶27. Accordingly the proposed Plan merits final approval.

### C.      The Court Should Finally Certify the Settlement Class

Plaintiffs' memorandum of law in support of their motion for preliminary approval of the Settlement set forth the bases for the certification of a Settlement Class. (ECF No. 33 at 3-10). Applying the relevant legal standards to the facts and circumstances of this case, the Court found that the Settlement Class satisfied the requirements of Rule 23(a) and (b)(3) and issued its Order preliminarily certifying a class for settlement purposes. (ECF No. 41 at 2, ¶2). Nothing has transpired since preliminary approval was granted that would alter the Court's findings. For the reasons set forth in both Plaintiffs' preliminary approval papers, argument at the Preliminary Approval Hearing, and in the Preliminary Approval Order, the Court should grant final certification of the Settlement Class. *See Fleming v. Impax Labs. Inc.*, No. 16-cv-06557, 2022 WL 2789496, at *4 (N.D. Cal. July 15, 2022) (incorporating by reference class certification analysis from preliminary approval order as no facts had changed); *Khoja v. Orexigen Therapeutics, Inc.*, No. 15-cv-00540, 2021 WL 5632673 at *3 (S.D. Cal. Nov. 30, 2021) (same).

### D.      Notice to the Settlement Class Satisfied Due Process

Rule 23(e) and due process require that notice of a class-wide settlement be "reasonable" *i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores,* 396 F.3d at 114 (noting "[t]here are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements"); *see also In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 246 F.R.D. 156, 166 (S.D.N.Y. 2007) ("Notice need

23

not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members."). Here, the notice program satisfied due process with respect to both the manner of distribution and the substance of the Notice provided to Settlement Class Members.

The protocol followed by the Claims Administrator was earlier approved in the Court's Preliminary Approval Order. (ECF No. 41 at ¶¶15-18). Since that time, and in accordance with the deadlines set forth therein, as detailed above: (a) a total of 12,960 Settlement Class Members were individually notified about the Settlement via a combination of Postcard Notice and emails containing links to the Long Notice, Claim Form; (b) Summary Notice was published electronically on *GlobeNewswire* and in print in *Investor's Business Daily* on October 2, 2023; and (c) potential Settlement Class Members had access to both a 24/7 dedicated webpage containing the relevant documents pertaining to the Settlement and a toll-free telephone number to seek further information about the Settlement and/or assistance from the Claims Administrator. Bravata Decl., at ¶¶3-12. The notice plan SCS executed provided notice in a "reasonable manner to all class members who would be bound by the propos[ed judgment]." Fed. R. Civ. P. 23(e)(1)(B).

The Long Notice informs Settlement Class Members of, among other things: (1) the nature of the Action; (2) the Settlement Class definition; (3) the claims and defenses asserted; (4) a description of the terms of the Settlement; (5) the right of Settlement Class Members to enter an appearance through counsel of their own choosing; (6) the right of Settlement Class Members to request exclusion from the Settlement Class, and instructions on how and when to do so; (7) the right of Settlement Class Members to object to any aspect of the Settlement, including the

Plan and the request for attorneys' fees and litigation expenses, along with instructions on how and when to do so; (8) the binding effect of the Settlement on Settlement Class Members that do not elect to be excluded; and (9) the date and time of the final Settlement Hearing. *See* Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii); Bravata Decl., Ex. B (Long Notice).

In addition to this detailed information, the PSLRA requires the notice to include the amount of attorneys' fees and expenses sought, an estimate of per share damages recovered, as well as the per share cost of attorneys' fees and expenses. 15 U.S.C. §78u-4(a)(7). The Long Notice includes this required information, advising that Lead Counsel will apply to the Court for an award of attorneys' fees up to one-third of the Settlement Fund plus interest, as well as reimbursement of litigation expenses up to $40,000, and Awards to Plaintiffs of $15,000 in total, directly related to their representation of the Settlement Class. Bravata Decl., Ex. B at 1.

The notice program: (1) provided the information necessary for Settlement Class Members to evaluate the Settlement and fee request so that they could decide (a) whether and how to file a claim to share in the recovery or seek exclusion from the Settlement or (b) whether and how to object to the terms of the Settlement or the fees requested; and (2) followed the dissemination of Notice protocol set forth in the Preliminary Approval Order. Therefore, the notice provided to Settlement Class Members satisfied Rule 23(e), 15 U.S.C. §78u-4(a)(7) and due process.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that the Court: (1) finally certify the Settlement Class; (2) finally approve the Settlement; (3) enter the final judgment;[10] and (4) approve the proposed Plan.

---

[10] A proposed final order and judgment will be filed with Plaintiffs' reply papers.

25

Dated: January 12, 2024      Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: */s/ Phillip Kim*
Phillip Kim (Pronouns: he/him/his)
Jing Chen (Pronouns: she/her/hers)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: pkim@rosenlegal.com
   jchen@rosenlegal.com

*Lead Counsel for Plaintiffs and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 12, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system

<u>*/s/ Phillip Kim*</u>
Phillip Kim