**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| YILI QIU, Individually and On Behalf of All Others Similarly Situated, | CASE No.: 1:21-cv-03502-PKC-RML |
| Plaintiff, | |
| v. | |
| TARENA INTERNATIONAL, INC., SHAOYUN HAN, and YUDUO YANG, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND AWARDS TO PLAINTIFFS**

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................ 1

II. FACTUAL AND PROCEDURAL HISTORY ......................................................... 2

III. ARGUMENT ............................................................................................................. 5

   A. The Common Fund Doctrine Applies to the Settlement ...................................... 5

   B. The Court Should Award a Reasonable Percentage of the Common Fund ........................ 6

   C. The Requested Attorneys' Fees Are Reasonable ................................................ 7

     1. A Percentage-of-the-Fund Fee of One-Third of the Settlement Fund Is Reasonable and Promotes Efficient, Effective Advocacy .......................................... 7

     2. The Lodestar "Cross-Check" Strongly Supports the Reasonableness of the Requested Fee ................................................................................................................ 9

   D. The *Goldberger* Factors Confirm the Requested Fee is Fair and Reasonable .................. 11

     1. Time and Labor Expended Support the Requested Fee .................................. 11

     2. The Risks of Litigation Support the Requested Fee ....................................... 13

     3. The Complexity of the Action Supports the Fee ............................................ 17

     4. The Quality of Representation Supports the Requested Fee .......................... 18

     5. The Requested Fee in Relation to the Settlement Amount ............................. 21

     6. Public Policy Considerations Support the Requested Fee .............................. 21

   E. Lead Counsel's Expenses are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained ........................................................................................ 22

   F. Lead Plaintiff and Named Plaintiffs Should be Awarded Their Reasonable Costs and Expenses Under 15 U.S.C. § 78u-4(a)(4) ............................................. 23

IV. CONCLUSION ........................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Athale v. Sinotech Energy Ltd.*,
No. 11 Civ. 05831, 2013 WL 11310686.................................................................................... 11

*Bell v. Kanzhun Limited, et al.*,
Case No. 2:21-cv-13543 (D.N.J.) ........................................................................................... 19

*Beltran v. SOS Limited, et al.*,
Case No. 1:21-cv-07454 (D.N.J.) ........................................................................................... 19

*Bensley v. FalconStor Software, Inc.*,
277 F.R.D. 231 (E.D.N.Y. 2011) ............................................................................................ 19

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)................................................................................................................... 5

*Burns v. FalconStor Software, Inc.*,
No. 10 CV 4572, 2014 WL 12917621 (E.D.N.Y. Apr. 11, 2014) ....................................... 6, 10

*Christine Asia Co., Ltd. v. Yun Ma*,
No. 1:15-md-02631, 2019 5257534, (S.D.N.Y. Oct. 16, 2019) ......................................... 17, 18

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)..................................................................................................... 13

*City of Providence v. Aeropostale, Inc.*,
No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014)...................... 18, 22

*Cornwell v. Credit Suisse Grp.*,
2011 WL 13263367 (S.D.N.Y. July 18, 2011) ........................................................................ 11

*Eltman v. Grandma Lee's, Inc.*,
No. 82 CIV. 1912, 1986 WL 53400 (E.D.N.Y. May 28, 1986) ................................................. 5

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ................................................................................................... 15

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000)................................................................................................ *passim*

*Horowitz v. Sunlands, Tech. Grp. et al.*,
No. 1:19-CV-03744 (E.D.N.Y. Oct. 11, 2023)..................................................................... 8, 10

*In re 3D Systems Secs. Litig.,*
2024 WL 50909 (E.D.N.Y., Jan. 4, 2024) ........................................................................ *passim*

*In re Adelphia Commc'ns Corp. Sec & Deriv. Litig.,*
No. 03 MDL 1529, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006) ......................................... 19

*In re Akazoo S.A. Sec. Litig.,*
2021 WL 4523811 (E.D.N.Y.)................................................................................................ 7

*In re Akazoo S.A. Sec. Litig.,*
2021 WL 4316717 (E.D.N.Y. Sept. 10, 2021) ................................................................. 7, 24

*In re AOL Time Warner, Inc.,*
No. 02 CIV. 5575, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)............................................. 17

*In re BankAtlantic Bancorp, Inc.,*
No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011)......................................... 15

*In re Blue Apron Holdings, Inc. Secs. Litig.,*
2021 WL 1884801 (E.D.N.Y.)............................................................................................. 24

*In re Blue Apron Holdings, Inc. Secs. Litig.,*
No. 17-cv-04846, 2021 WL 1902475 (E.D.N.Y. May 10, 2021)..................................... 10, 24

*In re Bristol-Myers Squibb Secs. Litig.,*
361 F. Supp. 2d 229 (S.D.N.Y. 2005).................................................................................... 7

*In re Cendant Corp. Litig.,*
264 F.3d 201 (3d Cir. 2001).................................................................................................. 16

*In re Comverse Tech., Inc. Sec. Litig.,*
No. 06-CV-1825, 2010 WL 2653354 (E.D.N.Y. June 24, 2010) .................................... *passim*

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.,*
2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015)......................................................................... 12

*In re Flag Telecom Holdings, Ltd. Sec. Litig.,*
No. 02-CV-3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)....................................... 14, 22

*In re Giant Interactive Grp., Inc. Sec. Litig.,*
279 F.R.D. 151 (S.D.N.Y. 2011) .......................................................................................... 14

*In re Glob. Crossing Sec. & ERISA Litig.,*
225 F.R.D. 436 (S.D.N.Y. 2004) ..................................................................................... *passim*

*In re Global Brokerage, Inc. f/k/a FXCM Inc. Secs. Litig.*,
    No. 1:17-cv-00916 (S.D.N.Y. 2023).........................................................................10

*In re Graña y Montero S.A.A. Secs. Litig.*,
    No. 17-CV-01105, 2021 WL 4173684 (E.D.N.Y. Aug. 13, 2021) ..........................15

*In re Guevoura Fund Ltd. v. Sillerman*,
    2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ......................................................8, 11

*In re Hi-Crush Partners L.P. Sec. Litig.*,
    No. 12-Civ-8557, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ..........................9, 10

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    302 F. Supp. 2d 180 (S.D.N.Y. 2003)......................................................................22

*In re January 2021 Short Squeeze Trading Litig.*,
    No. 21-2989-MDL, 2021 WL 4840857 (S.D. Fla. Oct. 15, 2021) ..........................19

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    No. 04 Civ. 8144, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)......................16, 23

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................................16, 17

*In re MetLife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) ......................................................................14

*In re Novatel Wireless Sec. Litig.*,
    830 F. Supp. 2d 996 (S.D. Cal. 2011)......................................................................15

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    991 F. Supp. 2d 437 (E.D.N.Y. 2014) ........................................................................7

*In re PolyMedica Corp. Sec. Litig.*,
    453 F. Supp. 2d 260 (D. Mass. 2006) ......................................................................15

*In re Qudian Inc. Sec. Litig.*,
    No. 1:17-CV-09741-JMF, 2021 WL 2328437 (S.D.N.Y. June 8, 2021)..................24

*In re Revolution Lighting Techs., Inc. Secs. Litig.*,
    No. 1:19-CV-00980, 2020 WL 4596811 (S.D.N.Y. Aug. 11, 2020)......................7, 24

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005)........................................................................................7

*In re Signet Jewelers Ltd. Secs. Litig.,*
   No. 1:16-CV-06728, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) ......................................... 24

*In re Tesla Inc., Sec. Litig.,*
   No. 18-CV-04865-EMC, 2023 WL 4032010 (N.D. Cal. June 14, 2023) ................................. 15

*In re WorldCom, Inc. Sec. Litig.,*
   388 F. Supp. 2d 319 (S.D.N.Y. 2005) ........................................................................................ 6

*Johnson v. Brennan,*
   No. 10 CIV. 4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ............................................. 7

*Knox v. Yingli Green Energy Holding Co. Ltd.,*
   136 F. Supp. 3d 1159 (C.D. Cal. 2015) ................................................................................... 19

*Kristal v. Mesoblast Ltd.,*
   2022 WL 4371039 (S.D.N.Y.) .................................................................................................... 7

*Kristal v. Mesoblast Ltd.,*
   2022 WL 3442535 (S.D.N.Y. Aug. 15, 2022) ............................................................................. 7

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.,*
   No. 03-CV-4372, 2009 WL 4730185 (D.N.J. Dec. 4, 2009) .................................................... 17

*Lea v. Tal Educ. Grp.,*
   2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ............................................................................. 8

*LeBlanc-Sternberg v. Fletcher,*
   143 F.3d 748 (2d Cir. 1998) ....................................................................................................... 9

*Maley v. Del Glob. Techs. Corp.,*
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................................... 5, 21

*Mikhlin v. Oasmia Pharm. AB,*
   No. 19CV4349, 2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) ............................................... 7, 19

*Mills v. Elec. Auto-Lite Co.,*
   396 U.S. 375 (1970) .................................................................................................................... 6

*Moloney v. Shelly's Prime Steak, Stone Crab & Oyster Bar,*
   2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ............................................................................. 8

*Monzon v. 103W77 Partners, LLC,*
   2015 WL 993038 (S.D.N.Y. Mar. 5, 2015) ................................................................................. 9

v

*Pace v. Quintanilla*,
 No. SACV 14-2067, 2014 WL 4180766 (C.D. Cal. Aug. 19, 2014) ........................................ 19

*Palacio v. E\*TRADE Financial Corp.*,
 2012 WL 2384419 (S.D.N.Y. June 22, 2012) ................................................................... 8

*Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*,
 2012 WL 3746220 (E.D.N.Y. Aug. 27, 2012)................................................................... 17

*Rupp, et al., v. Momo, Inc., et al.*,
 Case No. 1:19-cv-04433 (S.D.N.Y.)................................................................................. 19

*Savoie v. Merchants Bank*,
 166 F.3d 456 (2d Cir. 1999)............................................................................................. 9

*Shapiro v. JPMorgan Chase & Co.*,
 No. 11 CIV. 7961, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ................................... 10, 13

*Taft v. Ackermans*,
 No. 02 Civ. 7951, 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007)....................................... 17

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*,
 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ................................................................. 14

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
 551 U.S. 308 (2007)......................................................................................................... 21

*Too v. Rockwell Med., Inc.*,
 2020 WL 1125633 (E.D.N.Y.).......................................................................................... 8, 10

*Too v. Rockwell Med., Inc.*,
 No. 1:18-CV-04253, 2020 WL 1026410 (E.D.N.Y. Feb. 26, 2020) ................................. 7, 10

*Toure v. Amerigroup Corp.*,
 No. 10 CIV. 5391 RLM, 2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012) ............................ 8

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
 396 F.3d 96 (2d Cir. 2005)............................................................................................... 6, 10

*Zeltser v. Merrill Lynch & Co., Inc.*,
 2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014).................................................................. 8

## Statutes

15 U.S.C. § 78u-4(a) ................................................................................................................ 6, 23

vi

## I.    INTRODUCTION

As set forth in the accompanying memorandum in support of its approval, the proposed Settlement,[1] which provides for a cash payment of $3,500,000, is a favorable result for the Settlement Class. For securing this recovery, Lead Counsel, The Rosen Law Firm, P.A. ("Rosen Law"), seeks attorneys' fees of $1,166,666.67, an award of one-third of the Settlement. In light of the possibility of dismissal at the pleading stage or an adverse judgment following discovery, trial, or appeal, Lead Counsel took on significant risk, investing time, effort, and money to prosecute the Action against highly-skilled counsel. Lead Counsel also seeks $25,922.61 as reimbursement of out-of-pocket litigation expenses, less than the $40,000 amount set forth in the Notice given to potential Settlement Class Members. With no guarantee of success, Lead Counsel only incurred reasonable expenses necessary to the prosecution of the Action.

Finally, the Court should grant a total of $15,000 in awards to Lead Plaintiff Walter De Schutter ("Lead Plaintiff") and Named Plaintiffs Steven Clauter and Cynthia Lewis ("Named Plaintiffs" and with Lead Plaintiff, "Plaintiffs"), to compensate them for the time and effort spent on behalf of the Settlement Class. Plaintiffs, who are all experienced investors, were in regular communication with counsel during years of litigation. They reviewed the pleadings and motion papers and ensured that Lead Counsel kept them fully informed of the relevant facts so that they could make important decisions, including the determination to settle the case at this juncture.

---

[1] All capitalized terms not otherwise defined herein have the meanings ascribed to them in the Second Amended Stipulation of Settlement, filed August 18, 2023 (ECF No. 40), the Declaration of Phillip Kim in Support of Plaintiffs' Motions for: (I) Final Approval of Class Action Settlement and Plan of Allocation; and (II) An Award of Attorneys' Fees, Reimbursement of Expenses, and Awards to Plaintiffs ("Kim Declaration" or "Kim Decl."), filed herewith, or the Amended Class Action Complaint for Violation of the Federal Securities Laws ("AC" or "Amended Complaint") (ECF No. 17). Unless otherwise noted, citations herein to "Ex.__" refer to exhibits to the Kim Declaration.

As of the filing of this motion, 12,960 potential Settlement Class Members received individual notice of the Settlement. Ex. 1 at ¶¶7-9 (Declaration of Josephine Bravata). Notice was also published electronically and in print. *Id.* at ¶10 & Ex. E. No objections to the amounts requested have been received, *id.* at ¶14, Kim Decl. at ¶27, indicative of the fact that they are reasonable and proper.[2] For this reason, and as explained below, Plaintiffs respectfully submit that their motion be granted in its entirety, awarding the attorneys' fees, expense reimbursements, and service awards requested.

## II.    FACTUAL AND PROCEDURAL HISTORY

Tarena is a professional education provider in China that focuses on information technology ("IT") vocational training programs for adults and after-school IT programs for children and adolescents. The Amended Complaint alleges that Tarena engaged in a multi-year accounting fraud that rendered its financial statements false and necessitating a restatement of the financial results and audited financial statements for the years ended December 31, 2014, 2015, 2016, 2017, and 2018. Through a series of alleged partial corrective disclosures, Tarena's stock price fell significantly, damaging Settlement Class Members.[3]

On June 22, 2021, this action was commenced, asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 against Tarena, Shaoyun Han, and Yuduo Yang (collectively, "Defendants") on behalf of a putative class of purchasers or acquirers of Tarena securities between August 16, 2016 and November 1, 2019. (ECF No. 1). The complaint alleged that Defendants made materially false statements in several years of its financial statements.

---

[2] Should any objections be later received by counsel, the Court and/or the Claims Administrator (the deadline is January 19, 2024), they will be addressed in Plaintiffs' reply papers.

[3] Tarena has denied and continues to deny each, any and all allegations of wrongdoing, fault, liability or damage whatsoever asserted in the Action.

Although two motions seeking appointment as Lead Plaintiff and Lead Counsel were filed, Walter De Schutter's motion was ultimately unopposed. Magistrate Judge Robert M. Levy appointed Mr. De Schutter as Lead Plaintiff and Rosen Law as Lead Counsel on September 1, 2021.

Alleging Plaintiffs' theory of the case with the level of detail needed to plead securities fraud claims so as to comport with the exacting standards of the Private Securities Litigation Reform Act of 1995 ("PSLRA") required a multi-pronged approach. First, Lead Counsel researched Tarena's SEC filings, Chinese regulatory filings, press releases, interviews and articles written about Tarena, as well as a number of class period analyst reports. Kim Decl. at ¶¶6, 17. Next, counsel hired an investigator in China to interview those with personal knowledge of Tarena's operations and management. *Id.* Finally, because Tarena restated its financial statements, Lead Counsel engaged an accounting expert to assist in articulating the reasons that the Company's financial reporting violated Generally Accepted Accounting Principles ("GAAP"). *Id.*

On December 16, 2021, Tarena filed a letter with the Court requesting a pre-motion conference and laid out its attack on the Amended Complaint. Tarena intended to move to dismiss the Action for failure to state a claim as to one or more §10(b) elements with respect to misstatements alleged asserting that the Amended Complaint could not satisfy scienter, failed to allege a misrepresentation, and that Plaintiffs lacked standing to bring several of the alleged misstatements. (ECF No. 18). After analyzing the letter and conducting legal research, Lead Counsel filed a response on December 23, 2021. (ECF No. 19). On January 3, 2022, the Court determined that a pre-motion conference was unnecessary and directed the Parties to submit a briefing schedule for the motion to dismiss, which the Parties submitted on January 10, 2022. (ECF No. 20).

On January 18, 2022, Tarena's motion to dismiss, which expanded on the arguments raised in the pre-motion letter, was served on Plaintiffs and a letter was filed with the Court. (ECF No. 21). Lead Counsel conducted additional legal research and served opposition papers on April 4, 2022, filing a letter with the Court. (ECF No. 23). On May 19, 2022, the fully-briefed motion to dismiss, including Tarena's reply, was filed on the Court's docket. (ECF Nos. 24-29). Kim Decl. at ¶7.

While Defendants' motion was pending, the Parties decided to explore settlement. Kim Decl. at ¶8. On June 2, 2022, after an exchange of mediation statements, the Parties engaged in a hard-fought, full-day, virtual mediation session before Robert A. Meyer, Esq., a JAMS neutral and an experienced mediator of securities class actions as well as subsequent settlement discussions. Kim Decl. at ¶¶9-11 and Ex. 2 at ¶¶4-10 (Meyer Declaration). Thereafter, Lead Counsel drafted the initial settlement stipulation, consulted with an expert to devise a Plan of Allocation, engaged a claims administrator, and drafted the documents required to seek preliminary Settlement approval and provide effective notice to Settlement Class Members. Kim Decl. at ¶11. The Parties' counsel negotiated the terms of Settlement and the necessary documents. Plaintiffs filed the preliminary approval papers on August 31, 2022. *Id.*; (ECF Nos. 31-34).

The Court held a preliminary approval hearing on November 8, 2022. The Court asked thoughtful questions about the Settlement including about notice documents and procedures, the class definition, adequacy of the Lead Plaintiff, and the mechanism of awarding attorneys' fees. Kim Decl. at ¶12.  In response to the Court's directives, on November 17, 2022, Tarena submitted a letter regarding the release of unknown claims and on November 22, 2022, Plaintiffs filed a letter providing the Court with examples of worldwide classes. (ECF Nos. 35-36). On December 5, 2022, Plaintiffs submitted a clean and redline version of the Amended Stipulation of Settlement. (ECF

No. 39). On August 3, 2023, the Court entered an order requesting additional modifications to the settlement documentation including: (1) requiring Lead Counsel to seek permission from the Court to designate a non-profit charitable organization for any remaining funds in the Net Settlement Fund; (2) requiring Lead Counsel to seek approval for the distribution of Notice and Administration Costs and report such costs every 60 days from preliminary approval; and (3) modifying the stipulation to clarify that investors could appeal the Claims Administrator's rejection of their claim. On August 18, 2023, Plaintiffs filed the operative Second Amended Stipulation, incorporating these changes. (ECF No. 40). On September 5, 2023, the Court entered the Preliminary Approval Order. (ECF No. 41).

## III.    ARGUMENT

### A.    The Common Fund Doctrine Applies to the Settlement

The Supreme Court and the Second Circuit have long recognized that attorneys whose efforts create a "common fund" are entitled to a reasonable attorneys' fee from that fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). "The rationale for the doctrine is an equitable one: it prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost." *Id.*, 209 F.3d at 47. Awarding attorneys' fees from the common fund serves "the dual purposes of encouraging representatives to seek redress for injuries caused to public investors and discouraging future misconduct of a similar nature." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002); *Eltman v. Grandma Lee's, Inc.*, No. 82 CIV. 1912, 1986 WL 53400, at *9 (E.D.N.Y. May 28, 1986) ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding. The concept of a private attorney acting as a 'private attorney general' is vital to the continued enforcement and

5

effectiveness of the Securities Acts.").

An award from the common fund is proper if the litigation "confer[s] a substantial benefit on the members of an ascertainable class, and … the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them." *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970). Here, Lead Counsel's efforts conferred a substantial benefit—$3,500,000 in cash—on an ascertainable class, the Settlement Class. A fee award from the Settlement Fund will equitably shift the costs of litigation to the Settlement Class.

## B.    The Court Should Award a Reasonable Percentage of the Common Fund

"Although the Second Circuit has left it to the discretion of the district courts to decide the method to use for setting fees in common fund cases, recent cases have indicated that the trend for courts in this circuit is to use the percentage of the fund method." *Burns v. FalconStor Software, Inc.*, No. 10 CV 4572, 2014 WL 12917621, at *8 (E.D.N.Y. Apr. 11, 2014). This is because the percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825, 2010 WL 2653354, at *2 (E.D.N.Y. June 24, 2010) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)). This method is also supported by the PSLRA which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."  15 U.S.C. § 78u-4(a)(6); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005) ("apply[ing] the percentage method" due, at least in part, to "the PSLRA's express contemplation that the percentage method will be used to calculate attorneys' fees in securities fraud class actions").

When the percentage method is used, a comparison to the lodestar amount serves to "cross-check" the reasonableness of the requested percentage. *Goldberger*, 209 F.3d at 50. When used

"as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Id.* Being able to rely on "summaries submitted by the attorneys [rather than] actual billing records," *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005), *as amended* (Feb. 25, 2005) (so holding), "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Johnson v. Brennan*, No. 10 CIV. 4712, 2011 WL 4357376, at *15 (S.D.N.Y. Sept. 16, 2011); *In re Bristol-Myers Squibb Secs. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) ("Typically, courts utilize the percentage method and then 'cross-check' the adequacy of the resulting fee by applying the lodestar method.").

> ### C.       The Requested Attorneys' Fees Are Reasonable
>
> #### 1.       A Percentage-of-the-Fund Fee of One-Third of the Settlement Fund Is Reasonable and Promotes Efficient, Effective Advocacy

"Courts in this Circuit routinely find that requests for attorney's fees totaling one-third of the settlement fund are 'well within the range of reasonableness.'" *Mikhlin v. Oasmia Pharm. AB*, No. 19CV4349, 2021 WL 1259559, at *7 (E.D.N.Y. Jan. 6, 2021) (citing cases). Where the fund is less than $10 million, 33% contingency fees are "very common." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014). Indeed, in the Second Circuit, a one-third fee has been awarded in securities class actions settled under comparable circumstances. *See In re Revolution Lighting Techs., Inc. Secs. Litig.,* No. 1:19-CV-00980, 2020 WL 4596811, at *3 (S.D.N.Y. Aug. 11, 2020) (awarding one-third of $2,083,333.33 settlement prior to filing amended complaint); *Kristal v. Mesoblast Ltd.*, 2022 WL 3442535, at *1 (S.D.N.Y. Aug. 15, 2022) ($2 million settlement, *see* 2022 WL 4371039); *In re Akazoo S.A. Sec. Litig.*, 2021 WL 4316717, at *1 (E.D.N.Y. Sept. 10, 2021) ($4.9 million partial settlement prior to formal discovery, *see* 2021 WL 4523811); *Too v. Rockwell Med., Inc.*, No. 1:18-CV-04253, 2020 WL 1026410, at *3 (E.D.N.Y. Feb. 26, 2020) ($3.7 million settlement prior

to formal discovery, *see* 2020 WL 1125633); *Toure v. Amerigroup Corp.*, No. 10 CIV. 5391 RLM, 2012 WL 3240461, at \*5 (E.D.N.Y. Aug. 6, 2012) ($4,450,000 settlement); *see also Horowitz v. Sunlands, Tech. Grp. et al.*, No. 1:19-CV-03744, ECF 75 (E.D.N.Y. Oct. 11, 2023) (Ex. 16) ($6.2 million settlement of §11 case); *Lea v. Tal Educ. Grp.,* 2021 WL 5578665, at \*11 (S.D.N.Y. Nov. 30, 2021) (awarding one-third of $7.5 million settlement and holding that the "percentage of the fund requests – one-third – is a percent that has been approved as reasonable in this Circuit"); *In re Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at \*21 (S.D.N.Y. Dec. 18, 2019) (awarding attorneys' fees of one-third of $7.5 million, finding that it is "consistent with percentage fees awarded in this Circuit and nationwide for comparable recoveries") (citing cases); *Palacio v. E\*TRADE Financial Corp.,* 2012 WL 2384419, at \*6 (S.D.N.Y. June 22, 2012) (granting one-third of $1.5 million settlement); *Moloney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at \*5 (S.D.N.Y. Mar. 31, 2009) (collecting cases and noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit.").[4]

One of the merits of awarding fees on a percentage basis is that it does not penalize attorneys for achieving a prompt resolution of a case, where, as here, Lead Counsel gained sufficient information concerning the strengths and weaknesses of the case necessary to make an informed decision about the value of the claims, and further costly litigation would most likely have yielded a diminished recovery. Under such circumstances, Lead Counsel should be rewarded for their efficient and effective advocacy. *See Zeltser v. Merrill Lynch & Co., Inc.*, 2014 WL 4816134, at \*10 (S.D.N.Y. Sept. 23, 2014) (awarding a 33% fee, equating to a multiplier of 5.1,

---

[4] *See also*, Ex. 14 which is a list of settlements in the Second Circuit that awarded at least 33% in attorneys' fees.

where settlement was reached after consolidated amended complaint was filed and noting that Plaintiff's Counsel should not be "penalize[d] . . . for achieving an early settlement, particular where . . . the settlement amount is substantial."); *Savoie v. Merchants Bank*, 166 F.3d 456, 461 (2d Cir. 1999) ("[T]he percentage-of-the-fund method also removes disincentives to prompt settlement, because plaintiffs' counsel, whose fee does not increase with delay, have no reason to drag their feet."); *Monzon v. 103W77 Partners, LLC*, 2015 WL 993038, at *2 (S.D.N.Y. Mar. 5, 2015) (awarding one-third of the settlement fund and noting that the "percentage of the fund method in common fund cases like this one … directly aligns the interests of the class and its counsel, mimics the compensation system actually used by individual clients to compensate their attorneys, provides a powerful incentive for the efficient prosecution and early resolution of litigation, and preserves judicial resources.").

### 2. The Lodestar "Cross-Check" Strongly Supports the Reasonableness of the Requested Fee

Courts awarding fees based upon a percentage of the common fund use a lodestar "cross-check" to confirm the reasonableness of the requested fee award. *See Goldberger*, 209 F.3d at 50. The "lodestar" is calculated by multiplying the number of hours expended on the litigation by each attorney and paralegal by their current reasonable and customary hourly rate and totaling the amounts for all timekeepers.[5] Additionally, "[u]nder the lodestar method of fee computation, a

---

[5] "[T]he use of current rates to calculate the lodestar figure has been endorsed repeatedly by the Supreme Court, the Second Circuit and district courts within the Second Circuit as a means of accounting for the delay in payment inherent in class actions and for inflation." *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557, 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19, 2014) (citing cases); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment.").

In recent years, attorney salaries have been increasing due to inflation and market factors. According to a survey administered by the National Association for Law Placement, Inc. ("NALP"), as of January 1, 2023, the overall median for a first-year associate's salary increased 21.2% since 2021, to $200,000. (Ex. 20). Salaries tend to be higher in certain cities, like New York

multiplier is typically applied to the lodestar. The multiplier represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004); *Comverse*, 2010 WL 2653354, at *5 ("Where … counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar.").

Here, Lead Counsel devoted of 659.9 hours to the prosecution of the Action, resulting in a lodestar of $576,005. Kim Decl., ¶¶28-29.[6] Based on a one-third fee (equal to $1,166,666.67), Lead Counsel's lodestar yields a multiplier of 2.025. *Id*., ¶28. This multiplier is well within the range of, and below, multipliers commonly awarded in securities class actions and other complex litigation. *See Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable on appeal); *Burns*, 2014 WL 12917621, at *10 (fee award of 33.3% "reasonable" based on cross-check multiplier of 4.75); *Too*, 2020 WL 1026410, at *3 (awarding 2.74 multiplier, *see* 2020 WL 1125633); *Shapiro v. JPMorgan Chase & Co.,* No. 11 CIV. 7961, 2014 WL 1224666, at *24

---

City in which 75% of the 40 offices surveyed reported a first-year associate salary of $215,000. *Id*. Although the NALP report specifically discussed first-year associates' salaries, this trend in increased salaries permeates at all levels and impacts attorney billing rates. Kim Decl., ¶31.

[6] Lead Counsel's rates for attorneys who worked on this litigation range from $875 to $1,025 for partners and $600 to $800 for associates and counsel (¶28), and "are comparable to peer plaintiffs and defense-side law firms litigating matters of similar magnitude." *Hi-Crush*, 2014 WL 7323417, at *14 (approving rates "ranging from $425 to $825 per hour" *in 2014*). Courts in the Second Circuit have recently approved Rosen Law's fee requests. *See In re 3D Systems Secs. Litig.,* 2024 WL 50909, at *16 (E.D.N.Y., Jan. 4, 2024); *Horowitz v. Sunlands, Tech. Grp. et al.*, No. 1:19-CV-03744, ECF 71-4 and 75 (E.D.N.Y. 2023) (declaration re: attorneys' fees and order approving fee request) (Exs. 15 and 16); *In re Global Brokerage, Inc. f/k/a FXCM Inc. Secs. Litig.*, No. 1:17-cv-00916, ECF 366 and 374 (S.D.N.Y. 2023) (declaration re: attorneys' fees and Order and Final Judgment approving fee request) (Exs. 17 and 18); *In re Blue Apron Holdings, Inc. Secs. Litig.*, No. 17-cv-04846, 2021 WL 1902475 at *4 (E.D.N.Y. May 10, 2021). Rosen Law's rates are comparable to its peers in the securities class action area. (Ex. 19, a chart of peer firm billing rates).

(S.D.N.Y. Mar. 24, 2014) ("Lodestar multipliers of nearly 5 have been deemed 'common' by courts in this District.").[7]

Lead Counsel's requested fee award is reasonable, both as a percentage of the Settlement Fund and when calculated using a lodestar cross check. Under either method, it is well within the range of what courts in this Circuit regularly award in complex class actions. Moreover, as discussed below, each of the factors established by the Second Circuit in *Goldberger* supports a finding that the requested fee is reasonable.

### D. The *Goldberger* Factors Confirm the Requested Fee is Fair and Reasonable

Regardless of which calculation method is used, the Second Circuit has set forth the following criteria that courts should consider when reviewing whether a request for attorneys' fees in a common fund case is reasonable:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50. Consideration of these factors, together with the analyses discussed above, demonstrates that the requested fee is reasonable.

### 1. Time and Labor Expended Support the Requested Fee

The time and effort Lead Counsel expended in prosecuting this Action and achieving the Settlement supports the requested fee. As set forth in the files of this Action and/or in the Kim Declaration, Lead Counsel, among other things:

- Researched, drafted, and filed the initial complaint in this Action. (ECF No. 1);
- Drafted a motion for appointment of lead plaintiff and lead counsel. (ECF No. 5-6);

---

[7] *See also Athale v. Sinotech Energy Ltd.*, No. 11 Civ. 05831, 2013 WL 11310686, at *9 (awarding multiplier of 5.65); *Cornwell v. Credit Suisse Grp.*, 2011 WL 13263367, at *2 (S.D.N.Y. July 18, 2011) (awarding 4.7 multiplier); *Guevoura Fund Ltd.*, 2019 WL 6889901, at *18 ("multipliers of between three and four times…have been routinely awarded in this Circuit.").

- Conducted an extensive investigation concerning the claims asserted in the Action, which included, among other things: (a) reviewing and analyzing (i) SEC filings, (ii) public reports, interviews, research reports prepared by securities and financial analysts, and news articles, (iii) earnings call transcripts, and (iv) Chinese regulatory filings; (b) retaining a private investigator in China to interview witnesses; (c) retaining an accounting expert to assist with analyzing GAAP violations; and (d) retaining and consulting with an expert concerning damages. (Kim Decl. at ¶¶6, 17);

- Utilized the comprehensive investigation and additional research to draft and file the Amended Complaint. (*Id.* at ¶6; ECF No. 17);

- Drafted a pre-motion letter response and papers in opposition to Defendants' motion to dismiss the Amended Complaint. (Kim Decl. at ¶¶7, 17; ECF Nos. 19 and 27-28);

- Engaged in an extensive mediation and settlement process facilitated by Mr. Meyer of JAMS, which included the submission of a detailed mediation statement, a full-day mediation session, and subsequent settlement negotiations. (Kim Decl. at ¶¶9-11, 17)

- Drafted and negotiated several versions of the Stipulation and exhibits thereto, and addressing the Court's inquiries about the settlement class and incorporating modifications. (*Id.* at ¶¶11-15; ECF Nos. 31, 36-40);

- Worked with a damages expert to craft a plan of allocation that treats Plaintiffs and all other members of the proposed Settlement Class fairly. (Kim Decl. at ¶25);

- Drafted the preliminary approval motion, argued in support of the Settlement at a preliminary approval hearing, and modified the filings pursuant to the Court's directives. (*Id.* at ¶¶11-15; ECF Nos. 32-34);

- Oversaw the implementation of the notice process to Settlement Class Members (Kim Decl. at ¶27);

- Drafted the motion for final approval; and

- Provided filings for review and discussion and gave periodic case updates to Plaintiffs throughout the course of the litigation. (Kim Decl. at ¶24)

Should the Settlement be approved, additional hours and resources will be expended shepherding the claims process to conclusion and filing a distribution motion. No additional compensation will be sought for this work. *See 3D Systems,* 2024 WL 50909, at *16 (recognizing that "counsel will expend additional time on this litigation following the adjudication of [the final approval and attorneys' fees] motions, which will increase any lodestar calculations."); *In re Facebook, Inc. IPO Sec. & Deriv. Litig.,* 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015)

("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process [and] respond to inquiries, … the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable.").

Accordingly, this factor supports the requested fee.

### 2.    The Risks of Litigation Support the Requested Fee

"[T]he risk of success [is] 'perhaps the foremost' factor to be considered in determining" a reasonable award of attorneys' fees. *Goldberger*, 209 F.3d at 54; *see also Shapiro*, 2014 WL 1224666, at *21 ("The Second Circuit long ago recognized that courts should consider the risks associated with lawyers undertaking a case on a contingent fee basis."). This is because "[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974). In applying this factor, "'litigation risk must be measured as of when the case is filed,' rather than with the hindsight benefit of subsequent events." *Global Crossing*, 225 F.R.D. at 436, 467 (quoting *Goldberger*, 209 F.3d at 55). As explained below and in Plaintiffs' Memorandum of Law in Support of Final Approval of Class Action Settlement and Plan of Allocation ("Final Approval Memorandum"), filed herewith, the many risks that Lead Counsel faced in prosecuting the case justify the requested one-third fee.

Numerous courts have recognized that "class actions confront even more substantial risks than other forms of litigation[,]" *Comverse*, 2010 WL 2653354, at *5, and "securities actions have

13

become more difficult from a plaintiff's perspective in the wake of the [Private Securities Litigation Reform Act]." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 361 (E.D.N.Y. 2010).[8]

This case posed significant obstacles to success at each stage of the litigation, with a vigorous defense promised from highly-skilled counsel. Nonetheless, in seeking appointment by the Court, "plaintiffs' counsel were obligated to assure that sufficient attorney and para-professional resources were dedicated to the prosecution of the action; counsel also faced the responsibility of advancing litigation and overhead expenses on this case …" *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011). Indeed, "[u]nlike counsel for Defendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, [Lead Counsel] have not been compensated for any time or expenses since this case began …" *Flag Telecom*, 2010 WL 4537550, at \*27. Lead Counsel's commitment was significant (*i.e.*, $576,005 in lodestar and $25,922.61 in out-of-pocket hard costs), including the engagement of an investigator and two experts. Although Lead Counsel believes Plaintiffs' claims are meritorious, a loss at any stage of the litigation could deny the class any recovery and counsel any compensation.

When the Parties agreed to settle the Action, a motion to dismiss was pending in which Tarena argued that its statements were unactionable audit opinions, not misstatements. Tarena also challenged the element of scienter with respect to the alleged misstatements. (ECF No. 25). Because scienter "is often the most difficult and controversial aspect of a securities fraud claim,"

---

[8] *See also Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*, 2004 WL 1087261, at \*3 (S.D.N.Y. May 14, 2004) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation."); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400, 2010 WL 4537550, at \*15 (S.D.N.Y. Nov. 8, 2010) (securities class action litigation is "notably difficult and notoriously uncertain.")

*In re Graña y Montero S.A.A. Secs. Litig.*, No. 17-CV-01105, 2021 WL 4173684, at *13 (E.D.N.Y. Aug. 13, 2021), had Defendants prevailed on that point, alone, the case may have been dismissed.

This particular argument, even if defeated on a motion to dismiss, could still provide a defense on summary judgment, *see In re Novatel Wireless Sec. Litig.*, 830 F. Supp. 2d 996, 1015 (S.D. Cal. 2011) (summary judgment granted on channel stuffing allegations where impact on revenue was less than 5%), or at trial. *See In re Tesla Inc., Sec. Litig.*, No. 18-CV-04865-EMC, 2023 WL 4032010, at *1, 7 (N.D. Cal. June 14, 2023) (although plaintiffs obtained summary judgment on falsity and scienter, jury found Elon Musk's misstatements to be immaterial). If Plaintiffs prevailed at trial, Tarena could have appealed. [9]

Class certification was not guaranteed. Even if Plaintiffs initially prevailed on showing market efficiency during the class period, because certification can be revisited any time prior to trial, Tarena could have later argued its market was inefficient during all or part of the class period. *See In re PolyMedica Corp. Sec. Litig.*, 453 F. Supp. 2d 260, 264 (D. Mass. 2006) (five years after initial decision certifying class period, following appeal, court denied certification for portion of class period).

Even were the case to survive the motion to dismiss and the Court were to certify a class, on summary judgment, and again at trial, Plaintiffs "still would face the task of establishing that each class member's damages (if any) resulted from defendants' alleged misconduct, and the amount of any such damages." *Global Crossing*, 225 F.R.D. at 459. The "[c]alculation of damages

---

[9] *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing jury verdict of $2.46 billion because plaintiffs' expert did not adequately address the impact of non-fraud bases for stock price declines); *In re BankAtlantic Bancorp, Inc.*, No. 07-61542-CIV, 2011 WL 1585605, at *20-22 (S.D. Fla. Apr. 25, 2011) (granting motion for judgment as a matter of law following plaintiffs' verdict due to expert's failure to quantify fraud-related damages), *aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).

is a 'complicated and uncertain process, typically involving conflicting expert opinion …'" *Id.* Even if loss causation is established, Plaintiffs must still disentangle from the overall loss figure, to the jury's satisfaction, the amount caused by non-fraud-related company-specific, industry-wide, and/or other macroeconomic factors. *Id.*; *see also In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144, 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009) ("If there is anything in the world that is uncertain … it is what the jury will come up with as a number for damages."); *In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a 'battle of experts' with each side presenting its figures to the jury and with no guarantee whom the jury would believe.").

Also noteworthy is that Tarena is a variable interest entity based in China with no material assets in the United States. Kim Decl., ¶23. As elaborated upon in the Final Approval Memorandum at 10-13 pursuing this Action against a Chinese-based defendants posed additional hurdles and risks. These include engaging in discovery, the unenforceability of a judgment, the risk that Tarena could disengage from the litigation without adequate recourse for investors, and that Tarena investors only have a contractual interest, not an equity interest in the Company. Kim Decl., ¶¶18-23.

While Plaintiffs and their counsel believe this case has merit and that they could have successfully navigated the risks posed at each stage of the litigation, if any of them materialized, the Settlement Class might have recovered far less than the proposed Settlement or nothing at all. The very real risk of no recovery supports the reasonableness of the fee request. Although some securities fraud class actions are not that risky, such as when there is a government enforcement action or criminal prosecution, *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 147 (S.D.N.Y. 2010),

16

in this case, in contrast, "[t]here was significant risk of non-payment …, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk." *Id.*

### 3.    The Complexity of the Action Supports the Fee

Courts have repeatedly recognized the "notorious complexity" of securities class action litigation. *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006); *Christine Asia Co., Ltd. v. Yun Ma,* No. 1:15-md-02631, 2019 5257534, at *18 (S.D.N.Y. Oct. 16, 2019) ("[s]ecurities class actions . . . are notably difficult and notoriously uncertain."); *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007); *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, No. 03-CV-4372, 2009 WL 4730185, at *8 (D.N.J. Dec. 4, 2009) ("securities class actions are inherently complex").

This litigation was even more complex, involving a company whose operations are located in China. To draft the pleadings Plaintiffs had to enlist the assistance of Chinese professionals, such as attorneys and investigators, to identify and translate Chinese sources and provide insight into matters of legal or cultural import in China. Discovery also would have been complicated given the inherent difficulties and complexities in developing evidence abroad. Formal discovery would require proceeding through the Hague Convention and acquiring letters rogatory is "cumbersome and inefficient, and hardly make litigation in the United States convenient." *Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*, 2012 WL 3746220, at *7 (E.D.N.Y. Aug. 27, 2012). Obtaining evidence in China is particularly difficult as the Chinese government imposes restrictions against the production of documentary evidence and testimony to parties abroad. Depositions would require travel outside mainland China, such as to Hong Kong, because depositions, by many accounts, are not permissible in mainland China and the government generally precludes depositions of its citizens via electronic means. Kim Decl., ¶18. Most of the documents and evidence in this case are likely to be in Chinese, requiring translation as well as

17

bilingual attorneys to review and analyze them in the first cut of a lengthier review process. *Id*.

Moreover, Tarena could have disengaged from the litigation leaving investors with no recovery.

*Id*., ¶¶21-22.

Additionally, continued litigation would have included further motion practice, including class certification and summary judgment motions, and *Daubert* motions; extensive discovery, including the review of hundreds of thousands of pages of Chinese-language documents and depositions of China-based fact and expert witnesses; a trial; post-trial motion practice; and, undoubtedly, appeals – all of which would likely to take years to complete. In turn, establishing damages would have required expert testimony, and conflicting expert opinions – on loss causation (and negative causation), and market efficiency, to name a few – would have complicated the issue. The magnitude of the Action is unquestionable. Millions of dollars of damages were at stake, and the case required considerable skill and resources to litigate. As such, the magnitude and complexity of the litigation support the requested fee. *See City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *16 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

### 4.    The Quality of Representation Supports the Requested Fee

The quality of Lead Counsel's efforts and its commitment to providing the Settlement Class with the best possible representation, together with Rosen Law's substantial experience in securities class actions, particularly those involving Chinese defendants, were integral to obtaining the Settlement in a case where there was a possibility of no recovery. *See* Ex. 6 (Rosen Law resume). Courts around the country recognize Rosen Law's quality of work in pursuing cases against Chinese-based defendants, showing that Rosen Law understands the intricacies inherent in litigating actions against such defendants. *See e.g., Christine Asia Co. Ltd. et al. v. Jack Yun Ma*,

et al., 1:15-md-02631 (S.D.N.Y.) (achieving $250 million settlement against Alibaba, with the Court stating that "[t]he quality of representation by [Rosen Law] and Defendants' counsel was high in this case . . ."); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is "highly qualified [and] experienced" in securities class actions."); *Beltran v. SOS Limited, et al.*, Case No. 1:21-cv-07454 (D.N.J.); *Bell v. Kanzhun Limited, et al.*, Case No. 2:21-cv-13543 (D.N.J.); *Rupp, et al., v. Momo, Inc., et al.,* Case No. 1:19-cv-04433 (S.D.N.Y.).

Additionally, courts in this Circuit and around the country have noted the quality of Rosen Law's work. *See e.g., 3D Systems,* 2024 WL 50909, *15 (Rosen Law "possess substantial experience litigating complex securities class action cases and have provided quality representation to Plaintiffs and the putative class by, among other things, successfully negotiating a settlement"); *Mikhlin*, 2021 WL 1259559, at *4 ("The Rosen Law Firm, P.A . . . [is] capable and experienced in class litigation."); *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 242 (E.D.N.Y. 2011) ("the Rosen Law Firm is well-qualified to serve as lead counsel"); *In re January 2021 Short Squeeze Trading Litig.*, No. 21-2989-MDL, 2021 WL 4840857, at *6 (S.D. Fla. Oct. 15, 2021) ("[Rosen Law] has developed a reputation for zealous advocacy in securities class actions"); *Pace v. Quintanilla*, No. SACV 14-2067, 2014 WL 4180766, at *3 (C.D. Cal. Aug. 19, 2014) ("[Rosen Law] has appeared before this Court several times before, and the Court is confident that it has the necessary skill and knowledge to effectively prosecute this action.").

Further, the quality of the opposition Lead Counsel faced should also be taken into account. *See, In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, No. 03 MDL 1529, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country'

19

also evidences the high quality of lead counsels' work."), *aff'd*, 272 F. App'x 9 (2d Cir. Mar. 27, 2008). Here, Tarena was vigorously represented by highly-skilled securities practitioners from Skadden, Arps, Slate, Meagher & Flom LLP. In the face of capable opposition by opponents that would zealously defend the Action at every stage of the case, Lead Counsel obtained a favorable Settlement. The Parties' mediator, Mr. Meyer, recognized that "the parties carried out extensive, detailed, and hard-fought discussions regarding the strengths and weaknesses of the case. I can readily attest that the negotiations between counsel for the parties were conducted at arm's length and were not collusive. In addition, my review of the papers presented to me and discussion with counsel have led me to conclude that all side litigated the action in a vigorous, professional, and through manner." Ex. 2, (Meyer Decl.) at ¶12. Consequently, it is respectfully submitted that Lead Counsel's experience and reputation contributed to obtaining a Settlement for the class.

Moreover, the quality of representation the Settlement Class received is also evidenced by the result obtained. *See, e.g.*, *Global Crossing*, 225 F.R.D. at 467 ("The quality of Securities Lead Counsel's representation is evidenced by the recovery obtained for the Securities Class . . . ."). Here, the Settlement provides the Settlement Class with a guaranteed cash payment of $3.5 million. This is a fair, reasonable, and adequate result for Tarena investors, particularly of the hurdles of continued litigation pursuing securities claims again Chinese-based defendants. Plaintiffs' damages expert estimates that if Plaintiffs had fully prevailed on their claims after a jury trial, if the Court and jury accepted Plaintiffs' per share damages calculation, and if beneficial owners of all shares that Plaintiffs' expert estimates were damaged made claims—*i.e.*, Plaintiffs' best-case scenario—the total maximum damages potentially available to the Class would be approximately $18.4 million. Accordingly, the proposed Settlement provides over 19% of class-wide maximum estimated damages. This recovery is larger than in other, similarly sized securities class actions.

20

Cornerstone Research found the median settlement of damages for 10b-5 cases with damages under $25 million was 11.1% in 2022 and 17.4% between 2013 to 2021. (Ex. 12 at 6). According to NERA Economic Consulting, from 2020-2022, the median settlement in securities class actions has been only 1.8% of investor losses. (Ex. 13 at 18). Consequently, this factor militates in favor of the requested fee.

## 5.    The Requested Fee in Relation to the Settlement Amount

Courts have interpreted this factor as requiring the review of the fee requested in terms of the percentage it represents of the total recovery. "When determining whether a fee request is reasonable in relation to a settlement amount, 'the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value.'" *Comverse*, 2010 WL 2653354, at *3. As discussed in detail in Section III.C.1, *supra*, the requested one-third fee is consistent with percentage fees that courts in the Second Circuit have awarded in cases settled for less than $10 million at an early stage of the litigation. Accordingly, the requested fee is reasonable in relation to the Settlement.

## 6.    Public Policy Considerations Support the Requested Fee

"In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered." *Maley*, 186 F. Supp. 2d at 373. The Supreme Court "has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007); *see Comverse*, 2010 WL 2653354 at *6 ("Private securities class actions are 'a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action.'").

21

If the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts ...." *Flag Telecom*, 2010 WL 4537550, at *29; *City of Providence*, 2014 WL 1883494, at *18 (private enforcement actions "can only be maintained if competent counsel can be retained to prosecute them. This will occur if courts award reasonable and adequate compensation for such services where successful results are achieved.").

**E.      Lead Counsel's Expenses are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained**

"It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class." *Flag Telecom*, 2010 WL 4537550, at *30 (citing cases). To be reimbursable, the expenses must be "reasonable out-of-pocket expenses incurred and customarily charged to their clients" and "'incidental and necessary to the representation' of those clients." *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (internal quotation marks omitted).

Lead Counsel requests reimbursement of $25,922.61 in expenses incurred while prosecuting the Action. The expenses were incurred for professional services rendered by Plaintiffs' accounting and damages experts and investigator, costs of mediation, legal and factual research, notice to investor fees, and other expenses incurred in the course of the litigation. Kim Decl. at ¶¶32-33. These expenses were both reasonable in amount and critical to Plaintiffs' success in achieving the proposed Settlement. Moreover, they are customary and necessary expenses in complex securities cases. *See Flag Telecom*, 2010 WL 4537550, at *30; *Global Crossing*, 225 F.R.D. at 468 ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys. For this reason, they are properly

22

chargeable to the Settlement fund."). Additionally, the amount requested is below the $40,000 limit disclosed in the Long Notice. Ex. 1 (Bravata Decl. at Ex. B (Long Notice)).

**F.     Lead Plaintiff and Named Plaintiffs Should be Awarded Their Reasonable Costs and Expenses Under 15 U.S.C. § 78u-4(a)(4)**

In connection with their request for reimbursement of litigation expenses, Lead Counsel also respectfully request a total award of $15,000 comprised of $10,000 to Lead Plaintiff and $2,500 to each of the two Named Plaintiffs for their time and effort spent prosecuting the Action. The PSLRA provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4).

As detailed in their respective declarations, (Exs. 3-5), Plaintiffs invested their time and energy prosecuting this case over the past several years. Lead Plaintiff Walter De Schutter, who has been investing for over 40 years, devoted significant time to this Action. Ex. 3 at ¶2 (De Schutter Declaration). As the Lead Plaintiff, he took an active role in the litigation by, among other things: (a) communicating with his attorneys regarding the case, as well as strategy; (b) learning about the role of the lead plaintiff by discussing it with attorneys at Rosen Law; (c) reviewing information about Tarena as well as the case and discussed his findings with his attorneys; (d) producing information to Rosen Law attorneys; (e) reviewing significant filings in the Action; (f) consulting with his attorneys regarding the settlement negotiations; and (g) evaluated and approved the proposed Settlement. *Id*. at ¶4. These are "precisely the types of activities that support awarding reimbursement of expenses to class representatives." *Marsh & McLennan*, 2009 WL 5178546, at *21.

As set forth in their declarations, Named Plaintiffs Steven Clauter and Cynthia Lewis, are sophisticated investors with 26 and 11 years of investing experience, respectively. Ex. 4 at ¶2

23

(Clauter Declaration); Ex. 5 at ¶2 (Lewis Declaration). Upon receiving the notice published each contacted Rosen Law and indicated an interest in being actively involved in the prosecution of the Action, and reviewed the Amended Complaint prior to its filing. Ex. 4 at ¶4 (Clauter Declaration); Ex. 5 at ¶4 (Lewis Declaration). Similar to Lead Plaintiff De Schutter, they performed the following duties on behalf of the Settlement Class: (a) communicated with attorneys at Rosen Law regarding the case, as well as strategy; (b) reviewed information about the case and discussed their findings with Rosen Law attorneys; (c) reviewed information about Tarena as well as the case and discussed their findings with Rosen Law attorneys; (d) produced information to Lead Counsel; (e) reviewed significant filings in the Action; (f) consulted with Lead Counsel regarding the settlement negotiations; and (g) evaluated and approved the proposed Settlement. *Id.*

Consequently, Lead Counsel respectfully requests that the Court grant Plaintiffs' respective requests for reimbursement of their reasonable costs and expenses incurred in managing this litigation and representing the Class. The amounts requested are in line with awards granted by Courts in this Circuit. *See 3D Systems,* 2024 WL 50909, at *1 (awarding $7,500 to lead plaintiff and $3,500 each to four named plaintiffs); *Sunlands*, No. 1:19-CV-03744, ECF 75 (E.D.N.Y. Oct. 11, 2023) (Ex. 16 at ¶3) ($10,000 awarded to Lead Plaintiff in §11 case settled at outset discovery); *Revolution Lighting*, 2020 WL 4596811, at *3 (awarding $10,000 to lead plaintiff prior to amended complaint filed); *Akazoo*, 2021 WL 4316717 at *2 (awarding six plaintiffs $3,500 in connection with $4.9 million partial settlement prior to motion to dismiss); *Blue Apron,* 2021 WL 1902475 at *4 (awarding four lead plaintiffs $10,000 each on $13.25 million settlement of §§10 and 11 case reached at the outset of formal discovery *see* 2021 WL 1884801); *In re Qudian Inc. Sec. Litig.*, No. 1:17-CV-09741-JMF, 2021 WL 2328437, at *2 (S.D.N.Y. June 8, 2021) (awarding lead plaintiff $25,000, and class representative $12,500, for "reasonable costs and expenses directly

24

related to [their] representation of the Class"); *In re Signet Jewelers Ltd. Secs. Litig.,* No. 1:16-CV-06728, 2020 WL 4196468, at \*24 (S.D.N.Y. July 21, 2020) (collecting cases and awarding $25,410 to lead plaintiff). Accordingly, the request of the Award to Plaintiffs is reasonable.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (a) award Lead Counsel their reasonable attorneys' fees in the total amount of one-third of the Settlement Amount, plus interest; (b) reimburse Lead Counsel for expenses and costs in the amount of $25,922.61, plus interest; and (c) reimburse Lead Plaintiff and the Named Plaintiffs a total of $15,000 for their time spent on the Action on behalf of the Settlement Class, in the amount of $10,000 for Lead Plaintiff and $2,500 to each of the two Named Plaintiffs.

Dated: January 12, 2024                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: */s/ Phillip Kim*
Phillip Kim (Pronouns: he/him/his)
Jing Chen (Pronouns: she/her/hers)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
        jchen@rosenlegal.com

*Lead Counsel for Plaintiffs and the Class*

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 12, 2024, a true and correct copy of the foregoing document

was served by CM/ECF to the parties registered to the Court's CM/ECF system

<u>/s/ Phillip Kim</u>
Phillip Kim

26