**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| YILI QIU, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> TARENA INTERNATIONAL, INC., SHAOYUN HAN, and YUDUO YANG, <br><br> Defendants. | CASE No.: 1:21-cv-03502-PKC-RML |

**DECLARATION OF PHILLIP KIM IN SUPPORT OF THE MOTIONS FOR: (I) FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND AWARDS TO PLAINTIFFS**

## TABLE OF EXHIBITS TO DECLARATION

| EXHIBIT | TITLE |
|---|---|
| 1 | Declaration of Josephine Bravata Concerning: (A) CAFA Notice; (B) Mailing and Emailing of the Notice; (C) Publication of the Summary Notice; and (D) Report on Requests For Exclusion and Objections |
| 2 | Declaration of Robert A. Meyer |
| 3 | Declaration of Walter De Schutter |
| 4 | Declaration of Steven Clauter |
| 5 | Declaration of Cynthia Lewis |
| 6 | Rosen Law Firm Resume |
| 7 | August 9, 2022 letter filed in *Vanderhoef v. China Auto Logistics, Inc., et al.*, No. 2:18-cv-10174-CCC-ESK (D.N.J.) as ECF No. 140 |
| 8 | Screenshot of the website of the U.S. Department of State - Bureau of Consular Affairs, Enforcement of Judgments |
| 9 | 2019 Hague Convention on the Recognition and Enforcement of Foreign Judgments in Civil or Commercial Matters; and the Status Table of Contracting Parties |
| 10 | Shun-Hsiang Chen, *Signed, Sealed, & Undelivered: Unsuccessful Attempts of Foreign Judgment Recognition Between the U.S. and China*, 16 Brook. J. Corp. Fin. & Com. L. 167 (2022) |
| 11 | U.S. Securities and Exchange Commission *Investor Bulletin: U.S.-Listed Companies Operating Chinese Businesses Through a VIE Structure*, dated September 20, 2021 and modified March 1, 2022 |
| 12 | Excerpts from Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements: 2022 Review and Analysis* (Cornerstone Research 2023) |
| 13 | Excerpts from Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (NERA Economic Consulting 2023) |
| 14 | Chart of Securities Class Action Settlements in the Second Circuit Awarding at Least 33% in Attorneys' Fees |
| 15 | Declaration of Brian B. Alexander on Behalf of the Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses in the matter in *Horowitz v. Sunlands, Tech. Grp. et al.*, No. 1:19-CV-03744 (E.D.N.Y.) (ECF No. 71-4) |
| 16 | Order Awarding Attorneys' Fees, Reimbursement of Expenses, and Award to Plaintiff entered on October 11, 2023 in *Horowitz v. Sunlands, Tech. Grp. et al.*, No. 1:19-CV-03744 (E.D.N.Y.) (ECF No. 75) |

i

| | |
|---|---|
| 17 | Declaration of Laurence M. Rosen Concerning Attorneys' Fees and Expenses in the matter *In re Global Brokerage, Inc. f/k/a FXCM Inc. Securities Litigation,* No. 1:17-cv-00916 (S.D.N.Y.) (ECF No. 366) |
| 18 | Order and Final Judgment entered on July 7, 2023 in *In re Global Brokerage, Inc. f/k/a FXCM Inc. Securities Litigation*, No. 1:17-cv-00916 (S.D.N.Y.) (ECF No. 374) |
| 19 | Chart of Peer Law Firm Billing Rates |
| 20 | *Findings on First-Year Salaries from the 2023 Associate Salary Survey*, National Association for Law Placement, Inc., June 2023 |

I, Phillip Kim, declare under penalty of perjury that:

1.      I am a Partner at The Rosen Law Firm, P.A. ("Rosen Law"), Court-appointed Lead Counsel for Lead Plaintiff Walter De Schutter ("Lead Plaintiff") and Named Plaintiffs Steven Clauter and Cynthia Lewis ("Named Plaintiffs" and collectively, "Plaintiffs").[1] I am familiar with the proceedings in this litigation, and I have personal knowledge of the matters set forth herein and could testify thereto.

2.      I submit this declaration, together with the attached exhibits, in support of Plaintiffs' Motions for: (I) Final Approval of Class Action Settlement and Plan of Allocation; and (II) an Award of Attorneys' Fees, Reimbursement of Expenses, and Awards to Plaintiffs. As set forth in the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation ("Final Approval Memorandum"), Plaintiffs seek final approval of the $3,500,000 Settlement for the benefit of the Settlement Class,[2] final certification of the Settlement Class, as well as final approval of the proposed Plan of Allocation of the Net Settlement Fund to eligible Settlement Class Members.

3.      The purpose of this Declaration is to set forth pertinent facts which do not otherwise appear in documents filed in this case or other public sources. The reasons why the Settlement,

---

[1] All capitalized terms not otherwise defined herein have the meanings ascribed to them in the Second Amended Stipulation of Settlement, filed August 18, 2023 (ECF No. 40).

[2] The Settlement Class is defined as all Persons who purchased Tarena's American Depositary Shares ("ADSs") between August 16, 2016 and November 1, 2019, both dates inclusive. Excluded from the Settlement Class are (1) Defendants, (2) the present and former officers and directors of Tarena at all relevant times, (3) members of such excluded persons' immediate families, (4) the legal representatives, heirs, successors, or assigns of any such excluded person or entity, (5) any entity in which any of the Defendants, or any person excluded herein, has or had a majority ownership interest at any time; (6) Persons with no compensable losses; and (7) Persons who submit a valid and timely request for exclusion in accordance with the Order Granting Plaintiffs' Unopposed Motion for Preliminary of Class Action Settlement ("Preliminary Approval Order") (ECF No. 41 at ¶2).

Plan of Allocation, fee and expense requests, and Awards to Plaintiffs should be approved are set out in the memoranda of law in support of the Motions.

4.     As set forth in the Memorandum of Law in Support of the Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Awards to Plaintiffs ("Fee Memorandum"), Lead Counsel seeks an award of attorneys' fees in the amount of one-third of the Settlement Fund (which, by definition, includes interest accrued thereon), reimbursement of litigation expenses of $25,922.61 (plus accrued interest), and Awards to Plaintiffs totaling $15,000, comprising of $10,000 to Lead Plaintiff and $2,500 to each Named Plaintiff, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for the time they devoted to their representation of the Settlement Class.

5.     This Declaration provides a detailed breakdown of the time various Rosen Law attorneys and professionals devoted to prosecution of the Action, together with their respective billing rates, as well as a breakdown of expenses incurred. Lead Plaintiff and each of the Named Plaintiffs have provided declarations in support of the plaintiff awards requested. (Exhibits 3-5).

**The Litigation, the Bases for its Settlement and the Plan of Allocation, and Settlement Class Members' Reaction to the Settlement and Plan of Allocation**

6.     For the Amended Complaint, Lead Counsel sought to uncover the reasons for Tarena's inadequate internal controls over financial reporting and alleged violations of Generally Accepted Accounting Principles ("GAAP") that resulted in the alleged misstatements. To draft the Amended Complaint, Lead Counsel: (a) reviewed and analyzed (i) SEC filings, (ii) public reports, interviews, research reports prepared by securities and financial analysts, and news articles, and (iii) Chinese regulatory filings; (b) retained a private investigator to interview witnesses in China; (c) retained an accounting expert to assist with analyzing the alleged GAAP violations; and (d) retained and consulted with an expert concerning damages.

2

7.     Subsequent to the filing of the Amended Complaint, in accordance with the Court's pre-motion conference requirements, the Parties submitted detailed letters previewing the facts and law in support of their respective positions should Defendants file a motion to dismiss. The Court entered an order on January 3, 2022 stating that a pre-motion conference was unnecessary and directed the parties to submit a briefing schedule. On January 18, 2022, Tarena served its motion to dismiss upon Plaintiffs. On April 4, 2022, Plaintiffs served upon Tarena their opposition to the motion to dismiss. On May 19, 2022, the Plaintiffs and Tarena filed copies of the fully briefed motion to dismiss. (ECF Nos. 24-29).

8.     After Defendants' motion to dismiss was fully briefed and pending, the Parties began discussing possible resolution of the Action, engaging Robert A. Meyer, Esq. of JAMS as the mediator.

9.     Prior to the mediation, the Parties submitted detailed mediation statements. On June 2, 2022, the Parties participated in an all-day, virtual mediation session. With Mr. Meyer's assistance, the Parties engaged in zealous, hard-fought negotiations, with counsel on both sides advocating forcefully for their clients. Tarena is represented by Skadden, Arps, Slate, Meagher & Flom LLP, skilled and experienced securities practitioners with whom attorneys at Rosen Law are familiar, particularly in defending Chinese-based companies like Tarena.

10.     A Settlement was not reached at the mediation, but Mr. Meyer continued to facilitate settlement discussions after the mediation session. On July 13, 2022, Mr. Meyer notified the Parties that both sides accepted Mr. Meyer's double-blind "mediator's proposal" of $3,500,000 to resolve the Action. (Meyer Decl., at ¶¶10-11) (Ex. 2). According to Mr. Meyer, throughout the mediation process, "the parties carried out extensive, detailed, and hard-fought

3

discussions" and that the "negotiations between counsel for the parties were confused at arm's length and were not collusive" *Id*. at ¶12.

11.     After the Settlement was reached in principal, the Parties negotiated a stipulation of settlement and exhibits thereto. On August 31, 2022, Plaintiffs submitted the initial settlement documents to the Court, including a motion and memorandum of law in support of preliminary approval of the settlement. (ECF Nos. 31-34).

12.     On November 8, 2022, the Court held a hearing regarding preliminary approval of the Settlement. At the hearing, the Court asked thoughtful questions about several aspects of the Settlement including the notice documents and procedures, the class definition, adequacy of the Lead Plaintiff, and the mechanism of awarding attorneys' fees. The Court requested that the Parties resubmit the settlement documentation to incorporate the topics discussed at the hearing as well as provide information about the scope of released claims and examples of worldwide classes in the Second Circuit. On November 17, 2022, Tarena submitted a letter regarding the release of unknown claims (ECF No. 35) and on November 22, 2022, Plaintiffs filed a letter regarding examples of worldwide classes (ECF No. 36). On April 17, 2023, Plaintiffs filed a notice of supplemental authority to provide the Court with an recent example of a settlement in the Eastern District of New York preliminarily certifying a worldwide class. (ECF No. 39).

13.     On December 5, 2022, Plaintiffs submitted clean and redline versions of the Amended Stipulation of Settlement and the exhibits thereto. (ECF No. 38).

14.     On August 3, 2023, the Court issued an order requesting additional changes to the settlement agreement and notice documents to: (1) require Lead Counsel to seek permission from the Court to designate a non-profit charitable organization for any remaining funds in the Net Settlement Fund; (2) require Lead Counsel to seek approval for the distribution of Notice and

Administration Costs to the Claims Administrator and report such costs every 60 days from entry of the Preliminary Approval Order; and (3) modify the stipulation to clarify that investors could appeal the Claims Administrator's rejection of their submitted claims.

15.     On August 18, 2023, Plaintiffs filed the operative Second Amended Stipulation, incorporating these changes. (ECF No. 40). On September 5, 2023, the Court entered the Preliminary Approval Order. (ECF No. 41).

16.     On December 15, 2023, the Court entered an Order continuing the Settlement Hearing from January 18, 2024 at 10:00 a.m. to February 9, 2024 at 2:00 p.m. Accordingly, the deadline to submit claims, request exclusion from the Settlement, and object to the Settlement is now January 19, 2024 – 21 days before the Settlement Hearing. *See* Preliminary Approval Order at ¶¶23, 27.

17.     Prior to entering into the Settlement, Plaintiffs and Lead Counsel had become quite knowledgeable about the strengths of the claims as well as the real risks of continued litigation which could potentially result in no recovery for Tarena investors. In particular, Lead Counsel: (1) conducted a thorough investigation of Tarena, which included: (a) hiring an investigator in China to interview witnesses and obtain Chinese regulatory filings, (b) hiring an accounting expert to assist in the review of Tarena's publicly-filed financial reporting, and (c) reviewing Tarena's Class Period SEC filings, press releases, and quarterly earnings calls, numerous analyst reports issued about Tarena, and a variety of industry publications; (2) drafted both an initial complaint and the Amended Complaint; (3) opposed Tarena's Pre-Motion Letter and its Motion to Dismiss; (4) retained an expert to assess damages; (5) drafted a mediation statement and participated in a full-day JAMS mediation with Tarena and subsequent negotiations before reaching an agreement in principle to settle the Action; and (6) engaged in extensive negotiations regarding the terms of the

5

proposed Settlement. All of these efforts confirmed that had the Parties not reached the Settlement, the litigation would have been hotly contested.

18.    Moreover, given that Tarena is based in China with no material assets in the United States, an additional risk permeated through the litigation. First, discovery, which is already complex, timely, and costly, would pose additional obstacles. China does not permit depositions on the mainland or virtual depositions which would require the cooperation of Tarena and witness to travel out of China for depositions. Additionally, for any documents to be produced to Plaintiffs, Tarena's counsel would have to review the documents, send them to the appropriate authorities in the Chinese government, and wait for permission to approve their release. Lead Counsel has been, and currently, involved in litigation with Chinese-based defendants in which discovery has been significantly stalled by this process. Additionally, any documents that were eventually produced will likely be in Chinese which would require translation or the retention of bilingual attorneys to facilitate document review

19.    If Plaintiffs were able to obtain a judgment, it may be a pyrrhic victory. Enforcing a U.S. judgment in China is nearly impossible as the U.S. Department of State has noted that "[t]here is no bilateral treaty or multilateral convention in force between the United States and any other country on reciprocal recognition and enforcement of judgments." (Ex. 8). Although the international community is attempting to create consistency in reciprocity among foreign counties, progress between the United States and China has not occurred. Although not yet in effect, the 2019 Hague Convention on the Recognition and Enforcement of Foreign Judgments in Civil or Commercial Matters ("Hague Judgment Convention") (Ex. 9), is designed to facilitate the enforceability of judgments among contracting parties. The Hague Judgment Convention's stated goal is "to promote effective access to justice for all and to facilitate rule-based multilateral trade

6

and investment, and mobility, through judicial co-operation." *Id*. Even if it were operative, the Hague Judgment Convention would not be helpful here as the United States is a signatory but China is not. *Id*.

20.    Moreover, China regularly denies recognition and enforcement of foreign judgments, including from the United States, based on reciprocity or public policy. (Ex. 10). As China does not have an agreement with the United States, enforcement of United States judgments would fall within the parameters of reciprocity. However, "China's reciprocity system is considered one of the most restrictive in the world and regularly utilized to deny foreign judgment recognition and enforcement." *Id*., at 184. As of June 2022, Chinese courts have only recognized and enforced two judgments from the United States. *Id*. Neither of which were judgments from securities lawsuits.

21.    Further, although Tarena obtained counsel based in the United States, the risk remains that Tarena could disengage with its counsel and this litigation. Lead Counsel experienced this first-hand in the action *Vanderhoef v. China Auto Logistics, Inc., et al.*, No. 2:18-cv-10174-CCC-ESK (D.N.J.), involving China Auto Logistics, Inc. ("CALI"), a Nevada corporation with headquarters in China and China-based individual defendants. (Ex. 7). Originally, CALI was represented by K&L Gates LLP and the China-based individual defendants had their own counsel. Prior to a decision on CALI's motion to dismiss, plaintiffs and CALI engaged in court-ordered mediation over two days. As settlement efforts were unsuccessful, CALI's motion was reinstated. The court then denied CALI's and the China-based individual defendants' motions to dismiss. Before CALI's deadline to file an answer, its counsel requested to withdraw from the action as CALI had not paid its attorneys for almost a year. The China-based individual defendants filed an answer, but soon after their attorneys also withdrew as these defendants stopped engaging

meaningfully with their counsel and failed to pay their attorneys. In the end, the plaintiffs were forced to voluntarily dismiss their claims against CALI and the China-based individual defendants without prejudice as they did not retain new counsel and ultimately vanished.

22. Similarly, in *In re ChinaCast Education Corporation Securities Litigation*, 2:12-cv-04621-JFW-PLA (C.D.Cal.), for about six years plaintiffs diligently pursued a securities class action against ChinaCast Education Corporation, a Delaware company operating in China. The effort included a successful appeal at the Ninth Circuit which reversed the district court's dismissal decision. ChinaCast's insurers refused to cover litigation costs, however, and the company's counsel withdrew from the action leaving ChinaCast unrepresented. The plaintiffs later secured a default judgment of $65.8 million for the class, but the very next day, ChinaCast filed for bankruptcy. In an attempt to recover the default judgment, plaintiffs spent an additional two years pursuing a lawsuit against ChinaCast's multiple insurers. *See Jayhawk Private Equity Fund II LP v. Liberty Insurance Underwriters*, 2:17-cv-05523-GW-RAO (C.D.Cal.). Unfortunately, plaintiffs' claims were dismissed due to the expansive exclusion provisions in the insurance policies. Therefore, despite more than seven years of dedicated efforts by the plaintiffs' counsel, there was no financial recovery for the investors from the China-based defendant.

23. Another risk for continuing litigation present here is that Tarena is a variable interest entity ("VIE"), this entails additional risk to U.S. based investors. In a VIE, the U.S.-listed company (here, a Cayman Islands corporation) has a contractual interest in a Chinese company, but does not actually have any ownership or equity interest the Chinese company. In an Investor Bulletin entitled, "U.S.-Listed Companies Operating Chinese Businesses Through a VIE Structure", the SEC warned that "*If the parties to these contracts do not meet their obligations as intended or there are effects on the enforceability of these arrangements from changes in*

8

***Chinese law or practice, the U.S.-listed company may lose control over the China-based company, and investments in its securities may suffer significant economic losses."***(emphasis in original) (Ex. 11).

24.    Throughout all stages of the litigation, Lead Counsel gave periodic updates to Plaintiffs about the status of the Action and discussed each step of the case with Plaintiffs. As set forth in their declarations, by the time the Settlement was reached, Plaintiffs were in a position to evaluate the risks and benefits of continued litigation and authorize approval of the Settlement. *See* Exs. 3-5, Declaration of Walter De Schutter at ¶¶4-5; Declaration of Steven Clauter at ¶¶4-5; Declaration of Cynthina Lewis at ¶¶4-5.

25.    Once a Settlement had been reached, Lead Counsel formulated the Plan of Allocation with the assistance of a damages expert. The Plan of Allocation closely tracks Plaintiffs' theory of the case and allocates funds on a *pro rata* basis to claimants based upon the timing of their purchases and sales.

26.    In my view, based upon my experience prosecuting securities class actions, the Plan of Allocation provides a fair, reasonable, and rational method of allocating the Settlement Funds to Authorized Claimants.

27.    As set forth in the Declaration of Josephine Bravata (Ex. 1), in addition to the electronic and print publication of Summary Notice, individual Notice has been provided to 12,960 potential Settlement Class Members. *Id*. at ¶¶7-9. Lead Counsel has not received any objections to any aspect of the Settlement. *Id*. at ¶14. Two request for exclusion were submitted, however, neither request is valid. *Id*. at ¶13. One request was submitted by an entity that is not a Settlement Class Member as it did not suffer compensable damages. *Id*. The other request failed to include the transaction information needed to demonstrate that the individual seeking to be excluded is a

9

Settlement Class Member. *Id.* The Claims Administrator reached out to this individual for documentation to confirm whether she is a member of the Settlement Class but has yet to hear back. *Id.*

### Attorneys' Fees Request and Expenses

28.     The chart below is a summary of time expended by the attorneys and professionals at Rosen Law on the Action as of January 11, 2024, and the lodestar calculation based on their current billing rate. The chart was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm.

| Professional (Position)* | Hourly Rate | Hours Worked | Lodestar |
|---|---|---|---|
| Phillip Kim (P) | $1,025 | 73.5 | $75,337.50 |
| Yu Shi (P) | $875 | 2.1 | $1,837.50 |
| Jing Chen (P) | $875 | 479.8 | $419,825.00 |
| Erica L. Stone (C) | $800 | 78.9 | $63,120.00 |
| Scott Kim (A) | $650 | 18.3 | $11,895.00 |
| Ryan Hedrick (A) | $600 | 6.1 | $3,660.00 |
| Zachary Stanco (Pl) | $275 | 1.2 | $330.00 |
| **Total** | | **659.9** | **$576,005** |
| **Requested fee** | | **$1,166,666.67** | |
| **Multiplier** | | **2.025** | |

\* Partner (P), Counsel (C), Associate (A), Paralegal (Pl)

29.     From the initiation of this Action to January 11, 2024, my firm performed 659.9 professional work hours. The lodestar amount for my firm is $576,005.

30.     Rosen Law's rates are comparable to its peers who are securities class action practitioners. Attached as Exhibit 19 is a chart of the rates listed for peer law firms in the securities class action area.

31.     Moreover, according to a survey administered by the National Association for Law Placement, Inc. ("NALP"), in 2023, the overall median for a first-year associate's salary increased 21.2% since 2021, to $200,000. (Ex. 20). In New York, and other major cities, the rates for first-year associates are higher. According to NALP's survey, of the 40 New York City offices that responded to the survey, 75% of them reported first year associate salaries of $215,000. *Id*. As a partner at a firm in New York City, I am aware that salaries for more experienced attorneys have also increased due to inflation and other market factors in recent years. As such, as salaries increase, so do billing rates.

32.     Rosen Law expended a total of $25,922.61 in un-reimbursed expenses in connection with the prosecution of the Action broken down as follows:

**LIST OF UNREIMBURSED EXPENSES**

| Category | Amount |
|---|---|
| Investigator Fees | $5,000.00 |
| Accounting Expert Fees | $990.00 |
| Financial Expert Fees | $3,352.00 |
| Online Computer Legal Research and Document Retrieval Fees | $924.86 |
| Court Filing Fees | $402.00 |
| Transcript Fees | $209.04 |
| Mediation Fees | $8,475.00 |
| Postage and FedEx Fees | $71.44 |
| Service of Process | $190.00 |
| Translation Fees | $474.76 |
| Conference Call Fees | $15.35 |
| Notice to Class Members Fees/Press Releases | $4,891.55 |
| Travel, Transportation, and Meals** | $926.61 |
| **TOTAL EXPENSES** | **$25,922.61** |

**Includes anticipated expenses associated with attending the Settlement Hearing.

33.     The expenses set forth above are reflected in Lead Counsel's books and records. These books and records are prepared from expense vouchers, check records, and financial

statements prepared in the normal course of business for my firm and are an accurate record of the expenses incurred in the prosecution of the Action.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: January 12, 2024

*/s/ Phillip Kim*
Phillip Kim

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 12, 2024, a true and correct copy of the foregoing document

was served by CM/ECF to the parties registered to the Court's CM/ECF system


<u>*/s/ Phillip Kim*</u>
Phillip Kim

13