UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
WALTER DE SCHUTTER, Individually and
On Behalf of All Others Similarly Situated,

                            Plaintiffs,                 **MEMORANDUM & ORDER**
                                             21-CV-3502 (PKC) (RML)

        - against -

TARENA INTERNATIONAL, INC.,
SHAOYUN HAN, and YUDUO YANG,

                            Defendants.
-------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

        Lead Plaintiff Walter De Schutter and Named Plaintiffs Steven Clauter and Cynthia Lewis

("Plaintiffs"),[1] on behalf of themselves and the Settlement Class, seek final certification of a

settlement class; final approval of a settlement agreement; and attorneys' fees, litigation expenses,

and class representative incentive awards.  (Dkts. 49–53.)  Plaintiffs brought this class action

against Tarena International, Inc. ("Tarena"), Shaoyun Han, and Yuduo Yang ("Individual

Defendants"), alleging securities fraud pursuant to §§ 10(b) and 20(a) of the Exchange Act.  On

September 5, 2023, the Court granted Plaintiffs' unopposed motion for preliminary approval of

the Second Amended Stipulation of Settlement ("Stipulation").  (*See* Dkts. 40, 41.)  The Court

now finds the Stipulation fair, adequate, and reasonable, and grants Plaintiffs' unopposed motion

for the reasons stated below.

---

[1] Yili Qiu commenced this putative securities fraud class action complaint in this Court against Defendants alleging claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") in June 2021.  (Dkt. 1.)  On September 1, 2021, the Court appointed Walter De Schutter as Lead Plaintiff in this action.  (9/1/2021 Dkt. Order.)

## BACKGROUND

### I.      Factual Background

Tarena is a Cayman Islands corporation headquartered in China.  Plaintiffs brought this class action on behalf of all persons who bought, sold, or otherwise traded in Tarena's American Depositary Shares ("ADSs") between August 16, 2016, and November 1, 2019.  (Amended Complaint ("Am. Compl."), Dkt. 17, ¶ 1.)  The Amended Complaint alleges that Tarena provides professional education services, including professional information technology ("IT") vocational training courses and after-school IT programs.  (*Id*. ¶ 2.)  Two of Tarena's employees—Shaoyun Han and Yuduo Yang—allegedly signed and spread public disclosure documents that falsely inflated Tarena's revenues.  (*Id*. ¶¶ 34–35.)  In late 2019, Tarena issued a series of corrected public disclosures which caused the ADS's price to drop from $5.02 per unit in May 2019 to $0.76 on November 4, 2019.  (*Id*.¶¶ 8–11.)  Eventually, on April 24, 2020, Tarena issued a corrective report that restated its previously issued financial statements for the years ending December 31, 2014, 2015, 2016, and 2017 and previously issued financial results for the year ending December 31, 2018.  (*Id*. ¶ 41.)  The Stipulation "represents an estimated average recovery of $0.08 per ADS for the approximately 43.4 million Tarena ADSs damaged during the Class Period."  (Class Notice, Dkt. 40-2, at 1.)

### II.     Procedural History

On June 22, 2021, Plaintiffs filed this putative securities fraud class action against Defendants alleging securities fraud under Sections 10(b) and 20(a) of the Exchange Act.  (Compl., Dkt. 1.)  On August 23, 2021, motions to appoint a lead plaintiff and lead counsel were filed. (Dkts. 5–7.)  On September 1, 2021, the Honorable Robert M. Levy, U.S. Magistrate Judge, granted the unopposed motion to appoint Walter De Schutter ("Schutter") as Lead Plaintiff and the Rosen Law Firm, P.A. as Lead Counsel ("Class Counsel").  (*See* 9/1/2021 Dkt. Order.)  On

November 1, 2021, Plaintiffs filed an Amended Complaint, which named Steven Clauter and Cynthia Lewis as Named Plaintiffs, but was otherwise, in substance, the same as the previous Complaint. (Am. Compl., Dkt. 17, ¶¶ 18–19.)

In January 2022, the Court set a briefing schedule for Tarena's motion to dismiss, (*see* 1/11/2022 Dkt. Order), which was filed in May 2022, (Dkt. 24). The parties have not engaged in any discovery. In July 2022, the parties notified the Court that they had reached a settlement in principle. (Dkt. 30.) On August 31, 2022, Plaintiffs moved for preliminary approval of the proposed settlement agreement. (Dkts. 31–34.) The motion was unopposed. (*Id.*) The Court held a preliminary approval hearing with the parties on November 8, 2022, and reserved judgment on the pending motion for preliminary approval of the settlement agreement. (*See* 11/8/2022 Min. Entry.) After the hearing, Plaintiffs filed an amended settlement agreement and a second amended settlement agreement on December 5, 2022 and August 18, 2023, respectively, based on the Court's instructions. (*See* Dkts. 38–39; Dkt. 40.) On September 5, 2023, the Court granted Plaintiffs' unopposed motion for preliminary approval of the further revised settlement agreement. (Dkt. 41.)

In January 2024, Plaintiffs filed a motion for final approval of the class action settlement and plan of allocation, and a motion for attorneys' fees and service awards to Plaintiffs Schutter, Clauter, and Lewis. (Dkts. 49–53.) To date, no objections from Class Members have been filed. On February 9, 2024, the Court held a final fairness hearing (the "Final Fairness Hearing") for the approval of the proposed Settlement. (2/9/2024 Min. Entry.) Following the hearing, and in line with the Court's instructions, Class Counsel provided the Court with supplemental information regarding counsel's request for attorneys' fees, including contemporaneous billing records and additional case law regarding the suitability of using current hourly rates, rather than historical

3

rates, when calculating a lodestar cross-check.  (Pls.' Billing Ltr., Dkt. 55; Billing Records, Dkts. 55-1, 55-2.)

## III.    The Stipulation, Fund Allocation, and Notification to Class

### A.    Terms of the Stipulation

The essential terms of the Stipulation are as follows.  (*See* Stipulation, Dkt. 40.)  The Settlement Class is broadly defined as anyone (person/corporation/entity, etc.), across the world that purchased Tarena ADSs between August 16, 2016, until November 1, 2019 (the "Class Period").  (*Id.* ¶¶ 1.5, 1.21, 1.31.)  All dates are inclusive.  (*Id.* ¶ 1.5.)  The settlement amount is defined as a fund of $3.5 million, intended to cover both the class's recovery, taxes, attorneys' fees, and service awards to Plaintiffs.  (*Id.* ¶ 1.30.)  The Settlement Fund is not a "claims made" settlement, i.e., it is not a settlement where any unclaimed amount from the Settlement Fund would revert back to Tarena.  (*Id.* ¶ 6.7.)  Taxes will be paid from the Settlement Fund to the extent they are necessary.  (*Id.* ¶ 2.8(c).)

The potential recovery for the Settlement Class will be calculated based on the purchase and sale dates of the ADSs, the ADS purchase prices, inflation, and average closing stock price. The Stipulation offers three tiers of recovery, (*see* Class Notice, Dkt. 40-2, at 6–7): (1) ADSs purchased during the Class Period and sold during the Class Period;[2] (2) ADSs purchased during the Class Period and retained as of the close of trading on January 31, 2020;[3] (3) ADSs purchased

---

[2] The recognized loss per share will be the lesser of: (1) the inflation per share upon purchase less the inflation per share upon sale; or (2) the purchase price per share minus the sales price per share.  (Class Notice, Dkt. 40-2, at 6.)  Inflation per share at various time periods are set forth in Inflation Table A of the Stipulation.  (*Id.* at 7.)

[3] The recognized loss will be the lesser of (1) the inflation per share upon purchase; or (2) the purchase price per share minus $1.58 per share.  (*Id.* at 6.)

during the Class Period and sold during the period November 4, 2019 through January 31, 2020.[4] "The average approximate recovery, after deduction of attorneys' fees and expenses approved by the Court, is $0.052 per Tarena ADS outstanding during the Class Period." (*Id*. at 2.)  All Settlement Class Members will be barred from making any further claim against Defendants beyond the amount allocated to them. (*Id.* at 9.)

If there is still money left in the Settlement Fund after Strategic Claims Services (the "Claims Administrator") tries to get all authorized claimants to cash their distribution checks, any remaining balance will be used to: (1) pay any missed amounts to authorized claimants, (2) pay additional administration costs; and (3) make a second distribution to authorized claimants who cashed their checks from the initial distribution and would receive at least $10.00 from the second distribution, if it is feasible. (*Id.* at 6.)  Any additional unclaimed funds will be donated to a non-profit chosen by Class Counsel with the Court's approval. (*Id.*; Stipulation, Dkt. 40, ¶ 1.17.)  In addition to the payments to the Settlement Class, Plaintiffs request an award to Class Counsel for fees of up to one-third of the Settlement Fund, approximately $1.16 million, along with litigation costs and class representative incentive awards totaling $15,000, to come out of the Settlement Fund. (Stipulation, Dkt 40, ¶ 7.1; Class Notice, Dkt. 40-2, at 1.)

### B.    Notice and Claims

According to the Claims Administrator, postcard notices were mailed, and links to the Long Notice and Claim Form were emailed, to 12,960 potential Settlement Class Members. (Reply Mem. Supp. Final Approval & Att'y Fees ("Reply Mem."), Dkt. 54, at 2.)  On February 9, 2024, the Court held the Final Fairness Hearing. (2/9/2024 Min. Entry.)  Following the hearing, the

---

[4] The recognized loss will be the lesser of: (1) the inflation per share upon purchase; or (2) the difference between the purchase price per share and the average closing stock price as of date of sale. (*Id.* at 7.)  Closing prices per share are set forth in Table B of the Stipulation. (*Id.*)

Court asked for: (1) unredacted contemporaneous billing records supporting Plaintiffs' attorneys' fees request for the Court's *in camera* review; and (2) supplemental briefing on cases where federal courts in the Second Circuit, preferably in the Eastern District of New York, found lodestar calculations based on current hourly rates (rather than historic rates) reasonable in securities fraud class action settlement cases, especially cases where attorneys billed work done as associates at current partner rates after the attorneys became partners over the course of the litigation. (2/9/2024 Min. Entry.)  Plaintiffs timely responded on February 16, 2024.  (Pls.' Billing Ltr., Dkt. 55.)  On July 31, 2024, upon being notified that claims processing had concluded, the Court ordered Plaintiffs to provide the Court with final claims-related statistics.  (7/31/2024 Dkt. Order.)  As of August 7, 2024, the Claims Administrator had received 2,424 claims, of which 435 claims were deemed valid, representing $5,334,209.77 in recognized losses.[5]  (Final Claims Ltr., Dkt. 64, at 1.) To date, no objections from Settlement Class Members have been filed.  (*Id.* at 2.)

## DISCUSSION

## I.    The Settlement Class Is Certified

On September 5, 2023, the Court preliminarily certified the class for the purposes of settlement under Federal Rules of Civil Procedure ("Rule" or "Rules") 23(a) and (b)(3).  (Dkt. 41.) The Court now grants final certification for settlement.

### A.    Legal Standard

To certify a settlement class, the Court must find that Rule 23(a)'s requirements of (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation are satisfied.

---

[5] The letter also states that seven claimants were given the opportunity to cure after being found inadequate.  Of the seven, two claims were successfully cured and the other five claimants either did not respond to the inadequacy notice or responded with inadequate documentation and were ultimately sent a rejection notice.  (Final Claims Ltr., Dkt. 64, at 1–2.)

*See In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012) (citations omitted) [hereinafter *In re Am. Int'l Grp.*].  "The salience of the 'adequacy' factor, Fed. R. Civ. P. 23(a)(4), is particularly acute in settlement class situations." *Calibuso v. Bank of Am. Corp.*, 299 F.R.D. 359, 366 (E.D.N.Y. 2014) (citation omitted); *Gallego v. Northland Grp. Inc.*, 814 F.3d 123, 129 (2d Cir. 2016) ("In the context of a request for settlement-only class certification, the protection of absentee class members takes on heightened importance.").  The requirement ensures that the class representatives "fairly and adequately protect the interests of the class [and] serve[] to uncover conflicts of interest between [them] and the class they seek to represent, as well as the competency and conflicts of class counsel." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 231 (2d Cir. 2016) (cleaned up) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)) [hereinafter *In re Payment Card*].  Furthermore, "to certify a Rule 23(b)(3) [settlement] class, [plaintiffs] must show that common questions of law or fact 'predominate' over purely individual questions and that a class action is 'superior' to other methods of resolving the dispute." *In re Am. Int'l Grp.*, 689 F.3d at 239.

Applying these legal standards, the Court finds that the Stipulation meets all of the Rule 23 requirements.

### B.    Numerosity, Typicality, and Commonality Are Met

Rule 23 requires a determination that "the class is so numerous that joinder of all members is impracticable[.]"  Fed. R. Civ. P. 23(a)(1).  "Impracticable does not mean impossible, and a precise enumeration or identification of class members is not required." *Allegra v. Luxottica Retail N. Am.*, 341 F.R.D. 373, 397 (E.D.N.Y. 2022) (cleaned up) (citation omitted).  Notably, "[c]ourts in the Second Circuit presume numerosity at a level of 40 members." *Id.* (citations omitted).  Here, the numerosity requirement is met.  Plaintiffs allege that "there are likely at least hundreds if not thousands of potential Settlement Class Members as Tarena's ADSs were publicly traded on

NASDAQ with approximately 43.4 million damaged shares during the Settlement Class Period." (Mem. Supp. Mot. Settlement, Dkt. 33, at 4.)

The requirement of typicality is similarly satisfied here. "Typicality requires that the claims or defenses of the class representatives be typical of the claims or defenses of the class members." *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010) (citing Fed. R. Civ. P. 23(a)(3)). This requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Id.* (cleaned up) (citing *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)). In this case, Plaintiffs assert that their claims are typical of the claims of the Class Members, as all members of the class are similarly affected by Defendants' wrongful conduct. Here, all claims relate to the same alleged acts of securities fraud and are fundamentally similar. Even though the strength of the claims may vary due to differences among global regulatory regimes, the cost of litigation by a single plaintiff anywhere, including gathering evidence about global wrongdoing, is likely to mean that everyone will recover similar amounts. Therefore, any variation in recovery is unlikely to be consequential, as the cost of litigating the matter likely would be higher than any reasonable amount of recovery, anywhere in the world. Thus, "[Plaintiffs'] claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *See Marisol. A.*, 126 F.3d at 376 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)).

Likewise, the requirement of commonality is satisfied. Rule 23 requires a finding that "there are questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). "Even a single common question" is enough. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (cleaned up). Here, commonality is met because common questions of law and fact exist as to all

members of the class pertaining to "whether the federal securities laws were violated by Defendants' acts . . . ;[] whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Tarena;[] whether the Individual Defendants caused Tarena to issue false and misleading statements during the Class Period; [and] to what extent the members of the Class have sustained damages and the proper measure of damages."  (Am. Compl., Dkt. 17, ¶ 87.)

### C.     Class Representatives Are Adequate

Finally, the requirement that the class representatives be adequate is met.  "Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation."  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 30 (E.D.N.Y. 2019) [hereinafter *In re Payment Card I*] (citation omitted).

First, to be adequate, a proposed class "representative must have [(1)] an interest in vigorously pursuing the claims of the class, and [(2)] have no interests antagonistic to the interests of other class members."  *In re Payment Card*, 827 F.3d at 231 (citation omitted); *Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013) ("[D]istrict courts must make sure that the members of the class possess the same interests, and that no fundamental conflicts exist among the members.").  Here, there are no fundamental conflicts between the class representatives and the class members.  Class representatives, who purchased Tarena ADSs and were damaged in the same or similar ways that the Class Members were damaged, are seeking to recover from Defendants' alleged misconduct.  Therefore, their interests are aligned with those of other Settlement Class Members as they share the common objective of maximizing their recovery from Tarena for the same alleged misconduct.

Turning to the second prong, Class Counsel are qualified and capable of litigating the matter. Class Counsel have successfully litigated dozens of class actions in recent decades, some in this District. (Mem. Supp. Mot. Settlement, Dkt. 33, at 7 (discussing class actions that Class Counsel have litigated in this District).) Lead counsel in this matter, Attorney Phillip Kim, graduated from law school in 2002 and has successfully litigated similar class actions against Chinese securities issuers in the past. (Mem. Supp. Final Settlement Approval, Dkt. 50, at 7; Class Counsel Firm Resume, Dkt. 6-4, at 1.)[6] Thus, the Court finds that Class Counsel is able to adequately prosecute this matter.

### D.      Rule 23(b)(3)'s Requirements of Predominance and Superiority Are Met

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002) (citation omitted). This "predominance requirement is satisfied if: (1) resolution of any material legal or factual questions can be achieved through generalized proof, and (2) these common issues are more substantial than the issues subject only to individualized proof." *In re Petrobras Sec.*, 862 F.3d 250, 270 (2d Cir. 2017) (cleaned up) (citation omitted). In this case, the crucial question is whether Defendants' issuance of false and misleading statements violated federal securities laws. That question is "essential to the claims of all putative class members," and the "'same evidence will suffice for each [class] member [to answer it].'" *In re Payment Card I*, 330 F.R.D. at 56 (first alteration in original) (quoting *Tyson Foods, Inc. v.*

---

[6] Some of these cases include *Christine Asia Co. Ltd. v. Yun Ma*, No. 15-MD-02631 (CM) (SDA), 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) (achieving a $250 million settlement against Alibaba); *Horowitz v. Sunlands Tech. Grp.*, No. 19-CV-3744 (RML) (E.D.N.Y. Oct. 11, 2023), Dkt. 74 (approving a settlement of $6.2 million against Sunlands Technology Group); and *In re PPDAI Grp. Inc. Sec. Litig.*, No. 18-CV-6716 (TAM) (E.D.N.Y. Jan. 21, 2022), Dkt. 84 (approving a settlement of $9 million against PPDAI).

*Bouaphakeo*, 577 U.S. 442, 453 (2016)).  While individual questions will remain as to the extent of the harm caused to each Class Member, "'the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification' under Rule 23(b)(3)."  *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (citation omitted).

The requirement of superiority is likewise satisfied.  "To establish the superiority prong of this inquiry, 'the moving party must show that the class action presents economies of time, effort and expense, and promotes uniformity of decision.'"  *In re 3D Sys. Secs. Litig.*, No. 21-CV-1920 (NGG) (TAM), 2024 WL 50909, at *8 (E.D.N.Y. Jan. 4, 2024) (cleaned up) (quoting *Lea v. Tal. Educ. Grp.*, No. 18-CV-5480 (KHP), 2021 WL 5578665, at *6 (S.D.N.Y. Nov. 30, 2021)).  Here, in light of the numerosity of the class members and the uniformity of their claims, there is a strong basis for a finding of superiority.  *See Pub. Emps.' Ret. Sys. v. Merrill Lynch & Co., Inc.*, 277 F.R.D. 97, 120 (S.D.N.Y. 2011) (finding superiority where "there is no overwhelming interest by class members to proceed individually" and noting that in most securities actions, "[m]ultiple actions by multiple plaintiffs could also significantly reduce the prospects for recovery as it would decrease plaintiffs' bargaining power").

## II.     The Settlement Agreement Is Substantively and Procedurally Fair

Under Second Circuit precedent, as recently established in *Moses v. N.Y. Times Co.*, 79 F.4th 235, 244 (2d Cir. 2023), both Rule 23(e)(2) factors and the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (the "*Grinnell* factors"), weigh in favor of finding that the Stipulation in this case is procedurally and substantively fair, and warrants final approval.

### A.     Legal Standard

Rule 23(e) "sets forth the standards and procedures that apply to class action settlements."  *In re Payment Card I*, 330 F.R.D. at 27.  Pursuant to Rule 23(e), approval of a class action

settlement generally occurs in two stages: (1) the preliminary approval stage, where the Court makes an initial evaluation of the settlement's fairness before notifying the class, and (2) the final approval stage when class members and the parties are given an opportunity to be heard before the Court approves the settlement. *See id.* At the final approval stage, a district court may approve a class action settlement only upon "finding that it is fair, reasonable, and adequate." *Moses*, 79 F.4th at 242 (quoting Fed. R. Civ. P. 23(e)(2)). To make that determination, a court should expressly evaluate four "primary procedural considerations and substantive qualities that should always matter" in its "holistic[]" review of a proposed settlement. *Id.* (quoting Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 Amendment (the "2018 Advisory Note")). These four considerations include whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). "The first two factors are procedural in nature," *Moses*, 79 F.4th at 242, and "examine 'the conduct of the litigation and of the negotiations leading up to the proposed settlement,'" *In re Payment Card I*, 330 F.R.D. at 29 (quoting 2018 Advisory Note). The latter two factors "guide the substantive review of a proposed settlement," *Moses*, 79 F.4th at 244, assessing "[t]he relief that the settlement is expected to provide to class members . . . ." *Id.* (quoting 2018 Advisory Note).

In *Moses*, the Second Circuit emphasized that the amended Rule 23(e) "now mandates courts to evaluate factors that may not have been highlighted in [this Circuit's] prior case law, and its terms prevail over any prior analysis that are inconsistent with its requirements." *Id.* at 243. The panel explained that "Rule 23(e)(2) prohibits courts from applying a presumption of fairness to a settlement agreement based on its negotiation at arm's length . . . because the rule 'does not suggest that an affirmative answer to that one [factor] creates a favorable presumption on review of the other three.'" *Id.* (citation omitted).  Regarding substantive fairness, while courts in this Circuit historically "evaluate[d] substantive fairness [by] considering the nine *Grinnell* factors," which largely overlap with the revised Rule 23(e)(2), the *Moses* court emphasized that the "rule now requires courts to expressly consider two core factors [under Rules 23(e)(2)(C)–(D)] when reviewing the substantive fairness of a settlement: the adequacy of relief provided to a class and the equitable treatment of class members." *Id.* at 244 (second alteration in original) (citation omitted).  Importantly, the *Moses* panel noted that "the revised Rule 23(e)(2) does not displace" the *Grinnell* factors that courts have traditionally applied, "which remain a useful framework for considering the substantive fairness of a settlement." *Moses*, 79 F.4th at 243.  The nine *Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation;
>
> (2) the reaction of the class to the settlement;
>
> (3) the stage of the proceedings and the amount of discovery completed;
>
> (4) the risks of establishing liability;
>
> (5) the risks of establishing damages;
>
> (6) the risks of maintaining the class action through the trial;
>
> (7) the ability of the defendants to withstand a greater judgment;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and]

(9) the range of reasonableness of the settlement fund [compared] to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463 (citations omitted).

### B.   Procedural Fairness

To evaluate the procedural fairness of a proposed settlement, a court must expressly consider the two factors under Rules 23(e)(2)(A)–(B): whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(A)–(B).

First, the Court has already found the class representatives adequate as part of the Court's Section 23(a) analysis.  *See* Discussion *supra* Section I.C.  Given the similarity of the analyses regarding adequacy under Rule 23(e)(2)(A) and Rule 23(a)(4), the Court finds that the class representatives and Class Counsel provided adequate representation to the putative classes under Rule 23(e)(2)(A).  *See In re Payment Card I*, 330 F.R.D. at 54 (holding that the court will likely find that class representatives and class counsel have provided adequate representation under Rule 23(a) after finding adequate representation by class representatives and class counsel under Rule 23(e)(2)(A)).

Second, the Court "must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations[.]"  *McReynolds v. Richards-Cantave*, 588 F.3d 790, 804 (2d Cir. 2009) (citation omitted).  Here, Plaintiffs allege that some settlement negotiations took place before a mediator.  After Defendants' motion to dismiss was fully briefed in May 2022, the parties began discussing possible resolution of the action with the assistance of the mediator Robert A. Meyer of JAMS.  (Kim Decl., Dkt. 53, ¶ 8.)  On June 2, 2022, the parties participated in an all-day, virtual mediation session.  (*Id.* ¶ 9.)  While the mediation ended without

a resolution, Plaintiffs explain, albeit without specifics, that the mediator, following their virtual encounter, "continued to facilitate settlement discussions." (*Id.*; Meyer Decl., Dkt. 53-2, ¶ 10 ("A settlement was not reached at the mediation session, but I assisted the parties in ongoing settlement discussions.").) The negotiations spanned slightly more than a month. (*Id.* ¶¶ 10, 11.) On July 13, 2022, the mediator notified the parties that both sides had accepted the mediator's double-blind "mediator's proposal" of $3,500,000 to resolve the action. (*Id.* ¶ 11.) According to the mediator, throughout the mediation process, "the parties carried out extensive, detailed, and hard-fought discussions regarding the strengths and weaknesses of the case" and that the "negotiations between counsel for the parties were conducted at arm's length and were not collusive." (*Id.* ¶ 12.) During the Final Fairness Hearing, Class Counsel further clarified that the relative speed with which they were able to reach an agreement could be explained, in part, by the work both parties had to put in while briefing the merits of their respective positions before mediation had begun, during pre-mediation discussions. (Fairness Hr'g Tr., Dkt. 57, at 5:12–6:22.)

Accordingly, the Court concludes that the procedural fairness requirement under Rules 23(e)(2)(A)–(B) has been satisfied.

## C.    Substantive Fairness

In evaluating the substantive fairness of a proposed settlement, a court must expressly consider the "two core factors" under Rules 23(e)(2)(C)–(D): "the adequacy of relief provided to a class and the equitable treatment of class members." *Moses*, 79 F.4th at 244. In particular, such evaluation must be conducted in tandem with reviewing the appropriateness of the proposed attorneys' fees and incentive awards encompassed in the settlement agreement. *Id.*

### 1.    Rule 23(e)(2)(C): Adequacy of Class Relief

In assessing whether a proposed settlement provides adequate relief for the putative class under Rule 23(e)(2)(C), a district court must take into account several factors, including: (i) the

costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).  Fed. R. Civ. P. 23(e)(2)(C).

The first statutory factor under Rule 23(e)(2)(C)(i) largely overlaps with the first *Grinnell* factor "complexity, expense, and likely duration of the litigation."  495 F.2d at 463.  Since this case has limited motion practice and formal discovery, continued litigation likely would result in significant time and expense for the parties, "including costly depositions of opt-in plaintiffs and others, motion practice, trial preparation, trial and appeal, [which] could meaningfully decrease possible recovery for plaintiffs."  *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 299 (E.D.N.Y. 2015).  A settlement, by contrast, provides "relief without the delay, risk, and uncertainty of trial and continued litigation."  *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 312 (S.D.N.Y. 2020).  Thus, the first factor supports approving the settlement.

The second statutory factor requires courts to look at "the method of processing class-member claims."  Fed. R. Civ. P. 23(e)(2)(C)(ii).  "To warrant approval, the plan of allocation must also meet the standards by which the settlement [is] scrutinized—namely, it must be fair and adequate . . . .  An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."  *In re Payment Card I*, 330 F.R.D. at 40 (quoting *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005)).  While the plan of distribution must be fair, it "need not be perfect."  *Id.* (quoting *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05-CV-10240, 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007)).  Here, the method for processing Settlement Class Members' claims and distributing the Net

Settlement Fund were developed with the assistance of an experienced Claims Administrator. (Preliminary Approval, Dkt. 41, ¶ 11; *see* Bravata Decl., Dkt. 53-1.)  The Claims Administrator processed the claims under Class Counsel's guidance, and the Stipulation allows claimants an opportunity to cure any purported deficiencies or request that the Court review their claim denial and, if approved, requires the Claims Administrator to mail or wire authorized claimants their *pro rata* share of the Net Settlement Fund.  (Preliminary Approval, Dkt. 41, ¶ 21.)  Specifically, the Plan of Allocation calls for the Net Settlement Fund to be distributed on a *pro rata* basis to valid Class Members based on their proof of recognized loss, which is a function of the amount of Tarena ADSs owned by each claimant during the class period, the dates on which the shares were purchased then sold, and inflation.  (Class Notice, Dkt. 40-2, at 4–7.)  "A plan of allocation that calls for the *pro rata* distribution of settlement proceeds on the basis of investment loss is presumptively reasonable."  *In re Merrill Lynch Tyco Rsch. Secs. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008).[7]  Further, the Plan of Allocation in this case was described in detail in the notice that was sent to each potential Class Member, and no Class Member has objected to the plan. (Final Claim Ltr., Dkt. 64, at 1–2.)  Accordingly, the record indicates that the Plan of Allocation is an effective form of relief distribution, and this factor weighs in favor of granting final approval.

The third statutory factor, Rule 23(e)(2)(C)(iii), directs courts to examine "the terms of any proposed award of attorneys' fees, including timing of payment."  Fed. R. Civ. P. 23(e)(2)(C)(iii).

---

[7] The Court has given serious consideration to the fact that because the attorneys' fees and costs, service awards, and administrative costs all come out of the Settlement Fund, the total payout to Class Members amounts to only 41% of their recognized losses of $5.3 million.  Specifically, the Court considered reducing the attorneys' fees to 30% of the Settlement Fund, instead of 33%, which would raise the percentage recovery of Class Members to about 43%.  However, weighed against all of the other relevant factors—e.g., procedural fairness, lack of opposition to the Plan of Allocation, the significant risks of litigation and enforcement of any judgment against Defendants, and the reasonableness of the attorneys' fees in light of the swift resolution achieved in this matter—the Court finds that the recovery agreed to in the Stipulation is adequate.

In this case, the Stipulation provides that Class Counsel may apply for payments from the Settlement Fund for: (a) an award of attorneys' fees; plus (b) reimbursement of actual costs and expenses, including without limitation the fees and expenses of experts, consultants, and investigators incurred in connection with prosecuting the case.  (Stipulation, Dkt. 40, ¶ 7.0.)  Also, Class Counsel reserves the right to make additional applications for fees and expenses incurred, if necessary.  (*Id.*)  Specifically, Class Counsel seek attorneys' fees of $1,166,666.67, an award of one-third of the $3,500,000 Settlement Fund and $25,922.61 as reimbursement of out-of-pocket litigation expenses.  (Mem. Supp. Att'y Fees, Dkt. 52, at 1.)  An award of one-third of the Settlement Fund is within the range of fee award percentages that courts in this Circuit have approved.  *See In re BioScrip, Inc. Sec. Litig.*, 273 F. Supp. 3d 474, 496–97 (S.D.N.Y. 2017) (collecting cases where courts granted fee awards of approximately 30–33.3% of the total value of the settlement); *Fleisher v. Phoenix Life Ins. Co.*, Nos. 11-CV-8405 (CM) & 14-CV-8714 (CM), 2015 WL 10847814, at *16 & n.11 (S.D.N.Y. Sept. 9, 2015) (same).

Regarding the timing of payment, at least one district court in this Circuit has held that "[t]here are sound reasons for courts to ensure that the class has been compensated prior to attorneys in class-action settlements," including that, "[c]ynically, money is the best way to keep lawyers engaged."  *Hart v. BHH, LLC*, 334 F.R.D. 74, 77 (S.D.N.Y. 2020).  Here, the Stipulation provides that Defendants will pay the attorneys' fees and litigation expenses immediately upon entry of the Court's order awarding such fees and expenses.  (Stipulation, Dkt. 40, ¶ 7.1.)  The Stipulation also provides that "[n]o monies will be disbursed from the Settlement Fund until after the Effective Date[8] except as provided in . . . ¶ 7.1 regarding Attorneys' Fees and Expenses."

---

[8] The Effective Date is defined in the Stipulation as "the first date by which all of the events and conditions specified in ¶ 8.0 of the Stipulation have occurred and/or been met."  (Stipulation, Dkt. 40, ¶ 1.9.)  Paragraph 8.0, in turn, conditions the Effective Date "upon the occurrence of all

(*Id.* ¶ 2.4.)   During the Final Fairness Hearing, Class Counsel clarified that the payment to attorneys, made once the Settlement is approved, would happen *before* the payment to claimants, which will be made once the motion to distribute is granted.  (Fairness Hr'g Tr., Dkt. 57, at 8:6–9:9.)  Nonetheless, for the reasons set forth below, s*ee* Discussion *infra* Section III, the Court finds that the proposed attorneys' fees in this case are reasonable.  While a settlement provision providing for payment of attorneys' fees prior to the distribution of settlement funds among class members "does not bolster the case" for approval, "it also does not undercut that case where, as here, the majority of other factors weigh significantly in its favor."  *Mikhlin v. Oasmia Pharm. AB*, No. 19-CV-4349 (NGG) (RER), 2021 WL 1259559, at *7 (E.D.N.Y. Jan. 6, 2021).  Therefore, the fact that Class Counsel will be paid before the Class Members does not weigh significantly against final approval of the Stipulation given the totality of factors.

Finally, the fourth statutory factor mandates that courts consider "any agreement required to be identified under Rule 23(e)(3)," that is, "any agreement made in connection with the proposal."  Fed. R. Civ. P. 23(e)(2)(c)(iv) & (e)(3).  Here, the parties have entered into a confidential Supplemental Agreement giving Tarena the right to terminate the Stipulation if Settlement Class Members holding more than a certain number of ADSs opt out.  (Stipulation, Dkt. 40, ¶ 2.12.)  The Court presumes that the purpose of this agreement is to protect Defendants from the possibility that a large enough number of Class Members choose to opt out and litigate the same claim covered by the Stipulation, thereby subjecting Defendants to costly litigation in addition to a costly pay out through the Stipulation.  Plaintiffs assert that "the number of shares

---

of the following events": the Court's approval of the Settlement Agreement, the Settlement Amount being paid into the Settlement Fund, Tarena not exercising its option to terminate the Stipulation pursuant to the Supplemental Agreement (discussed *infra*), and the entry of final judgment in this case.  (*Id.* ¶ 8.0.)

that trigger the right to terminate has not been disclosed" "[t]o prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts." (Mem. Supp. Final Settlement Approval, Dkt. 50, at 18–19 (citation omitted).) "Given the specific function of this separate agreement, it does not appear to bear upon the overall fairness of the settlement agreement itself." *In re 3D Sys. Secs. Litig.*, 2024 WL 50909, at \*13; *see also Mikhlin*, 2021 WL 1259559, at \*8 (finding that "the general contours of the supplemental agreement are not incompatible with class members' receipt of adequate relief" because "in the event that Defendants' termination right is activated, and that Defendants exercise such right, Plaintiffs would still be in a position to pursue relief through litigation"). Accordingly, the Court finds that the supplemental agreement does not pose an impediment to final approval of the Settlement.

### 2.   Rule 23(e)(2)(D): Equitable Treatment of Class Members

Rule 23(e)(2)(D) requires the Court to consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). In evaluating this factor, courts may weigh "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Moses*, 79 F.4th at 245 (quoting 2018 Advisory Note). Particularly, after *Moses*, "the existence and extent of incentive payments is relevant to whether 'class members [are treated] equitably relative to each other.'" *Id.* (alteration in original) (quoting Fed. R. Civ. P. 23(e)(2)(D)). In evaluating the substantive fairness of a settlement, courts must not only ensure that a settlement protects "the interests of class representatives who play an active role in the litigation—often providing the background information that forms the basis of the lawsuit, engaging in fact discovery, and devoting considerable time and effort into the settlement process—from having absent class members free ride on their efforts," but they must also "reject incentive awards that are excessive compared to

20

the service provided by the class representative or that are unfair to the absent class members." *Id.* (citation omitted).

Here, the Plan distributes funds on a *pro rata* basis to each Settlement Class member who timely submits a valid claim based on recognized losses resulting from the stock price declines during the Settlement Class Period. (Mem. Supp. Final Settlement Approval, Dkt. 50, at 19.) "Pro rata distribution schemes are sufficiently equitable and satisfy the requirements of Rule 23(e)(2)(D)." *Cymbalista v. JPMorgan Chase Bank, N.A.*, No. 20-CV-456 (RPK) (LB), 2021 WL 7906584, at *9 (E.D.N.Y. May 25, 2021). In addition, Plaintiffs seek a total award of $15,000, comprised of $10,000 to Lead Plaintiff Walter De Schutter and $2,500 to each of the two Named Plaintiffs Steven Clauter and Cynthia Lewis. (Mem. Supp. Att'y Fees, Dkt. 52, at 23.) The Court calculates the average class recovery by taking the $3,500,000 Settlement Fund, subtracting the proposed attorney fees of $1,166,666.67, the litigation expenses of $25,922.61, the claims administration costs of $99,750.33, the incentive awards of $15,000, and finally dividing the remaining amount by 435, i.e., the number of valid claims. By this calculation, the estimated average class recovery for a Class Member will likely be around $5,040.60, not taking into account any accrued interest on the litigation expenses. The requested incentive awards for the two Named Plaintiffs are therefore lower than the estimated average class recovery. And while the incentive award for the Lead Plaintiff is around $5,000 greater than the estimated average class recovery, the Court does not find this difference to be so great as to be unreasonable in light of Lead Plaintiff Schutter having been involved in the case for longer than each of the Named Plaintiffs, and his role having required more frequent interactions with counsel for case-related matters. (*See* Fairness Hr'g Tr., Dkt. 57, at 27:15–29:13.)

3.      Remaining *Grinnell* Factors

Having already considered *Grinnell* Factor 1, *see* Discussion *supra* Section II.C.1, the Court now finds that the Settlement satisfies the remaining eight *Grinnell* factors.

a.      *Grinnell* Factor 2: Reaction of the Class to the Settlement

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). "Courts have found this factor to weigh in favor of approval where the majority of class members have not objected to or opted out of a settlement." *Flores*, 104 F. Supp. 3d at 300 (quoting *In re Sinus Buster Prods. Consumer Litig.*, No. 12-CV-2429 (ADS) (AKT), 2014 WL 5819921, at *9 (E.D.N.Y. Nov. 10, 2014)).

Here, after the Court preliminarily approved the Settlement on September 5, 2023, settlement materials were mailed or emailed to 12,960 potential Settlement Class Members. (Reply Mem., Dkt. 54, at 2.)  The deadline to object to or seek exclusion from the Stipulation passed on January 19, 2024.  (*Id.* at 3.)  The Claims Administrator received 2,424 claims, out of which 435 valid claims have recognized losses of over $5.3 million. (Final Claims Ltr., Dkt. 64, at 2.)  The Claims Administrator has not received any objections to this date.  (*Id.*)  Further, the Claims Administrator received no valid exclusion requests from the Settlement Class.  (Reply Mem., Dkt. 54, at 5.)  Thus, the Court finds that the Stipulation, overall, has been well-received. Notably, the fact that a relatively small number of Class Members submitted claims is not decisive. 4 Newberg and Rubenstein on Class Actions § 12:17 (6th ed.) ("Given the small value of most class action claims, it should not be surprising that few class members bother to spend the time filing a claim.").  "It is the 'absence of significant exclusion[s] or objection[s]' that courts in this Circuit regularly consider, not low response rates."  *Stinson v. City of New York*, 256 F. Supp. 3d

283, 290 (S.D.N.Y. 2017) (alterations in original) (quoting *In re Bear Stearns*, 909 F. Supp. 2d

259, 267 (S.D.N.Y. 2012)).  Accordingly, given the low number of exclusions and no objections,

this factor generally favors the Settlement.

        b.      <u>*Grinnell* Factor 3: Stage of Proceedings and Amount of Discovery</u>

In considering the third *Grinnell* factor, courts "focus[ ] on whether the plaintiffs obtained

sufficient information through discovery to properly evaluate their case and to assess the adequacy

of any settlement proposal." *Fleisher*, 2015 WL 10847814, at *7 (alteration in original) (citation

omitted).  "While the parties need not have engaged in extensive discovery, a sufficient factual

investigation must have been conducted to afford the Court the opportunity to intelligently [ ]

make . . . an appraisal of the Settlement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 185

(W.D.N.Y. 2005) (alterations in original) (citations omitted); *see also In re Glob. Crossing Secs.*

*& ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("Formal discovery is not a prerequisite;

the question is whether the parties had adequate information about their claims.").

Here, although no formal discovery has taken place, Plaintiffs represent that prior to

settlement, they conducted a "thorough and informed investigation" to become knowledgeable

about the strengths of the claims as well as the real risks of continued litigation.  (Mem. Supp.

Final Settlement Approval, Dkt. 50, at 21.) Plaintiffs' investigation included hiring an investigator

in China to interview witnesses and obtain Chinese regulatory filings; hiring an accounting expert

to assist in the review of Tarena's publicly-filed financial reporting; reviewing Tarena's Class

Period SEC filings, press releases, quarterly earnings calls, numerous analyst reports issued about

Tarena, and a variety of industry publications; retaining an expert to assess damages; and engaging

in extensive negotiations regarding the terms of the proposed Settlement.  (Kim Decl.,

Dkt. 53,¶ 17.)   Taken together, the "stage of proceedings" factor does not weigh against final settlement approval.

> c.    *Grinnell* Factors 4–6: Risk of Establishing Liability and Damages and Maintaining the Class Action Through Trial

"Litigation inherently involves risks." *Flores*, 104 F. Supp. at 303 (citation omitted).  This case is no exception.  Plaintiffs would face several substantial risks if this case were to proceed.

First, as Plaintiffs admit, it is uncertain whether they would be able to establish liability. Plaintiffs allege that Tarena engaged in accounting fraud by manipulating the Company's financial statements, which necessitated a restatement.  Plaintiffs recognize that "a significant risk existed that the Court would accept Tarena's argument that its statements were unactionable[] audit opinions." (Mem. Supp. Final Settlement Approval, Dkt. 50, at 13.)  This is particularly true here, where a Court or a jury would have to find "severe recklessness" if evidence of knowledge or intent to defraud is not proffered.  (*Id.*)  In addition, even if Plaintiffs were to survive the motion to dismiss, there is a "substantial risk involved in proving *scienter*, because it goes directly to a defendant's state of mind, and proof of state of mind is inherently difficult."  (*Id.* (quoting *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001).)

Second, "[e]ven assuming that Plaintiffs prevailed on liability, the existence and amount of damages would have been hotly contested at trial."  *In re Namenda*, 462 F. Supp. 3d at 313. Plaintiffs are cognizant that Defendants have argued and would continue to argue that there are no damages because Tarena's statements are unactionable audit opinions, and that Tarena would proffer its own expert to offer contrary causation testimony at trial with respect to all of the price declines.  (Mem. Supp. Final Settlement Approval, Dkt. 50, at 14–15.)  Finally, as Plaintiffs

acknowledge, there are also risks and uncertainty surrounding class certification because Tarena would have challenged class certification.[9]  (*Id.* at 15.)

> d.    *Grinnell* Factor 7: Ability of Defendant to Withstand a Greater Judgment

This factor is "typically relevant only when a settlement is less than what it might otherwise be but for the fact that the defendant's financial circumstances do not permit a greater settlement." *In re Namenda*, 462 F. Supp. 3d at 314.  Plaintiffs assert that the Stipulation is a highly favorable result and was obtained without exposing the Settlement Class to the risk, expense, and delay of continued litigation because if the litigation continued, Tarena's assets would have continued to drain.  (Mem. Supp. Final Settlement Approval, Dkt. 50, at 22.)  Furthermore, any judgment likely would have been unenforceable because Tarena, its assets, and the Individual Defendants are all located in China.  (*Id.*)  Therefore, this factor also weighs in favor of settlement approval.

> e.    *Grinnell* Factors 8 & 9: Range of Reasonableness of the Settlement and Attendant Risks of Litigation

"The final two *Grinnell* factors [, *i.e.*, the range of reasonableness of the settlement in light of the best possible recovery and all attendant risks,] are typically considered together." *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 432 (S.D.N.Y. 2016).  "[T]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion[.]" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 119 (2d Cir. 2005) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).  The mere "fact that a proposed settlement

---

[9] Although, for the reasons discussed above, any challenge to class certification in this case likely would fail, Plaintiffs, at a minimum, would have to bear the expense of defending against such a challenge.

may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455.

Here, the proposed settlement allows the class to recoup $3,500,000 for their alleged harm, minus attorneys' fees, litigation costs, and any other expenses.  Plaintiffs claim that the $3,500,000 cash settlement represents approximately 19% of the total maximum recoverable damages of approximately $18.4 million estimated by Plaintiffs' expert, but for the latter figure to be realized, Plaintiffs, most significantly, would have to survive a motion to dismiss and summary judgment, and then prove to a jury that 100% of Tarena's price declines were caused by the revelation of the accounting misstatements.  (Mem. Supp. Final Settlement Approval, Dkt. 50, at 15–16.)  Given the many legal and factual uncertainties involved in litigation, this factor favors settlement approval.

III.    **Attorneys' Fees, Litigation Expenses, and Incentive Awards Request**

As mentioned above, Class Counsel seek an award of attorneys' fees in the amount of $1,166,666.67 (one-third of the Settlement Fund, which includes accrued interest); reimbursement of $25,922.61 in litigation expenses (plus accrued interest); and incentive awards to Plaintiffs totaling $15,000, comprising of $10,000 to Lead Plaintiff and $2,500 to each of the Named Plaintiffs.

A.    **Legal Standard**

Under Rule 23(h), "the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  In a class action settlement, the court must carefully scrutinize Class Counsel's application for attorneys' fees to "ensure that the interests of class members are not subordinated to the interests of . . . class counsel."  *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995).  The court's role in this context is "to act as a fiduciary who must serve as a guardian of the rights of absent class

members." *McDaniel v. County of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010) (citation omitted).

Courts commonly employ either the "percentage of the fund method" or the "'lodestar' method" to evaluate the reasonableness of attorneys' fees awards in common fund settlement cases. *Wal-Mart Stores, Inc.*, 396 F.3d 96 at 121 (internal quotation marks omitted). "The trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation," with the lodestar serving only as a "cross-check" on the resulting fee. *Id.* at 121, 123 (citations omitted).

Irrespective of which method is used, "district courts should continue to be guided by the traditional criteria" identified in *Goldberger* (the "*Goldberger* factors") in analyzing the reasonableness of attorneys' fees, including: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of the representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 49–50 (2d Cir. 2000) (alteration in original) (citation omitted). In addition to the *Goldberger* factors, "the relief actually delivered to the class can be a significant factor in determining the appropriate fee award." *Moses*, 79 F.4th at 244 (quoting 2018 Advisory Note). Additionally, attorneys must submit contemporaneous time records to support their fee applications. *See N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

## B.   Application

### 1.   Common Fund and Percentage of Fund Method

As an initial matter, this action involves a common fund settlement and not a claims-made settlement. Therefore, the percentage-of-fund method, which Class Counsel request to apply in

awarding attorneys' fees, is proper.  "Under the percentage method, the court calculates the fee award as some percentage of the funds made available to the Settlement Class." *Hesse v. Godiva Chocolatier*, No. 19-CV-972 (LAP), 2022 U.S. Dist. LEXIS 72641, at *33 (S.D.N.Y. Apr. 20, 2022) (citing *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 249 (2d Cir. 2007)).  Here, as discussed above, Class Counsel seek attorneys' fees of $1,166,666.67, an award of one-third of the $3,500,000 Settlement Fund.  (Mem. Supp. Att'y Fees, Dkt. 52, at 1.)  An award of one-third, or 33.3%, of the Settlement Fund is within the range that courts in this Circuit have awarded.  *See In re BioScrip, Inc. Sec. Litig.*, 273 F. Supp. 3d at 496–97 (collecting cases where courts granted fee awards of approximately 30–33.3% of the total value of the settlement); *Fleisher*, 2015 WL 10847814, at *16 & n.11 (same).  However, the requested fee award is subject to cross-check under lodestar.

    2.    <u>Lodestar Cross-Check</u>

Even where fees are reasonable when analyzed under the percentage method, courts will additionally perform a lodestar "cross-check" and "compare the fees generated by the percentage method with those generated by the lodestar method."  *Mobley v. Five Gems Mgmt. Corp.*, No. 17-CV-9448 (KPF), 2018 WL 1684343, at *4 (S.D.N.Y. Apr. 6, 2018) (citations omitted).  Here, in support of their request for attorneys' fees, Class Counsel submitted a summary chart of their billing rates and hours expended, along with the declaration of Attorney Phillip Kim.  (*See generally* Kim Decl., Dkt. 53; *see also id.* ¶ 28.)  Class Counsel further provided contemporaneous billing records to the Court.  (*See* Billing Records, Dkts. 55-1, 55-2.)

    a.    <u>Reasonable Hourly Rates</u>

"A reasonable hourly rate is 'the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case

effectively.'" *McLaughlin v. IDT Energy*, No. 14-CV-4107 (ENV) (RML), 2018 WL 3642627, at *16 (E.D.N.Y. July 30, 2018) (alteration in original) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)).  To determine reasonable hourly rates for the legal services performed, courts typically take into account several factors, such as "the labor and skill required, the difficulty of the issues, the attorney's customary hourly rate, and the experience, reputation and ability of the attorney." *Bodon v. Domino's Pizza*, No. 09-CV-2941 (SLT), 2015 WL 3889577, at *7 (citing *Arbor Hill*, 522 F.3d at 186 n.3, 190). "In assessing the hourly rate, courts consider rates awarded in the district in which the reviewing court sits, pursuant to what is known as the 'forum rule.'" *Id.* (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174–75 (2d Cir. 2009)).

Here, Class Counsel spent 659.9 hours in this action, resulting in a lodestar of $576,005. Based on a one-third fee (equal to $1,166,666.67), Class Counsel's lodestar yields a multiplier of 2.025, which is "below what has been deemed reasonable for the common fund settlements in securities class action cases in this circuit." *In re Graña y Montero S.A.A. Secs. Litig.*, No. 17-CV-01105 (LDH) (ST), 2021 WL 4173684, at *18 (E.D.N.Y. Aug. 13, 2021); *see, e.g.*, *Athale v. Sinotech Energy Ltd.*, No. 11-CV-5831 (AJN), 2013 WL 11310686, at *8 (S.D.N.Y. Sept. 4, 2013) (collecting cases that found as reasonable "lodestar multipliers between four and five").

Class Counsel based their calculation on the timekeepers' current hourly billing rates, rather than blended historical rates, "*i.e.*, the hourly rates reflective of the rate at the time the work was performed," even though their billings spanned more than three years preceding the fee petition. *In re Payment Card Interchange Fee & Merchant Disc. Antitrust Litig.*, No. 05-MD-1720 (MKB) (JO), 2019 WL 6888488, at *3 (E.D.N.Y. Dec. 16, 2019) [hereinafter *In re Payment Card II*].  While courts have discretion to apply current rates in awarding attorneys' fees, for

example, to account for delayed payment in prolonged litigation, the use of current rates in some cases may be problematic because this "may have overstated [the lodestar calculation] given the lengthy duration of [the] case and the likelihood that the firm's rates increased over the years." *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, No. 12-CV-0256 (LAK), 2021 WL 2453972, at *1 (S.D.N.Y. June 15, 2021).

Here, the total amount billed was highest for an attorney who was promoted to partner during the pendency of the litigation. (Fairness Hr'g Tr., Dkt. 57, at 22:4–22:11; Billing Records, Dkts. 55-1, 55-2.) Though the use of that attorney's current rate increased the overall fee amount, the Court notes that the use of current rates to calculate lodestar figures in securities litigation has been endorsed by other federal courts within this Circuit, as well as the Supreme Court. *See In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-CV-8557 (CM), 2014 WL 7323417, at *15 & n.9 (S.D.N.Y. Dec. 19, 2014) ("Finally, the use of current rates to calculate the lodestar figure has been endorsed repeatedly by the Supreme Court, the Second Circuit and district courts within the Second Circuit as a means of accounting for the delay in payment inherent in class actions and for inflation." (citing, *inter alia*, *Missouri v. Jenkins*, 491 U.S. 274, 283–84 (1989); *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir.1998))). Current rates have also been accepted in situations where a lead attorney on the matter was promoted during the litigation [and the litigation was not lengthy], as is the case here. *See, e.g.*, *Mikhlin*, No. 19-CV-4349 (NGG) (RER), (E.D.N.Y. May 24, 2021), Dkt. 39-2 ¶ 5, Dkt. 45 at 2 (granting class counsel's request for attorneys' fees, showing an hourly rate of "Partner" for Attorney Jonathan Horne for the lodestar cross-check, and noting that "Mr. Horne was elevated to the partnership during the pendency of this case"). The Court is further persuaded by Plaintiffs' argument that using historical rates rather than current

rates would only change the lodestar multiplier by a small amount, from 2.025 to 2.41, still lower than what courts in this Circuit have found reasonable.  (Pl.'s Billing Ltr., Dkt. 55, at 3.)

The rates charged by Class Counsel are higher than the prevailing rates in the Eastern District of New York.  "[I]n complex matters, courts [in more recent cases] have awarded rates that have ranged from approximately $375 to $630 for partners, $200 to $400 for associates, and $100 to $125 for paralegals." *Alcon Vision, LLC v. Lens.com, Inc.*, No. 18-CV-407 (NG) (SJB), 2023 WL 8072507, at *7 (E.D.N.Y. Nov. 21, 2023); *see also Aptive Env't, LLC v. Village of East Rockaway*, No. 19-CV-3365 (DRH) (SIL), 2022 WL 5434178, at *5 (E.D.N.Y. July 8, 2022) (setting billing rates at $325 to $600 per hour for partners, $200 to $395 per hour for associates, and $125 to $240 per hour for paralegals), *R. & R. adopted*, No. 19-CV-3365 (JMA) (SIL), 2022 WL 4376618 (E.D.N.Y. Sept. 22, 2022).  Here, Class Counsel's current hourly rates—$875 to $1,025 per hour for partners, $600 to $650 per hour for associates, and $275 per hour for paralegals—exceed the prevailing hourly rates in this District, including those approved in complex litigation.  Specifically, one of the three partners for whom attorneys' fees are sought charges hourly rates in excess of $1,000.

Responding to these concerns, Class Counsel note that the overall median for a first-year associate's salary increased 21.2% since 2021, to $200,000, according to a survey administered by the National Association for Law Placement, Inc. in 2023, and that in New York and other major cities, the rates for first-year associates are higher.  (Kim Decl., Dkt. 53, ¶ 31.)  Class Counsel also note that salaries for more experienced attorneys have also increased due to inflation and other market factors in recent years.  (*Id.*)  However, the Court need not, and therefore does not, decide whether Class Counsel's higher billing rates are appropriate in this case because even if the Court were to cap the outlier partner rate at $875, in line with the partners at the firm, the resulting

multiplier would be 2.06.  Once again, the negligible change in the multiplier weighs in favor of finding the hourly rates reasonable.

b.   <u>Reasonable Hours</u>

In determining whether the number of hours worked is reasonable, "a district court should 'examine[ ] the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case.'"  *Chaparro v. John Varvatos Enters., Inc.*, No. 21-446-CV, 2021 WL 5121140, at *2 (2d Cir. 2021) (summary order) (alterations in original) (quoting *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997)).  "Where, as is the case here, 'the billing records are voluminous, it is less important that judges attain exactitude, than that they use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent.'"  *E.S. v. Katonah-Lewisboro Sch. Dist.*, 796 F. Supp. 2d 421, 431 (S.D.N.Y. 2011) (citation omitted).  "In dealing with hours that are excessive, redundant, or otherwise unnecessary, . . . the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application."  *Chaparro*, 2021 WL 5121140, at *2 (alteration in original) (citation omitted).  Here, Class Counsel's summary chart shows the hours expended by many individuals, including three partners, one counsel, two associates, one paralegal, as well as the various rates charged.  (*See* Kim Decl., Dkt. 53, ¶ 28.)  The contemporaneous billing records submitted by counsel provide more information about the nature of the work performed in connection with the hours for which compensation is sought.  (Billing Records, Dkts. 55-1, 55-2.)  Based on reviewing these documents, the Court finds that the number of hours worked is reasonable.

3.      Reasonableness Under the *Goldberger* Factors

In applying either the lodestar or the percentage-of-the-fund method to calculate attorneys'

fees, "[t]he final step in this analysis is to determine whether the fee award calculated above is

reasonable under the *Goldberger* factors." *McLaughlin*, 2018 WL 3642627, at *20.  These six

factors are: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of

the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested

fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50

(alteration in original) (citation omitted).  For the following reasons, the Court finds that the

requested award is reasonable under the *Goldberger* factors, which largely overlap with the

*Grinnell* factors.

a.      The Time and Labor Expended by Counsel

As set forth in Class Counsel's declarations, Class Counsel expended significant time,

resources, and effort in successfully representing the Class in the instant case.  (*See* Kim Decl.,

Dkt. 53, ¶¶ 6–15, 17.)  Over the course of this case, Class Counsel engaged in investigation,

mediation, settlement negotiations, and settlement preliminary approval, and class certification.

(*See id.*).  "The scope of work[ ] performed by Class Counsel was necessary and reasonable for

complex class actions of this type." *Hesse*, 2022 U.S. Dist. LEXIS 72641, at *36.  Accordingly,

this factor favors the attorneys' fee award.

b.      The Magnitude and Complexities of the Litigation

"In evaluating the second *Goldberger* factor, the size and difficulty of the issues in a case

are significant factors to be considered[.]" *Hallmark v. Cohen & Slamowitz, LLP*, 378 F.

Supp. 3d 222, 232 (W.D.N.Y. 2019) (cleaned up) (citation omitted).  Class actions themselves are

considered inherently complex.  The instant action spanned over three and a half years of litigation,

involved a substantial number of Class Members, and necessitated investigations, mediation, and settlement negotiations. Thus, the second *Goldberger* factor weighs in favor of approving the fee award.

c.    <u>The Risk of the Litigation</u>

"The most important *Goldberger* factor is often the case's risk." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 440–41 (E.D.N.Y. 2014) (citations omitted). As discussed above, Plaintiffs would face several substantial risks of establishing liability and damages and maintaining the class action if this case were to proceed. Also, this action involves additional risks because Tarena is a variable interest entity based in China with no material assets in the United States. (*See* Kim Decl., Dkt. 53, ¶ 23.) This fact alone would impose additional hurdles in engaging in discovery and enforcing a judgment. (*Id.* ¶¶ 18–20.) Therefore, this factor weighs heavily in favor of approving the requested attorneys' fee award.

d.    <u>The Quality of the Representation</u>

"Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award and in assessing the quality of the representation." *Hallmark*, 378 F. Supp. 3d at 233 (citations omitted). "Considering the favorable result reached on behalf of the Class, it is obvious that the members of the Class benefited from [C]ounsel," while avoiding the risk and uncertainty of trial and continued litigation. *Id.* at 234. Also, "[t]hat Class Counsel was able to negotiate this Settlement against a sophisticated company represented by highly capable counsel, while avoiding adverse rulings that could have reduced Plaintiffs' negotiating leverage, is a testament to the skill displayed by Class Counsel." *Hesse*, 2022 U.S. Dist. LEXIS 72641, at \*39. Accordingly, the fourth *Goldberger* factor supports the attorneys' fees.

34

e.     The Requested Fee in Relation to the Settlement

"To avoid routine windfalls where the recovered fund runs into the multi-millions, courts typically decrease the percentage of the fee as the size of the fund increases." *Hart v. BHH, LLC*, No. 15-CV-4804, 2020 WL 5645984, at *11 (S.D.N.Y. Sept. 22, 2020) (citation omitted).  As discussed, Class Counsel's requested attorneys' fees represent one-third of the Settlement Fund, which is within the range of the percentage that courts in this Circuit have awarded, and the relatively modest size of the Settlement Fund does not create an outsized attorneys' fees award. Thus, this factor weighs in favor of the fee award.

f.     Public Policy Considerations

Lastly, "when determining whether a fee award is reasonable, courts consider the social and economic value of the class action, and the need to encourage experienced and able counsel to undertake such litigation." *Lizondro-Garcia v. Kefi LLC*, No. 12-CV-1906 (HBP), 2015 WL 4006896, at *12 (S.D.N.Y. July 1, 2015) (cleaned up) (citation omitted).  "A strong public policy concern exists for rewarding firms for bringing successful securities litigation." *In re Ashanti Goldfields Sec. Litig.*, No. 00-CV-717 (DGT), 2005 WL 3050284, at *5 (E.D.N.Y. Nov. 15, 2005) (citing *In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 236 (S.D.N.Y. 2005) ("[P]ublic policy supports granting attorneys['] fees that are sufficient to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the SEC.")).  Thus, this factor weighs in favor of the fee award.

**C.     Litigation Expenses**

Class Counsel request reimbursement of litigation expenses of $25,922.61 (plus accrued interest).  In class action settlements, "[a]ttorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental

35

and necessary to the representation of those clients." *Jermyn v. Best Buy Stores, L.P.*, No. 08-CV-214 (CM), 2012 WL 2505644, at *9 (S.D.N.Y. June 27, 2012) (citations omitted).

Here, Class Counsel have submitted a chart summarizing their incurred expenses in support of their request. (*See* Kim Decl., Dkt. 53, ¶ 32.)  These expenses, primarily attributed to mediation, investigator, and expert fees, are typical for actions like this one and were necessary for Class Counsel to successfully prosecute this case.  Thus, Class Counsel should be reimbursed for these expenses.  *See, e.g.*, *Yang v. Focus Media Holding Ltd.*, No. 11-CV-9051 (CM) (GWG), 2014 WL 4401280, at *19 (S.D.N.Y. Sept. 4, 2014) (approving mediator fees, expert fees, electronic research, photocopying, postage, meals, and court filing fees and finding that these are the type of expenses that law firms typically bill to their clients).

### D.  Class Representative Incentive Awards

In determining a fair and appropriate incentive award, courts look to the existence of special circumstances, including

> the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and, of course, the ultimate recovery.

*Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997).  However, courts should "reject incentive awards that are excessive compared to the service provided by the class representative or that are unfair to the absent class members" to "ensure that [such] awards are reasonable and promote equity between class representatives and absent class members." *Moses*, 79 F.4th at 245.

Here, Class Counsel request incentive awards to Plaintiffs totaling $15,000, comprised of $10,000 to Lead Plaintiff and $2,500 to each of the Named Plaintiffs.  Each of them spent a considerable among of time assisting Class Counsel in this case, such as by reviewing information about Tarena and discussing findings with their attorneys, reviewing significant filings in this case,

producing information to attorneys, consulting with attorneys regarding the settlement negotiations, and evaluating and approving the proposed Settlement.  (*See* Schutter Decl., Dkt. 53-3, ¶ 4; Clauter Decl., Dkt. 53-4, ¶ 4; Lewis Decl., Dkt. 53-5, ¶ 4.)  Class Counsel also represented at the Final Fairness Hearing that Lead Plaintiff Schutter has been involved in the case for longer than Named Plaintiffs, and his role has required more frequent interactions with counsel for case-related matters, which warrants a higher incentive award.  (Fairness Hr'g Tr., Dkt. 57, at 27:15–29:12.)

Accordingly, the Court finds the incentive awards reasonable.

## CONCLUSION

For the reasons stated above, the Court hereby finally approves the settlement agreement and certifies the Settlement Class.  In addition, the Court approves and awards: (1) attorneys' fees in the amount of $1,166,666.67, (2) reimbursement of litigation expenses in the amount of $25,922.61 (plus accrued interest), and (3) incentive awards to Plaintiffs totaling $15,000, comprising of $10,000 to Lead Plaintiff and $2,500 to each Named Plaintiff.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated:  September 9, 2024
         Brooklyn, New York